**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MIROSLAV IVANOV, et al.** <br><br>                **Plaintiffs** <br><br>     **v.** <br><br> **SUNSET POOLS MANAGEMENT INC., et al.** <br>              **Defendants** |

No. 07-CV-00410 (RJL)

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
AND TO COMPEL ARBITRATION**

Plaintiffs, by their undersigned counsel, hereby submit their opposition to the motion to dismiss and to compel arbitration filed by Defendant International Training and Exchange Inc. ("Intrax").   The sole basis for the relief sought by Defendant rests on its claim that Plaintiffs signed agreements with Intrax that contained a mandatory arbitration provision which requires them to arbitrate "any and all claims arising from or connected with their relationship with Intrax."  <u>See</u> Defendant's Motion to Dismiss and to Compel Arbitration, at 1.  As established below, the document Plaintiffs reviewed and signed with respect to the services to be provided by Intrax did not include an arbitration provision.  As such, the motion to dismiss and compel arbitration must be denied.  Moreover, because the arbitration provision is procedurally and substantively unconscionable, Intrax's attempt to rely on this provision must fail.

**<u>RELEVANT FACTUAL BACKGROUND</u>**

In 2006,  Plaintiffs -  who are citizens of Bulgaria - were recruited by Defendants Intrax and Sunset Pools Management, Inc. ("Sunset") to come to the United States and work as lifeguards at hotel swimming pools located throughout the metropolitan Washington, D.C. area.

See Complaint, at ¶¶ 1, 6, and 7.  See also Answer to Complaint filed by Defendant Sunset, at ¶¶

6-8 and ¶ 12.[1]   The Plaintiffs were employed by Defendants from approximately May, 2006

through October, 2006.  See Complaint, at ¶¶ 6 and 7; Sunset Answer, at ¶¶ 6-8 and ¶ 12.  During

the period of their employment, Plaintiffs worked more than 40 hours per week.  See Sunset

Answer, at ¶¶ 3,6,and 7.  Other similarly situated employees also worked more than 40 hours per

week.  See Sunset Answer, at ¶ 17.  Plaintiffs were told by their employer that they were not

entitled to be paid overtime pay pursuant to the provisions of the Fair Labor Standards Act

("FLSA").  See Sunset Answer, at ¶¶ 16. 18, 20.  Plaintiffs were not paid overtime pay pursuant

to the provisions of the FLSA for the weekly hours they worked over 40 hours.  See Sunset

Answer, at ¶ 20.

## STANDARD OF REVIEW

In The George Town Club at Suter's Tavern v. Salamanca, 2007 U.S. Dist. LEXIS 25396

(D.D.C. April 5, 2007), this Court recently considered an employer's request to invoke a

compulsory arbitration provision concerning a former employee's claims of wrongful

termination, discrimination and retaliation.  In denying the request to compel arbitration, the

Court stated that the party seeking to invoke a compulsory arbitration clause has the burden of

proving its existence.  See Salamanca, 2007 U.S. Dist. LEXIS 25396, at * 9.  ("the party

asserting the existence of a contract has the burden of proving its existence.").  In Salamanca ,

this Court explained that, "[i]f the party opposing arbitration contends that no agreement to

arbitrate was entered, the Court decides the issue using the standards for resolving a summary

---

[1]In its Answer, Defendant Sunset admits many of the material facts with respect to
Plaintiffs' claims against Sunset and Defendant Intrax.  As such, references to those admissions
are included in this factual summary when appropriate.

judgment motion pursuant to Federal Rule of Civil Procedure 56."  Id. at * 7.  See also Dorsey & Whitney, LLP, 267 F.Supp.2d at 67 ("the proper approach to employ in reviewing the defendant's motion to dismiss and compel arbitration is to apply the same standard of review that governs Rule 56 motions.").

Therefore, if there is a question with respect to the existence of an arbitration provision, a motion to compel arbitration should only be granted if the party seeking to compel arbitration has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Salamanca, 2007 U.S. Dist. LEXIS 25396, at * 7-8 citing Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) and Waterhouse v. District of Columbia, 298 F.3d 989, 991 (D.C. Cir. 2002).  Also, "in determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party" who cannot rely on mere unsupported allegations but must provide supporting "affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial."  Salamanca, 2007 U.S. Dist. LEXIS 25396, at * 8 citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 and Celotex Corp., 477 U.S. at 324.

As explained below, Defendant's motion to dismiss and compel arbitration fails to satisfy the legal standard for granting the requested relief.

## ARGUMENT

When presented with a motion to compel arbitration, the threshold issue for a court to determine is the existence of a valid arbitration agreement between the parties.  In Salamanca, this Court stated that "[i]n determining whether an arbitration agreement is a valid contract, a court must 'apply ordinary state law principles that govern the formation of contracts.'"

Salamanca, 2007 U.S. Dist. LEXIS 25396, at * 8-9 quoting Hughes v. CACI, Inc.- Commercial,

384 F.Supp.2d 89, 95 (D.D.C. 2002).   Thus, in order to grant a motion to compel arbitration "a

court must be able to conclude that the parties to the contract explicitly agreed to arbitrate the

dispute at issue." Id. at * 9, citing Brown v. Dorsey & Whitney, LLP, 267 F.Supp.2d 61, 80

(D.D.C. 2003).

          The Court in Salamanca proceeded to explain that "an enforceable contract does not exist

unless there has been a 'meeting of the minds' as to all material terms." Id. at * 9 quoting Bailey

v. Fed. Nat'l. Mortgage Assoc., 209 F.3d 740, 746 (D.C. Cir. 2000).  This Court  instructed that

"'[a] contract is not formed unless the parties reach an accord on all material terms and indicate

an intention to be bound,' and such an intention must be '**closely examined**.'" Id. quoting Bailey,

209 F.3d at 746 (emphasis supplied).  Salamanca also cautioned that "courts 'should not assume

that parties agreed to arbitrate unless there is clear and unmistakable evidence that they did so.'"

Id. quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Thus, it stands to

reason that "despite the presumption in favor of arbitration . . . 'parties cannot be forced into

arbitration unless they have agreed to do so." Salamanca, 2007 U.S. Dist. LEXIS 25396, at * 7

quoting Stromberg Sheet Metal Workers, Inc. v. Washington Gas Energy Sys., Inc., 448

F.Supp.2d 64, 67 (D.D.C. 2006).  See also Riley Mfg. Co. Inc. v. Anchor Glass Container Corp.,

157 F.3d 775, 779 (10th Cir. 1998) citing Moses H. Cone Memorial Hospital v. Mercury

Construction Corp., 460 U.S. 1, 24-25 (1983) ("When the dispute is whether there is a valid and

enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.").

Application of the above reasoning to Defendant's motion to dismiss and compel arbitration leads to the conclusion that the relief sought must be rejected.  Here, each Plaintiff has provided a signed declaration establishing that the agreement they entered into with Defendant Intrax did not contain the compulsory arbitration provision now being invoked by Intrax.  <u>See</u> Declaration of Miroslav Ivanov attached hereto as Exhibit A and Declaration of Veselin Ivanov attached hereto as Exhibit B.[2]  Indeed, both Plaintiffs state that other than the signature page, the Intrax representative with whom they dealt only provided to them the four page "Premium Placement Confirmation Form."  <u>See</u> Exhibit A, at ¶ 7 and Exhibit B, at ¶ 7.[3]  Plaintiffs further state that they were only provided "3 to 4 minutes to review and sign the form" and that they were "never presented with any page that mentioned dispute resolution or mandatory arbitration." <u>See</u> Exhibit A, at ¶¶ 7 and 8 and Exhibit B, at ¶¶ 7 and 8.

Based upon Plaintiffs' statements, it is evident that Defendant cannot provide "clear and unmistakable" evidence that the parties reached a "meeting of the minds" with respect to the compulsory arbitration provision upon which Defendant Intrax relies.  <u>See</u> <u>Salamanca</u>, 2007 U.S. Dist. LEXIS 25396, at * 9.  <u>See also</u> <u>Davis v. Winfield</u>, 664 A.2d 836, 838 (D.C. 1995) ("One of the essential elements for formation of a contract . . . is manifestation of agreement or mutual assent by the parties to the terms thereof; in other words to establish a contract the minds of the parties must be in agreement as to its terms.").  For this reason, the motion to dismiss should be

---

[2]Copies of Plaintiffs' declarations have been included in both English and Bulgarian.  A separate declaration of Plaintiffs' attorney is attached hereto as Exhibit C attesting to the circumstances involved in preparing these declarations and the accuracy of the Bulgarian translation.

[3]This four page document was attached to Plaintiffs' Complaint as Exhibit 4.

denied and Plaintiffs should not be forced to participate in an arbitration process to which they did not agree.

Even if the Court were to reject the reasoning of Salamanca and conclude that the parties had reached a meeting of the minds on the compulsory arbitration provision, such a conclusion would not provide this Court with a basis to grant Defendant's motion to dismiss.  In order to compel arbitration a court must determine that an arbitration agreement was not the product of fraud or duress and that it terms are not unconscionable.  See e.g. Murray v. UFCW, Local 400, 289 F.3d 297, 302 (4th Cir. 2002).  Likewise, "agreements to arbitrate federal statutory claims, . . . may be revoked if the prospective litigant demonstrates that it cannot 'effectively . . . vindicate his or her statutory cause of action in the arbitral forum."  Id. citing Green Tree Fin. Corp. Alabama v. Randolph, 531 U.S. 79, 89 (2000).  See also Cole v. Burns Int'l. Security Services, 105 F.3d 1465, 1483 (D.C. Cir. 1997)("At a minimum, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections.").

In Bennet v Fun & Fitness of Silver Hill, Inc, 434 A.2d 476, 480 (D.C. 1981), the court explained that "a contract may be unconscionable either because of the manner in which it was made or because of the substantive terms of the contract, or, more frequently, because of a combination of both."  See also Urban Investments, Inc. v. Branham, 464 A.2d 93, 99-100 (discussing elements of procedural and substantive unconscionability doctrine).  Procedural unconscionability is defined by the "absence of meaningful choice."  See Williams v. First Gov't. Mortgage and Inv. Corp., 225 F.3d 738, 748 (D.C. Cir. 2000); see also Urban, 464 A.2d at 99-100.

In Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C. Cir. 1965), the court stated that "[w]hether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction." Such circumstances include "the manner in which the contract was entered" and the possible existence of "a gross inequality of bargaining power." Id. One important question a court must determine in considering whether a contract is unconscionable is if "each party to the contract, considering his [or her] obvious education or lack of it, have a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print and minimized by deceptive sales practices." See Walker-Thomas Furniture Co., 350 F.2d at 449. Similarly, "when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms." Id.

An inquiry into substantive unconscionability requires that a court consider "whether contract terms are unreasonably favorable to one party." First Gov't. Mortgage, 225 F.3d at 748. During such an inquiry "[t]he primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made." See Walker-Thomas Furniture Co., 350 F.2d at 449; see also Adams v. American Residential Services, L.L.C., 2003 U.S. Dist. LEXIS 26478 (D.D.C. 2003).

When the purported arbitration agreement between Plaintiffs and Defendant Intrax is examined based upon the above considerations, it becomes apparent that the agreement is both procedurally and substantively unconscionable. Indeed, the numerous procedural deficiencies concerning the manner through which Intrax secured Plaintiffs' signatures is enough to find the

arbitration agreement unenforceable.  See Urban Investments, 464 A.2d at 99 ("Although both elements usually are present in unconscionability cases, we have indicated that 'in an egregious situation, one or the other may suffice.'").  These procedural deficiencies include:

1.    the fact that Plaintiffs were given a four page document to review by an Intrax representative which did not contain an arbitration provision;

2.    the fact that the document was not provided to Plaintiffs in their native language;

3.    the fact that Plaintiffs were only given 3 to 4 minutes to review the four pages that they were given; and

4.    the fact that the Intrax representative told Plaintiffs that the only needed to sign the last page and that the signing of the form was merely a "necessary formality."

See Exhibit A (Declaration of Miroslav Ivanov), at ¶¶ 4-8 and Exhibit B (Declaration of Veselin Ivanov), at ¶¶ 4-8.

In addition to these serious procedural deficiencies, the purported arbitration agreement is also substantively unconscionable.  For example, requiring Plaintiffs to travel to San Francisco, California to resolve disputes with Intrax or limit their representation to a telephonic appearance is patently unreasonable, particularly given the fact that Plaintiffs were told that they would be employed in the metropolitan Washington, D.C. area.  Based upon the relatively low hourly wage that was paid to Plaintiffs, it is highly unlikely that they could bear the financial burden of this requirement.

The fact that Plaintiffs could appear by telephone does not obviate the offensive nature of this provision.  Indeed, the fact that the resolution of Plaintiffs' dispute could be reduced to a conference call makes this arbitration provision more disagreeable.  This is particularly true in

this case, where Plaintiffs are seeking to vindicate their federal statutory rights under the Fair Labor Standards Act.  Moreover, litigating by telephone is by no means the equivalent of being physically present at a hearing, with the ability to examine the documents being offered into evidence and evaluate the testimony of witnesses (which often involves consideration of an individual's non-verbal cues).

Finally, the arbitration provision is also substantively unconscionable because it requires the losing party to bear the costs of the arbitration, including attorney's fees.  Given the limited financial resources of Plaintiffs - and other similarly situated employees - this requirement virtually precludes an employee's  ability to raise a dispute with Intrax.  Thus, the restrictive venue provision and the fee splitting requirement combine to provide an additional reason why the arbitration provision should not be enforced.[4]

<u>**CONCLUSION**</u>

For the reasons discussed above, Defendant's motion to dismiss and to compel arbitration should be denied.

---

[4]It should also be noted that because Defendant Sunset has admitted to all the material facts of this case in its Answer, Plaintiffs' claims should soon be ripe for resolution through summary judgment.  As such, Defendant Intrax cannot argue that arbitration of this case will provide a quicker resolution than litigating the case before this Court.

Respectfully submitted,


_____/s/_____
Mark J. Murphy, Bar No. 453060
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, DC 20036
(202) 783-0010
(202) 783-6088 - fax

Counsel for Plaintiffs

Date:   April 16, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Miroslav Ivanov and Veselin Ivanov : | |
| : | |
| : | |
| Plaintiffs, : | **CIVIL ACTION No.** |
| : | |
| v. : | |
| : | Declaration of Miroslav Ivanov |
| Sunset Pools Management, Inc. *et al.* : | |
| : | |
| Defendants. : | |
| : | |
| : | |

DECLARATION

MIROSLAV IVANOV declares as follows:

1.     My name is Miroslav Ivanov. I am over the age of 18 and a plaintiff in the above captioned lawsuit pending against INTRAX and other defendants in the United States District Court for the District of Columbia.

2.     I came to the United States in 2006 to work in the pool maintenance business.

3.     I am a citizen of Bulgaria and prior to coming to the United States in May, 2006 I had a rudimentary knowledge of English, limited to casual conversation. I had taken three semesters of English at my university, which included two one-hour sessions each week. My English conversation skills are far better than my written skills. Despite the fact that my skills improved somewhat during my stay in the United States, I still do not feel confident reading or writing in English. Even simple matters like e-mail or regular mail to friends present me with a problem and I resort to either using dictionary or depend on friend whose English is more advanced.

4.    Prerequisite for coming to the United States was dealing with a Bulgarian company called "Zip-Travel", serving as a representative for INTRAX in Bulgaria. When Zip-Travel informed me that my documents were ready for me to sign, I went to their office. There were a number of visitors in the office and more were coming in and out throughout the entire time.

5.    At the Zip-Travel office, I had two to three minutes conversation with the Zip-Travel representative in English. This was to establish my English proficiency. The person interviewed me was a Bulgarian who was not a native English-speaker.

6.    During this interview, I was asked "where I was from", "my age", and "why did I want to go to the United States?". This was the extent of my English proficiency test. I was not asked to take written test, or to even write a simple sentence in English. I was not asked about how many college credits I have based on taken English classes, nor have I studied English at university level and for how long.

7.    After the so-called "English proficiency test", I was handed the INTRAX "Premium Placement Confirmation Form". The Zip-Travel employee described the form and its signing as "necessary formality". I was asked to review the "FORM" and sign on the last page. The form contained four (4) pages plus the signature page. I asked if I should sign or initial each page. I was told only to sign the last page, because according to them (Zip-Travel) only the last page was to be sent to the United States to INTRAX. I signed the last page, and took copy of it, plus the 4 pages of the form I was given. I was never offered any explanation or translation of the form. I was not told that this is actually a contract. I was given 3 to 4 minutes at best to review and sign the form.

8.    I was never presented with any page that mentioned dispute resolution or mandatory arbitration. I never agreed to resolve any dispute through arbitration. As a citizen of Bulgaria, I do not know anything about arbitration. My English proficiency is not at a level at which I would have understood the form completely and correctly even if I have read it.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _____, 2007.


                                        _____
                                        Miroslav Ivanov

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Miroslav Ivanov and Veselin Ivanov | : | |
| | : | |
| | : | |
| Plaintiffs, | : | **CIVIL ACTION No.** |
| | : | |
| v. | : | |
| | : | Декларация на Мирослав Иванов |
| Sunset Pools Management, Inc. *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ДЕКЛАРАЦИЯ

МИРОСЛАВ ИВАНОВ декларира следното:

1.      Името ми е Мирослав Иванов. Имам 18 години и съм ищец по обяснения по-горе, все още нерешен съдебен процес срещу INTRAX и другите защитници в щатския окръжен съд в окръг Колумбия.

2.      Пристигнах в САЩ през 2006 година, за да работя в бизнеса с поддръжка на басейни

3.      Аз съм гражданин на България и до преди да пристигна в САЩ през май, 2006,аз имах а основни познания по Английски език, ограничени до воденето на нормален разговор. Изучавал съм три семестъра Английски език в Университета, което включва занимания два пъти седмично по един час. Уменията ми за разговор на Английски език са далеч по добре от писмените ми умения. Въпреки факта,че уменията ми се подобриха по един или друг начин по време на престоя ми в САЩ, все още не се чувствам сигурен в писането и четенето на Английски език. Дори и

обикновени неща като e-mail или стандартна поща до приятели представляват проблем и се налага да използвам речник или да се обърна към приятел чиито Английски език е на по- добро ниво.

4.      Като условие за заминаването ми в САЩ беше да се свържа българска компания наречена „Zip-Travel", която е представител на INTRAX в България. Когато Zip-Travel ме информираха , че документите ми са готови за подпис, аз отидох в техния офис. Имаше няколко души в офиса и други влизаха и излизаха през цялото време.

5.      В офиса на Zip-Travel, имах 2-3 минути разговор с представител на Zip-Travel на английски език. Това беше за да се определи нивото ми на английски език. Човекът, който ме интервюира, беше българин на когото английския език не беше майчин.

6.      По време на интервюто, бях попитан "от къде съм", "на каква възраст", и "защо искам да отида в САЩ?". В това се състоя теста ми за ниво на английски език. Не бях подложен на писмен тест, или дори да напиша просто изречение на Английски език. Не ме попитаха колко кредита в колежа съм натрупал по време на часове по Английски език, нито дали съм учил английски на университетско ниво и колко дълго.

7.      След така наречения "Тест за ниво на Английски", ми подадоха INTRAX "Premium Placement Confirmation Form". Служителя на Zip-Travel описа формата и нейното подписване  като "необходима формалност".  Казха ми да разгледам "формата" и да се подпиша на последната страница. Формата съдържаше четири

(4) страници плюс страница за подпис. Попитах дали трябва да се подписвам или да си слагам инициалите на всяка страница. Казаха ми че е нужно да се подпиша само на последната страница,понеже съгласно с тях (Zip-Travel) само последната страница ще бъде изпратена до INTRAX в САЩ. Подписах последната страница, и взех копие от нея, плюс първите 4 страници от формата, които ми дадоха. Не ми предложиха обяснение или превод на формата. Дадоха ми 3-4 минути, за да я разгледам и да я подпиша.

8.    Не ми е показвана страница опоменаваща решаване на спор или задължителен арбитражен съд. Не съм се съгласявал да разрешавам какъвто и да е спор чрез арбитражен съд. Като гражданин на България, не знам нищо относоно арбитражен съд. Познанията ми по английски език не са на достатъчно ниво, на което бих могъл да разбера формата напълно и правилно дори да я бях прочел.

Декларирам под заплаха в обвинение за лъжесвидетелство, че по-горното е вярно. Оформено на _____, 2007.

Мирослав Иванов

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Miroslav Ivanov and Veselin Ivanov     : | |
| : | |
| : | |
| Plaintiffs,     : | **CIVIL ACTION No.** |
| : | |
| v.     : | |
| : | Declaration of Veselin Ivanov |
| Sunset Pools Management, Inc. *et al.*     : | |
| : | |
| Defendants.     : | |
| : | |

DECLARATION

VESELIN IVANOV declares as follows:

1.      My name is Vaselin Ivanov. I am over the age of 18 and a plaintiff in the above

captioned lawsuit pending against INTRAX and other defendants in the United States

District Court for the District of Columbia.

2.      I came to the United States in 2006 to work in the pool maintenance business.

3.      I am a citizen of Bulgaria and prior to coming to the United States in May, 2006 I

had a rudimentary knowledge of English, meaning that I could hold a casual

conversation. I had taken two semesters of English at my university, which included two

one-hour sessions each week. My English conversation skills are far better than my

written skills, but naturally, those skills improved somewhat during my time in the

United States.

4.      In order for me to come to the United States, I first dealt with an entity called
"Zip-Travel," which is a Bulgarian based company, serving as a representative for
INTRAX in Bulgaria. When Zip-Travel informed me that documents were prepared for
me to sign, I went to their office which was very busy and had many people coming in
and out.

5.      At the Zip-Travel office, I had a less than two minute conversation with the Zip-
Travel representative in English. This was to establish my English proficiency. The
person interviewing me was not a native English-speaker, and I was not able to evaluate
her knowledge of the language.

6.      During this two minute interview, I was asked my name, my age, and where I
lived. This was what I understood to be an English proficiency test.

7.      After the so-called "English proficiency test", I was handed the INTRAX
"Premium Placement Confirmation Form" the signing of which was described to me as
"necessary formality". I was asked to review the "FORM" and sign the last page. What I
was handed was double copies of the first four pages. I was not asked to sign or initial
each of the 4 pages individually but only to sign the last page. I signed the last page and
was told that this is the only page that would be sent to INTRAX and I can keep the rest
for my own record. At no point was I offered any explanation or translation of the form.
At no point was I told that this is actually a contract. I was told to get on with signing it
within 3 to 4 minutes at best. I signed the form and took the 8 (double copies of the first 4
pages) pages with me.

8.      I was never presented with any page that mentioned dispute resolution or mandatory arbitration. I never agreed to resolve any dispute through arbitration. As a citizen of Bulgaria, I do not know anything about arbitration.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _____, 2007.


                                        _____
                                        Vaselin Ivanov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Miroslav Ivanov and Veselin Ivanov      : | |
|      : | |
|      : | |
| Plaintiffs,      : | **CIVIL ACTION No.** |
|      : | |
| v.      : | |
|      : | Декларация на Веселин Иванов |
| Sunset Pools Management, Inc. *et al.*      : | |
|      : | |
| Defendants.      : | |
|      : | |
|      : | |

<u>ДЕКЛАРАЦИЯ</u>

Веселин Иванов декалрира следното:

1.      Казвам се Веселин Иванов. Имам навършени 18 години и съм ищец по обяснения по-горе, все още не решен съдебен процес срещу INTRAX и другите защитници в щатския областен съд на окръг Колумбия.

2.      Пристигнах в САЩ през 2006 г. , за да работя в бизнеса по поддръжка на басейни.

3.      Аз съм гражданин на Република България  и до преди да дойда в САЩ през месец май 2006 година, имах основни познания по английски език, т.е. можех да се справя с воденето на обикновен разговор. Учил съм два семестъра английски език в Университета, което включва два пъти по един час седмично. Говорните ми умения по английски език са далеч по-добри от писмените ми умения, но естествено, тези ми умения се подобриха по един или друг начин по време на престоя ми в САЩ.

4.      В процеса по идването ми в САЩ, първо се отнесох към обект наречен "Zip-Travel," който е българска компания, изпълняваща роля на представител на INTRAX в България. Когато Zip-Travel ме информираха, че документите ми са готови за подпис, аз отидох в техния офис който беше доста натоварен и имаше доста хора, които влизаха и излизаха от него.

5.      В офиса на Zip-Travel, имах по-малко от две минути разговор с представител на Zip-Travel на английски език. Това беше, за да се установи нивото ми на владеене на английски език. Лицето, което ме интервюира не беше човек на когото английския език е майчин, и не бях способен да оценя нейните познания по езика.

6.      По време на двуминутното интервю, ме попита как се казвам, на колко години съм, и къде живея. Това беше, както разбрах, теста ми за ниво на владеене на английски език.

7.      След така наречния "Тест за ниво на Английски език", Ми подадоха INTRAX "Premium Placement Confirmation Form" подписването на който ми беше описан като "необходима формалност". Казаха ми да прегледам "Формата" и да подпиша последната страница. Подадоха ми две копия от първите четири страници. Не ми казаха да се подпиша или да сложа инициалите си върху всяка една от четирите страници индивидуално, а само да подпиша последната страница. Подписах последната страница и ми казаха, че това е единствената страница,която ще бъде изпратена до INTRAX и мога да задържа останалите за собствения си архив. Не ми беше предложено някакво обяснение или превод на формата. Не ми беше казано,че това всъщност е договор. Казаха ми да го прегледам за 3-4 минути и

да го разниша. Подписах формата и взех със себе си осемте (две копия на първите 4 страници) страници.

8.      Не ми беше представена каквато и да е страница която споменава решаване на спор или задължителен арбитражен съд. Никога не съм се съгласявал да решавам някакъв спор чрез арбитражен съд. Като гражданин на Република България, не знам каквото и да е относоно арбитражен съд.


Декларирам под заплаха в обвинение за лъжесвидетелство ,че по-горното е вярно. Оформено на _____, 2007.


                                        _____
                                        Веселин Иванов

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MIROSLAV INVANOV, et al.**<br><br>**Plaintiffs**<br>v.<br><br>**SUNSET POOLS MANAGEMENT INC.,** et al.<br>**Defendants** | No. 07-CV-00410 (RJL) |

**ATTORNEY DECLARATION OF KRIS KEEGAN**

COMES NOW Kris Keegan and states the following:

1.      I am counsel for Plaintiffs in the above-captioned case.  I am fluent in both

English and Bulgarian.

2.      Based upon information provided to me by Plaintiffs, I prepared the Declarations

attached to Plaintiffs' Opposition to the Motion to Dismiss and Compel

Arbitration filed by Defendant International Training and Exchange, Inc.

3.      I translated the two English language declarations into Bulgarian and provided

these declarations to the Plaintiffs, who reviewed and signed the documents.


I declare, under penalty of perjury, that the foregoing statements are true and correct

Executed on _____, 2007

_____
Kris Keegan