**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Miroslav Ivanov, et al.,** | |
| **Plaintiff,** | **Case No. 1:07-cv-410** |
| **v.** | |
| **Sunset Pools Management, Inc., et al.,** | |
| **Defendant.** | |

**DEFENDANT INTERNATIONAL TRAINING AND EXCHANGE, INC'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules for the U.S. District Court for the District of Columbia 7.1 and 56.1, Defendant International Training and Exchange, Inc ("Intrax"), by and through undersigned counsel, hereby submits its Motion for Summary Judgment

As shown in the accompanying Undisputed Statement of Facts and Memorandum of Law in support of its Motion for Summary Judgment, the Court should grant Intrax's Motion in all respects and dismiss Plaintiffs' Complaint with prejudice.

Dated:  February 5, 2008

/s/
Joseph P. Harkins (Fed. Bar. No. 14007)
Steven E. Kaplan (Fed. Bar No. 92408)
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, DC  20036
202.842.3400
Counsel for Intrax

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February 2008, the foregoing Motion for Summary Judgment, Memorandum of Law in Support of its Motion for Summary Judgment, and Proposed Order will be served through electronic mail, via ECF filing, upon the following:

Mark Murphy, Esq.
Mooney Green Baker & Saindon, P.C.
1920 L Street, NW
Suite 400
Washington, DC  20036

Counsel for Plaintiffs

John J. Rigby, Esq.
McInroy & Rigby, L.L.P.
2200 Wilson Blvd., Suite 800
Arlington, Virginia  22201

George R.A. Doumar, Esq.
George R.A. Doumar, PLLC
2000 N. 14th Street, Suite 210
Arlington, VA  22201

Counsel for Defendants Sunset Pools
Management, Inc. and Arash Naderi

_____/s/_____
Joseph P. Harkins

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Miroslav Ivanov, et al.,** | |
| **Plaintiff,** | **Case No. 1:07-cv-410** |
| **v.** | |
| **Sunset Pools Management, Inc., et al.,** | |
| **Defendant.** | |

**DEFENDANT INTERNATIONAL TRAINING AND EXCHANGE, INC'S**
**UNDISPUTED STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule for the U.S.

District Court for the District of Columbia 7(h), Defendant International Training and Exchange,

Inc ("Intrax"), by and through undersigned counsel, hereby submits its Undisputed Statement of

Facts in support of its Motion for Summary Judgment.

**I.    UNDISPUTED STATEMENT OF FACTS**

1.    Intrax recruits and facilitates the placement of international university students on

summer breaks from foreign countries for temporary employment positions in the United States.

See Declaration of Kimberley Meyers, Managing Director of Intrax, herein "Meyers Decl.,"

attached hereto as Exhibit A, ¶ 2.

2.    Examples of Intrax's business clientele are: Marriott Hotels, McDonald's Restaurants,

Dollar Rent A Car, Treasure Island Park, Princess Tours, Alaska Heritage Tours, Yosemite

National Park, and Mt. Olympus Waterpark, to name a few.  Meyers Decl., ¶ 4.

3.    Sunset Pools Management, Inc., another client of Intrax, employs international university

students for the summer months in the Washington, DC metropolitan area as lifeguards.

4.    Intrax's clients do not pay Intrax for this service.  The service is fully paid for by the international university students who wish to participate in Intrax's international placement program.  Meyers Decl., ¶ 5.

5.    Because Intrax is based in the United States, it contracts with organizations in various countries to assist with tasks related to the job placement process, including administering English proficiency examinations.  Meyers Decl., ¶ 6.

6.    In Buglaria, which is where the two Plaintiffs live, Intrax contracts with Zip Travel to perform tasks related to the job placement process.  Meyers Decl., ¶ 7.

7.    Intrax and Sunset Pools entered into the Premium Host Company Agreement (the "Agreement") on November 3, 2005.  Exhibit B.  The Agreement states that, among other things, Intrax agrees to recruit summer lifeguards for Sunset Pools in the Washington, D.C. metropolitan area, and that Sunset Pools agrees to "provide employment consistent with the employment terms outlined in the job description Documents/Placement Confirmation Form" and "comply with all applicable local, state, and federal labor laws." Id.

8.    In December 2005, Plaintiffs came to the Zip Travel office in Sofia, Bulgaria, to apply to Intrax's international work-travel program.   Declaration of Yana Simeonova, Placement Director,  herein "Simeonova Decl.," attached hereto as Exhibit C, ¶ 4.

9.    During this process, Zip Travel spent some time interviewing the Plaintiffs to ascertain their English proficiency.  Simeonova Decl., ¶¶ 5, 6.

10.    According to Plaintiffs, the English proficiency examination lasted merely three minutes. Declaration of Miroslav Ivanov, herein "M. Ivanov Decl.," attached hereto as Exhibit D, ¶¶ 5, 6; and Declaration of Veselin Ivanov, herein "V. Ivanov Decl.," attached hereto as Exhibit E, ¶ 5

11.    According to Plaintiffs, they spent another additional few minutes reviewing Intrax's Premium Placement Confirmation Form, which describes information concerning their job placement at Sunset Pools.  M. Ivanov Decl., ¶ 7 and V. Ivanov Decl., ¶ 7; <u>see</u> <u>also</u>, Intrax's Premium Placement Conformation Form, attached hereto as Exhibit F (the "Form").

12.    Specifically, the Form, which Sunset Pools agreed to adhere to in the Agreement, provides the job description, level of English required, start and end date, estimated average hours per week, rates of pay, required skills, and expected schedule.  Exhibit F.

13.    Plaintiffs executed Employment Agreements with Sunset Pools.  Exhibit I.

14.    Plaintiffs were employed by Sunset Pools from approximately May 2006 through approximately October 2006.  <u>See</u> Defendant Sunset Pools' Answer, ¶¶ 6- 7.

15.    Plaintiffs' pay stubs show that Sunset Pools paid them as their employer.  Exhibit H.

16.    After Plaintiffs began employment at Sunset Pools, Intrax did not assign or direct their work, provide their schedule or pay or oversee their training or housing for the Sunset Pools jobs.


Dated:  February 5, 2008


                                                /s/ _____
                                                Joseph P. Harkins (Fed. Bar. No. 14007).
                                                Steven E. Kaplan (Fed. Bar. No. 92408)
                                                LITTLER MENDELSON, P.C.
                                                1150 17th Street N.W.
                                                Suite 900
                                                Washington, DC  20036
                                                202.842.3400
                                                Counsel for Intrax

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February 2008, the foregoing Undisputed Statement of Facts in Support of its Motion for Summary Judgment will be served through electronic mail, via ECF filing, upon the following:

Mark Murphy, Esq.
Mooney Green Baker & Saindon, P.C.
1920 L Street, NW
Suite 400
Washington, DC  20036

Counsel for Plaintiffs

John J. Rigby, Esq.
McInroy & Rigby, L.L.P.
2200 Wilson Blvd., Suite 800
Arlington, Virginia  22201

George R.A. Doumar, Esq.
George R.A. Doumar, PLLC
2000 N. 14th Street, Suite 210
Arlington, VA  22201

Counsel for Defendants Sunset Pools
Management, Inc. and Arash Naderi

_____/s/_____
Joseph P. Harkins

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Miroslav Ivanov, et al.,**

       **Plaintiff,**

       **v.**

**Sunset Pools Management, Inc., et al.,**

       **Defendant.**

**Case No. 1:07-cv-410**

## DEFENDANT INTERNATIONAL TRAINING AND EXCHANGE, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules for the District of Columbia 7.1 and 56.1, Defendant International Training and Exchange, Inc ("Intrax"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of its Motion for Summary Judgment.

## I.  INTRODUCTION

Plaintiff Miroslav Ivanov and Plaintiff Veselin Ivanov, ("Plaintiffs"), filed a Complaint in this Court alleging violations of the Fair Labor Standards Act ("FLSA"), common law fraud and misrepresentation, and civil conspiracy in connection with their placement by Intrax[1] as temporary employees at Sunset Pools, Inc.  Complaint, Counts I – III.  Specifically, Plaintiffs contend that they were denied overtime pay, and that all Defendants made false representations regarding their working and living accommodations in the United States.  Complaint, ¶¶ 25, 28.  As discussed more fully below, Intrax was not Plaintiffs' employer, and thus cannot be held liable for overtime pay.  Moreover, Plaintiffs' FLSA claims are barred because their employment

---

[1] Plaintiffs also brought this action against Sunset Pools Management, Inc., ("Sunset Pools").

with Sunset Pools as summer life guards falls under the amusement-recreation exemption, codified at 29 U.S.C. 213(a)(3). In addition, Plaintiffs' fraud and misrepresentation and civil conspiracy claims must also fail because, among other reasons, Plaintiffs are unable to meet any of the elements of those claims.[2]

## II.  STATEMENT OF FACTS

Intrax recruits and facilitates the placement of international university students on summer breaks from foreign countries for temporary employment positions in the United States. See Declaration of Kimberley Meyers, Managing Director of Intrax, herein "Meyers Decl.," attached hereto as Exhibit A, ¶ 2. Examples of Intrax's business clientele are: Marriott Hotels, McDonald's Restaurants, Dollar Rent A Car, Treasure Island Park, Princess Tours, Alaska Heritage Tours, Yosemite National Park, and Mt. Olympus Waterpark, to name a few. Meyers Decl., ¶ 4. Sunset Pools Management, Inc., another client of Intrax, employs international university students for the summer months as lifeguards in the Washington, D.C. metropolitan area. Intrax's clients do not pay Intrax for this service. To the contrary, the service is fully paid for by the international university students who wish to participate in Intrax's international placement program. Meyers Decl., ¶ 5.

Intrax's role in this process is two-fold. First, it helps the international university students obtain their J-1 Visas. Meyers Decl., ¶ 3. Second, it helps employers find foreign students for seasonal positions when they have labor shortages and/or seasonal staffing needs.[3] Meyers Decl., ¶ 2. Because Intrax is based in the United States, it contracts with organizations in various countries to assist with tasks related to the job placement process, including

---

[2] Plaintiffs did not propound discovery on Defendants.
[3] An obvious by-product of Intrax's service is that it promotes a cultural exchange between citizens of several nations, which under ordinary circumstances, may be difficult to achieve.

administering English proficiency examinations.  Meyers Decl., ¶ 6.    In Buglaria, which is where the two Plaintiffs live, Intrax contracts with Zip Travel to perform tasks related to the job placement process.  Meyers Decl., ¶ 7.

In the instant case, Intrax and Sunset Pools entered into the Premium Host Company Agreement (the "Agreement") on November 3, 2005.  Exhibit B.  The Agreement states that, among other things, Intrax agrees to recruit summer lifeguards for Sunset Pools in the Washington, D.C. metropolitan area, and that Sunset Pools agrees to "provide employment consistent with the employment terms outlined in the job description Documents/Placement Confirmation Form" and "comply with all applicable local, state, and federal labor laws." Id.

In December 2005, Plaintiffs came to the Zip Travel office in Sofia, Bulgaria, to apply to Intrax's international work-travel program.    Declaration of Yana Simeonova, Placement Director,  herein "Simeonova Decl.," attached hereto as Exhibit C, ¶ 4.  During this process, Zip Travel spent some time interviewing the Plaintiffs to ascertain their English proficiency. Simeonova Decl., ¶¶ 5, 6.  According to Plaintiffs, the English proficiency examination lasted merely three minutes.  Declaration of Miroslav Ivanov, herein "M. Ivanov Decl.," attached hereto as Exhibit D, ¶¶ 5, 6; and Declaration of Veselin Ivanov, herein "V. Ivanov Decl.," attached hereto as Exhibit E, ¶ 5

According to Plaintiffs, they spent another additional few minutes reviewing Intrax's Premium Placement Confirmation Form, which describes information concerning their job placement at Sunset Pools.  M. Ivanov Decl., ¶ 7 and V. Ivanov Decl., ¶ 7; see also, Intrax's Premium Placement Conformation Forms, attached hereto as Exhibit F (the "Form").[4] Specifically, the Form, which Sunset Pools agreed to adhere to in the Agreement, describes the

---

[4] Plaintiffs also alleged that "[i]n an effort to induce potential employees to come to the U.S. where they are subjected to sub-standard conditions, Defendant Intrax promises what amounts to a vacation like atmosphere" as described in "Sunset's brochure." Complaint, ¶ 13, Exhibit G.

job description, level of English required, start and end date, estimated average hours per week, rates of pay, required skills, and expected schedule.  Exhibit F.  Intrax's involvement in this process ceased after Sunset Pools hired Plaintiffs, and after helping Plaintiffs obtain their J-1 Visas.

As noted, Sunset Pools was Plaintiffs' employer, <u>not</u> Intrax.  <u>See</u> Defendant Sunset Pools' Answer, ¶¶ 6- 7. (Plaintiffs were <u>employed by Sunset Pools</u> from approximately May 2006 through approximately October 2006). (emphasis added).  In addition, Plaintiffs attached their pay stubs to the Complaint, which also shows that Sunset Pools was their employer, and not Intrax.  Exhibit H.  Furthermore, Plaintiffs executed Employment Agreements with Sunset Pools, and not with Intrax.  Exhibit I.  Indeed, after Intrax recruited Plaintiffs, Sunset Pools interviewed them.  Declaration of Babak Kiani, Regional Manager for Sunset Pools, herein "Kiani Decl.," as Exhibit J, ¶ 7[5]

## III.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once the movant files a properly supported motion, the non-moving party may survive summary judgment only by presenting competent evidence of "specific facts showing that there is a genuine issue for trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A "genuine issue" of fact is "one whose

---

[5] The Agreement between Intrax and Sunset Pools also states that Sunset Pools understands and agrees that Intrax cannot guarantee "job performance of participants" placed by Intrax with Sunset Pools.  Exhibit B.

resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." Sanders v. Veneman, 211 F. Supp. 2d 10, 14 (D.D.C. 2002) (citing Celotex).

Although all justifiable inferences must be drawn in favor of the non-moving party, the non-moving party must establish more than "the mere existence of a scintilla of evidence in support of the plaintiff's position." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To defeat a defendant's summary judgment motion, therefore, a plaintiff must offer more than conclusory allegations, subjective beliefs, or speculation that a prohibited factor was the reason for an adverse employment action. Id.; Greene v. Dalton, 334 U.S. App. D.C. 92, 164 F.3d 671, 675 (1999). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, supra, 477 U.S. at 327 (1986), quoting Fed. R. Civ. Proc, Rule 1.

### B.    Plaintiffs Were Not Employed By Intrax.

Plaintiffs filed this action pursuant to the FLSA ostensibly under the theory that Sunset Pools and Intrax are both statutory employers of Plaintiffs. The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs" an individual under the FLSA if it "suffer[s] or permit[s] that individual to work." 29 U.S.C. § 203(g). An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer. See Zheng. v. Liberty Apparel Co., 355 F.3d 61 (2nd Cir. 2003) citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, (1961) (explaining that "'economic reality' rather than 'technical concepts' is ... the test of employment" under the statute.); see also Herman v. RSR Security Services Ltd., 172 F.3d 132,

139 (2nd Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question.")[6]

Under the FLSA two entities may be "joint employers" for payment of wages purposes where both entities control the work in question. Federal regulations provide examples demonstrating when a joint employment relationship generally will be considered to exist.

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

In the present case it is undisputed that Plaintiffs did not work directly for Intrax. In fact, Plaintiffs paid Intrax for their service, not the other way around. Meyers Decl., ¶ 5. Therefore, example number (1) is inapplicable. Similarly, there is no allegation that Intrax was anything but independently owned or that Intrax and Sunset Pools were not completely disassociated from one another once the actual work began. In fact, the Agreement between Intrax and Sunset Pools, Plaintiffs' separate Employment Contract with Sunset Pools, Plaintiffs' pay stubs, and Intrax's Premium Placement Conformation Form all demonstrate that Intrax had

---

[6] Intrax was unable to find case law in this circuit on whether an entity, such as Intrax, may be a statutory joint employer under FLSA in this circumstance.

no involvement whatsoever in the control of Plaintiffs' work.  See Exhs. B, I, H, and F, respectively.  As noted, Intrax's role was limited to recruiting Plaintiffs, and helping Plaintiffs obtain J-1 Visas.  Hence, example number (3) is inapplicable, as well.

Presumably, Plaintiffs based their joint-employer claims on the second example in the regulations, i.e., that Sunset Pools was acting directly or indirectly in the interest of Intrax in relation to Plaintiffs.  There is no factual support for such contention.  To the contrary, Sunset Pools and Intrax maintained separate interests with regard to their own business models and with regard to these Plaintiffs.

Analysis of whether one employer is acting directly or indirectly in the interest of the other employer should be based on the "circumstances of the whole activity."  Zheng, 355 F.3d at 71-72.  In Zheng, Plaintiffs were garment workers employed by subcontractors to stitch and finish clothing for garment manufacturers. Id. at 64-66.  The plaintiffs claimed that the garment manufacturers were joint employers with the contractors under the FLSA and New York state wage laws because the workers worked primarily on the manufacturer's garments.  Id. at 64-65.  To assist in addressing this issue, the Second Circuit in Zheng set forth six non-exclusive factors to be considered in determining joint employment:

> (1) Whether [the putative joint employer(s)] premises and equipment were used for the plaintiffs' work; (2) whether the [employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the putative joint employer or its agents] supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the putative joint employer].

355 F.3d at 72 (citations omitted).  According to the court, satisfaction of these factors demonstrates "functional control over workers" in the absence of "formal control," Id. at 72,

while "ensur[ing] that the statute is not interpreted to subsume typical outsourcing relationships." *Id.* at 76. None of these factors are even alleged to apply here. Similarly, and under like circumstances of this case, Intrax cannot be a statutory employer for participants it recruits for any of its other clientele either, such as Marriott Hotels or McDonald's Restaurants. This makes sense, given its extremely limited role once the participants have been placed and begin work. Otherwise, Intrax would be a joint employer with many major employers throughout the U.S., an absurd result.

### C.    Plaintiffs' Claims Are Barred By the Amusement-Recreation Exemption.

If the Court were to find that Intrax was Plaintiffs' statutory employer, Plaintiffs' FLSA claims are still barred because their employment as summer life guards falls under the amusement-recreation exemption, codified at 29 U.S.C. 213(a)(3). Although Intrax adopts Sunset Pools' argument in its Motion for Summary Judgment that its operations fall under the amusement-recreation exemption, Intax notes that Plaintiffs' positions as temporary summer lifeguards fall squarely within the legislative history and intent behind this exemption. See Sunset Pools' Motion for Summary Judgment and Memorandum of Law.

In <u>Brock v. Louvers and Dampers, Inc.</u>, 817 F.2d 1255 (6th Cir. 1987), the Court noted:

> [t]he purpose of the seasonal amusement or recreational establishment exemption was not clearly spelled out in the legislative history of either the 1961 or 1966 amendments. However, there is some useful legislative history discussing a proposed 1965 amendment to the FLSA. The House Committee Report stated that the amusement and recreational establishment exemption would cover "such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutel racing, sport boating or fishing, or other similar or related activities...." H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965).[7] Although the proposed amendment was not passed, the legislative history is relevant because the following year Congress enacted a similar amendment including the amusement and recreational exemption. (Internal Quotations Omitted).

---

[7] The Department of Labor's regulations also indicate that "beaches" would also fall under this exemption. 29 C.F.R. 779.385.

Hence, the Court concluded,

 [t]he logical purpose of the provision is to exempt the type of amusement and recreational enterprises listed above, which by their nature, have very sharp peak and slack seasons. These businesses argue that they should not be held to the same wage and hour requirements as permanent, year-round operations. Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they <u>may</u> <u>offer</u> <u>non-monetary</u> <u>rewards</u>. Congress responded to these concerns by enacting the amusement and recreational exemption.

 <u>Id</u>. at 1259  (emphasis added).

Similarly, the Tenth Circuit found that the purpose of the exemption was "to allow recreational facilities to <u>employ</u> <u>young</u> <u>people</u> on a seasonal basis and not have to pay the relatively high minimum wages required by the Fair Labor Standards Act." <u>Brennan v. Yellowstone Park Lines</u>, 478 F.2d 285, 288 (10th Cir.) <u>cert.</u> <u>denied</u>, 414 U.S. 909 (1973) (emphasis added).

Plaintiffs' experience as summer life guards in the Nation's Capital clearly offered Plaintiffs such "non-monetary rewards," which cannot be understated.  Indeed, this unique opportunity afforded Plaintiffs the opportunity to "travel around the world," "visit new places," and "meet new people."  <u>See</u> Exhibits K and L.  It was not Congress's intent to add to such rewards with FLSA coverage, which would act as a penalty upon Intrax.

> **D.**     **Intrax Did Not Commit Common Law Fraud Or Misrepresentation.**

The elements of fraud are as follows: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. <u>Bennett v. Kiggins</u>, 377 A.2d 57, 59 (D.C. 1977), <u>cert. denied</u>, 434 U.S. 1034 (1978).  Fraud "must be particularly pleaded[,]" and "must be established by clear and convincing evidence." <u>Id</u>.   Moreover, "[f]acts which will enable the

9

court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient." Id. at 60.

The sum total of Plaintiffs' fraud allegations and "proof" are:

- Intrax apparently forwards Sunset Pools' brochure to Plaintiffs. Complaint, ¶¶ 13, 14;

- Sunset Pools' employees [were] housed in cramped DC quarters with five people to a room while sleeping on the floor." Complaint, ¶ 15.

- Intrax's Premium Placement Confirmation Form described Sunset's housing as a "dorm style housing." Exhibit F.

In conclusory fashion, Plaintiffs allege that "[d]efendants knew at the time of their representations that the housing was not in a dorm-like setting in that Plaintiffs were made to sleep on mattresses on the floor, rather than beds, and were housed in cramped quarters with five workers to a single room." Complaint, ¶ 14.

Plaintiffs' allegations fall woefully short of meeting the elements of fraud, particularly as to Intrax.   First, Plaintiffs have not alleged that Intrax made a statement at all, nevertheless a false statement.   Instead, Plaintiffs will likely argue in their Opposition that Intrax's act of simply forwarding Sunset Pool's brochure to Plaintiffs is tantamount to making a statement.   That is a far cry from proving that Intrax actually made a statement because, given the burden of proof in a fraud claim, the Court cannot simply infer that Intrax had endorsed the substance of Sunset Pools's brochure.   There is no clear and convincing evidence of a false statement by Intrax.

Second, there was no false statement of material fact made by Sunset Pool either because the statement that Plaintiffs allege to be false, is not objectively false.   Indeed, a dorm-style accommodation essentially describes a broad array of accommodations, from spacious and/or solo accommodations to several people sleeping in one room.   Third, Plaintiffs have not alleged that this was a "material" fact in their decision to participate in the work-travel program and/or work

for Sunset Pools.

Fourth, even if Sunset's brochure exaggerated its living arrangements in some fashion, Intrax did not have knowledge of it. Indeed, the Agreement between Intrax and Sunset Pools is most telling. In relevant part, it states that "[i]f the [Sunset Pools] provides housing for any participants placed by IWT, [Sunset Pools] will provide housing that is safe, comfortable, and in compliance with local, state and federal housing codes and regulations." Exhibit B. This shows that Intrax had no knowledge of Plaintiffs' housing situation, that it did not intend to deceive Plaintiffs, but it relied on Sunset to reasonably meet its obligation as to housing.

Fifth, and more to the point, Plaintiffs signed the Premium Placement Confirmation Form, which expressly states that Intrax "does not" provide housing and "is not responsible for providing housing to you." Exhibit F. In addition, the Form states that Intrax "makes no representations or guarantee regarding the nature or quality of such housing." Id. Hence, Plaintiffs have not shown -- and cannot show -- that they relied upon any statement made by Intrax concerning the nature or quality of housing.[8]

In sum, Plaintiffs have utterly failed to allege or marshal by clear and convincing evidence sufficient facts to prove their fraud claim by clear and convincing evidence. Bennett, 377 A.2d at 60 ("allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.")

    **E.**    **The Civil Conspiracy Count Must Fail.**

Civil conspiracy has four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to,

---

[8] Of note, some time after Plaintiffs' experience with Sunset Pools, they went back to Zip Travel in Sofia, Bulgaria, with interest in participating in Intrax's international placement program again. Meyers Decl., ¶ 10.

and in furtherance of, the common scheme." <u>Weishapl v. Sowers</u>, 771 A.2d 1014, 1023 (D.C. 2001). Additionally, civil conspiracy "depends on the performance of some underlying tortious act," and is "not an independent action." <u>Id.</u> at 1023-1024.

Here, the only "agreement" between Intrax and Sunset were the terms and conditions listed in the Premium Placement Host Company Agreement, and that Agreement expressly states that Sunset Pools will comply with all federal labor laws. Exhibit B. Even if this Agreement did not exist, Plaintiffs cannot prove that Intrax and Sunset Pools entered in an agreement to defraud Plaintiffs. Intrax has no control over pay and housing, which were part of Plaintiffs' bargain with Sunset. There was simply nothing for Intrax to agree to in these requests.

Moreover, as a matter of law, Plaintiffs' civil conspiracy count fails, as well. First, their was no underlying tortious act because neither Intrax nor Sunset Pools committed fraud, and Plaintiffs must show that both defendants committed fraud, in this regard.[9] <u>Weishapl</u>, 771 A.2d at 1024 (civil conspiracy "depends on the performance of some underlying tortious act," and is "not an independent action.").

Furthermore, Plaintiffs failed to allege in the Complaint or provide evidence on the formation and operation of the conspiracy, any wrongful acts done in furtherance of the common scheme, or how they were damaged as a result. <u>Higgs v. Higgs</u>, 472 A.2d 875, 877 (D.C. 1984).

---

[9] To the extent that Plaintiffs' conspiracy count stems from Sunset Pool's alleged failure to provide overtime, Plaintiffs' claims are preempted by the FLSA. See <u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 194 (4th Cir. 2007) ("Because the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption.") <u>Choimbol v. Fairfield Resorts, Inc.</u>, 2006 WL 263179, *6 (E.D.Va. Sept. 11, 2006 ) ("Because the Court finds that the FLSA provides an exclusive remedial scheme for [failure to pay overtime], the Court cannot allow the Plaintiffs' claims" to proceed.); <u>see Moeck v. Gray Supply Corp.</u>, 2006 WL 42368, *2 (D. N.J. Jan. 6, 2006) ("most courts have held that claims directly covered by the FLSA (such as overtime), must be brought under the FLSA"); <u>see also Johnson v. Davis Security, Inc.</u>, 217 F.Sup.2d 1224, 1228 (D.Utah 2002) ("Plaintiff's common law claims would be barred as merely duplicative of her FLSA claims."); <u>Petras v. Johnson</u>, 1993 WL 228014, *2 (S.D.N.Y June 22, 1993) (fraud preempted by FLSA) <u>Chappell v. Southern Maryland Hosp. Inc.</u>, 320 Md. 483, 578 A.2d 766, 774 (1990) (abusive discharge based on alleged overtime violation preempted by FLSA because of the existence of a remedy available to the plaintiff under the FLSA).

Indeed, because Intrax and Sunset never entered into a conspiracy in the first instance, it will be impossible for Plaintiffs to prove how Intrax and Sunset Pools formed or operated the conspiracy.

Finally, Plaintiffs have not shown how they were damaged. Without making light of their apparent discomfort living in cramped quarters, Plaintiffs have failed to allege how they were specifically damaged. Complaint, ¶ 30 ("As a result of Defendants' material omissions of fact and affirmative misrepresentations, Plaintiffs sustained damages."). In fact, the opposite is true. Plaintiffs were privileged enough to participate in Intrax's work-travel program, come to the Nation's Capital for the summer, and work at Sunset Pools as summer lifeguards. Indeed, the reason Plaintiff M. Ivanov stated on his Intrax application form for wanting to participate in this program is that he "love[] to travel around the world, and this is good opportunity to visit USA," and Plaintiff V. Ivanov stated that he "love[s] to visit new places and meet new people." Exhibits K and L. Defendants provided those benefits, but Plaintiffs apparently expected a picture-perfect vacation.

Disappointed subjective expectations are one thing. Valid FLSA, fraud and civil conspiracy claims are another; they are simply not presented here.

IV.     <u>**CONCLUSION**</u>

For the foregoing reasons, Intrax respectfully request that the Court grant its Motion for

Summary Judgment


Dated:   February 5, 2008


/s/
_____
Joseph P. Harkins (Fed. Bar. No. 14007)
Steven E. Kaplan (Fed. Bar No. 92408)
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, DC  20036
202.842.3400
Counsel for Intrax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of February 2008, the foregoing Memorandum of Law in Support of its Motion for Summary Judgment, and Proposed Order will be served through electronic mail, via ECF filing, upon the following:

Mark Murphy, Esq.
Mooney Green Baker & Saindon, P.C.
1920 L Street, NW
Suite 400
Washington, DC  20036

Counsel for Plaintiffs

John J. Rigby, Esq.
McInroy & Rigby, L.L.P.
2200 Wilson Blvd., Suite 800
Arlington, Virginia  22201

George R.A. Doumar, Esq.
George R.A. Doumar, PLLC
2000 N. 14th Street, Suite 210
Arlington, VA  22201

Counsel for Defendants Sunset Pools
Management, Inc. and Arash Naderi


_____/s/_____
Joseph P. Harkins

# EXHIBIT
# A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIROSLAV IVANOV

and

VESELIN IVANOV,

       Plaintiffs,

       v.

SUNSET POOLS MANAGEMENT, INC.
et al.,

       Defendants.

Case No. 07-CV-00410
Hon. Richard J. Leon

## DECLARATION OF KIMBERLEY MEYERS

1.     My name is Kimberley Meyers, and I am over 18 years of age and competent to give testimony.

2.     I am the Managing Director of Administration of International Training and Exchange, Inc., known as Intrax. Intrax recruits and facilitates the placement of individuals from foreign countries for temporary employment positions with employers in the United States.

3.     As part of this process, Intrax assists the participants to obtain J-1 Visas.

4.     Intrax's clientele includes such employers as Marriott Hotels, McDonalds Restaurants, Dollar Rent A Car, Treasure Island, Princess Tours, Alaska Heritage Tours, Yosemite National Park, and Mt. Olympus Waterpark.

5.     All fees for service to Intrax are paid by the participants, and not by the employers who temporarily employ the employees from abroad.

6.     Because Intrax is based in the United States, we contract with organizations in various countries to assist with tasks related to the job placement process, including their presenting applicants with Intrax's Premium Placement Participant Terms and Conditions Agreement, and conducting English proficiency examinations.

7.  In Bulgaria, Intrax has a contract with Zip Travel to perform the above-referenced tasks.

8.  Specifically, Intrax provides Zip Travel with the entire 12-page Terms & Conditions and instructs the contractor to present the entire agreement to all applicants for their review and signature.

9.  Intrax expressly states in the Terms & Conditions that its program does not include housing and that Intrax is not responsible for providing housing to the participants. Moreover, the Terms & Conditions states that Intrax makes no representations or guarantees regarding the nature or quality of such housing, should housing become available through an employment opportunity.

10.  Some time after Miroslav Ivanov's and Veselin Ivanov's (Plaintiffs) employment with Sunset Pools terminated, Plaintiffs revisited Zips Travel in Sofia, Bulgaria with interest in participating in Intrax's international placement program again.

11.  I declare under penalty of perjury that the foregoing is true and correct.

_____
Kimberley Meyers

# EXHIBIT
# B

Nov 04 05 11:14a    Timo   Johnson    3527542 '0    p.4



# WORK TRAVEL

## Premium Placement Host Company Agreement

This agreement is between Intrax Work/Travel ("IWT"), located at 600 California Street, San Francisco, California 94108, and Sunset Pools Management ("Host Company"), located at 3705 George Mason Drive, Falls Church, VA 22041, for the purpose of the recruitment and job placement of international students ("Participants"), participating in the Intrax Work/Travel J-1 Summer Work/Travel Program ("IWT Program").

A. IWT agrees to make a good faith effort to recruit qualified applicants to fill the following positions on the following dates:

| Position | Number of Jobs | Arrival Date(s) | Departure Date(s) |
|----------|----------------|-----------------|-------------------|
| Lifeguard | 130 / 20 | 5/5/06 - 5/10/06 | 9/5/06 |
|  | 60 | 5/10/06 - 5/25/06 | 9/5/06 |
|  | 50 | 5/28/06 - 6/15/06 | 9/5/06 |
|  |  | 6/5/06, |  |

B. IWT agrees that all participants recruited and placed in these positions will meet the basic qualifications identified in their Premium Placement Confirmation Forms, which contain a complete description of the Host Company, the position, terms of employment, transportation instructions, instructions on applying for a Social Security Card, a description of the surrounding area, and (where applicable) housing. However, IWT is not responsible for any misrepresentations regarding their qualifications for the Premium Placement made by the participants applying to the IWT Program.

C. IWT agrees to make a good faith effort to ensure that all participants recruited and placed in these positions will complete any additional forms or procedures required by Host Company to facilitate their employment.

D. Host Company agrees to provide employment consistent with the employment terms outlined in the Job Description Documents/Placement Confirmation Forms to all participants recruited and placed in these positions by IWT.

E. Host Company reserves the right to terminate employment at will, but agrees to make a good faith effort to retain participants placed by IWT as long as the participants meet the basic qualifications identified in their Job Description Documents/Placement Confirmation Forms and perform their assigned tasks in a satisfactory manner.

F. In the event of a labor force reduction as the result of unforeseen circumstances, Host Company agrees to make a good faith effort to retain participants recruited and placed by IWT for as long as possible and with as many scheduled hours as possible and, if any IWT participants cannot be retained, to make a good faith effort to assist IWT in finding them new placements.

G. In the event that a participant wishes to terminate his or her employment with Host Company, IWT agrees to act as a mediator between the participant and Host Company, and make a good faith effort to ensure that the participant remains in his or her position unless there has been a failure to comply with the terms of employment described in the participant's Job Description Document/Placement Confirmation Form.

H. Participants on the IWT Premium Placement Program who willfully leave their employment without prior IWT written consent are subject to dismissal by IWT.

I. Host Company will comply with all applicable local, state, and federal labor laws including ensuring that the participants recruited and placed by IWT receive pay and benefits commensurate with those offered to their American counterparts.

J. Host Company will not employ participants placed by IWT as domestic servants or require them to invest funds to acquire products for the purpose of door-to-door sales as prohibited in the J-1 summer work/travel regulations of the U. S. Department of State

160

'DD #s
5187- 46-27-117
4624- 117
46.27-117

Page 1 of 2

NO-05-30SEPT04-PHCA-4

05 11:15a    Timo ~y Johnson    352754' '0    p.5



## WORK TRAVEL

K. Host Company understands and agrees to uphold the objectives of the IWT Program by promoting cultural understanding and positive experiences for the participants recruited and placed with Host Company by IWT.

L. Host Company understands and agrees that IWT cannot guarantee visa approvals, arrival dates, or job performance of participants placed with Host Company. However, IWT will make a good-faith effort to ensure that the participants will arrive on time to commence their employment with Host Company, abide by the terms of their employment and perform their assigned tasks in a satisfactory manner.

M. Host Company understands and agrees that IWT is not responsible for any civil or criminal liability incurred by the participants placed by IWT or for defending against such claims.

N. If Host Company provides housing for any participants placed by IWT, Host Company will provide housing that is safe, comfortable, and in compliance with local, state and federal housing codes and regulations.

O. IWT will hold Host Company harmless against any claims, liability, damages or costs incurred by reason of any act, error or omission of IWT or its agents.

P. Host Company will indemnify, defend and hold IWT harmless against any claims, liability, damages or costs incurred by reason of any act, error or omission of Host Company or its agents.

Q. IWT and Host Company agree that any dispute, controversy or claim in any way arising out of, related to or connected with this agreement or Host Company's employment of participants in the IWT Program shall be decided by neutral, exclusive and binding arbitration in San Francisco, California before an arbitrator agreed upon by Host Company and IWT or, if none, before an arbitrator selected by the American Arbitration Association. Either party may appear telephonically. Any arbitration award may be enforced in any court of competent jurisdiction of the federal or state courts of San Francisco County, California. The prevailing party shall be entitled to recover all reasonable costs and expenses incurred by such party, including attorney's fees. The non-prevailing party shall be solely responsible for all costs of arbitration. Any dispute as to the reasonableness of such costs and expenses shall be determined by the arbitrator.

R. This agreement shall be governed by and construed under the laws of the State of California, without regard to principles of conflict of laws.

Both parties acknowledge that this document contains the complete agreement between them, that neither party has relied on any representations not contained herein, and that any additions or deletions must be made in writing and signed by both parties.

Signed: **Tasha Johnson**                    Date: 11/03/2005
Placement Director
Intrax Work/Travel

Signed: _Bob Riani_                    Date: _11/3/05_
Bob Riani
Sunset Pool Management

Page 2 of 2

NO-05-30SEPT04-PHCA-4

# EXHIBIT
# C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MIROSLAV IVANOV

and

VESELIN IVANOV,

        Plaintiffs,

        v.

SUNSET POOLS MANAGEMENT, INC.
et al.,

        Defendants.

Case No. 07-CV-00410
Hon. Richard J. Leon

## DECLARATION OF YANA SIMEONOVA

1.    I, Yana Simeonova, am a resident of the State of Massachusetts, am over 18 years of age, and am competent to give testimony.

2.    I am currently employed by defendant International Training and Exchange, Inc. ("Intrax") as a Placement Director. I was previously employed by Zip Travel as the Program Manager and managed the Program Departments in Zip Travel's five Bulgaria offices, including the two offices in Sofia, Bulgaria. At the time, I resided in Blagoevgrad, Bulgaria. In my capacity as Program Manager, my duties included overseeing the four Program Coordinators that worked in the Sofia offices, who worked with Bulgarian students applying for and participating in the Intrax work-travel program in the United States. In this capacity, I was familiar with the practices and procedures of Zip Travel in accepting applications and preparing students for the work-travel program.

3.    Zip Travel had and has a contract with Intrax to assist with various tasks related to the placement of student applicants in temporary employment positions in the United States. In relevant part, Zip Travel interviews and conducts English proficiency examinations of all job applicants, and once students are accepted into the program, presents to the students, including Miroslav Ivanov and Veselin Ivanov, Intrax's Premium Placement Participant Terms and Conditions ("Terms & Conditions"). Only after the students are given an opportunity to read and review the Terms &

Conditions and to ask questions regarding the Terms & Conditions would we ask the students to sign and accept the Terms & Conditions.

4. In December 2005, Veselin Ivanov and Miroslav Ivanov came to the Zip Travel office to apply for the work-travel program, and to have their English language proficiency assessed.

5. One of my four Program Coordinators, Raya Gugutkova, met with both Veselin Ivanov and Miroslav Ivanov, and conducted an English proficiency assessment. True and correct copies of Veselin Ivanov and Miroslav Ivanov's applications and interview results, including the results of their English proficiency assessment, are attached hereto as Exhibits A and B. As the Exhibits reflect, Veselin Ivanov scored an 8 out of 10 on the examination, and Miroslav Ivanov scored a 7 out of 10 on the examination. These scores reflect an understanding, familiarity, and competency with the English language.

6. At the time she conducted the interviews of Veselin and Miroslav Ivanov, Ms. Gugutkova had worked for Zip Travel for approximately 2-3 years. Ms. Gugutkova, as well as my three other Program Coordinators, was well-versed in the policies and procedures of Zip Travel. I had complete faith and confidence in the abilities of all four Program Coordinators to conduct student interviews, assess student English proficiency, explain the Terms & Conditions to students, and otherwise fulfill their job duties.

7. After they were accepted to the travel program, Veselin Ivanov and Miroslav Ivanov, as all other students participating in the program, were sent the 12-pages Terms & Conditions via electronic mail and presented with the 12-page Terms & Conditions at the Zip Travel office, which included the arbitration provision. The Program Coordinator presenting said Terms & Conditions to the students would have provided the students with an opportunity to read and review every portion of the Terms & Conditions, in order to ensure that they clearly understood those terms, and would have answered any questions the students had regarding the Terms & Conditions. Insofar as students are often in a rush to simply be accepted to the program and travel to the United States, my Program Coordinators were instructed to, and in every instance I can recall did, explain any provision of the Terms & Conditions that the students had questions about slowly and thoroughly (in both English and Bulgarian), in order to ensure the students understood those terms, and their potential impact.

8. I cannot imagine any one of my Program Coordinators blatantly ignoring Zip Travel's policy of presenting the entire 12-page Terms & Conditions to the students and of answering any questions that students have regarding the Terms & Conditions. I cannot fathom any Program

Coordinator with whom I worked, and whose job abilities and dedication I know well, merely having a student sign such an important document without giving a copy of that agreement to the student. Indeed, I can't imagine any student applicant with whom I ever worked merely signing a signature page without asking to see the document that they were signing.

9.  I declare under the penalty of perjury that the foregoing is true and correct.

_____
Yana Simeonova

Firmwide:82420656.1 054310.1005

# EXHIBIT
# D

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Miroslav Ivanov and Veselin Ivanov | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION No. |
| | : | |
| v. | : | |
| | : | Declaration of Miroslav Ivanov |
| Sunset Pools Management, Inc. *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DECLARATION

MIROSLAV IVANOV declares as follows:

1.      My name is Miroslav Ivanov. I am over the age of 18 and a plaintiff in the above captioned lawsuit pending against INTRAX and other defendants in the United States District Court for the District of Columbia.

2.      I came to the United States in 2006 to work in the pool maintenance business.

3.      I am a citizen of Bulgaria and prior to coming to the United States in May, 2006 I had a rudimentary knowledge of English, limited to casual conversation. I had taken three semesters of English at my university, which included two one-hour sessions each week. My English conversation skills are far better than my written skills. Despite the fact that my skills improved somewhat during my stay in the United States, I still do not feel confident reading or writing in English. Even simple matters like e-mail or regular mail to friends present me with a problem and I resort to either using dictionary or depend on friend whose English is more advanced.

4.    Prerequisite for coming to the United States was dealing with a Bulgarian company called "Zip-Travel", serving as a representative for INTRAX in Bulgaria. When Zip-Travel informed me that my documents were ready for me to sign, I went to their office. There were a number of visitors in the office and more were coming in and out throughout the entire time.

5.    At the Zip-Travel office, I had two to three minutes conversation with the Zip-Travel representative in English. This was to establish my English proficiency. The person interviewed me was a Bulgarian who was not a native English-speaker.

6.    During this interview, I was asked "where I was from", "my age", and "why did I want to go to the United States?". This was the extent of my English proficiency test. I was not asked to take written test, or to even write a simple sentence in English. I was not asked about how many college credits I have based on taken English classes, nor have I studied English at university level and for how long.

7.    After the so-called "English proficiency test", I was handed the INTRAX "Premium Placement Confirmation Form". The Zip-Travel employee described the form and its signing as "necessary formality". I was asked to review the "FORM" and sign on the last page. The form contained four (4) pages plus the signature page. I asked if I should sign or initial each page. I was told only to sign the last page, because according to them (Zip-Travel) only the last page was to be sent to the United States to INTRAX. I signed the last page, and took copy of it, plus the 4 pages of the form I was given. I was never offered any explanation or translation of the form. I was not told that this is actually a contract. I was given 3 to 4 minutes at best to review and sign the form.

8.    I was never presented with any page that mentioned dispute resolution or
mandatory arbitration. I never agreed to resolve any dispute through arbitration. As a
citizen of Bulgaria, I do not know anything about arbitration. My English proficiency is
not at a level at which I would have understood the form completely and correctly even if
I have read it.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _____, 2007.


_____
Miroslav Ivanov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Miroslav Ivanov and Veselin Ivanov | : | |
| | : | |
| | : | |
| Plaintiffs, | : | **CIVIL ACTION No.** |
| | : | |
| v. | : | |
| | : | Декларация на Мирослав Иванов |
| Sunset Pools Management, Inc. *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ДЕКЛАРАЦИЯ

МИРОСЛАВ ИВАНОВ декларира следното:

1.     Името ми е Мирослав Иванов. Имам 18 години и съм ищец по обяснения по-горе, все още нерешен съдебен процес срещу INTRAX и другите защитници в щатския окръжен съд в окръг Колумбия.

2.     Пристигнах в САЩ през 2006 година, за да работя в бизнеса с поддръжка на басейни

3.     Аз съм гражданин на България и до преди да пристигна в САЩ през май, 2006,аз имах а основни познания по Английски език, ограничени до воденето на нормален разговор. Изучавал съм три семестъра Английски език в Университета, което включва занимания два пъти седмично по един час. Уменията ми за разговор на Английски език са далеч по добре от писмените ми умения. Въпреки факта,че уменията ми се подобриха по един или друг начин по време на престоя ми в САЩ, все още не се чувствам сигурен в писането и четенето на Английски език. Дори и

обикновени неща като e-mail или стандартна поща до приятели представляват

проблем и се налага да използвам речник или да се обърна към приятел чиито

Английски език е на по- добро ниво.

4.      Като условие за заминаването ми в САЩ беше да се свържа българска

компания наречена „Zip-Travel", която е представител на INTRAX в България.

Когато Zip-Travel ме информираха , че документите ми са готови за подпис, аз

отидох в техния офис. Имаше няколко души в офиса и други влизаха и излизаха

през цялото време.

5.      В офиса на Zip-Travel, имах 2-3 минути разговор с представител на Zip-

Travel на английски език. Това беше за да се определи нивото ми на английски

език. Човекът, който ме интервюира, беше българин на когото английския език не

беше майчин.

6.      По време на интервюто, бях попитан "от къде съм", "на каква възраст", и

"защо искам да отида в САЩ?". В това се състоя теста ми за ниво на английски

език. Не бях подложен на писмен тест, или дори да напиша просто изречение на

Английски език. Не ме попитаха колко кредита в колежа съм натрупал по време на

часове по Английски език, нито дали съм учил английски на университетско ниво и

колко дълго.

7.      След така наречения "Тест за ниво на Английски", ми подадоха INTRAX

"Premium Placement Confirmation Form". Служителя на Zip-Travel описа формата и

нейното подписване  като "необходима формалност".  Казха ми да разгледам

"формата" и да се подпиша на последната страница. Формата съдържаше четири

(4) страници плюс страница за подпис. Попитах дали трябва да се подписвам или да си слагам инициалите на всяка страница. Казаха ми че е нужно да се подпиша само на последната страница,понеже съгласно с тях (Zip-Travel) само последната страница ще бъде изпратена до INTRAX в САЩ. Подписах последната страница, и взех копие от нея, плюс първите 4 страници от формата, които ми дадоха. Не ми предложиха обяснение или превод на формата. Дадоха ми 3-4 минути, за да я разгледам и да я подпиша.

8.      Не ми е показвана страница опоменаваща решаване на спор или задължителен арбитражен съд. Не съм се съгласявал да разрешавам какъвто и да е спор чрез арбитражен съд. Като гражданин на България, не знам нищо относоно арбитражен съд. Познанията ми по английски език не са на достатъчно ниво, на което бих могъл да разбера формата напълно и правилно дори да я бях прочел.


Декларирам под заплаха в обвинение за лъжесвидетелство, че по-горното е вярно.
Оформено на _____, 2007.


                                        _____
                                        Мирослав Иванов

# EXHIBIT
# E

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Miroslav Ivanov and Veselin Ivanov | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION No. |
| | : | |
| v. | : | |
| | : | Declaration of Veselin Ivanov |
| Sunset Pools Management, Inc. *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## DECLARATION

VESELIN IVANOV declares as follows:

1.     My name is Vaselin Ivanov. I am over the age of 18 and a plaintiff in the above captioned lawsuit pending against INTRAX and other defendants in the United States District Court for the District of Columbia.

2.     I came to the United States in 2006 to work in the pool maintenance business.

3.     I am a citizen of Bulgaria and prior to coming to the United States in May, 2006 I had a rudimentary knowledge of English, meaning that I could hold a casual conversation. I had taken two semesters of English at my university, which included two one-hour sessions each week. My English conversation skills are far better than my written skills, but naturally, those skills improved somewhat during my time in the United States.

Case 1:07-cv-00410-RJL   Document 29-8   Filed 02/05/2008   Page 3 of 7

4.      In order for me to come to the United States, I first dealt with an entity called "Zip-Travel," which is a Bulgarian based company, serving as a representative for INTRAX in Bulgaria. When Zip-Travel informed me that documents were prepared for me to sign, I went to their office which was very busy and had many people coming in and out.

5.      At the Zip-Travel office, I had a less than two minute conversation with the Zip-Travel representative in English. This was to establish my English proficiency. The person interviewing me was not a native English-speaker, and I was not able to evaluate her knowledge of the language.

6.      During this two minute interview, I was asked my name, my age, and where I lived. This was what I understood to be an English proficiency test.

7.      After the so-called "English proficiency test", I was handed the INTRAX "Premium Placement Confirmation Form" the signing of which was described to me as "necessary formality". I was asked to review the "FORM" and sign the last page. What I was handed was double copies of the first four pages. I was not asked to sign or initial each of the 4 pages individually but only to sign the last page. I signed the last page and was told that this is the only page that would be sent to INTRAX and I can keep the rest for my own record. At no point was I offered any explanation or translation of the form. At no point was I told that this is actually a contract. I was told to get on with signing it within 3 to 4 minutes at best. I signed the form and took the 8 (double copies of the first 4 pages) pages with me.

8.    I was never presented with any page that mentioned dispute resolution or
mandatory arbitration. I never agreed to resolve any dispute through arbitration. As a
citizen of Bulgaria, I do not know anything about arbitration.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _____ , 2007.

_____
Vaselin Ivanov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Miroslav Ivanov and Veselin Ivanov | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| Sunset Pools Management, Inc. *et al.* | : |
| | : |
| Defendants. | : |
| | : |

CIVIL ACTION No.

Декларация на Веселин Иванов

## ДЕКЛАРАЦИЯ

Веселин Иванов декалрира следното:

1.      Казвам се Веселин Иванов. Имам навършени 18 години и съм ищец по обяснения по-горе, все още не решен съдебен процес срещу INTRAX и другите защитници в щатския областен съд на окръг Колумбия.

2.      Пристигнах в САЩ през 2006 г. , за да работя в бизнеса по поддръжка на басейни.

3.      Аз съм гражданин на Република България  и до преди да дойда в САЩ през месец май 2006 година, имах основни познания по английски език, т.е. можех да се справя с воденето на обикновен разговор. Учил съм два семестъра английски език в Университета, което включва два пъти по един час седмично. Говорните ми умения по английски език са далеч по-добри от писмените ми умения, но естествено, тези ми умения се подобриха по един или друг начин по време на престоя ми в САЩ.

4.     В процеса по идването ми в САЩ, първо се отнесох към обект наречен "Zip-Travel," който е българска компания, изпълняваща роля на представител на INTRAX в България. Когато Zip-Travel ме информираха, че документите ми са готови за подпис, аз отидох в техния офис който беше доста натоварен и имаше доста хора, които влизаха и излизаха от него.

5.     В офиса на  Zip-Travel, имах по-малко от две минути разговор с представител на Zip-Travel на английски език. Това беше, за да се установи нивото ми на владеене на английски език. Лицето, което ме интервюира не беше човек на когото английския  език е  майчин, и не бях способен да оценя нейните познания по езика.

6.     По време на двуминутното интервю, ме попита как се казвам, на колко години съм, и къде живея. Това беше, както разбрах, теста ми за ниво на владеене на английски език.

7.     След така наречния "Тест за ниво на Английски език", Ми подадоха INTRAX "Premium Placement Confirmation Form" подписването на който ми беше описан като "необходима формалност".  Казаха ми да прегледам "Формата" и да подпиша последната страница. Подадоха ми две копия от първите четири страници. Не ми казаха да се подпиша или да сложа инициалите си върху всяка една от четирите страници индивидуално, а само да подпиша последната страница. Подписах последната страница и ми казаха, че това е единствената страница,която ще бъде изпратена до INTRAX и мога да задържа останалите за собствения си архив. Не ми беше предложено някакво обяснение или превод на формата. Не ми беше казано,че това всъщност е договор. Казаха ми да го прегледам за 3-4 минути и

да го разниша. Подписах формата и взех със себе си осемте (две копия на първите 4 страници) страници.

8.   Не ми беше представена каквато и да е страница която споменава решаване на спор или задължителен арбитражен съд. Никога не съм се съгласявал да решавам някакъв спор чрез арбитражен съд. Като гражданин на Република България, не знам каквото и да е относоно арбитражен съд.

Декларирам под заплаха в обвинение за лъжесвидетелство ,че по-горното е вярно.

Оформено на _____, 2007.

Веселин Иванов

# EXHIBIT
# F

PCF 5187-3560-117-6

Student ID.......................................      Student Name...................................

# Premium Placement Confirmation Form
## Toll Free Telephone Number : 1-888-224-0450

## SPONSOR INFORMATION

| Sponsor Name | Intrax Work Travel |
|---|---|
| Phone | +1 (888) 224-0450 |
| Fax | +1 (415) 434-5430 |
| Email Address | info@intraxinc.com |

## EMPLOYMENT OPPORTUNITY INFORMATION

| Company Name | Sunset Pools, Inc |
|---|---|
| Company Address | 3608 Forest Drive |
| | Suite 32 |
| City | Alexandria |
| State | VA |
| Zip | 22302 |
| Company Website | www.sunsetpoolsmgmt.com |
| Contact Person | Bob Kiani |
| Contact Title | Regional Manager |
| Email Address | bkiani@sunsetpoolsmgmt.com |
| Phone | 703-824-0997 |
| Fax | 703-824-0042 |
| | |

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Student ID........................................    Student Name........................................

**Job Description Document**

## POSITION OPPORTUNITY INFORMATION

| | |
|---|---|
| **Job Title** | Lifeguard |
| **Job Description** | This position offers the opportunity to work for a pool management company that provides lifeguard services to fine hotels and condominium communities in the areas of Virginia, Maryland and Washington DC. The pools are located in both indoor and outdoor locations. The outdoor pools will close near Labor Day. When the outdoor pools close it is only possible that some employees will be able to change their working location to an indoor pool location. This is decided by management and based on the employee's performance and the availability at the time. If an employee is working at an outdoor pool they cannot demand to be changed to an indoor location. As a employee of this company your primary tasks will be to ensure the safety of the patrons and facility you work at, preventing and responding to emergencies, maintain a clean pool area, keep record of pool chemical readings, provide an enjoyable, safe atmosphere for the patrons of the pool. You will ensure pool rules are being followed. |
| **Level of English Required** | Advanced |
| **Start Date** | 5 May 06 – 10 May 06 |
| **End Date** | 5 Sep 06 – 10 Sep 06 |
| **Gender Required** | None |
| **Day to report to Employer** | Please report to the employer as directed in the travel information section of this document. |
| **Expected days from arrival before starting work** | You should begin working 5 days after you arrive. You will first take your Red Cross certification. |
| **Estimated Average Hours over the course of the program** | Average weekly hours range from 40 to 60 per week. |
| **Pay Rate Estimate** | $7.00 per hour. $7.25 per hour once you pass the pool operator class. |
| **Estimated Tips** | This is not a tipped position. |
| **Estimated Overtime** | You are able to work over 40 hours per week however this is a seasonal business and is not required by law to pay overtime wages. Hours you work over 40 will be the same rate as regular hours. |
| **Required Skills** | You must take the required Red Cross course and become certified. This course will cost $175.00 and is paid thru payroll deduction. You will also take a test on pool operations. The employer will assist you to train for this course. Once you have passed this course you are eligible to receive $7.25 per hour. In order to pass the Red Cross Certification you will need to be able to swim 500 yards, dive 7 to 10 feet into the water, retrieve a 10-pound object from the bottom of the pool. In order to qualify for this position you must be a very good swimmer and a very strong swimmer. |
| **Expected Schedule** | Pool hours can vary at different locations however hours can begin as early as 6AM and end at dusk or approximately as late as 9PM. You will work 6 days a week and have one free day. There are shifts that range from 5 to 8 hours as well as double shifts. |
| **Drug Screening Policy** | Drug testing may be required randomly. |
| **Possible 2ⁿᵈ Job** | Yes You are able to work a second job however it cannot be with a competitor or another lifeguard business. It is also requested you do not work any overnight shifts as a second job as this effects your ability to work as lifeguard during the day. The employer will assist you in securing a second job. A second job can in no way interfere with your performance or availability of the primary employer. It is the responsibility of you and the second employer to schedule hours around the primary employers scheduling needs. |
| **Additional application** | You will fill out new employment paper work as any new employee would. You will have housing terms provided upon your arrival. |
| **Possibility for job change within company** | No. |
| **Meal discounts** | Meal discounts are not provided. |
| **Uniforms** | Uniforms are required and will cost $65.00. The cost of uniform can be paid thru payroll deduction. |
| **Dress code** | You will receive full details on dress code during your orientation. You will need to arrive to work each shift dressed in the correct uniform. |
| **Grooming code** | You will be working directly with the public.  You will need to arrive each shift neatly |

| | |
|---|---|
| **Intrax Work Travel**<br>600 California St., 10ᵗʰ Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

Student ID............................    Student Name................................

| | |
|---|---|
| | cleaned and groomed. Proper use of daily hygiene products and sunscreen. |
| *Reminder: It can take between three and eight weeks from the date you start working to be paid. Please bring enough money to support yourself until you are paid. Check with employer to find out your first pay date.* | |

## SUGGESTED TRAVEL INFORMATION

| | |
|---|---|
| **Nearest International Airport** | Dulles |
| **Nearest Airport** | Dulles |
| **Transportation from Airport to Employer and/or Housing** | The employer would prefer you to arrive at the Dulles airport. As long as you provide your confirmed travel arrangements in advance (Intrax requires travel details be submitted no later than two weeks prior to arrival) the employer will arrange for you to be met at the airport. Do not expect to be picked up at the airport if you have not provided your travel details. You can send your travel information to the following email address, DCH@sunsetpoolmgmt.com |
| **Nearest Bus Station** | Arlington, VA or Washington DC. It is suggested you arrive at Dulles airport if you are able to. |
| **Bus Information** | http://www.greyhound.com |
| **Nearest Train Station** | Not suggested. |
| **Train Information** | http://www.amtrak.com |

## SOCIAL SECURITY INFORMATION

| | |
|---|---|
| **Nearest Social Security Office** | 6295 Edsall Road, Alexandria, VA 22312 |
| **How and When to Apply for the Social Security Card** | The employer assists to the social security office. When you apply for social security you should have your card sent in the care of the employer to the employers address. |
| **Social Security website** | http://www.ssa.gov |

## HOUSING

| | |
|---|---|
| **Housing Restrictions (yes/no)** | Yes |
| **Housing Restrictions** | If housing restrictions apply, participants must remain in this housing to be employed by the employer identified in this document. Participants must remain employed by the employer identified in this document and remain in the Intrax Work/Travel Program to live in this housing. No exceptions will be granted unless agreed in writing in advance by Intrax Work/Travel. |
| **Housing Information** | There are several housing locations. The location of your housing will be based on the location you will work at. Housing is located within bicycle distance to each work area. Once you have selected and been confirmed for this position it is required that you live in and remain in the employer provided housing the entire term of your agreed employment dates. The employer provides a very detailed housing lease that you will be required to review, understand and sign if in agreement of. Do not sign this form if you do not understand the terms you are signing in agreement to. This is a legal housing lease and should not be taken lightly. IF you do not understand any part of the housing terms you should ask the employer, Intrax or your local representative for assistance to understand. |
| **Address** | Housing addresses are assigned upon arrival. |
| **Estimated Cost** | Housing for NON-furnished accommodations is $300.00 per month per person. Housing for FURNISHED accommodations is $310.00 per person per month. Once you are confirmed for the position you will need to send message to the employer with the housing you select, furnished for non-furnished. |
| **Additional Costs (i.e. Bond)** | There is a deposit of $100.00 per person due upon arrival. Housing deposits are refundable as long as you stay the date you agreed to and there is no damage to property upon move out inspection. There are bicycles available for your use. There is a deposit of $50.00 to $75.00 depending on the bicycle you choose. The deposits for bicycles are refundable as long as it is returned in the condition when you got it. |
| **Features** | Housing is in shared dorm style housing. You can choose If you want furnished or non-furnished accommodations. The cost for each is listed under housing cost. There are bicycles available for your use during your stay. The deposit charged for bicycles is listed under additional costs. Stove refrigerator are included. |
| **Hostel Information** | http://www.hiayh.org or http://www.hostels.com |

## AREA INFORMATION

| | |
|---|---|
| **Average temperature** | The following average highs and lows are listed for each month of the year; January7C -4C, |

| | |
|---|---|
| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

PCF 5187-3560-117-6

Student ID...................................       Student Name...................................

|  |  |
|---|---|
|  | February 9C 3C, March 14C 3C, April 21C 6C, May 26C 11C, June 29C 16C, July 32C 19C, August 31C 18C, September 27C 14C, October 21C 7C, November 15C 2C, December 9C -2C. |
| **Altitude** | N/A |
| **Information websites** | www.washington.org  www.virginia.org  www.mdisfun.org |
| **Nearest city** | All of the job locations are in Metro areas. |
| **Things to do** | There are a variety of museums that are free of charge, take a trip to see the White House, Capital, Washington Monument, Mount Vernon and much more! |
| **What to wear** | You should wear comfortable casual clothing that is appropriate for the temperatures during the months of your stay. Monthly temperatures are listed above in this document. |

## ADDITIONAL INFORMATION

|  |  |
|---|---|
| **Additional Information** | There are multiple locations for this position including the Virginia, Maryland and DC areas. The employer is unable to place you into a specific location until you have arrived. The area that you work in is based on business level demands and staffing demands during the time you arrive. If you have a specific request the employer will attempt to grant your request however it may not be possible. If for any reason you have a specific need to be in a desired location you will need to communicate this with the employer prior to your arrival. As the employer may not be able to grant such requests, you must understand and be able/ in agreement to work in any of the locations. You will receive Red Cross certification upon your arrival this will cost $175.00 paid thru payroll deduction. The time for this will be approximately two days. You will have one day orientation. There is an additional agreement the employer requires to be reviewed, signed if in agreement and returned to the employer in order to confirm your position. There is an end of season bonus for those who have been recommended from their supervisors in the amount of $50.00. THE POOL LOCATIONS ARE LOCATED AT BOTH INDOOR AND OUTDOOR FACILITIES. THE OUTDOOR POOLS CLOSE NEAR LABOR DAY. AFTER THE OUTDOOR POOLS CLOSE THERE IS NO LONGER A GAURANTEE OF EMPLOYMENT TO THOSE WORKING IN THE OUTDOOR LOCATIONS. IT IS POSSIBLE BASED ON THE EMPLOYERS DECISION AND THE PARTICIPANTS WORKING PERFORMANCE TO BE OFFERED A POSITION AT AN INDOOR FACILITY. YOU SHOULD UNDERSTAND CLEARLY THIS IS NOT GAURANTEED. |

*Based on the information available to Intrax Work/Travel, the contents of this Premium Placement Confirmation Form are true and accurate as of the date of its issuance to the Premium Placement Service participant. All information is subject to change depending on a variety of factors, including but not limited to weather, employment trends and staffing changes.*

|  |  |
|---|---|
| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

Student ID...................................    Student Name.................................

## Premium Placement Participant Terms & Conditions
### (revised on 30AUG04)

*Please read this document carefully, and make sure that you understand it before you sign it.*

**By signing this document, you are agreeing to the following terms and conditions ("Terms & Conditions"):**

**You certify that:**

1. The information provided on your application is complete and accurate.
2. You are between the ages of 18 and 28 years old at the time of application.
3. You are enrolled in a college or university outside of the United States at the time of application.
4. You are registered for a full-time course load for the semester following your participation in the Intrax Work/Travel Program.
5. You speak, read, and understand English at the level indicated on your application.
6. You are physically capable of performing the tasks required as outlined in your job description.
7. You are able to participate in the Intrax Work/Travel Program for the period indicated in the Placement portion of this Premium Placement Confirmation Form ("PCF").

**You agree that:**

1. Within three (3) days of arriving in the United States you will confirm your arrival with Intrax Work/Travel by doing only one of the following (1) mailing your self-addressed, postage paid Check In Form to Intrax Work/Travel headquarters at 2226 Bush Street, San Francisco, CA 94115, (2) completing the on-line Check In Form at www.intraxworktravel.com or (3) faxing the Check In Form to 415-674-5251. Failure to do one of the above will result in your immediate dismissal from the Intrax Work/Travel Program.
2. You will participate in an orientation provided by Intrax Work/Travel or an Intrax Work/Travel agent representative. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.
3. You will report to the employer listed in section #1 of your DS-2019 form on the date indicated in section #3 of the same form. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.
4. If any change occurs in your employment as indicated on your DS-2019 form pursuant to these Terms & Conditions, you will pay the administrative fee as well as verify such change by following the procedures and completing the

| | |
|---|---|
| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

Student ID............................    Student Name................................

documentation required by Intrax Work/Travel. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

5. You will not work beyond the program end date listed in section #3 of your DS-2019 form.

6. You will leave the United States within thirty (30) days of the program end date listed in section #3 of your DS-2019 form.

7. If you change your address while in the United States, you will notify Intrax Work/Travel by telephone or email and the Department of Justice by using form AR-11 within three (3) business days. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

8. While in the United States, you will obey all federal, state, and local laws and the rules of the Intrax Work/Travel Program. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

9. Upon receipt of the Intrax Work/Travel Participant Handbook you will read the entire handbook and ask Intrax Work/Travel or the Intrax Work/Travel agent representative for clarification on any point(s) that are not explicitly understood.

**You understand that:**

1. A DS-2019 form enables you to apply for a J-1 Work/Travel visa. The United States Embassy or Consulate may grant or deny your application for a visa. Intrax Work/Travel is not responsible for and cannot control or change their decision.

2. Even if you receive a J-1 Work/Travel visa, you may be denied entrance into the United States by a Bureau of Citizenship and Immigration Service Officer. Intrax Work/Travel is not responsible for and cannot control or change any denial of entrance into the United States.

3. You are responsible for bringing enough money to the United States to cover the cost of your food, housing and other personal expenses for at least one month. We suggest a minimum of $1,000.00 due to possible delays with Social Security and distance of travel from airport to employer, advance payment for accommodation needed upon arrival and other initial investments needed. Intrax Work/Travel is not responsible for such expenses, or for any period of time during which you are not being paid by an employer. Intrax Work/Travel cannot loan money to you.

4. You are responsible for making your own travel and housing arrangements, and must provide your travel and housing plans at least two (2) weeks prior to arrival in the United States by ensuring that your plans are submitted to the Intrax Work/Travel website by the Intrax Work/Travel agent representative in your home country. Intrax Work/Travel is not responsible for making or assisting you in making your individual travel or housing arrangements.

5. A J-1 Work/Travel visa cannot be extended. You must return home at the end of your program, or face federal fines and disbarment from re-entering the United States.

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Student ID............................        Student Name............................

6. As an Intrax Work/Travel participant, you are subject to the United States civil and criminal justice system. Failure to obey federal, state or local laws may result in civil liability, criminal prosecution, fines, jail sentences, or other penalties. Intrax Work/Travel is not responsible for any civil or criminal liability you may incur or for assisting or defending you in any way in connection with any legal claims made against you.

7. Intrax Work/Travel is your official program sponsor while you are in the United States. The Intrax Work/Travel staff is available to assist you with any questions or to advise you regarding any challenges you may experience while you are participating in the Intrax Work/Travel Program. In the United States, you may call Intrax Work/Travel (toll free) at 1-888-224-0450 weekdays from 9 a.m. to 5 p.m., Pacific Standard Time. You may call the same toll free line at any time, 24 hours a day, 7 days a week, in case of an emergency. You may also call 1-415-674-5252 at your own expense from anywhere in the world, weekdays from 9 a.m. to 5 p.m., Pacific Standard Time.

8. If you would like to lodge a formal grievance about the Intrax Work/Travel Program, you will follow the Intrax Work/Travel Grievance Procedures.

9. If you are dismissed from the Intrax Work/Travel Program for any reason, you will be out of status on your J-1 visa, you will no longer have medical insurance and you are required to leave the country immediately or face possible further penalties.

**As a Premium Placement Service participant, you understand and agree that:**

1. You will remain at your employment with the employer listed in Section #1 of your DS-2019 form for the duration you originally indicated on your enrollment application unless you are terminated by the employer or you obtain prior written authorization from Intrax Work/Travel to leave your employment. If you leave your employment without having been terminated by the employer or obtaining prior written authorization from Intrax Work/Travel, you will be dismissed from the Intrax Work/Travel Program immediately. You agree to contact Intrax Work/Travel if any job-related difficulties or disputes arise that may affect your continued employment.

2. Your employer may terminate your employment at any time, without prior notification, with or without cause. Intrax Work/Travel is not responsible for and cannot control employment decisions made by your employer.

   (a) If your employment is terminated for cause, including but not limited to poor job performance, misconduct, or misrepresentation of your qualifications on your application, you will be dismissed from the Intrax Work/Travel Program immediately and you will forfeit the entire program fee.

   (b) If your employment is terminated without cause, through no fault of your own, during the first eight (8) weeks of your participation in the program, Intrax Work/Travel will attempt to provide you with a new employment opportunity suitable to your skills, experience and qualifications. If you

<table>
<tr><td>

**Intrax Work Travel**
600 California St., 10th Floor
San Francisco CA 94108
Phone: (415) 434-5440
Fax: (415) 434-5430

</td><td>

**THIS DOCUMENT RELATES TO :**
JDD 5187-3560-117

</td></tr>
</table>

Student ID..............................    Student Name...........................

accept a new employment opportunity, you will be responsible for the cost
of transportation to the new employer's location.

(c) Under subsection (b), if for any reason you do not accept a new
employment opportunity, or if Intrax Work/Travel cannot provide you
with a new employment opportunity suitable to your skills, experience and
qualifications, you may remain in the Intrax Work/Travel Program as an
Independent Placement Service participant, and Intrax Work/Travel will
refund your representative agency the difference between the Premium
Placement Service program fee and the Independent Placement Service
program fee.

(d) If your employment is terminated without cause, through no fault of your
own, at any time after the first eight (8) weeks of your participation in the
program, Intrax Work/Travel will assist you by providing information
about possible new employment opportunities suitable to your skills,
experience and qualifications. However, Intrax Work/Travel is not
responsible under any circumstance for providing you with a new
employment opportunity upon such termination. If you find and accept
new employment, you will be responsible for the cost of transportation to
the new employer's location.

(e) Under subsection (d), if your employment is terminated without cause at
any time after the first eight (8) weeks of your participation in the Intrax
Work/Travel Program, you may remain in the program as an Independent
Placement Service participant, but you will not be entitled to a refund of
any part of the Premium Placement Service program fee.

(f) **NOTE – Ski Resort Exception:** The availability of employment at a ski
resort is inherently seasonal and dependent on snow fall and other factors
beyond the employer's or Intrax Work/Travel's control. If you accept an
employment opportunity at a ski resort, you agree to assume the risk that
your employment may be terminated or your work schedule and hours
may be limited. Accordingly, if you are employed at a ski resort and,
through no fault of your own, you are terminated or subject to reduced
hours at any time, regardless of the length of your actual participation in
the Intrax Work/Travel Program or the date of such termination or
reduction, Intrax Work/Travel will not provide you with a new
employment opportunity or a refund of any part of the Premium Placement
Service program fee. Intrax Work/Travel may, in its discretion, assist you
with seeking a new employment opportunity. If you find or accept new
employment, you will be responsible for the cost of transportation to the
new employer's location.

3. Your employer may have to limit the number of hours you work per week for a
variety of reasons, including but not limited to poor job performance, misconduct,
or circumstances beyond the employer's control. Intrax Work/Travel is not
responsible for and cannot guarantee your schedule or that you will be able to
work a minimum number of hours per week. However, if, through no fault of your

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
|---|---|
| 600 California St., 10th Floor | JDD 5187-3560-117 |
| San Francisco CA 94108 | |
| Phone: (415) 434-5440 | |
| Fax: (415) 434-5430 | |

Student ID............................    Student Name............................

own, you have worked less than thirty (30) hours per week for at least three (3) consecutive weeks, Intrax Work/Travel may, in its discretion, assist you with seeking a new employment opportunity. If you find or accept new employment, you will be responsible for the cost of transportation to the new employer's location.

4. If you secure new employment pursuant to any of the provisions in this section, you must verify such new employment in writing following Intrax Work/Travel's required procedures and documentation. Failure to comply will result in your immediate dismissal from the Intrax Work/Travel Program.

5. The Intrax Work/Travel Program does not include housing and Intrax Work/Travel is not responsible for providing housing to you. However, housing may sometimes be available in connection with certain employment opportunities. If housing is available with your employment opportunity, the information and restrictions on such housing are identified in the housing section of the Placement portion of this Premium Placement Confirmation Form ("PCF"). You must comply with any and all requirements indicated in the housing section of your PCF. Failure to comply with these requirements will result in your immediate dismissal from the Intrax Work/Travel Program. If housing is available with your employment opportunity, Intrax Work/Travel makes no representations or guarantees regarding the nature or quality of such housing. If your employment opportunity includes housing, you agree to contact Intrax Work/Travel if any housing-related difficulties or disputes arise.

**You understand and agree to the following Premium Placement Service Refund Policies\*:**

1. SEVIS fee: Once a DS form has been issued to you, the SEVIS fee is non-refundable even if your visa is denied or your application is cancelled.

2. Visa Denials: If your visa application is denied, Intrax Work/Travel will refund the placement fee portion of your program fee provided the required procedures are followed. Refund of the placement fee is contingent upon (1) Intrax Work/Travel being informed by the representative agency within 3 days of the visa denial; (2) Intrax Work/Travel receiving the DS-2019, a copy of the passport biographical pages as well as the page showing the denial; (3) Intrax Work/Travel receiving the Visa Denial Form from the representative agency providing an explanation for the denial. The documentation must be received within 14 days of the denial. The application fee portion of the program fee is non-refundable.

3. Denial of Entry: If you are denied entry to the United States by a Bureau of Citizenship and Immigration Service Officer, Intrax Work/Travel will refund the placement fee portion of your program fee. Refund of the placement fee is contingent upon Intrax Work/Travel's receipt of official proof of such denial of entry, including a statement of the reason for the denial, a copy of your passport and a letter from the Intrax Work/Travel agent representative in your home country explaining the reason for the

| Intrax Work Travel 600 California St., 10th Floor San Francisco CA 94108 Phone: (415) 434-5440 Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO : JDD 5187-3560-117 |
|---|---|

Case 1:07-cv-00410-RJL   Document 33-9   Filed 03/27/2007   Page 91 of 13
Case 1:07-cv-00410-RJL   Document 29-9   Filed 02/05/2008   Page 11 of 25

Page 10 of 12                                              PCF 5187-3560-117-6

Student ID............................   Student Name............................

denial. The documentation must be received within 14 days of the denial of Entry. The application fee portion of the program fee is non-refundable.

4. Cancellations Prior to Placement Confirmation: If for any reason you cancel your Premium Placement Service application before your placement has been confirmed, Intrax Work/Travel will refund only the placement fee portion of your program fee. The application fee portion of the program is non-refundable.

5. Cancellations/Withdrawals After Placement Confirmation: If for any reason you cancel or withdraw from the Intrax Work/Travel Program at any time after your placement has been confirmed, whether before or after your arrival in the United States, Intrax Work/Travel will not refund any portion of the program fee.

6. Termination from Employment Without Cause: If you are terminated from your employment without cause during the first eight (8) weeks of your participation in the Intrax Work/Travel Program, Intrax Work/Travel will refund only the difference between the Premium Placement Service program fee and the Independent Placement Service program fee and will do so only if: (a) you are not employed by a ski resort and (b) Intrax Work/Travel cannot provide or you do not accept its offer of a new employment opportunity. Under all other circumstances, if you are terminated from employment without cause, Intrax Work/Travel will not refund any portion of the program fee.

7. Changes in the Premium Placement Confirmation Form: If upon arrival actual circumstances vary from that which is stated on the Placement portion of this Premium Placement Confirmation Form you will not be entitled to a refund.

8. Reduced or Limited Work Schedule: If your work schedule or hours of work per week are reduced or limited for any reason, Intrax Work/Travel will not refund any portion of the program fee.

9. Termination from Employment for Cause or Dismissal from Program: If you are terminated by your employer for cause, including but not limited to termination due to poor performance, misconduct or misrepresentation of your qualifications on your application, or if you are dismissed from the Intrax Work/Travel Program for any reason, including but not limited to the grounds for dismissal identified in these Terms & Conditions, Intrax Work/Travel will not refund any portion of the program fee.

10. Refunds Payable to Local Representative agency: Intrax Work/Travel will pay any refund that is due pursuant to the above provisions by the end of the program season for which you applied. Intrax Work/Travel will make such payment only to the local Intrax Work/Travel representative agency in your home country. Intrax Work/Travel will not pay any refund directly to you. Intrax Work/Travel is not responsible for ensuring that any refund it pays to the local Intrax Work/Travel representative agency in your home country is

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Case 1:07-cv-00410-RJL    Document 29-9    Filed 02/05/2008    Page 12 of 25
Case 1:07-cv-00410-RJL    Document 3-3    Filed 03/27/2007    Page 12 of 13

Page 11 of 12                                          PCF 5187-3560-117-6

Student ID............................    Student Name............................

paid to you.  You and the local representative agency must arrange for any refund to be paid to you.

\* All refund amounts are based on the original pricing charged to your representative agency by Intrax Work/Travel as per their Partnership Agreement. For specific refund amounts please ask your representative agency.

**You understand and agree to the following Dispute Resolution and Construal Provisions:**

1. Arbitration:  You understand and agree that any dispute, controversy or claim in any way arising out of, related to, or connected with your participation in the Intrax Work/Travel Program, the Intrax Work/Travel Premium Placement Service, or these Terms & Conditions shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, USA.  The arbitration shall be conducted before an agency or arbitrator agreed upon by you and Intrax Work/Travel or, if none, before an arbitrator selected by the American Arbitration Association.  Either you or Intrax Work/Travel may appear telephonically at the arbitration hearing.  Any award of the arbitrator may be enforced in any court of competent jurisdiction of the federal or state courts of San Francisco County, California, USA.  In any action, including arbitration, brought in connection with your participation in the Intrax Work/Travel Program or the Intrax Work/Travel Premium Placement Service, the prevailing party shall be entitled to recover all reasonable costs and expenses incurred by such party, including attorney's fees.  The non-prevailing party shall also be solely responsible for all costs of arbitration.  Any dispute as to the reasonableness of such costs and expenses shall be determined by the arbitrator.

2. Severability:  If any provision of these Terms & Conditions or their application is held to be invalid, illegal or unenforceable for any reason, the invalid, illegal or unenforceable provision or application shall not affect or impair the other provisions or applications of the Terms & Conditions which can be given effect without the invalid, illegal or unenforceable provision or application.  To this end the provisions of this Agreement are declared to be severable and shall be construed and enforced accordingly.

3. Waiver:  No waiver by Intrax Work/Travel of your failure to comply with any of these Terms & Conditions shall be construed to be, or shall be, a waiver of any other failure to comply with such Terms & Conditions.  No waiver shall be binding unless in writing and signed by Intrax Work/Travel.

4. Headings Not Controlling:  The headings used in the document setting forth these Terms & Conditions are used only for ease of reference and are not controlling.

5. Governing Law:  These Terms & Conditions shall be governed by and construed under the laws of the State of California, USA, without regard to principles of conflict of laws.

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDO 5187-3560-117 |
|---|---|

Page 12 of 12                                                PCF 5187-3560-117-6

Student ID. ___44224___        Student Name  _Miroslav Ivanov_

Please note that based on the information available to Intrax Work/Travel, the contents of
the Premium Placement Confirmation Form are true and accurate as of the date of its
issuance to the Premium Placement Service participant. All information is subject to
change.

- I am capable of reading and understanding these Terms & Conditions in
  English.
- I have read these Terms & Conditions carefully, have had the opportunity to
  ask questions and obtain advice as to their meaning, and understand them
  fully.
- I do not rely on any statements or representations that are not expressly stated
  in these Terms & Conditions.
- I agree to abide by these Terms & Conditions.

Signed    _____          Date:  _6. 12. 2005_

Print Name:  _Miroslav Ivanov_     Intrax Student ID#:  _44224_

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
| 600 California St., 10ᵗʰ Floor | JDD 5187-3560-117 |
| San Francisco CA 94108 | |
| Phone: (415) 434-5440 | |
| Fax: (415) 434-5430 | |

Student ID.........................................        Student Name...........................................

# Premium Placement Confirmation Form
## Toll Free Telephone Number : 1-888-224-0450

### SPONSOR INFORMATION

| Sponsor Name | Intrax Work Travel |
|---|---|
| Phone | +1 (888) 224-0450 |
| Fax | +1 (415) 434-5430 |
| Email Address | info@intraxinc.com |

### EMPLOYMENT OPPORTUNITY INFORMATION

| Company Name | Sunset Pools, Inc |
|---|---|
| Company Address | 3608 Forest Drive |
| | Suite 32 |
| City | Alexandria |
| State | VA |
| Zip | 22302 |
| Company Website | www.sunsetpoolsmgmt.com |
| Contact Person | Bob Kiani |
| Contact Title | Regional Manager |
| Email Address | bkiani@sunsetpoolsmgmt.com |
| Phone | 703-824-0997 |
| Fax | 703-824-0042 |
| | |

Page 2 of 12                                                    PCF 5187-3560-117-9

Student ID.................................        Student Name.................................

**Job Description Document**

## POSITION OPPORTUNITY INFORMATION

| | |
|---|---|
| **Job Title** | Lifeguard |
| **Job Description** | This position offers the opportunity to work for a pool management company that provides lifeguard services to fine hotels and condominium communities in the areas of Virginia, Maryland and Washington DC. The pools are located in both indoor and outdoor locations. The outdoor pools will close near Labor Day. When the outdoor pools close it is only possible that some employees will be able to change their working location to an indoor pool location. This is decided by management and based on the employee's performance and the availability in the area. If an employee is working at an outdoor pool they cannot demand to be changed to an indoor location. As a employee of this company your primary tasks will be to ensure the safety of the patrons and facility you work at, preventing and responding to emergencies, maintain a clean pool area, keep record of pool chemical readings, provide an enjoyable, safe atmosphere for the patrons of the pool. You will ensure pool rules are being followed. |
| **Level of English Required** | Advanced |
| **Start Date** | 5 May 06 - 10 May 06 |
| **End Date** | 5 Sep 06 - 10 Sep 06 |
| **Gender Required** | None |
| **Day to report to Employer** | Please report to the employer as directed in the travel information section of this document. |
| **Expected days from arrival before starting work** | You should begin working 5 days after you arrive. You will first take your Red Cross certification. |
| **Estimated Average Hours over the course of the program** | Average weekly hours range from 40 to 60 per week. |
| **Pay Rate Estimate** | $7.00 per hour. $7.25 per hour once you pass the pool operator class. |
| **Estimated Tips** | This is not a tipped position. |
| **Estimated Overtime** | You are able to work over 40 hours per week however this is a seasonal business and is not required by law to pay overtime wages. Hours you work over 40 will be the same rate as regular hours. |
| **Required Skills** | You must take the required Red Cross course and become certified. This course will cost $175.00 and is paid thru payroll deduction. You will also take a test on pool operations. The employer will assist you to train for this course. Once you have passed this course you are eligible to receive $7.25 per hour. In order to pass the Red Cross Certification you will need to be able to swim 500 yards, dive 7 to 10 feet into the water, retrieve a 10-pound object from the bottom of the pool. In order to qualify for this position you must be a very good swimmer and a very strong swimmer. |
| **Expected Schedule** | Pool hours can vary at different locations however hours can begin as early as 6AM and end at dusk or approximately as late as 9PM. You will work 6 days a week and have one free day. There are shifts that range from 5 to 8 hours as well as double shifts. |
| **Drug Screening Policy** | Drug testing may be required randomly. |
| **Possible 2nd Job** | Yes You are able to work a second job however it cannot be with a competitor or another lifeguard business. It is also requested you do not work any overnight shifts as a second job as this effects your ability to work as lifeguard during the day. The employer will assist you in securing a second job. A second job can in no way interfere with your performance or availability of the primary employer. It is the responsibility of you and the second employer : to schedule hours around the primary employers scheduling needs. |
| **Additional application** | You will fill out new employment paper work as any new employee would. You will have housing terms provided upon your arrival. |
| **Possibility for job change within company** | No. |
| **Meal discounts** | Meal discounts are not provided. |
| **Uniforms** | Uniforms are required and will cost $65.00. The cost of uniform can be paid thru payroll deduction. |
| **Dress code** | You will receive full details on dress code during your orientation. You will need to arrive to work each shift dressed in the correct uniform. |
| **Grooming code** | You will be working directly with the public. You will need to arrive each shift neatly |

| | |
|---|---|
| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

Case 1:07-cv-00410-RJL    Document 3949    Filed 09/27/2008    Page 4 of 25
Case 1:07-cv-00410-RJL    Document 34-9    Filed 09/27/2007    Page 9 of 19

Page 3 of 12                                              PCF 5187-3560-117-9

Student ID.................................        Student Name.................................

| | cleaned and groomed. Proper use of daily hygiene products and sunscreen. |
|---|---|
| *Reminder: It can take between three and eight weeks from the date you start working to be paid. Please bring enough money to support yourself until you are paid. Check with employer to find out your first pay date.* | |

## SUGGESTED TRAVEL INFORMATION

| Nearest International Airport | Dulles |
|---|---|
| Nearest Airport | Dulles |
| Transportation from Airport to Employer and/or Housing | The employer would prefer you to arrive at the Dulles airport. As long as you provide your confirmed travel arrangements in advance (Intrax requires travel details be submitted no later than two weeks prior to arrival) the employer will arrange for you to be met at the airport. Do not expect to be picked up at the airport if you have not provided your travel details. You can send your travel information to the following email address, DCH@sunsetpoolsmgmt.com |
| Nearest Bus Station | Arlington, VA or Washington DC. It is suggested you arrive at Dulles airport if you are able to. |
| Bus Information | http://www.greyhound.com |
| Nearest Train Station | Not suggested. |
| Train Information | http://www.amtrak.com |

## SOCIAL SECURITY INFORMATION

| Nearest Social Security Office | 6295 Edsall Road, Alexandria, VA 22312 |
|---|---|
| How and When to Apply for the Social Security Card | The employer assists to the social security office. When you apply for social security you should have your card sent in the care of the employer to the employers address. |
| Social Security website | http://www.ssa.gov |

## HOUSING

| Housing Restrictions (yes/no) | Yes |
|---|---|
| Housing Restrictions | If housing restrictions apply, participants must remain in this housing to be employed by the employer identified in this document. Participants must remain employed by the employer identified in this document and remain in the Intrax Work/Travel Program to live in this housing. No exceptions will be granted unless agreed in writing in advance by Intrax Work/Travel. |
| Housing Information | There are several housing locations. The location of your housing will be based on the location you will work at. Housing is located within bicycle distance to each work area. Once you have selected and been confirmed for this position it is required that you live in and remain in the employer provided housing the entire term of your agreed employment dates. The employer provides a very detailed housing lease that you will be required to review, understand and sign if in agreement of. Do not sign this form if you do not understand the terms you are signing in agreement to. This is a legal housing lease and should not be taken lightly. IF you do not understand any part of the housing terms you should ask the employer, Intrax or your local representative for assistance to understand. |
| Address | Housing addresses are assigned upon arrival. |
| Estimated Cost | Housing for NON-furnished accommodations is $300.00 per month per person. Housing for FURNISHED accommodations is $310.00 per person per month. Once you are confirmed for the position you will need to send message to the employer with the housing you select, furnished for non-furnished. |
| Additional Costs (i.e. Bond) | There is a deposit of $100.00 per person due upon arrival. Housing deposits are refundable as long as you stay the date you agreed to and there is no damage to property upon move out inspection. There are bicycles available for your use. There is a deposit of $50.00 to $75.00 depending on the bicycle you choose. The deposits for bicycles are refundable as long as it is returned in the condition when you got it. |
| Features | Housing is in shared dorm style housing. You can choose if you want furnished or non-furnished accommodations. The cost for each is listed under housing cost. There are bicycles available for your use during your stay. The deposit charged for bicycles is listed under additional costs. Stove refrigerator are included. |
| Hostel Information | http://www.hiayh.org or http://www.hostels.com |

## AREA INFORMATION

| Average temperature | The following average highs and lows are listed for each month of the year; January?C -4C, |
|---|---|

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Page 4 of 12                                                PCF 5187-3560-117-9

Student ID.............................          Student Name.............................

| | |
|---|---|
| | February 9C 3C, March 14C 3C, April 21C 6C, May 26C 11C, June 29C 16C, July 32C 19C, August 31C 18C, September 27C 14C, October 21C 7C, November 15C 2C, December 9C -2C. |
| **Altitude** | N/A |
| **Information websites** | www.washington.org  www.virginia.org  www.mdisfun.org |
| **Nearest city** | All of the job locations are in Metro areas. |
| **Things to do** | There are a variety of museums that are free of charge, take a trip to see the White House, Capital, Washington Monument, Mount Vernon and much more! |
| **What to wear** | You should wear comfortable casual clothing that is appropriate for the temperatures during the months of your stay. Monthly temperatures are listed above in this document. |

## ADDITIONAL INFORMATION

| | |
|---|---|
| **Additional Information** | There are multiple locations for this position including the Virginia, Maryland and DC areas. The employer is unable to place you into a specific location until you have arrived. The area that you work in is based on business level demands and staffing demands during the time you arrive. If you have a specific request the employer will attempt to grant your request however it may not be possible. If for any reason you have a specific need to be in a desired location you will need to communicate this with the employer prior to your arrival. As the employer may not be able to grant such requests, you must understand and be able/in agreement to work in any of the locations. You will receive Red Cross certification upon your arrival this will cost $175.00 paid thru payroll deduction. The time for this will be approximately two days. You will have one day orientation. There is an additional agreement the employer requires to be reviewed, signed if in agreement and returned to the employer in order to confirm your position. There is an end of season bonus for those who have been recommended from their supervisors in the amount of $50.00.THE POOL LOCATIONS ARE LOCATED AT BOTH INDOOR AND OUTDOOR FACILITIES. THE OUTDOOR POOLS CLOSE NEAR LABOR DAY. AFTER THE OUTDOOR POOLS CLOSE THERE IS NO LONGER A GAURANTEE OF EMPLOYMENT TO THOSE WORKING IN THE OUTDOOR LOCATIONS. IT IS POSSIBLE BASED ON THE EMPLOYERS DECISION AND THE PARTICIPANTS WORKING PERFORMANCE TO BE OFFERED A POSITION AT AN INDOOR FACILITY. YOU SHOULD UNDERSTAND CLEARLY THIS IS NOT GAURANTEED. |

*Based on the information available to Intrax Work/Travel, the contents of this Premium Placement Confirmation Form are true and accurate as of the date of its issuance to the Premium Placement Service participant. All information is subject to change depending on a variety of factors, including but not limited to weather, employment trends and staffing changes.*

| | |
|---|---|
| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

PCF 5187-3560-117-9

Student ID..................................        Student Name..................................

## Premium Placement Participant Terms & Conditions
### (revised on 30AUG04)

*Please read this document carefully, and make sure that you understand it before you sign it.*

**By signing this document, you are agreeing to the following terms and conditions ("Terms & Conditions"):**

**You certify that:**

1. The information provided on your application is complete and accurate.
2. You are between the ages of 18 and 28 years old at the time of application.
3. You are enrolled in a college or university outside of the United States at the time of application.
4. You are registered for a full-time course load for the semester following your participation in the Intrax Work/Travel Program.
5. You speak, read, and understand English at the level indicated on your application.
6. You are physically capable of performing the tasks required as outlined in your job description.
7. You are able to participate in the Intrax Work/Travel Program for the period indicated in the Placement portion of this Premium Placement Confirmation Form ("PCF").

**You agree that:**

1. Within three (3) days of arriving in the United States you will confirm your arrival with Intrax Work/Travel by doing only one of the following (1) mailing your self-addressed, postage paid Check In Form to Intrax Work/Travel headquarters at 2226 Bush Street, San Francisco, CA 94115, (2) completing the on-line Check In Form at www.intraxworktravel.com or (3) faxing the Check In Form to 415-674-5251. Failure to do one of the above will result in your immediate dismissal from the Intrax Work/Travel Program.

2. You will participate in an orientation provided by Intrax Work/Travel or an Intrax Work/Travel agent representative. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

3. You will report to the employer listed in section #1 of your DS-2019 form on the date indicated in section #3 of the same form. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

4. If any change occurs in your employment as indicated on your DS-2019 form pursuant to these Terms & Conditions, you will pay the administrative fee as well as verify such change by following the procedures and completing the

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
|---|---|
| 600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | JDD 5187-3560-117 |

Student ID............................        Student Name...................................

documentation required by Intrax Work/Travel. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

5. You will not work beyond the program end date listed in section #3 of your DS-2019 form.

6. You will leave the United States within thirty (30) days of the program end date listed in section #3 of your DS-2019 form.

7. If you change your address while in the United States, you will notify Intrax Work/Travel by telephone or email and the Department of Justice by using form AR-11 within three (3) business days. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

8. While in the United States, you will obey all federal, state, and local laws and the rules of the Intrax Work/Travel Program. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

9. Upon receipt of the Intrax Work/Travel Participant Handbook you will read the entire handbook and ask Intrax Work/Travel or the Intrax Work/Travel agent representative for clarification on any point(s) that are not explicitly understood.

**You understand that:**

1. A DS-2019 form enables you to apply for a J-1 Work/Travel visa. The United States Embassy or Consulate may grant or deny your application for a visa. Intrax Work/Travel is not responsible for and cannot control or change their decision.

2. Even if you receive a J-1 Work/Travel visa, you may be denied entrance into the United States by a Bureau of Citizenship and Immigration Service Officer. Intrax Work/Travel is not responsible for and cannot control or change any denial of entrance into the United States.

3. You are responsible for bringing enough money to the United States to cover the cost of your food, housing and other personal expenses for at least one month. We suggest a minimum of $1,000.00 due to possible delays with Social Security and distance of travel from airport to employer, advance payment for accommodation needed upon arrival and other initial investments needed. Intrax Work/Travel is not responsible for such expenses, or for any period of time during which you are not being paid by an employer. Intrax Work/Travel cannot loan money to you.

4. You are responsible for making your own travel and housing arrangements, and must provide your travel and housing plans at least two (2) weeks prior to arrival in the United States by ensuring that your plans are submitted to the Intrax Work/Travel website by the Intrax Work/Travel agent representative in your home country. Intrax Work/Travel is not responsible for making or assisting you in making your individual travel or housing arrangements.

5. A J-1 Work/Travel visa cannot be extended. You must return home at the end of your program, or face federal fines and disbarment from re-entering the United States.

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
| --- | --- |

Student ID.................................    Student Name.....................................

6. As an Intrax Work/Travel participant, you are subject to the United States civil and criminal justice system. Failure to obey federal, state or local laws may result in civil liability, criminal prosecution, fines, jail sentences, or other penalties. Intrax Work/Travel is not responsible for any civil or criminal liability you may incur or for assisting or defending you in any way in connection with any legal claims made against you.

7. Intrax Work/Travel is your official program sponsor while you are in the United States. The Intrax Work/Travel staff is available to assist you with any questions or to advise you regarding any challenges you may experience while you are participating in the Intrax Work/Travel Program. In the United States, you may call Intrax Work/Travel (toll free) at 1-888-224-0450 weekdays from 9 a.m. to 5 p.m., Pacific Standard Time. You may call the same toll free line at any time, 24 hours a day, 7 days a week, in case of an emergency. You may also call 1-415-674-5252 at your own expense from anywhere in the world, weekdays from 9 a.m. to 5 p.m., Pacific Standard Time.

8. If you would like to lodge a formal grievance about the Intrax Work/Travel Program, you will follow the Intrax Work/Travel Grievance Procedures.

9. If you are dismissed from the Intrax Work/Travel Program for any reason, you will be out of status on your J-1 visa, you will no longer have medical insurance and you are required to leave the country immediately or face possible further penalties.

**As a Premium Placement Service participant, you understand and agree that:**

1. You will remain at your employment with the employer listed in Section #1 of your DS-2019 form for the duration you originally indicated on your enrollment application unless you are terminated by the employer or you obtain prior written authorization from Intrax Work/Travel to leave your employment. If you leave your employment without having been terminated by the employer or obtaining prior written authorization from Intrax Work/Travel, you will be dismissed from the Intrax Work/Travel Program immediately. You agree to contact Intrax Work/Travel if any job-related difficulties or disputes arise that may affect your continued employment.

2. Your employer may terminate your employment at any time, without prior notification, with or without cause. Intrax Work/Travel is not responsible for and cannot control employment decisions made by your employer.

   (a) If your employment is terminated for cause, including but not limited to poor job performance, misconduct, or misrepresentation of your qualifications on your application, you will be dismissed from the Intrax Work/Travel Program immediately and you will forfeit the entire program fee.

   (b) If your employment is terminated without cause, through no fault of your own, during the first eight (8) weeks of your participation in the program, Intrax Work/Travel will attempt to provide you with a new employment opportunity suitable to your skills, experience and qualifications. If you

Intrax Work Travel
600 California St., 10th Floor
San Francisco CA 94108
Phone: (415) 434-5440
Fax: (415) 434-5430

THIS DOCUMENT RELATES TO :
JDD 5187-3560-117

Student ID............................................    Student Name............................................

accept a new employment opportunity, you will be responsible for the cost
of transportation to the new employer's location.

(c) Under subsection (b), if for any reason you do not accept a new
employment opportunity, or if Intrax Work/Travel cannot provide you
with a new employment opportunity suitable to your skills, experience and
qualifications, you may remain in the Intrax Work/Travel Program as an
Independent Placement Service participant, and Intrax Work/Travel will
refund your representative agency the difference between the Premium
Placement Service program fee and the Independent Placement Service
program fee.

(d) If your employment is terminated without cause, through no fault of your
own, at any time after the first eight (8) weeks of your participation in the
program, Intrax Work/Travel will assist you by providing information
about possible new employment opportunities suitable to your skills,
experience and qualifications. However, Intrax Work/Travel is not
responsible under any circumstance for providing you with a new
employment opportunity upon such termination. If you find and accept
new employment, you will be responsible for the cost of transportation to
the new employer's location.

(e) Under subsection (d), if your employment is terminated without cause at
any time after the first eight (8) weeks of your participation in the Intrax
Work/Travel Program, you may remain in the program as an Independent
Placement Service participant, but you will not be entitled to a refund of
any part of the Premium Placement Service program fee.

(f) **NOTE – Ski Resort Exception:** The availability of employment at a ski
resort is inherently seasonal and dependent on snow fall and other factors
beyond the employer's or Intrax Work/Travel's control. If you accept an
employment opportunity at a ski resort, you agree to assume the risk that
your employment may be terminated or your work schedule and hours
may be limited. Accordingly, if you are employed at a ski resort and,
through no fault of your own, you are terminated or subject to reduced
hours at any time, regardless of the length of your actual participation in
the Intrax Work/Travel Program or the date of such termination or
reduction, Intrax Work/Travel will not provide you with a new
employment opportunity or a refund of any part of the Premium Placement
Service program fee. Intrax Work/Travel may, in its discretion, assist you
with seeking a new employment opportunity. If you find or accept new
employment, you will be responsible for the cost of transportation to the
new employer's location.

3. Your employer may have to limit the number of hours you work per week for a
variety of reasons, including but not limited to poor job performance, misconduct,
or circumstances beyond the employer's control.  Intrax Work/Travel is not
responsible for and cannot guarantee your schedule or that you will be able to
work a minimum number of hours per week. However, if, through no fault of your

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Student ID............................................        Student Name......................................

own, you have worked less than thirty (30) hours per week for at least three (3) consecutive weeks, Intrax Work/Travel may, in its discretion, assist you with seeking a new employment opportunity. If you find or accept new employment, you will be responsible for the cost of transportation to the new employer's location.

4.  If you secure new employment pursuant to any of the provisions in this section, you must verify such new employment in writing following Intrax Work/Travel's required procedures and documentation. Failure to comply will result in your immediate dismissal from the Intrax Work/Travel Program.

5.  The Intrax Work/Travel Program does not include housing and Intrax Work/Travel is not responsible for providing housing to you. However, housing may sometimes be available in connection with certain employment opportunities If housing is available with your employment opportunity, the information and restrictions on such housing are identified in the housing section of the Placement portion of this Premium Placement Confirmation Form ("PCF"). You must comply with any and all requirements indicated in the housing section of your PCF. Failure to comply with these requirements will result in your immediate dismissal from the Intrax Work/Travel Program. If housing is available with your employment opportunity, Intrax Work/Travel makes no representations or guarantees regarding the nature or quality of such housing. If your employment opportunity includes housing, you agree to contact Intrax Work/Travel if any housing-related difficulties or disputes arise.

**You understand and agree to the following Premium Placement Service Refund Policies\*:**

1.  SEVIS fee: Once a DS form has been issued to you, the SEVIS fee is non-refundable even if your visa is denied or your application is cancelled.

2.  Visa Denials: If your visa application is denied, Intrax Work/Travel will refund the placement fee portion of your program fee provided the required procedures are followed. Refund of the placement fee is contingent upon (1) Intrax Work/Travel being informed by the representative agency within 3 days of the visa denial; (2) Intrax Work/Travel receiving the DS-2019, a copy of the passport biographical pages as well as the page showing the denial; (3) Intrax Work/Travel receiving the Visa Denial Form from the representative agency providing an explanation for the denial. The documentation must be received within 14 days of the denial. The application fee portion of the program fee is non-refundable.

3.  Denial of Entry: If you are denied entry to the United States by a Bureau of Citizenship and Immigration Service Officer, Intrax Work/Travel will refund the placement fee portion of your program fee. Refund of the placement fee is contingent upon Intrax Work/Travel's receipt of official proof of such denial of entry, including a statement of the reason for the denial, a copy of your passport and a letter from the Intrax Work/Travel agent representative in your home country explaining the reason for the

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
|---|---|
| 600 California St., 10th Floor San Francisco CA 94108 Phone: (415) 434-5440 Fax: (415) 434-5430 | JDD 5187-3560-117 |

Case 1:07-cv-00410-RJL    Document 29-9    Filed 02/05/2008    Page 23 of 25
Case 1:07-cv-00410-RJL    Document 3-4    Filed 03/27/2007    Page 14 of 13

Page 10 of 12                                                    PCF 5187-3560-117-9

Student ID.........................................    Student Name..........................................

denial. The documentation must be received within 14 days of the denial of
Entry. The application fee portion of the program fee is non-refundable.

4. Cancellations Prior to Placement Confirmation: If for any reason you cancel
your Premium Placement Service application before your placement has
been confirmed, Intrax Work/Travel will refund only the placement fee
portion of your program fee. The application fee portion of the program is
non-refundable.

5. Cancellations/Withdrawals After Placement Confirmation: If for any reason
you cancel or withdraw from the Intrax Work/Travel Program at any time
after your placement has been confirmed, whether before or after your
arrival in the United States, Intrax Work/Travel will not refund any portion
of the program fee.

6. Termination from Employment Without Cause: If you are terminated from
your employment without cause during the first eight (8) weeks of your
participation in the Intrax Work/Travel Program, Intrax Work/Travel will
refund only the difference between the Premium Placement Service program
fee and the Independent Placement Service program fee and will do so only
if: (a) you are not employed by a ski resort and (b) Intrax Work/Travel
cannot provide or you do not accept its offer of a new employment
opportunity. Under all other circumstances, if you are terminated from
employment without cause, Intrax Work/Travel will not refund any portion
of the program fee.

7. Changes in the Premium Placement Confirmation Form: If upon arrival
actual circumstances vary from that which is stated on the Placement portion
of this Premium Placement Confirmation Form you will not be entitled to a
refund.

8. Reduced or Limited Work Schedule: If your work schedule or hours of
work per week are reduced or limited for any reason, Intrax Work/Travel
will not refund any portion of the program fee.

9. Termination from Employment for Cause or Dismissal from Program: If
you are terminated by your employer for cause, including but not limited to
termination due to poor performance, misconduct or misrepresentation of
your qualifications on your application, or if you are dismissed from the
Intrax Work/Travel Program for any reason, including but not limited to the
grounds for dismissal identified in these Terms & Conditions, Intrax
Work/Travel will not refund any portion of the program fee.

10. Refunds Payable to Local Representative agency: Intrax Work/Travel will
pay any refund that is due pursuant to the above provisions by the end of the
program season for which you applied. Intrax Work/Travel will make such
payment only to the local Intrax Work/Travel representative agency in your
home country. Intrax Work/Travel will not pay any refund directly to you.
Intrax Work/Travel is not responsible for ensuring that any refund it pays to
the local Intrax Work/Travel representative agency in your home country is

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Case 1:07-cv-00410-RJL    Document 29-9    Filed 02/05/2008    Page 24 of 25
Case 1:07-cv-00410-RJL    Document 3-4    Filed 03/27/2007    Page 12 of 13

Page 11 of 12                                                   PCF 5187-3560-117-9

Student ID................................    Student Name................................

paid to you. You and the local representative agency must arrange for any refund to be paid to you.

\* All refund amounts are based on the original pricing charged to your representative agency by Intrax Work/Travel as per their Partnership Agreement. For specific refund amounts please ask your representative agency.

**You understand and agree to the following Dispute Resolution and Construal Provisions:**

1. <u>Arbitration</u>: You understand and agree that any dispute, controversy or claim in any way arising out of, related to, or connected with your participation in the Intrax Work/Travel Program, the Intrax Work/Travel Premium Placement Service, or these Terms & Conditions shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, USA. The arbitration shall be conducted before an agency or arbitrator agreed upon by you and Intrax Work/Travel or, if none, before an arbitrator selected by the American Arbitration Association. Either you or Intrax Work/Travel may appear telephonically at the arbitration hearing. Any award of the arbitrator may be enforced in any court of competent jurisdiction of the federal or state courts of San Francisco County, California, USA. In any action, including arbitration, brought in connection with your participation in the Intrax Work/Travel Program or the Intrax Work/Travel Premium Placement Service, the prevailing party shall be entitled to recover all reasonable costs and expenses incurred by such party, including attorney's fees. The non-prevailing party shall also be solely responsible for all costs of arbitration. Any dispute as to the reasonableness of such costs and expenses shall be determined by the arbitrator.

2. <u>Severability</u>: If any provision of these Terms & Conditions or their application is held to be invalid, illegal or unenforceable for any reason, the invalid, illegal or unenforceable provision or application shall not affect or impair the other provisions or applications of the Terms & Conditions which can be given effect without the invalid, illegal or unenforceable provision or application. To this end the provisions of this Agreement are declared to be severable and shall be construed and enforced accordingly.

3. <u>Waiver</u>: No waiver by Intrax Work/Travel of your failure to comply with any of these Terms & Conditions shall be construed to be, or shall be, a waiver of any other failure to comply with such Terms & Conditions. No waiver shall be binding unless in writing and signed by Intrax Work/Travel.

4. <u>Headings Not Controlling</u>: The headings used in the document setting forth these Terms & Conditions are used only for ease of reference and are not controlling.

5. <u>Governing Law</u>: These Terms & Conditions shall be governed by and construed under the laws of the State of California, USA, without regard to principles of conflict of laws.

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Page 12 of 12                                  PCF 5187-3560-117-9

Student ID: 44297          Student Name: *Veselin Ivanov*

*Please note that based on the information available to Intrax Work/Travel, the contents of the Premium Placement Confirmation Form are true and accurate as of the date of its issuance to the Premium Placement Service participant. All information is subject to change.*

- *I am capable of reading and understanding these Terms & Conditions in English.*
- *I have read these Terms & Conditions carefully, have had the opportunity to ask questions and obtain advice as to their meaning, and understand them fully.*
- *I do not rely on any statements or representations that are not expressly stated in these Terms & Conditions.*
- *I agree to abide by these Terms & Conditions.*

Signed: _____    Date: 07. 12. 2006

Print Name: Veselin Ivanov    Intrax Student ID#: 44297

| Intrax Work Travel 600 California St., 10th Floor San Francisco CA 94108 Phone: (415) 434-5440 Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO : JDO 5187-3560-117. |
|---|---|

# EXHIBIT
# G

**jective**
ne objective of Sunset Pool, Inc. is to manage
ng pools in a safe and efficient manner
relieving the Property Managers and Owners
me, worry and responsibility involved in
g their facility. As an employee of Sunset
nc., it is your job to help us provide the best
service to our customers.



# JOB DESCRIPTION

- We manage over 100 pools in the Virginia, Washington, DC and Maryland area

- Starting wage per hour: $7.00

- Pool operator rate: $7.25

- Lifeguard training course: $175

- Cost of housing per month: $300

- Cost of furniture per month: $10

- Uniform cost: $65

- Refundable housing deposit: $100

- Refundable bicycle deposit: $50-$100

- Ending bonus for overall performance: $50



**Accommodation**
Sunset Pools Management provides partially equippe
apartments. The equipment consists of: refrigerator,
stove, dishwasher, A/C heating system, chairs and
table, airbeds or mattresses, pots, dishes and
silverware.

**Training**
Students must meet the requirement for Lifeguard
Training and Pool Operators. Prior to the start of the
training participants are required to pass a swimming
skills test. The test includes but is not limited to:
- swimming 500 yards (approximately 460 meters)
    - surface diving to a depth of 7-10 feet
    (approximately 2.1-3 meters)
    - retrieving a 10 pound (approximately 4.5 kg) object
    and return to the surface.

Upon successful completion of the American Red
Cross Lifeguard Training course, student will receive
an Cardio Pulmonary Resuscitation (CPR) for the
Professional Rescuer certificate, which is valid for
1 year. Student will also receive an American Red
Cross Lifeguard Training certificate and First Aid,
which are valid for 3 years.





Washington landmarks



national landmarks, free museums and a
shing dining and culture scene, Washington
appealing destination.

lmarks include:

**tol Building** - where Congress meets and
lucts business. It is located on the east end
e Mall

**e House** - the official residence of the US
ident. It is located at 1600 Pennsylvania
ue

**hington Monument** - it stands just over 555
Memorial stones from the 50 States, foreign
tries and organizations line the inside walls.
top of the monument, which you can get to
by elevator, provides a panoramic view of the

**thsonian Institution** - it is a network of museums
gt galleries, research projects and special
ormances. It includes 14 museums. Some of
are the National Air and Space Museum,
um of Natural History and the National
Gallery.

**al Mall** - it is a 146-acre stretch of lawn that
from the Potomac River to the Capitol
ng. The area hosts political rallies, festivals
her events.



**Sunset Pools**
management, Inc.

1745 Pennsylvania Ave NW Suite 201
Washington, DC 20006

**sunsetpool.net**



sunsetpo

# EXHIBIT
# H

| Employee | | | | | SSN | Status (Fed/State) | Allowances/Extra |
|---|---|---|---|---|---|---|---|
| MIROSLAV N. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | | | Single/Single | Fed-1/15/DC-1/0 |
| | | | | | Pay Period: 09/09/2006 - 09/22/2006 | | Pay Date: 09/29/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 5,130.00 |
| BONUS | | | 976.00 | 3,189.00 |
| | | | 1,616.00 | 8,319.00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -234.30 | -976.70 |
| DC - Withholding | -95.00 | -421.00 |
| | -329.30 | -1,397.70 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -1,395.00 |
| UNIFORM & CLASS | | -240.00 |
| HOME PHONE | | -15.00 |
| SECURITY DEPOSIT | | -100.00 |
| | -155.00 | -1,750.00 |

| Net Pay | 1,131.70 | 5,171.30 |
|---|---|---|

SUNSET POOL INC, 3808 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

## SUNSET POOL, INC.

**21653**

| Employee | | | | | SSN | Status (Fed/State) | Allowances/Extra |
|---|---|---|---|---|---|---|---|
| MIROSLAV N. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | | | Single/Single | Fed-1/15/DC-1/0 |
| | | | | | Pay Period: 08/26/2006 - 09/08/2006 | | Pay Date: 09/15/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 4,490.00 |
| BONUS | | | 456.00 | 2,213.00 |
| | | | 1,096.00 | 6,703.00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -131.30 | -742.40 |
| DC - Withholding | -59.00 | -326.00 |
| | -190.30 | -1,068.40 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -1,240.00 |
| HOME PHONE | -5.00 | -15.00 |
| UNIFORM & CLASS | | -240.00 |
| SECURITY DEPOSIT | | -100.00 |
| | -160.00 | -1,595.00 |

| Net Pay | 745.70 | 4,039.60 |
|---|---|---|

SUNSET POOL INC, 3808 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

## SUNSET POOL, INC.

**21054**

| Employee | | | | | SSN | Status (Fed/State) | Allowances/Extra |
|---|---|---|---|---|---|---|---|
| MIROSLAV N. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | | | | Fed-1/15/DC-1/0 |
| | | | | | Pay Period: 07/01/2006 - 07/14/2006 | | Pay Date: 07/21/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 7.00 | 560.00 | 2,170.00 |
| BONUS | | | 210.00 | 910.00 |
| | | | 770.00 | 3,080.00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -82.30 | -330.20 |
| DC - Withholding | -36.00 | -144.00 |
| | -118.30 | -474.20 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -620.00 |
| UNIFORM & CLASS | -40.00 | -160.00 |
| HOME PHONE | -5.00 | -5.00 |
| | -200.00 | -785.00 |

| Net Pay | 451.70 | 1,820.80 |
|---|---|---|

SUNSET POOL INC, 3608 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

**21794**

| Employee | | | | |
|---|---|---|---|---|
| VESELIN V. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | |

| | | | SSN | Status (Fed/State) | Allowances/Extra |
| ***-**-0101 | | | Single/Single | | Fed-1/15/DC-1/0 |
| Pay Period: 09/09/2006 - 09/22/2006 | | | | | Pay Date: 09/29/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 5,133.50 |
| BONUS | | | 1,264.00 | 2,898.00 |
| | | | 1,904.00 | 8,031.50 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -306.30 | -959.70 |
| DC - Withholding | -121.00 | -407.00 |
| | -427.30 | -1,366.70 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -1,395.00 |
| UNIFORM & CLASS | | -240.00 |
| HOME PHONE | | -15.00 |
| SECURITY DEPOSIT | | -100.00 |
| | -155.00 | -1,750.00 |

| Net Pay | 1,321.70 | 4,914.80 |
|---|---|---|

SUNSET POOL INC, 3608 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

## SUNSET POOL, INC.

**21693**

| Employee | | | | |
|---|---|---|---|---|
| VESELIN V. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | |

| | | | SSN | Status (Fed/State) | Allowances/Extra |
| ***-**-0101 | | | Single/Single | | Fed-1/15/DC-1/0 |
| Pay Period: 08/26/2006 - 09/08/2006 | | | | | Pay Date: 09/15/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 4,493.50 |
| BONUS | | | 332.00 | 1,634.00 |
| | | | 972.00 | 6,127.50 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -112.30 | -653.40 |
| DC - Withholding | -50.00 | -286.00 |
| | -162.30 | -939.40 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -1,240.00 |
| HOME PHONE | -5.00 | -15.00 |
| UNIFORM & CLASS | | -240.00 |
| SECURITY DEPOSIT | | -100.00 |
| | -160.00 | -1,595.00 |

| Net Pay | 649.70 | 3,593.10 |
|---|---|---|

SUNSET POOL INC, 3608 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

## SUNSET POOL, INC.

**21404**

| Employee | | | | |
|---|---|---|---|---|
| VESELIN V. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | |

| | | | SSN | Status (Fed/State) | Allowances/Extra |
| ***-**-0101 | | | Single/Single | | Fed-1/15/DC-1/0 |
| Pay Period: 07/29/2006 - 08/11/2006 | | | | | Pay Date: 08/18/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 7.00 | 560.00 | 3,293.50 |
| BONUS | | | 196.00 | 1,106.00 |
| | | | 756.00 | 4,399.50 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -80.30 | -460.80 |
| DC - Withholding | -35.00 | -201.00 |
| | -115.30 | -661.80 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -930.00 |
| UNIFORM & CLASS | -40.00 | -240.00 |
| HOME PHONE | -5.00 | -10.00 |
| SECURITY DEPOSIT | -100.00 | -100.00 |
| | -300.00 | -1,280.00 |

| Net Pay | 340.70 | 2,457.70 |
|---|---|---|

SUNSET POOL INC, 3608 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

# EXHIBIT
# I



**Sunset Pool**
Management, Inc.

1745 Pennsylvania Ave NW Suite 201, Washington DC 20006
Phone: 703 824 0997 Fax: 703 824 0042

## EMPLOYMENT AGREEMENT

## SUMMER 2006

## LIFEGUARD

**Our Mission Statement:**

Ensuring the safety of the facility and patrons by preventing and responding to emergencies, keeping the pool area clean, recording chemical readings and providing an enjoyable, safe and fun atmosphere.

**Section I:**

**Exchange Visitor (Please Print)**

Date: 24. 05. 2006

First Name: Miroslav

Last Name: Ivanov

Passport Number: 325305139

Date of Birth: 24. 05. 1985

Country of Citizenship: Bulgaria

Address in Country of Citizenship: Sofia, "Su.Hroicar", bl. 132, ent. V, app. 52

Mother's Maiden Name (First and Last Name): Svetlana Atanasova

Father's Name: Petyo Atanasov

Email Address: mr.mpivanov@yahoo.com

Address in the United States: 249 8th Street ME, Washington, DC Zip: 20006

Telephone Number:

Emergency Contact (Name, Phone Number and Relationship):

School Attended:

Gender:  ☒ Male  _____ Female

Swimming Ability:  _____ Poor  _____ Good  _____ Very Good  ☒ Excellent

English Language:  _____ Poor  _____ Good  ☒ Very Good  _____ Excellent

## Section II:

### Training

Students must meet the requirement for Lifeguard Training and Pool Operators. Prior to the start of the training, participants are required to pass a swimming skills test. The test includes but is not limited to:

- Swimming 500 yards,
- Surface diving to a depth of 7-10 feet,
- Retrieving a ten pound object and returning it to the surface.

Failure to pass the lifeguard training will automatically result in termination of employment. Upon successful completion of the American Red Cross training course, applicant will receive a Cardio Pulmonary Resuscitation (CPR) for the Professional Rescuer certificate, which is valid for one year. Applicant will also receive an American Red Cross Lifeguard Training and First Aid certificate, which is valid for three years.

M.I. Initials

## Section III:

### Arrival/Departure

Students must arrive in Washington, D.C. no later than two days before their date of employment begins and must stay until the end of the agreed employment period. Early termination by the student will result in a $200 cancellation penalty. Students must contact the Sunset Pools Management office at least two weeks prior to their arrival in the United States and must provide Sunset Pools Management with their exact arrival and departure dates. A pick up will be arranged only from the following area airports: Dulles (IAD) and Reagan National (DCA) as well as bus terminals in Washington, D.C. and the Arlington/Alexandria area. Pick up hours are Monday–Saturday 8am-9pm.

M.I. Initials

## Section IV:

### Wages

Lifeguards are paid $7.00 per hour.

Lifeguards with a Pool Operator's License are paid $7.25.

There is no overtime pay.

Based on the recommendation of their supervisors and hotel/property managers, the lifeguards will receive a $50.00 bonus at the end of their summer work program.

M.I. Initials

## Section V:

### Second Jobs

Student may find second jobs at restaurants, or other companies, unless it interferes with Sunset Pools Management's schedules. Sunset Pools Management must approve the second employer. Students may not apply for or accept a second job at another swimming pool company. Night shifts are not allowed.

M.I. Initials

## Section VI:

### Apartments

1.    Sunset Pools Management may deduct money from an employee's pay to pay the rent and fees associated with an apartment provided by Sunset Pools Management.

2.    Sunset Pools Management provides partially equipped apartments for an additional $10.00 per month. The equipment consists of: a refrigerator, stove, dish washer, A/C heating system, chairs and table, airbeds or mattresses, pots, dishes and silverware. There will be no pillow cases, sheets or blankets provided.

3.    Apartments are available May 15, 2006. Students must leave their apartments by September 30, 2006. Any student wishing to stay in Sunset Pools Management's apartments after September 30 must complete and deliver and Apartment Application Form to Sunset Pools Management's office by July 1, 2006.

4.    Apartments leased by Sunset Pools Management are subject to inspections by personnel in charge of Sunset Pools Management's housing policy.

5.    Sunset Pools Management's personnel inspect the overall condition of the apartments, damages to the equipment and living conditions.

6.    Remedies of any negative finding must be done within the appropriate period and the apartment will be re-inspected at the stated date.

7.    If a Sunset Pools Management personnel does not find the apartment in adequate condition the employee may lose his or her housing deposit. Repetitive failure to meet housing standards in inspections shall lead to termination of the employment agreement.

8.    Friends may not stay in the apartment unless approval is received from Sunset Pools Management before the friend arrives. There is a daily charge for any approved friends' overnight stay.

9.    Sunset Pools Management requires an apartment deposit of $100.00. The deposit will be returned if the apartment is returned in the same condition it was in or move in day and if there are no housing violations. Violations include but are not limited to: damage to any walls, windows, doors or equipment; allowing friends to stay in the apartment without approval, and complaints from the property management.

**Section X:**

**General Provisions**

Date of employment: 24 / 05 /2006 to 25 / 09 /2006
Starting wage per hour: $7.00
Average number of hours: 40-60 hours per week
Lifeguard training course: $175
Pool operator rate: $7.25
Ending bonus for overall performance: $50
Cost of housing per month: $300
Cost of furniture per month: $10
Refundable housing deposit: $100
Refundable bicycle deposit: $50-$100
Uniform cost: $65 (Preferred size _M_ )

_M.I_ Initials

In accepting the position offered, I agree not to work past the last day of work stated on my visa. I will leave the United States by this date.

I understand that upon my termination from Sunset Pools Management, I have 24 hours to vacate the apartment Sunset Pools Management has provided for me.

I understand that Sunset Pools Management has the right to terminate my housing contract or terminate my employment at any time for any reason.

Employees who are terminated will be reported to the U.S Citizenship and Immigration Services (USCIS) to have their visas revoked.

**Sunset Pools Management, Inc.**

By: _Desi Chancheva_

Title: _Office Manager_

Date: _05/24/06_

**Applican**

_Mike Boui Ivanov_

Signature _____

Date: _27 00 2006_

# EXHIBIT
# J

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MIROSLAV IVANOV, et al | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Civil No.: 7-CV-00410 |
| | ) | |
| SUNSET POOLS MANAGEMENT, INC. | ) | |
| ET AL, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DECLARATION OF BABAK KIANI

I, Babak Kiani, declare as follows, pursuant to 28 U.S.C. §1746:

1.    I am Babak Kiani, a regional manager for Sunset Pools Management, Inc.

2.    I remember the plaintiffs, Miroslav and Veselin Ivanov, in this matter.  I remember in particular they sent pictures of parties they had at their apartment, including alcohol and lots of other people, including people staying over, and some pictures of them not wearing much clothes.

3.    I interviewed them in Bulgaria, in English.  They spoke good English.  They took the regular CPR/lifeguard class in Arlington, in English, and had regular lifeguard duties.  See CPR certifications and pool operators' license attached.  All our lifeguards have to be proficient in English, and plaintiffs spoke English well.  They passed written lifeguard exams in English, worked in English, and took lifeguard classes in English.  Like me, they spoke English with an accent, but they spoke fluently.

*BK*

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE

AND CORRECT.

EXECUTED ON MAY 11, 2007 IN ARLINGTON, VA.

BABAK KIANI

# EXHIBIT
# K

## Application Form 2005/2006             ZIP Youth & Student Travel

**Please complete the application form and return it at least on the interview date. Please be precise, because all this information will be used by ZIP Tavel in the future.**

**Personal information**

First name _Miroslav Petrov Ivanov_

Family name _Ivanov_

Date of birth _24.05.1985_   Passport number _____

Family Status _single_                    Children _____

Postal address _"Sveta Troica" bl. 132, ent. V, ap. 52_   City _Sofia_

Contact telephone No (include area code) _02/920 42 66_   Mobile _0896 578297_

E-mail(s) winter email _wlcstat@abv.bg_ summer email _____

Parents address _"Sveta Troica" bl. 132 ent. V, ap. 52_   City _Sofia_

Parents telephone No _02/920 42 66_   _0888 336 183_

Emergency contact _Miroslav Ivanov   0896 578297_
                                    (Name; Telephone No)

University/Employer _University of Library Sievce_ Faculty _____

Year of study/work _first_

Have you ever been on another exchange program  Yes **No**   When?_____

Which was your sponsoring organization and agency in Bulgaria? _____

Have you ever applied for US/UK visa? /circle one or both, if applicable/   Yes   **No**

When?_____

Was visa issued?  Yes  **No**

If yes, what was the purpose of your visit?_____

Have your parents been in US/UK?  Yes **No**   If yes, how long have they been there? _____
/circle one or both, if applicable/

---

**Please evaluate your knowledge of English:**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | (8) | 9 | 10 |
|---|---|---|---|---|---|---|-----|---|-----|
| poor | | | | | | | | | excellent |

**Your personality**

◊ Why do you want to participate in this program? _Beause I love to travel around the world, and this is good opportunity to visit USA_

◊ How do you feel about working in a group? _I feel pefect, I don't have a problem to work with other people_

◊ Why do you think, you are right candidate for exchange program? What are your strongest traits? _Because I'm a student, I'm not lazy and it will be a pleasure for me to work in other country with other people_

**Research questions**
- How did you hear about ZIP Travel?

From my friend Ralitsa

Office use only

2. Ralitsa Kostova

- How did you hear about
ZIP Travel programs?

From my friend Ralitsa she
was in USA with ZIP Travel last year

Office use only
1. _____
2. _____
3. _____

◇ Why did you choose ZIP Travel?
a. Good price
(b.) Because ZIP assists in finding a job
c. I chose ZIP by chance
(d.) Because I like the service
Other/please, specify/_____

◇ Have you tried to apply/ applied in other agencies?
a. If Yes, which? _____
(b.) No
◇ What did you like/ didn't like in other agencies? _____

**Medical history**

Are you good in health?     (Yes)     No _____

Any physical limitation     Yes     (No) (if yes please specify) _____

Do you have any allergies? Yes     (No) (If yes please specify) _____

Do you consume alcoholic beverages?     Daily     Weekly     (Seldom)     Never

Do you smoke?     Yes     (No)     Occasionally

Have you ever been arrested? Yes     (No)     (if yes a detail explanation must be enclosed)

I, hereby, agree that the information given above is accurate and correct. I agree, that ZIP Travel will use this information for future program purposes.

I am aware that fraudulent or incorrect presentation of information may lead to my dismissal from the any of ZIP Travel programs, which mean the cancellation of the contract and the loss of advanced payment for the program.

Name _Miroslav Ivanov_

Signature _____

Date _7.12.2005_

**Intrax Work/Travel Program**

*Please complete the following application for the Independent or Premium Placement Service. Please remember that participants must be 18 - 28 years old, currently enrolled in a university outside the United States and able to speak, read and understand English. Participants may only apply to visit the United States during their summer break from school.*

**Personal Information**

Family Name: _Ivanov_

First Name: _Miroslav_

Middle Name: _____

Gender:   ☒ Male    ☐ Female

Birth Date (month/day/year): _05/24/1985_

Address Line #1: _Sveta Troica", bl. 132, vot V, app 52_

Address Line #2: _____

City: _Sofia_          State or Province: _____

Postal Code _____ Country: _Bulgaria_

City of Birth: _Sofia_

Country of Birth: _Bulgaria_

Nationality: _Bulgarian_

Citizenship: _Bulgarian_

Phone: country code _359_ city code _2_ number _920 4266_

E-mail: _uvlestat @ hotmail. com_

Emergency Contact: _Petyo Ivanov_

Emergency Phone: country code _359_ city code _2_ number _920 4266_

Have you participated in the J-1 Work/Travel Program before?   ☐ Yes    ☒ No

Earliest Date You Can Start Working (month/day/year): _05/25/2006_

Latest Date You Can Work (month/day/year): _09/25/2006_

*Please note that actual Job Start and Job End dates will be determined by the employer, but the Program End Date on the DS-2019 will be 4 months from the Job Start Date or the end of the season, whichever is shorter.*

University Name: _University for Library science and Information technologies_

Field of Study: _Information technologies_

English Level: (Basic/Conversational/Fluent) _Conversational_

Please tell us why you want to participate in the Intrax Work/Travel Program: _Because I love to trave around the world and the program is good opportunity for me to visit USA. I want to improve my language skills, too._

**Comments or Requests** *(work interest, location interest, interest in participating with a friend, etc.):*

_____

_____

_____

*Although we do our best to grant your requests, we cannot guarantee that we will be able to do so.*

How did you hear about Intrax Work/Travel? _From my friend Ralitsa Kostova_

*Please make sure the information on this form is correct. If you submit incorrect information, and it invalidates the DS-2019 form, you may have to pay an additional $150 for a replacement DS-2019 form.*

Date: _6 12 2005_          Signature: _[signature]_

**Intrax Work/Travel**
2226 Bush Street, San Francisco, CA 94115 USA

# EXHIBIT L

# Application Form 2005/2006          ZIP Youth & Student Travel

**Please complete the application form and return it at least on the interview date. Please be precise, because all this information will be used by ZIP Tavel in the future.**

### Personal information

First name _Vesselin Veselinov_

Family name _Ivanov_

Date of birth _28.04.1983_     Passport number _____

Family Status _Single_                    Children _____

Postal address _Drujba-2" bl 214 ent B app 29_     City _Sofia_

Contact telephone No (include area code) _02/799 4523_     Mobile _0888 08 7337_

E-mail(s) winter email _V vesselin@lohoo.com_ summer email _____

Parents address _Druiba 2" bl214 ent B app29_ City _Sofia_

Parents telephone No _02335 730 988_

Emergency contact _0888 08 73 37_
                                            (Name; Telephone No)

University/Employer _University of Library science_ Faculty _____

Year of study/work _first_

Have you ever been on another exchange program **Yes** (**No**)    When? _____

Which was your sponsoring organization and agency in Bulgaria? _____

Have you ever applied for US/UK visa? /circle one or both, if applicable/    **Yes**    (**No**)

When? _____

Was visa issued?  **Yes**   (**No**)

If yes, what was the purpose of your visit? _____

Have your parents been in US/UK?  **Yes** (**No**)    If yes, how long have they been there? _____

/circle one or both, if applicable/

---

**Please evaluate your knowledge of English:**

1    2    3    4    5    6    7    (8)    9    10
poor                                        excellent

---

### Your personality

◊ Why do you want to participate in this program? _Because I love to visit new places and meet new people_

◊ How do you feel about working in a group? _I feel perfect and enjoy the work in team_

◊ Why do you think, you are right candidate for exchange program? What are your strongest traits? _Because I'm very smart and I love challenges_

**Research questions**
- How did you hear about ZIP Travel?

From my friend Miroslav

- How did you hear about
ZIP Travel programs?

From my friend Miroslav, he
told me about you

◇Why did you choose ZIP Travel?
a.  Good price
b.  Because ZIP assists in finding a job
c.  I chose ZIP by chance
d.  Because I like the service
Other/please, specify/_____

◇Have you tried to apply/ applied in other agencies?
a.  If *Yes*, which? _____
b.  No
◇What did you like/ didn't like in other agencies? _____

| Office use only | |
|---|---|
| 1. | |
| 2. | |
| 3. | |

| Office use only | |
|---|---|
| 1. | |
| 2. | |
| 3. | |

**Medical history**

Are you good in health?    (Yes)    *No* _____

Any physical limitation    Yes    (No) (if yes please specify) _____

Do you have any allergies? Yes    (No) (if yes please specify)_____

Do you consume alcoholic beverages?    *Daily*    *Weekly*    (Seldom)    *Never*

Do you smoke?    Yes    (No)    *Occasionally*

Have you ever been arrested?  Yes    (No)    (if yes a detail explanation must be enclosed)

_____

**I, hereby, agree that the information given above is accurate and correct. I agree, that ZIP Travel will use this information for future program purposes.**

**I am aware that fraudulent or incorrect presentation of information may lead to my dismissal from the any of ZIP Travel programs, which mean the cancellation of the contract and the loss of advanced payment for the program.**

Name _Vladan Ivanov_

Signature _____

Date _____

## Intrax Work/Travel Program

*Please complete the following application for the Independent or Premium Placement Service. Please remember that participants must be 18 - 28 years old, currently enrolled in a university outside the United States and able to speak, read and understand English. Participants may only apply to visit the United States during their summer break from school.*

### Personal Information

Family Name: _IVANOV_

First Name: _Veselin_

Middle Name: _Veselinov_

Gender: ☒ Male   ☐ Female

Birth Date (month/day/year): _04/29/1985_

Address Line #1: _Druzba-2 bl 214 ent. 6 app. 29_

Address Line #2: _____

City: _Sofia_      State or Province: _____

Postal Code _____   Country: _Bulgaria_

City of Birth: _Sofia_

Country of Birth: _Bulgaria_

Nationality: _Bulgarian_

Citizenship: _Bulgarian_

Phone: country code _+359_ city code _02_ number _0 888087337_

E-mail: _veselin_vianov@Abv.bg_

Emergency Contact: _____

Emergency Phone: country code _+359_ city code _02_ number _794623_

Have you participated in the J-1 Work/Travel Program before?   ☐ Yes   ☒ No

Earliest Date You Can Start Working (month/day/year): _05/25/2006_

Latest Date You Can Work (month/day/year): _09/25/2006_

*Please note that actual Job Start and Job End dates will be determined by the employer, but the Program End Date on the DS-2019 will be 4 months from the Job Start Date or the end of the season, whichever is shorter.*

University Name: _University Science of Library and information technologies_

Field of Study: _Information technologies_

English Level: (Basic/Conversational/Fluent) _Conversational_

Please tell us why you want to participate in the Intrax Work/Travel Program: _____

_I want to travel and see new people_

_____

### Comments or Requests *(work interest, location interest, interest in participating with a friend, etc.)*:

_____

_____

*Although we do our best to grant your requests, we cannot guarantee that we will be able to do so.*

How did you hear about Intrax Work/Travel? _by friend_

*Please make sure the information on this form is correct. If you submit incorrect information, and it invalidates the DS-2019 form, you may have to pay an additional $150 for a replacement DS-2019 form.*

Date: _06.12.2005_      Signature: _____

**Intrax Work/Travel**
2226 Bush Street, San Francisco, CA 94115 USA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Miroslav Ivanov, et al.,** | |
| **Plaintiff,** | **Case No. 1:07-cv-410** |
| **v.** | |
| **Sunset Pools Management, Inc., et al.,** | |
| **Defendant.** | |

## <u>ORDER</u>

Upon consideration of Intrax's Motion for Summary Judgment and Memorandum of Law in Support thereof, and any opposition and reply thereto,

It is this ___ day of _____, 2008, by the United States District Court for the District of Columbia,

ORDERED that Defendant Intrax's Motion is GRANTED, and Plaintiffs' Complaint as to Intrax is DISMISSED WITH PREJUDICE.

Date: _____

_____
Richard J. Leon
United States District Judge