UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Miroslav Ivanov, et al.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Sunset Pools Management, Inc., et al.,**<br><br>**Defendant.** | Case No. 1:07-cv-410 |

### DEFENDANT INTERNATIONAL TRAINING AND EXCHANGE, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules for the District of Columbia 7.1 and 56.1, Defendant International Training and Exchange, Inc ("Intrax"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of its Motion for Summary Judgment.

### I.  INTRODUCTION

Plaintiff Miroslav Ivanov and Plaintiff Veselin Ivanov, ("Plaintiffs"), filed a Complaint in this Court alleging violations of the Fair Labor Standards Act ("FLSA"), common law fraud and misrepresentation, and civil conspiracy in connection with their placement by Intrax[1] as temporary employees at Sunset Pools, Inc. Complaint, Counts I – III. Specifically, Plaintiffs contend that they were denied overtime pay, and that all Defendants made false representations regarding their working and living accommodations in the United States. Complaint, ¶¶ 25, 28. As discussed more fully below, Intrax was not Plaintiffs' employer, and thus cannot be held liable for overtime pay. Moreover, Plaintiffs' FLSA claims are barred because their employment

---

[1] Plaintiffs also brought this action against Sunset Pools Management, Inc., ("Sunset Pools").

with Sunset Pools as summer life guards falls under the amusement-recreation exemption, codified at 29 U.S.C. 213(a)(3). In addition, Plaintiffs' fraud and misrepresentation and civil conspiracy claims must also fail because, among other reasons, Plaintiffs are unable to meet any of the elements of those claims.[2]

## II. STATEMENT OF FACTS

Intrax recruits and facilitates the placement of international university students on summer breaks from foreign countries for temporary employment positions in the United States. See Declaration of Kimberley Meyers, Managing Director of Intrax, herein "Meyers Decl.," attached hereto as Exhibit A, ¶ 2. Examples of Intrax's business clientele are: Marriott Hotels, McDonald's Restaurants, Dollar Rent A Car, Treasure Island Park, Princess Tours, Alaska Heritage Tours, Yosemite National Park, and Mt. Olympus Waterpark, to name a few. Meyers Decl., ¶ 4. Sunset Pools Management, Inc., another client of Intrax, employs international university students for the summer months as lifeguards in the Washington, D.C. metropolitan area. Intrax's clients do not pay Intrax for this service. To the contrary, the service is fully paid for by the international university students who wish to participate in Intrax's international placement program. Meyers Decl., ¶ 5.

Intrax's role in this process is two-fold. First, it helps the international university students obtain their J-1 Visas. Meyers Decl., ¶ 3. Second, it helps employers find foreign students for seasonal positions when they have labor shortages and/or seasonal staffing needs.[3] Meyers Decl., ¶ 2. Because Intrax is based in the United States, it contracts with organizations in various countries to assist with tasks related to the job placement process, including

---

[2] Plaintiffs did not propound discovery on Defendants.
[3] An obvious by-product of Intrax's service is that it promotes a cultural exchange between citizens of several nations, which under ordinary circumstances, may be difficult to achieve.

2

administering English proficiency examinations.  Meyers Decl., ¶ 6.  In Buglaria, which is where the two Plaintiffs live, Intrax contracts with Zip Travel to perform tasks related to the job placement process.  Meyers Decl., ¶ 7.

In the instant case, Intrax and Sunset Pools entered into the Premium Host Company Agreement (the "Agreement") on November 3, 2005.  Exhibit B.  The Agreement states that, among other things, Intrax agrees to recruit summer lifeguards for Sunset Pools in the Washington, D.C. metropolitan area, and that Sunset Pools agrees to "provide employment consistent with the employment terms outlined in the job description Documents/Placement Confirmation Form" and "comply with all applicable local, state, and federal labor laws."  Id.

In December 2005, Plaintiffs came to the Zip Travel office in Sofia, Bulgaria, to apply to Intrax's international work-travel program.  Declaration of Yana Simeonova, Placement Director,  herein "Simeonova Decl.," attached hereto as Exhibit C, ¶ 4.  During this process, Zip Travel spent some time interviewing the Plaintiffs to ascertain their English proficiency.  Simeonova Decl., ¶¶ 5, 6.  According to Plaintiffs, the English proficiency examination lasted merely three minutes.  Declaration of Miroslav Ivanov, herein "M. Ivanov Decl.," attached hereto as Exhibit D, ¶¶ 5, 6; and Declaration of Veselin Ivanov, herein "V. Ivanov Decl.," attached hereto as Exhibit E, ¶ 5

According to Plaintiffs, they spent another additional few minutes reviewing Intrax's Premium Placement Confirmation Form, which describes information concerning their job placement at Sunset Pools.  M. Ivanov Decl., ¶ 7 and V. Ivanov Decl., ¶ 7; see also, Intrax's Premium Placement Conformation Forms, attached hereto as Exhibit F (the "Form").[4]  Specifically, the Form, which Sunset Pools agreed to adhere to in the Agreement, describes the

---

[4] Plaintiffs also alleged that "[i]n an effort to induce potential employees to come to the U.S. where they are subjected to sub-standard conditions, Defendant Intrax promises what amounts to a vacation like atmosphere" as described in "Sunset's brochure." Complaint, ¶ 13, Exhibit G.

3

job description, level of English required, start and end date, estimated average hours per week, rates of pay, required skills, and expected schedule. Exhibit F. Intrax's involvement in this process ceased after Sunset Pools hired Plaintiffs, and after helping Plaintiffs obtain their J-1 Visas.

As noted, Sunset Pools was Plaintiffs' employer, <u>not</u> Intrax. <u>See</u> Defendant Sunset Pools' Answer, ¶¶ 6- 7. (Plaintiffs were <u>employed by Sunset Pools</u> from approximately May 2006 through approximately October 2006). (emphasis added). In addition, Plaintiffs attached their pay stubs to the Complaint, which also shows that Sunset Pools was their employer, and not Intrax. Exhibit H. Furthermore, Plaintiffs executed Employment Agreements with Sunset Pools, and not with Intrax. Exhibit I. Indeed, after Intrax recruited Plaintiffs, Sunset Pools interviewed them. Declaration of Babak Kiani, Regional Manager for Sunset Pools, herein "Kiani Decl.," as Exhibit J, ¶ 7[5]

## III.  ARGUMENT

### A.  Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant files a properly supported motion, the non-moving party may survive summary judgment only by presenting competent evidence of "specific facts showing that there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A "genuine issue" of fact is "one whose

---

[5] The Agreement between Intrax and Sunset Pools also states that Sunset Pools understands and agrees that Intrax cannot guarantee "job performance of participants" placed by Intrax with Sunset Pools. Exhibit B.

4

resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." Sanders v. Veneman, 211 F. Supp. 2d 10, 14 (D.D.C. 2002) (citing Celotex).

Although all justifiable inferences must be drawn in favor of the non-moving party, the non-moving party must establish more than "the mere existence of a scintilla of evidence in support of the plaintiff's position." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To defeat a defendant's summary judgment motion, therefore, a plaintiff must offer more than conclusory allegations, subjective beliefs, or speculation that a prohibited factor was the reason for an adverse employment action. Id.; Greene v. Dalton, 334 U.S. App. D.C. 92, 164 F.3d 671, 675 (1999). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, supra, 477 U.S. at 327 (1986), quoting Fed. R. Civ. Proc, Rule 1.

### B.   Plaintiffs Were Not Employed By Intrax.

Plaintiffs filed this action pursuant to the FLSA ostensibly under the theory that Sunset Pools and Intrax are both statutory employers of Plaintiffs. The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An entity "employs" an individual under the FLSA if it "suffer[s] or permit[s] that individual to work." 29 U.S.C. § 203(g). An entity "suffers or permits" an individual to work if, as a matter of "economic" reality," the entity functions as the individual's employer. See Zheng. v. Liberty Apparel Co., 355 F.3d 61 (2nd Cir. 2003) citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, (1961) (explaining that "'economic reality' rather than 'technical concepts' is ... the test of employment" under the statute.); see also Herman v. RSR Security Services Ltd., 172 F.3d 132,

5

139 (2nd Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question.")[6]

Under the FLSA two entities may be "joint employers" for payment of wages purposes where both entities control the work in question. Federal regulations provide examples demonstrating when a joint employment relationship generally will be considered to exist.

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

In the present case it is undisputed that Plaintiffs did not work directly for Intrax. In fact, Plaintiffs paid Intrax for their service, not the other way around. Meyers Decl., ¶ 5. Therefore, example number (1) is inapplicable. Similarly, there is no allegation that Intrax was anything but independently owned or that Intrax and Sunset Pools were not completely disassociated from one another once the actual work began. In fact, the Agreement between Intrax and Sunset Pools, Plaintiffs' separate Employment Contract with Sunset Pools, Plaintiffs' pay stubs, and Intrax's Premium Placement Conformation Form <u>all</u> demonstrate that Intrax had

---

[6] Intrax was unable to find case law in this circuit on whether an entity, such as Intrax, may be a statutory joint employer under FLSA in this circumstance.

no involvement whatsoever in the control of Plaintiffs' work. See Exhs. B, I, H, and F, respectively. As noted, Intrax's role was limited to recruiting Plaintiffs, and helping Plaintiffs obtain J-1 Visas. Hence, example number (3) is inapplicable, as well.

Presumably, Plaintiffs based their joint-employer claims on the second example in the regulations, i.e., that Sunset Pools was acting directly or indirectly in the interest of Intrax in relation to Plaintiffs. There is no factual support for such contention. To the contrary, Sunset Pools and Intrax maintained separate interests with regard to their own business models and with regard to these Plaintiffs.

Analysis of whether one employer is acting directly or indirectly in the interest of the other employer should be based on the "circumstances of the whole activity." Zheng, 355 F.3d at 71-72. In Zheng, Plaintiffs were garment workers employed by subcontractors to stitch and finish clothing for garment manufacturers. Id. at 64-66. The plaintiffs claimed that the garment manufacturers were joint employers with the contractors under the FLSA and New York state wage laws because the workers worked primarily on the manufacturer's garments. Id. at 64-65. To assist in addressing this issue, the Second Circuit in Zheng set forth six non-exclusive factors to be considered in determining joint employment:

> (1) Whether [the putative joint employer(s)] premises and equipment were used for the plaintiffs' work; (2) whether the [employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the putative joint employer or its agents] supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the putative joint employer].

355 F.3d at 72 (citations omitted). According to the court, satisfaction of these factors demonstrates "functional control over workers" in the absence of "formal control," Id. at 72,

while "ensur[ing] that the statute is not interpreted to subsume typical outsourcing relationships." Id. at 76. None of these factors are even alleged to apply here. Similarly, and under like circumstances of this case, Intrax cannot be a statutory employer for participants it recruits for any of its other clientele either, such as Marriott Hotels or McDonald's Restaurants. This makes sense, given its extremely limited role once the participants have been placed and begin work. Otherwise, Intrax would be a joint employer with many major employers throughout the U.S., an absurd result.

### C. Plaintiffs' Claims Are Barred By the Amusement-Recreation Exemption.

If the Court were to find that Intrax was Plaintiffs' statutory employer, Plaintiffs' FLSA claims are still barred because their employment as summer life guards falls under the amusement-recreation exemption, codified at 29 U.S.C. 213(a)(3). Although Intrax adopts Sunset Pools' argument in its Motion for Summary Judgment that its operations fall under the amusement-recreation exemption, Intax notes that Plaintiffs' positions as temporary summer lifeguards fall squarely within the legislative history and intent behind this exemption. See Sunset Pools' Motion for Summary Judgment and Memorandum of Law.

In <u>Brock v. Louvers and Dampers, Inc.</u>, 817 F.2d 1255 (6th Cir. 1987), the Court noted:

[t]he purpose of the seasonal amusement or recreational establishment exemption was not clearly spelled out in the legislative history of either the 1961 or 1966 amendments. However, there is some useful legislative history discussing a proposed 1965 amendment to the FLSA. The House Committee Report stated that the amusement and recreational establishment exemption would cover "such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutel racing, sport boating or fishing, or other similar or related activities...." H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965).[7] Although the proposed amendment was not passed, the legislative history is relevant because the following year Congress enacted a similar amendment including the amusement and recreational exemption. (Internal Quotations Omitted).

---

[7] The Department of Labor's regulations also indicate that "beaches" would also fall under this exemption. 29 C.F.R. 779.385.

Hence, the Court concluded,

> [t]he logical purpose of the provision is to exempt the type of amusement and recreational enterprises listed above, which by their nature, have very sharp peak and slack seasons. These businesses argue that they should not be held to the same wage and hour requirements as permanent, year-round operations. Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they <u>may offer non-monetary rewards</u>. Congress responded to these concerns by enacting the amusement and recreational exemption.

Id. at 1259 (emphasis added).

Similarly, the Tenth Circuit found that the purpose of the exemption was "to allow recreational facilities to <u>employ young people</u> on a seasonal basis and not have to pay the relatively high minimum wages required by the Fair Labor Standards Act." <u>Brennan v. Yellowstone Park Lines</u>, 478 F.2d 285, 288 (10th Cir.) <u>cert. denied</u>, 414 U.S. 909 (1973) (emphasis added).

Plaintiffs' experience as summer life guards in the Nation's Capital clearly offered Plaintiffs such "non-monetary rewards," which cannot be understated. Indeed, this unique opportunity afforded Plaintiffs the opportunity to "travel around the world," "visit new places," and "meet new people." See Exhibits K and L. It was not Congress's intent to add to such rewards with FLSA coverage, which would act as a penalty upon Intrax.

### D. Intrax Did Not Commit Common Law Fraud Or Misrepresentation.

The elements of fraud are as follows: (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. <u>Bennett v. Kiggins</u>, 377 A.2d 57, 59 (D.C. 1977), <u>cert. denied</u>, 434 U.S. 1034 (1978). Fraud "must be particularly pleaded[,]" and "must be established by clear and convincing evidence." Id. Moreover, "[f]acts which will enable the

court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient." Id. at 60.

The sum total of Plaintiffs' fraud allegations and "proof" are:

- Intrax apparently forwards Sunset Pools' brochure to Plaintiffs. Complaint, ¶¶ 13, 14;

- Sunset Pools' employees [were] housed in cramped DC quarters with five people to a room while sleeping on the floor." Complaint, ¶ 15.

- Intrax's Premium Placement Confirmation Form described Sunset's housing as a "dorm style housing." Exhibit F.

In conclusory fashion, Plaintiffs allege that "[d]efendants knew at the time of their representations that the housing was not in a dorm-like setting in that Plaintiffs were made to sleep on mattresses on the floor, rather than beds, and were housed in cramped quarters with five workers to a single room." Complaint, ¶ 14.

Plaintiffs' allegations fall woefully short of meeting the elements of fraud, particularly as to Intrax. First, Plaintiffs have not alleged that Intrax made a statement at all, nevertheless a false statement. Instead, Plaintiffs will likely argue in their Opposition that Intrax's act of simply forwarding Sunset Pool's brochure to Plaintiffs is tantamount to making a statement. That is a far cry from proving that Intrax actually made a statement because, given the burden of proof in a fraud claim, the Court cannot simply infer that Intrax had endorsed the substance of Sunset Pools's brochure. There is no clear and convincing evidence of a false statement by Intrax.

Second, there was no false statement of material fact made by Sunset Pool either because the statement that Plaintiffs allege to be false, is not objectively false. Indeed, a dorm-style accommodation essentially describes a broad array of accommodations, from spacious and/or solo accommodations to several people sleeping in one room. Third, Plaintiffs have not alleged that this was a "material" fact in their decision to participate in the work-travel program and/or work

10

for Sunset Pools.

Fourth, even if Sunset's brochure exaggerated its living arrangements in some fashion, Intrax did not have knowledge of it. Indeed, the Agreement between Intrax and Sunset Pools is most telling. In relevant part, it states that "[i]f the [Sunset Pools] provides housing for any participants placed by IWT, [Sunset Pools] will provide housing that is safe, comfortable, and in compliance with local, state and federal housing codes and regulations." Exhibit B. This shows that Intrax had no knowledge of Plaintiffs' housing situation, that it did not intend to deceive Plaintiffs, but it relied on Sunset to reasonably meet its obligation as to housing.

Fifth, and more to the point, Plaintiffs signed the Premium Placement Confirmation Form, which expressly states that Intrax "does not" provide housing and "is not responsible for providing housing to you." Exhibit F. In addition, the Form states that Intrax "makes no representations or guarantee regarding the nature or quality of such housing." Id. Hence, Plaintiffs have not shown -- and cannot show -- that they relied upon any statement made by Intrax concerning the nature or quality of housing.[8]

In sum, Plaintiffs have utterly failed to allege or marshal by clear and convincing evidence sufficient facts to prove their fraud claim by clear and convincing evidence. Bennett, 377 A.2d at 60 ("allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.")

### E.   The Civil Conspiracy Count Must Fail.

Civil conspiracy has four elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to,

---

[8] Of note, some time after Plaintiffs' experience with Sunset Pools, they went back to Zip Travel in Sofia, Bulgaria, with interest in participating in Intrax's international placement program again. Meyers Decl., ¶ 10.

11

and in furtherance of, the common scheme." Weishapl v. Sowers, 771 A.2d 1014, 1023 (D.C. 2001). Additionally, civil conspiracy "depends on the performance of some underlying tortious act," and is "not an independent action." Id. at 1023-1024.

Here, the only "agreement" between Intrax and Sunset were the terms and conditions listed in the Premium Placement Host Company Agreement, and that Agreement expressly states that Sunset Pools will comply with all federal labor laws. Exhibit B. Even if this Agreement did not exist, Plaintiffs cannot prove that Intrax and Sunset Pools entered in an agreement to defraud Plaintiffs. Intrax has no control over pay and housing, which were part of Plaintiffs' bargain with Sunset. There was simply nothing for Intrax to agree to in these requests.

Moreover, as a matter of law, Plaintiffs' civil conspiracy count fails, as well. First, their was no underlying tortious act because neither Intrax nor Sunset Pools committed fraud, and Plaintiffs must show that both defendants committed fraud, in this regard.[9] Weishapl, 771 A.2d at 1024 (civil conspiracy "depends on the performance of some underlying tortious act," and is "not an independent action.").

Furthermore, Plaintiffs failed to allege in the Complaint or provide evidence on the formation and operation of the conspiracy, any wrongful acts done in furtherance of the common scheme, or how they were damaged as a result. Higgs v. Higgs, 472 A.2d 875, 877 (D.C. 1984).

---

[9] To the extent that Plaintiffs' conspiracy count stems from Sunset Pool's alleged failure to provide overtime, Plaintiffs' claims are preempted by the FLSA. See Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007) ("Because the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption.") Choimbol v. Fairfield Resorts, Inc., 2006 WL 263179, *6 (E.D.Va. Sept. 11, 2006 ) ("Because the Court finds that the FLSA provides an exclusive remedial scheme for [failure to pay overtime], the Court cannot allow the Plaintiffs' claims" to proceed.); see Moeck v. Gray Supply Corp., 2006 WL 42368, *2 (D. N.J. Jan. 6, 2006) ("most courts have held that claims directly covered by the FLSA (such as overtime), must be brought under the FLSA"); see also Johnson v. Davis Security, Inc., 217 F.Sup.2d 1224, 1228 (D.Utah 2002) ("Plaintiff's common law claims would be barred as merely duplicative of her FLSA claims."); Petras v. Johnson, 1993 WL 228014, *2 (S.D.N.Y June 22, 1993) (fraud preempted by FLSA) Chappell v. Southern Maryland Hosp. Inc., 320 Md. 483, 578 A.2d 766, 774 (1990) (abusive discharge based on alleged overtime violation preempted by FLSA because of the existence of a remedy available to the plaintiff under the FLSA).

Indeed, because Intrax and Sunset never entered into a conspiracy in the first instance, it will be impossible for Plaintiffs to prove how Intrax and Sunset Pools formed or operated the conspiracy.

Finally, Plaintiffs have not shown how they were damaged. Without making light of their apparent discomfort living in cramped quarters, Plaintiffs have failed to allege how they were specifically damaged. Complaint, ¶ 30 ("As a result of Defendants' material omissions of fact and affirmative misrepresentations, Plaintiffs sustained damages."). In fact, the opposite is true. Plaintiffs were privileged enough to participate in Intrax's work-travel program, come to the Nation's Capital for the summer, and work at Sunset Pools as summer lifeguards. Indeed, the reason Plaintiff M. Ivanov stated on his Intrax application form for wanting to participate in this program is that he "love[] to travel around the world, and this is good opportunity to visit USA," and Plaintiff V. Ivanov stated that he "love[s] to visit new places and meet new people." Exhibits K and L. Defendants provided those benefits, but Plaintiffs apparently expected a picture-perfect vacation.

Disappointed subjective expectations are one thing. Valid FLSA, fraud and civil conspiracy claims are another; they are simply not presented here.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Intrax respectfully request that the Court grant its Motion for Summary Judgment

Dated:   February 5, 2008

        /s/
Joseph P. Harkins (Fed. Bar. No. 14007)
Steven E. Kaplan (Fed. Bar No. 92408)
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, DC  20036
202.842.3400
Counsel for Intrax

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February 2008, the foregoing Memorandum of Law in Support of its Motion for Summary Judgment, and Proposed Order will be served through electronic mail, via ECF filing, upon the following:

>Mark Murphy, Esq.
>Mooney Green Baker & Saindon, P.C.
>1920 L Street, NW
>Suite 400
>Washington, DC  20036
>
>Counsel for Plaintiffs
>
>John J. Rigby, Esq.
>McInroy & Rigby, L.L.P.
>2200 Wilson Blvd., Suite 800
>Arlington, Virginia  22201
>
>George R.A. Doumar, Esq.
>George R.A. Doumar, PLLC
>2000 N. 14th Street, Suite 210
>Arlington, VA  22201
>
>Counsel for Defendants Sunset Pools
>Management, Inc. and Arash Naderi

>/s/
>Joseph P. Harkins