## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MIROSLAV  IVANOV,** | ) |
|  | ) |
| **VESELIN IVANOV** | ) |
|  | ) |
| **Plaintiffs,** | ) |
|  | ) |
| **v.** | )    **Civil No.: 7-CV-0410** |
|  | )    **Judge Leon** |
|  | ) |
| **SUNSET POOLS MANAGEMENT, INC.** | ) |
| **ET AL,** | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |
|  | ) |

## MOTION FOR SUMMARY JUDGMENT

Defendant Sunset Pools Management, Inc. ("Sunset"), by and through counsel, hereby files its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant hereby moves this Court for summary judgment in its favor on the grounds that the undisputed facts demonstrate that the defendant is entitled to judgment as a matter of law.

Sunset is in compliance with the Fair Labor Standards Act as a matter of law because Sunset falls into an exemption to the overtime requirements under the FLSA, 29 USCS § 213(a)(3)(A), for seasonal workers.

Plaintiffs make no claim, and present no evidence, that anyone at Sunset made any alleged fraudulent statement.  Plaintiffs make no allegations of any statement made by Defendant Sunset (or any other defendant), which was a false statement of material

fact, that was intentionally false when made, and that Plaintiff justifiably relied on any such statement.  Without such a statement, there can be no fraud and Count II must be dismissed.

Without fraud, there can be no conspiracy.  Plaintiffs present no evidence in support of conspiracy.  There is no agreement to commit an unlawful act or common unlawful scheme as alleged.  Plus, there can be no conspiracy to violate the Fair Labor Standards Act as a matter of law.  In any case, the Fair Labor Standards Act preempts common law claims such as fraud and conspiracy.

Defendant attaches an accompanying Memorandum in Support of this Motion for Summary Judgment.

WHEREFORE, Defendant requests that this Court grant Defendant's Motion for Summary Judgment.

Dated: February 5, 2008.                                    Respectfully Submitted,

  /s/ George R. A. Doumar
George R. A. Doumar, Esq.
D.C. Bar No:  415446
George R. A. Doumar, PLLC
2000 N. 14th Street
Suite 210
Arlington, VA 22201
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarlaw-
group.com


/s/ John J. Rigby
John J. Rigby
D.C. Bar No. 255539
McInroy and Rigby L.L.P.
2200 Wilson Boulevard
Suite 800
Arlington, VA  22201

Tel:  703-841-1100
Fax: 703-841-1161
jrigby@mcinroyrigby.com

**Attorneys for the Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February 2008, I caused the foregoing to be electronically filed with the Clerk of the Court through the CM/ECF system which will send notifications of each filing to the following counsel of record:

> Mark Murphy, Esq.
> Mooney Green Baker & Saindon, P.C.
> 1920 L Street, NW
> Suite 400
> Washington, D.C.  20036
>
> Counsel for Plaintiffs
>
> Joseph P. Harkins, Esq.
> Littler Mendelson, P.C.
> 1150 17th Street, NW
> Suite 900
> Washington, DC 20036
>
> Counsel for Defendant Intrax
>
> John J. Rigby
> McInroy and Rigby
> 2200 Wilson Boulevard
> Suite 800
> Arlington, VA  22201
>
> Co-Counsel for Defendant Sunset

I also caused a copy to be served by first-class mail on February 4, 2008, upon the following counsel of record:

> Reuban Guttman, Esq.
> Wolf, Haldenstein, Adler, Freeman & Herz, L.L.C.
> 1920 L Street, N.W., Suite 500
> Washington, D.C. 20036
>
> Kris Keegan, Esq.

10027 Sinnot Drive
Bethesda, MD 20817

Counsel for Plaintiffs

          /s/ George R. A. Doumar
George R. A. Doumar, Esq.
D.C. Bar No:  415446
George R. A. Doumar, PLLC
2000 N. 14th Street
Suite 210
Arlington, VA 22201
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarlawgroup.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MIROSLAV  IVANOV,** | ) | |
| | ) | |
| **VESELIN IVANOV** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil No.: 7-CV-0410** |
| | ) | **Judge Leon** |
| | ) | |
| **SUNSET POOLS MANAGEMENT, INC.** | ) | |
| **ET AL,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

Defendant Sunset Pools Management, Inc. ("Sunset"), by and through counsel, hereby files its Memorandum in Support of Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## <u>SUMMARY OF ARGUMENT</u>

Sunset has no obligation to pay their summer lifeguard employees overtime pay, and Count I under the Fair Labor Standards Act ("FLSA") must be dismissed.  Sunset is in compliance with the Fair Labor Standards Act because Sunset falls into an exemption to the overtime requirements under the FLSA, 29 USCS § 213(a)(3)(A), for seasonal work.

Count II must be dismissed against Sunset because Plaintiffs make no claim, and present no evidence, that anyone at Sunset made any alleged fraudulent statement. Plaintiffs also present no evidence of any false statement of material fact.  Without a false

statement of material fact by Defendant, that is intentionally false when made, and on which Plaintiff justifiably relies, there can be no fraud.  To the extent Plaintiffs allege a false statement by Intrax, the alleged statement is not a factual statement at all, and is not false.  Stating that Plaintiffs were told that they would have "shared" living quarters in "dorm-like" accommodations was accurate, and a matter of broad interpretation at worst.  In addition, no Sunset employee talked about these items to Plaintiffs.  That Plaintiffs may have preferred a nicer apartment is not a basis for fraud.

Without fraud, there can be no conspiracy.  Plaintiffs present no evidence in support of conspiracy.  There is no agreement to commit an unlawful act or common unlawful scheme as alleged.  Plus, there can be no conspiracy to violate the Fair Labor Standards Act as a matter of law.  Plaintiffs simply allege that Intrax was an employment broker and that Sunset was an employer, a pool management company, that failed to pay overtime, and provided accommodations that Plaintiffs found unsatisfactory.

Moreover, the Fair Labor Standards Act preempts common law claims such as fraud and conspiracy as a matter of law.  Federal preemption requires that state claims arising out of employment cannot be brought with FLSA claims.  Also, an FLSA violation cannot be a basis for civil conspiracy as a matter of law.

## STATEMENT OF FACTS

Sunset is a pool management company that employs young people from overseas as lifeguards on a short-term, seasonal basis, during the summer, in the Washington, D.C. area. See Complaint, ¶1.  Defendant does a disproportionate amount of business in the summer months.   Plaintiffs Miroslav Ivanov and Veselin Ivanov, (collectively "Plaintiffs"), both signed contracts with Sunset for the period from May 24, 2006 through

2

September 26, 2006, and worked as lifeguards during that time period. Complaint, Exhibit 3 (contract) and Exhibit 5 (pay stubs). Plaintiffs allege slightly different dates in the text of the complaint, from May 24, 2006 to October 20, 2006. Complaint, ¶6. The other defendant in this matter, International Training and Exchange, Inc. ("Intrax"), is a separate entity that allegedly provided disclosures to plaintiffs showing May through September employment. Complaint, Exhibit 4.

Plaintiffs make no specific allegations, and present no evidence, that anyone at Sunset communicated with them prior to their arriving here. In any case, Babak Kiani was the only Sunset employee to talk to Plaintiffs prior to their arrival in the United States. Kiani Declaration, attached hereto, ¶ 8.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Sunset is a pool management company that employs young people from overseas as lifeguards on a short-term, seasonal basis, during the summer, in the Washington, D.C. area.   See Complaint, ¶1.

2.     Plaintiffs traveled to Washington DC on J1-visas for the purposes of a cultural exchange. Kiani Declaration ¶9.

3.     Plaintiffs both signed contracts with Sunset for the period from May 24, 2006 through September 26, 2006. Complaint, Exhibit 3 (contract) and Exhibit 5 (pay stubs).

4.     Plaintiffs worked as lifeguards during that time period from May to September.  Complaint, Exhibit 3 (contract) and Exhibit 5 (pay stubs).

5.      Sunset Pools average monthly receipts for its six lowest months of receipts were only 27.86 percent of its receipts during its six highest receipt months in

2005, which is the relevant period because Plaintiffs were employed in 2006. Kiani Declaration, ¶5.

6.    In the Employment Agreement with Sunset Pools Management, Sunset management describes in "Section VI: Apartments" that the management "provides partially equipped apartments … The equipment consists of … airbeds or mattresses." Exhibit 3 to Plaintiffs' Complaint.

7.    Plaintiffs were provided housing, in a shared space, in an apartment in Washington DC. Complaint, ¶ 15.

8.    No other person at Sunset had any contact with Plaintiffs prior to their arrival in the United States except for Babak Kiani. Kiani Declaration, ¶8.

## ARGUMENT

## I.    THE SUMMARY JUDGMENT STANDARD REQUIRES DISMISSAL

Summary judgment is appropriate when the record shows that no genuine issue of material fact; in such case the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  To defeat summary judgment, the non-moving party has the burden to show that there is a dispute that is genuine and material to the case.  That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the non-moving party is merely colorable, or is not significantly probative,

summary judgment should be granted.  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).
"A complete failure of proof concerning an essential element of the non-moving party's
case necessarily renders all other facts immaterial, and the moving party is entitled to
judgment as a matter of law." <u>Celotex Corp.</u>, 477 U.S. at 323 (citations omitted).

Rule 56 does not require the moving party to negate the non-movant's claim or to
show the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. Rather,
when the movant files a properly supported summary judgment motion, the burden shifts
to the nonmoving party to show "specific facts showing that there is a genuine issue for
trial." Fed. R. Civ. P. 56(e).  The non-movant cannot manufacture genuine issues of
material fact with "some metaphysical doubt as to the material facts," <u>Matsushita Elec.
Indus. Co.</u>, 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated
assertions," "or by only a 'scintilla' of evidence.  <u>Little v. Liquid Air Corp.</u>, 37 F.3d
1069, 1075 (5th Cir. 1994). <u>See also Greene v. Dalton</u>, 164 F.3d 671, 675 (D.C. Cir.
1999).

Here, there are no disputed material facts.

## II.   DEFENDANT SUNSET POOLS MEETS THE SEASONAL EXEMPTION UNDER THE FAIR LABOR STANDARDS ACT, 29 USCS § 213(a)(3)(A), AND  THEREFORE IS NOT OBLIGATED TO PAY OVERTIME

Under the Fair Labor Standards Act 29 U.S.C. § 213(a)(3)(A), any employee
employed by an establishment which is an amusement or recreational establishment, open
primarily on a seasonal basis, is exempt from the minimum wage and maximum hours
requirements of Fair Labor Standards Act.   29 U.S.C. § 206 and § 207.

### A.  Sunset Is A Seasonal Business under the FLSA, and Thus Does Not Have To Pay Overtime Rates

Plaintiffs are not owed overtime given the exemption from FLSA overtime (and

minimum wage) requirements found at 29 U.S.C. §213 (a) (3). The exemption is referred to as the "seasonal exemption" or the "amusement-recreation exemption." <u>Brock v. Louvers, and Dampers, Inc.</u>, 817 F.2d 1255, 1256 (6th Cir. 1987). The exemption covers "any employee employed by an establishment which is an amusement or recreational establishment…if (A) it does not operate for more than seven months in any calendar year or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33-1/3 per centum of its average receipts for the other six months of such year . . . ." 29 U.S.C. §213 (a) (3); <u>Brock v. Louvers and Dampers, Inc.</u>, 817 F.2d 1255, 1256 (6th Cir. 1987).

Thus, to qualify for the exemption, a company such as Sunset must have average receipts for six months of a year that are no more than one third of its average receipts for the other six months. <u>Id</u>. As set forth below, Sunset so qualifies.

## B. The Purpose of the Seasonal Exemption Was to Provide Flexibility for Businesses Exactly Like Sunset

The purpose of the seasonal exemption was to provide an exemption from FLSA overtime (and minimum wage) requirements for amusement and recreational enterprises, which employ young people or temporary workers, and which have very sharp peak and slack seasons. <u>Brock v. Louvers and Dampers, Inc.</u>, 817 F.2d 1255, 1258-59 (6th Cir. 1987). "Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards. Congress responded to these concerns by enacting the amusement and recreational exemption." <u>Id</u>. at 1259. The exemption was designed to cover "seasonal recreational or amusement activities . . ." H.R. Rep. No. 871, 89th Cong., 1st Sess (1965), <u>cited</u> in <u>Brock v. Louvers and Dampers, Inc.</u>, 817 F.2d 1255, 1258 (6th Cir. 1987). <u>See</u>

also  Adams v. Detroit Tigers, Inc., 961 F. Supp. 176, 178 (E.D. Mich. 1997)(holding that batboys for a baseball team were seasonal employees, and they qualified for the exemption because the team was an amusement or recreation establishment with average off-season receipts less than one-third of average in season receipts).

"The crucial question for the purpose of determining whether or not a business falls within the exemption is whether or not it is truly seasonal . . . There is no need to differentiate between retail and wholesale establishments in the seasonal exemption . . ." Brock v. Louvers and Dampers, Inc., 817 F.2d 1255, 1259 (6th Cir. 1987).

Plaintiffs and Sunset fit the very rationales articulated in Brock.  Plaintiffs were young workers from overseas, looking to experience life in the United States.  The J-visa program on which they came for temporary work facilitates cultural exchange, a non-monetary reward.  The pool business, particularly in the D.C. area where all outdoor pools are seasonal, requires longer hours in the summer months.

Sunset Pools is a pool management company, which operates swimming pools. Kiani Declaration, ¶2. Sunset Pools receives all of its revenues from operating pools.  Id. Sunset provides all services necessary to operate the pools, including providing lifeguards, providing the necessary chemicals for the pools, providing maintenance services for the pools, and providing cleaning services for the pools. Kiani Declaration, ¶3.

The Department of Labor, through Opinion Letters, has opined that employers that operate pools and other swimming facilities qualify for the seasonal exemption, provided that the second part of the exemption is met. See, e.g., January 24, 1975 Opinion Letter, 1975 DOLWH LEXIS 39; February 24, 1975 Opinion Letter, 1975

DOLWH IJEXIS 9; January 17, 1986 Opinion Letter, 1986 DOLWH LEXIS 8.

### C. Use of Multiple Facilities, or a Business Using Multiple Facilities Owned by Others, Further Confirms the Seasonal Exemption

Courts have held that contractors and companies that work someplace temporarily or during limited periods or at different locations qualify for the seasonal exemption. For example, baseball teams qualify for the exemption even if they do not own the sports complex in which they play their home games, and play half their games in other locales. Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 595 (11th Cir. 1995) ("Defendant's status as an amusement and recreational establishment is not rendered inapplicable by the fact that Defendant does not own the sports complex in which it operates.")

The legislative history of the amendment recognized that independent contractors, and mobile businesses that operate at different places, could qualify for the seasonal exemption. See S. Rep. No, 145, 67th Cong., 1st Seas. 26 (1961); H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965) ("Lessees or independent contractors, such as concessionaires, and inherently mobile establishments, such as carnivals and circuses, none of which would be expected to own the real property upon which they operate, were clearly contemplated by Congress as being covered by the exemption."), cited in Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 595 (11th Cir. 1995).

As another example, the Department of Labor opined that a committee running the Olympic Games qualifies for the seasonal exemption. March 5, 1996 Opinion Letter, 1996 DOLWH LEXIS 5. Obviously, the Olympic committee carries out its activities at various facilities on a short-term basis.

Baseball teams can qualify for the seasonal exemption though playing in multiple locales, as does a committee operating Olympic Games, even though that committee may

supervise activities in a large number of stadiums in different locations.

**D.    Sunset Meets the Six Month Revenue Test Set Forth in the FLSA**

Sunset Pools qualifies for the exemption, under subsection B, because its average monthly receipts for its six lowest months of revenue were only 27.86 percent of its receipts during its six highest revenue months in 2005, which is the relevant period because Plaintiffs were employed in 2006. Kiani Declaration, ¶5. This is significantly lower than the 33.33 percent figure required under the statute for an exemption to apply.

Specifically, for the months of March, April, May, June, July, and August 2005, Sunset Pools had average monthly receipts of $243,242.25. Kiani Declaration, ¶5.  For the months of January, February, September, October, November, and December 2005, Sunset Pools had average monthly receipts of $67,776.48. Id. The average monthly receipts for the six lowest months were 27.86 percent of the average monthly receipts for the six highest months. Id.

Sunset Pools employed plaintiffs during 2006. Complaint, Exhibit 3 (contract) and Exhibit 5 (pay stubs).  Thus, 2005 was the appropriate year to analyze receipts to determine whether Sunset Pools qualified under the exemption, which refers to the "preceding calendar year." 29 U.S.C. §213 (a) (3) (2)

In any event, Sunset Pools also qualified for the seasonal exemption based on its 2006 receipts. For the months of March, April, May, June, July, and August 2006, Sunset Pools had average monthly receipts of $368,516.00. Kiani Declaration, ¶5.  For the months of January, February, September, October, November, and December 2005, Sunset Pools had average monthly receipts of $105,402.50. Id.  The average monthly receipts for the six lowest months were 28.60 percent of the average monthly receipts for

the six highest months. <u>Id</u>.

Thus, Sunset Pools qualifies under the revenue test for the seasonal exemption based on its average monthly revenues in its peak six months, versus the other six months. <u>Jeffery v. Sarasota White Box, Inc.</u>, 64 F.3d 590, 595-96 (11th Cir. 1995); <u>Hamilton v. Tulsa County Public Facilities Authority</u>, 85 F.3d 494, 497 (10th Cir. 1996); <u>Adams v. Detroit Tigers, Inc.</u>, 961 F. Supp. 176, 180 (E.D. Mich. 1997).

Sunset is in the pool management business, a seasonal business in the Washington, D.C. area.  It would be expected that its revenues would fall mostly in warmer months.  There is no dispute as to these facts, and the discovery period has long expired.

Of course, consistent with the statute, if a company qualifies for an exemption based on the six months receipts test, it does not matter if the company operates for more than seven months a year. <u>Jeffery v. Sarasota White Box, Inc.</u>, 64 F.3d 590, 595 (11th Cir. 1995); <u>Brock v. Louvers and Dampers, Inc.</u>, 817 F.2d 1255, 1259 (6th Cir. 1987).

## III.    <u>THERE IS NO EVIDENCE OF FRAUD</u>

Count II, for fraud, must be dismissed as there is no evidence of fraud by Sunset. Fraud, which must be established by clear and convincing evidence, is comprised of five elements: (1) a false representation by a defendant, (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.  <u>Bennett v. Kiggins</u>, 377 A.2d 57, 59 (D.C. 1977), <u>cert. denied</u>, 434 U.S. 1034 (1978).  Sunset is entitled to summary judgment on the fraud count, Count II, on several independent grounds.

### A.    There Was No False Statement of Material Fact in Allegedly Promising "Dorm-Like" Accommodations and 'Shared' Living Quarters

Plaintiffs' alleged fraudulent statements were statements by Intrax that Plaintiff would have "shared" living quarters including "dorm-like" accommodations. Complaint, ¶14. Intrax presented Plaintiffs with disclosures that discussed "dorm-like" accommodations. D.C. courts require that all five elements of fraud be met to establish fraud. The first element requires a "false representation in reference to a material fact." Bennett, 377 A.2d at 60. A statement that something is dorm-like is subject to a wide variety of interpretation. It is impossible to determine if the statement "dorm-like" is false, as it is a matter of opinion to a large extent. Plaintiffs were not promised housing in a dormitory, but in a dorm-like setting, which in fact was the case to the extent two or more persons shared one apartment. See Hercules & Co. v. Shama Rest., 613 A.2d 916, 930-33 (D.C. App.1992)(finding no material fact was alleged that supported a finding that plaintiffs were fraudulently induced to sign the written contract).

### B.    There Was No Reliance, Much Less Justifiable Reliance

Moreover, the type of housing was not material to any decision to come to the United States. There is no indication or evidence that crowded housing would have dissuaded plaintiffs form traveling here. Their J-visas made clear that the Plaintiffs were here for a cultural exchange. See generally 22 C.F.R. §62. The purpose of Plaintiffs participating in this program was to "increase the mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchanges." 22 C.F.R. §62.1. Plaintiffs did not decide to come to work in the United States because of the promise of "dorm-like" housing.

Plaintiffs fail to show how an oral promise of dorm-like accommodations could reasonably be relied upon and caused harm.  D.C. courts narrowly construe the statements which a plaintiff can reasonably rely upon in a fraud case.  In <u>Day v. Avery</u>, 548 F.2d 1018, 1028 (D.C. Cir. 1976), the court held that the claimant could not show that he justifiably relied upon the promise to be chairman of a law office and was somehow harmed when he lost that position because he had no legal right to retain the position as chairman.  The court ruled that there was no justifiable reliance on claimant's continued status as chairman of the office.  <u>Id.</u>

Similarly, the plaintiffs in this case cannot show that they reasonably relied upon the assertion that their housing would be "dorm-like."  A reasonable person would assume "dorm-like" meant that several persons would share a space, no more, no less.  Furthermore, Plaintiffs never complained about their housing during the time they were here.  Kiani Declaration, ¶9.  This lack of complaint, until after Plaintiffs returned overseas to their home, negates any possible reliance.  Plaintiffs are unable to show that "dorm-like" housing, which is not a false statement of fact anyway, was a "substantial factor" in agreeing to the contract in question.  <u>See</u> <u>Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs.</u>, 878 A.2d 1226, 1238 (D.C. 2005)(court found no reliance on the existence of a long provider list in choosing a health care plan because Plaintiff gave no indication of relying on it at the time).

The only evidence available confirms that Plaintiff in fact wanted to come back in 2007.  Babak Dec., ¶9 (August 2006 conversation).    One Plaintiff even wrote Sunset's office manager in October 2006 that Plaintiffs would come back as "supervisors."  Babak Dec., ¶9, and e-mail attached.

### C.    Plaintiff Do Not Allege That Sunset Made any False Representations

Plaintiffs do not allege that any misrepresentations were made by anyone from Sunset.  Plaintiffs allege that certain misstatements, as to "dorm-like conditions," were made by Defendant Intrax. Complaint, ¶¶12, 13.  No person at Sunset spoke to Plaintiffs.  Without any misrepresentation from Sunset, there can be no fraud by Sunset.  Sunset is entitled to summary judgment on this basis.

In the event that the Court does find Sunset made these allegations, Plaintiffs' claims that Intrax promised dorm-like housing are simply not false statements.  A false representation or "misrepresentation is an assertion that is not in accord with the facts." Sarete, Inc. v. 1344 U St. Ltd. P'ship, 871 A.2d 480, 493 (D.C. 2005), citing Restatement 2d of Contracts, § 159.  Dorm-like housing implies shared rooms, in which employees would have to share a bedroom with others and use common facilities with other employees.  A dormitory is not even necessarily limited to two people per room, but could be more.  Intrax's alleged statement as to housing does not rise to the level of a factual statement. Defendant Intrax's references to "dorm-like" housing in its materials are in fact true and can be viewed only as puffery at most.  See Peddlers Square, Inc. v. Scheuermann, 766 A.2d 551, 554 (D.C. 2001)(fraud claim dismissed where promises regarding the quality of construction were alleged).

### D.    The Plaintiff Does Not Show That There Was any Knowledge of the Falsity or Intent to Deceive

Further, Plaintiffs fail to show any evidence of the knowledge of the falsity of the purported false statement or intent to deceive.  The Plaintiff must prove that the tortfeasor knew that the misrepresentations were false, through a subjective inquiry, to satisfy this particular element of fraud.  Powell v. D.C. Hous. Auth., 818 A.2d 188, 195 (D.C. 2003),

citing Jacobs v. District Unemployment Compensation Board, 382 A.2d 282, 286 (D.C. 1978).  Defendant Intrax's assertion that Plaintiffs would stay in "dorm-like" housing was not made with intention to deceive Plaintiffs into coming to the United States.  The determination that Defendants had any knowledge of falsity would be "based on documentation, determinations of witness credibility and inferences."  Id.  There is no such evidence, even viewed in the light most favorable to Plaintiffs, to prove that Sunset had any such knowledge or intent to defraud and the claim must fail on this element.  See Cowan v. Youssef, 687 A.2d 594, 603 (D.C. 1996) (ruled in favor of Defendant where it was shown that there was evidence of breach but no evidence of specific intent).

> **E.    There Cannot Be Detrimental Reliance on a Statement Regarding "Dorm-Like" Housing That Contradicted Signed Contracts**

Finally, all of Plaintiffs' fraud allegations regarding housing are nullified by their own exhibits.  In Exhibit 3, the Employment Agreement with Sunset Pools Management, Sunset management describes in "Section VI: Apartments" that the management "provides partially equipped apartments … The equipment consists of … airbeds or mattresses."  Plaintiffs make no claim that such statement is false.

At Exhibit 4 to Plaintiffs' Complaint, Plaintiffs attached a truncated version of the terms and conditions to which they agreed.   At Exhibits 1 and 2 attached to Intrax's Memorandum In support of Motion to Dismiss, the full terms and conditions are attached.   In that Agreement, Intrax specifies that "Intrax… makes no representations or guarantees regarding the nature or quality of such housing."  Exhibits 1 and 2 to Intrax Memorandum, page 9 of 12, Section 5.  That contract, signed by Plaintiffs, also negates any alleged reliance upon any representation as to housing. See Jefferson v. Ambrose, 90

F.3d 1291, 1296 (7th Cir. 1996)("[I]f a plaintiff chooses to "plead particulars, and they show he has no claim, then he is out of luck – he has pleaded himself out of court").

### F.     There Can Be No Reliance on any Items Other Than the Contract

District of Columbia courts have a long history of respecting the parol evidence rule, which states that when parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as legally inoperative parol evidence of prior negotiations and oral agreements.  See IBM Corp. v. Medlantic Healthcare Group, 708 F. Supp. 417 (D.D.C. 1989).  The court in IBM refused to enforce an oral promise of a 25 percent discount during negotiations when the contract clearly stated that the price quote would be listed in the pricing supplement, which listed a 15 percent discount.  Stamenich v. Markovic, 462 A.2d 452, 455-56 (D.C. 1983).  More precisely, parol evidence, which tends to contradict, vary, add to, or subtract from the terms of the contract, must be excluded.  Id. at 455(citing Fistere, Inc., v. Helz, 226 A.2d 578, 580 (D.C. 1967).  In Stamenich, the appellate court reversed a trial court's decision to allow parol evidence concerning an oral assignment of a lease when there was a written contract that the parties had each signed.  Further, in Ozerol v. Howard University, 545 A.2d 638, 643 (D.C. 1988), the appellate court affirmed a trial court decision that declined to permit a professor plaintiff to enter evidence of an oral promise to award tenure when the professor and the university had both signed a written agreement appointing the professor as an "assistant professor" with no tenure.

In the case at bar, the plaintiffs signed agreements, which specifically described "apartments" with "airbeds or mattresses." Exhibit 3 of Plaintiff's Complaint.  Further, Intrax specifically stated in its agreement that it would not vouch for the nature or quality

of the housing.  Exhibits 1 and 2 to Intrax's Memorandum.  There is no way, the court should consider the plaintiff's allegations of oral statements considering the quality of the housing when the written documents clearly describe the housing in a way that appears to vary from the Plaintiffs' allegations.

Finally, there can be no fraudulent inducement where a contract exists. Hercules & Co. v. Shama Rest., 613 A.2d 916, 930-33 (D.C. App. 1992) (finding that plaintiff failed to allege any material facts that supported a finding of an oral fraudulent inducement which modified the written contract).  See also  Halsey v. Minnesota-South Carolina Land & Timber, 28 F.2d 720, 725 (4th Cir. 1928) (plaintiff could not rely on representations made during negotiations because all prior negotiations are deemed merged in the contract.)

## IV. THE CIVIL CONSPIRACY COUNT FAILS BECAUSE PLAINTIFFS DO NOT ALLEGE ANY AGREEMENT BETWEEN SUNSET AND INTRAX, AND BECAUSE THE UNDERLYING TORT FAILS

### 1.    Elements of Civil Conspiracy Are Not Alleged

Civil conspiracy has four elements:  "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme."  Weishapl v. Sowers, 771 A.2d 1014, 1023 (D.C. 2001).

It is thus not an independent action; it is, rather, a means for establishing vicarious liability for the underlying tort. Id. at 1024.  Plaintiffs have not alleged any agreement between Sunset and Intrax to commit any unlawful act or any act in an unlawful manner.

Further, "a cause of action for civil conspiracy must allege the formation and operation of the conspiracy, wrongful acts done in furtherance of the common wrongful scheme, and damages suffered as a result." Higgs v. Higgs, 472 A.2d 875, 877 (D.C. 1984). Apart from general allegations of unlawful acts purportedly committed by the defendants, Plaintiffs fail to allege any facts regarding the formation, operation or the overall common scheme of the alleged conspiracy. Plaintiffs also fail to allege any motive or subjective intent on the part of the Defendants as involved in pleading conspiracy. Weishapl v. Sowers, 771 A.2d 1014, 1024 (D.C. 2001).

### 2.    Where There Is No Fraud, There Is No Conspiracy

Lastly, civil conspiracy is a means of establishing vicarious liability and is dependent upon some underlying tortious act. Executive Sandwich Shoppe, Inc., 749 A.2d at 738. As already stated, Plaintiffs have not pleaded actionable fraud against Defendants, and has not pled actionable fraud with particularity at all, and thus there is no tort base for Plaintiffs' claim of civil conspiracy.

### 3.    Conspiracy Cannot Be Based on an Alleged FLSA Violation

Authority also confirms that a claim of civil conspiracy does not lie for violation of a statutory claim such as an FLSA claim. In Monsanto v. Electronic Data Sys. Corp., 141 A.D.2d 514, 529 N.Y.S.2d 512 (N.Y. App. Div. 1988), the court rejected a civil conspiracy claim alleging employment discrimination under the New York Human Rights Law, noting that the "Human Rights Law is an action created by statute, which did not exist at common law, and therefore cannot give rise to tort liability." Id. at 514. The Court in Executive Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 739 (D.C.

2000), <u>citing Monsanto</u>, confirmed that civil conspiracy claims in the District did not exist for alleging conspiracies to violate statutory actions.

## V.      **THE FLSA CLAIM PREEMPTS PLAINTIFF'S COMMON LAW CLAIMS**

The FLSA pre-empts state law civil conspiracy claims and other common law claims.  <u>Choimbol v. Fairfield Resorts, Inc.,</u> 11 Wage & Hour Cas. 2d (BNA) 1660 (E.D. Va. 2006); <u>see also</u> <u>Johnston v. Davis Security, Inc.</u> 217 F.Supp.2d 1224 (D. Utah 2002). The Court must thus dismiss the fraud and conspiracy claims on this reason alone. FLSA, like other federal statutes, has a broad preemptive reach. <u>See</u> <u>Hurley v. Life Ins. Co. of N. Am.,</u> 2005 U.S. Dist. LEXIS 43038, *19 (D.D.C. 2005)(holding that federal ERISA claim preempts all common law claims).

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

Dated: February 5, 2008.                          Respectfully Submitted,

                                              _/s/ George R. A. Doumar
                                              George R. A. Doumar, Esq.
                                              D.C. Bar No:  415446
                                              George R. A. Doumar, PLLC
                                              2000 N. 14th Street
                                              Suite 210
                                              Arlington, VA 22201
                                              Tel: 703-243-3737
                                              Fax: 703-524-7610
                                              gdoumar@doumarlaw-
                                              group.com


                                              s/ John J. Rigby
                                              John J. Rigby
                                              D.C. Bar No. 255539
                                              McInroy and Rigby L.L.P.

2200 Wilson Boulevard
Suite 800
Arlington, VA  22201
Tel:  703-841-1100
Fax: 703-841-1161
jrigby@mcinroyrigby.com

**Attorneys for the Defendants**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MIROSLAV  IVANOV,** | ) |
| | ) |
| **VESELIN IVANOV** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **Civil No.: 7-CV-0410** |
| | ) **Judge Leon** |
| | ) |
| **SUNSET POOLS MANAGEMENT, INC.** | ) |
| **ET AL,** | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## <u>ORDER</u>

Defendant Sunset Pools Management, Inc.'s Motion for Summary Judgment is

GRANTED.

Dated: _____                    _____
                                            The Honorable Richard J. Leon
                                            United States District Court Judge


**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 5th day of February 2008, I caused the foregoing to be electronically filed with the Clerk of the Court through the CM/ECF system which will send notifications of each filing to the following counsel of record:

Mark Murphy, Esq.
Mooney Green Baker & Saindon, P.C.
1920 L Street, NW
Suite 400
Washington, D.C.  20036

Counsel for Plaintiffs

Joseph P. Harkins, Esq.
Littler Mendelson, P.C.
1150 17th Street, NW
Suite 900
Washington, DC 20036

Counsel for Defendant Intrax

John J. Rigby
McInroy and Rigby
2200 Wilson Boulevard
Suite 800
Arlington, VA  22201

Co-Counsel for Defendant Sunset

I also caused a copy to be served by first-class mail on February 4, 2008, upon the following counsel of record:

Reuban Guttman, Esq.
Wolf, Haldenstein, Adler, Freeman & Herz, L.L.C.
1920 L Street, N.W., Suite 500
Washington, D.C. 20036

Kris Keegan, Esq.
10027 Sinnot Drive
Bethesda, MD 20817

Counsel for Plaintiffs

                /s/ George R. A. Doumar
                George R. A. Doumar, Esq.
                D.C. Bar No:  415446
                George R. A. Doumar, PLLC
                2000 N. 14th Street
                Suite 210
                Arlington, VA 22201
                Tel: 703-243-3737
                Fax: 703-524-7610
                gdoumar@doumarlawgroup.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MIROSLAV  IVANOV, et al** | ) |
|  | ) |
|  | ) |
| **Plaintiffs,** | ) |
|  | ) |
| **v.** | )    **Civil No.: 7-CV-00410** |
|  | ) |
| **SUNSET POOLS MANAGEMENT, INC.** | ) |
| **ET AL,** | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

## DECLARATION OF BABAK KIANI

I, Babak Kiani, declare as follows, pursuant to 28 U.S.C. §1746:

1.      I am Babak Kiani, a regional manager for Sunset Pools Management, Inc.

2.      Sunset Pools is a pool management company in the Washington D.C. area, engaged in the operation of recreational swimming pools.  This is the company's sole source of revenue.

3.      Sunset Pools provides all the resources necessary for the operation of recreational pools, including lifeguards, pool chemicals and maintenance and cleaning services.

4.      Most of Sunset Pools' business is concentrated in the summer months, or late spring and early fall, because outdoor pools are open during those times.

5.      I believed that Sunset Pools did not have to pay overtime wages to any of its seasonal employees, because the company earns most of its revenue in the summer, and qualifies for a seasonal exception.  In 2005, Sunset's average monthly receipts for its six lowest revenue months constituted only 27.86% of its receipts during its six highest revenue months.  In March,

April, May, June, July and August of 2005 Sunset Pools had average receipts of $243,242.25. The totals were $260,365.69, $186,688.09, $262,553.25, $253,846.32, $374,880.36, and $121,290.80 for those six months. Whereas in January, February, September, October, November and December, average receipts were only $67,776.48; those total receipts were $30,314.16, $50,560.72, $82,172.15, $72,726.16, $86,835.25, and $84,050.43.

Also, in 2006, the average monthly receipts for the lowest months were 28.60% of the average monthly receipts of the highest months. Average receipts were $368,516.00 for March, April, May, June, July and August and specifically were $342,052.07, $354,580.15, $381,446.12, $390,085.39, $385,941.44 and $356,990.83. The average for the other six months was $105,402.50 for January, February, September, October, November and December and these specific numbers were $82,681.23, $94,300.94, $128,226.82, $118,268.50, $110,856.50, and $98,081.00.

6.    I remember the plaintiffs, Miroslav and Veselin Ivanov, in this matter. I remember in particular they sent pictures of parties they had at their apartment in 2006, including alcohol and lots of other people, including people staying over, and some pictures of them not wearing much clothes. The Plaintiffs would have parties where other people would come over and end up sleeping on the floor in their living room. The Plaintiffs could sleep together in a bedroom. Later they moved to an apartment where they could each have their own bedroom.

7.    I interviewed them in Bulgaria, in English. They spoke good English. They took the regular CPR/lifeguard class in Arlington, in English, and had regular lifeguard duties. See CPR certifications and pool operators' license attached. All our lifeguards have to be proficient in English, and plaintiffs spoke English well. They passed written lifeguard exams in English,

worked in English, and took lifeguard classes in English. Like me, they spoke English with an accent, but they spoke fluently.

8.      I never discussed housing with the Ivanovs, in any way. We discussed their pay, again only in passing. Most of our conversation was about them competing for the chance to come to the United States to work for Sunset as lifeguards for the summer through a cultural exchange program using their J1-visas. They were just very excited for the chance to come to the United States. They never complained about their housing the whole time they were here.

9.      In August 2006 the Ivanovs told me they wanted to come back the next summer. They sent the office manager at Sunset an e-mail in October 2006, saying they would come back and "will be supervisors" in 2007. I attach the e-mail with a rough translation with some irrelevant information removed.

10.     No other person at Sunset had any contact with the Ivanovs except for me.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON FEBRUARY 5, 2008 IN ARLINGTON, VA.

_____

BABAK KIANI

**Desi**

| | |
|---|---|
| **From:** | Miroslav Ivanov [mr.mpivanov@yahoo.com] |
| **Sent:** | Monday, October 30, 2006 9:17 AM |
| **To:** | Desi |
| **Subject:** | Chevy Chase Accounts |

Moia Lubima!

Pisha ti tova pismo, zashtoto dvamata s Vesko ni stana mnogo muchno za teb. 156-i den seksa vse oshte e miraj.
Prati ni nqkoq tvoq gola snimka, ta da ni ulesnish v banqta. Vsqka ve4er si mislime za teb po 15 min. v banqta, a sys snimka i 5 shte ni stignat :). M/u drugoto ako mojesh da ni vkarash paycheck-ovete , puk nie shte ti vkarame neshto drugo pri purva vyzmojnost.
Kaji mu na Joro da ostavi i malko za nas, stiga mu tolkova, puk nali i dogodina shte sme supervisor-i ;) .

Accounts:

Miroslav Ivanov - 187-321625-4

Veselin Ivanon  - 187-321688-2

Lubov lubov i oshte neshto.

Mnogo celuvki, no da znaesh 4e az malko bockam 4e ne sym se obrysnal :):)

4ao 4ao blagodarq ti!!

Get your email and see which of your friends are online - Right on the New Yahoo.com
(http://www.yahoo.com/preview)

--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.408 / Virus Database: 268.13.17/505 - Release Date: 10/27/2006

1

Translation of the e-mail from Mirolsav Ivanov

My dear,

I am writing you this letter because Vesko and me are really missing you. ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ By the way, could put our checks in the bank and ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Tell Joro to save some of you for us, it is
enough for him, since we will be supervisors next year.

Accounts: ....

....................

.....................

Love, love and something more.

A lot of kisses but I want you to know that I did not shaved and I am little scruffy.

Bye bye and thank you.