**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Miroslav Ivanov, et al.,** | |
| **Plaintiff,** | **Case No. 1:07-cv-410** |
| **v.** | |
| **Sunset Pools Management, Inc., et al.,** | |
| **Defendant.** | |

**DEFENDANT INTERNATIONAL TRAINING AND EXCHANGE, INC'S**
**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendant, International Training and Exchange, Inc ("Intrax"), by and through undersigned counsel, respectfully submits its Opposition to Plaintiffs' Motion for Summary Judgment (" Plaintiffs' Motion").

**I.      INTRODUCTION**

Plaintiff Miroslav Ivanov and Plaintiff Veselin Ivanov ("Plaintiffs") filed a Complaint in this Court alleging violations of the Fair Labor Standards Act ("FLSA"), common law fraud and misrepresentation, and civil conspiracy in connection with their placement by Intrax as temporary employees at Sunset Pools, Inc.[1]  Complaint, Counts I – III.  Specifically, Plaintiffs contend that they were entitled to but denied overtime pay, and that Defendants made false representations regarding their working and living accommodations in the United States. Complaint, ¶¶ 25, 28.

---

[1] Plaintiffs also brought this action against Sunset Pools Management, Inc. ("Sunset Pools"), their employer.

Plaintiffs only move for summary judgment on one issue, *i.e.*, whether Intrax was a statutory employer under the FLSA. As described fully in Intrax's Motion for Summary Judgment on all counts, Intrax was not Plaintiffs' employer, and thus cannot be held liable for any overtime pay due.[2]

## II.    COUNTER-STATEMENT OF UNDISPUTED FACTS

Intrax recruits and facilitates the placement of international university students on summer breaks for temporary employment in the United States. See Declaration of Kimberley Meyers, Managing Director of Intrax, herein "Meyers Decl.," attached hereto as Exhibit A, ¶ 2. Examples of Intrax's business clientele are: Marriott Hotels, McDonald's Restaurants, Dollar Rent A Car, Treasure Island Park, Princess Tours, Alaska Heritage Tours, Yosemite National Park, and Mt. Olympus Waterpark, to name a few. Meyers Decl., ¶ 8. Sunset Pools Management, Inc., another client of Intrax, employs international university students for the summer months as lifeguards in the Washington, D.C. metropolitan area. Intrax's clients do not pay Intrax for this service. Intrax's service is fully paid for by the international university students who wish to participate in its international placement program. Meyers Decl., ¶ 9.

Intrax's role in this process is two-fold. First, it helps the international university students obtain their J-1 Visas. Meyers Decl., ¶ 7. Second, it helps employers find foreign students for seasonal positions when they have labor shortages and/or seasonal staffing needs.[3] Meyers Decl., ¶ 2. Because Intrax is based in the United States, it contracts with organizations in various countries to assist with tasks related to the recruitment job placement process, including administering English proficiency examinations. Meyers Decl., ¶ 10. In Buglaria,

---

[2] Plaintiffs did not propound discovery on Defendants.

[3] As intended, Intrax's service promotes cultural exchange between citizens of many nations.

which is where the two Plaintiffs live, Intrax contracts with Zip Travel to perform tasks related to this process.  Meyers Decl., ¶ 11.

In the instant case, Intrax and Sunset Pools entered into the Premium Host Company Agreement (the "Agreement") on November 3, 2005.  Exhibit B.  The Agreement states that, among other things, Intrax agrees to recruit summer lifeguards for Sunset Pools in the Washington, D.C. metropolitan area, and that Sunset Pools agrees to "provide employment consistent with the employment terms outlined in the job description Documents/Placement Confirmation Form" and "comply with all applicable local, state, and federal labor laws."  Id.

In December 2005, Plaintiffs came to the Zip Travel office in Sofia, Bulgaria, to apply to Intrax's international work-travel program.   Declaration of Yana Simeonova, Placement Director,  herein "Simeonova Decl.," attached hereto as Exhibit C, ¶ 4.  During this process, Zip Travel spent some time interviewing the Plaintiffs to ascertain their English proficiency.  Simeonova Decl., ¶¶ 5, 6.  According to Plaintiffs, the English proficiency examination lasted merely three minutes.  Declaration of Miroslav Ivanov, herein "M. Ivanov Decl.," attached hereto as Exhibit D, ¶¶ 5, 6; and Declaration of Veselin Ivanov, herein "V. Ivanov Decl.," attached hereto as Exhibit E, ¶ 5

According to Plaintiffs, they spent another additional few minutes reviewing Intrax's Premium Placement Confirmation Form, which describes information concerning their job placement at Sunset Pools.  M. Ivanov Decl., ¶ 7 and V. Ivanov Decl., ¶ 7; see also, Intrax's Premium Placement Conformation Forms, attached hereto as Exhibit F (the "Form").[4]  Specifically, the Form, which Sunset Pools agreed to adhere to in the Agreement, provides the

---

[4] Plaintiffs also alleged that "[i]n an effort to induce potential employees to come to the U.S. where they are subjected to sub-standard conditions, Defendant Intrax promises what amounts to a "vacation like atmosphere" as described in "Sunset's brochure." Complaint, ¶ 13, Exhibit G.

job description, level of English required, start and end date, estimated average hours per week, rates of pay, required skills, and expected schedule. Exhibit F. Intrax's involvement in this process ceased after it helped Sunset Pools hire Plaintiffs, and after Plaintiffs obtain their J-1 Visas.

As contemplated in the Form and the Agreement, Sunset Pools was Plaintiffs' employer, not Intrax. See Defendant Sunset Pools' Answer, ¶¶ 6- 7. (Plaintiffs were employed by Sunset Pools from approximately May 2006 through approximately October 2006). (emphasis added). In addition, Plaintiffs attached their pay stubs to the Complaint, which also show that Sunset Pools was their employer, and not Intrax. Exhibit H. Furthermore, Plaintiffs executed Employment Agreements with Sunset Pools, and not with Intrax. Exhibit I. Indeed, after Intrax recruited Plaintiffs, Sunset Pools interviewed them, establishing an important distinction between recruiting and hiring. Declaration of Babak Kiani, Regional Manager for Sunset Pools, herein "Kiani Decl.," as Exhibit J, ¶ 7[5]

Nevertheless, Plaintiffs cite to the following additional undisputed facts which they see as supporting an employer-employee relationship with Intrax under the FLSA. They note that:

1.      Intrax required Plaintiffs to attend an orientation meeting upon their arrival in the United States.

2.      Intrax required Plaintiffs to advise the Company if they changed their living address while staying in the United States.

3.      Intrax required Plaintiffs to obtain prior written authorization before leaving their job positions with Defendant Sunset Pools.

4.      If Plaintiffs secured new employment, Intrax required Plaintiffs to verify such employment with it.

---

[5] The Agreement between Intrax and Sunset Pools also states that Sunset Pools understands and agrees that Intrax cannot guarantee "job performance of participants" placed by Intrax with Sunset Pools. Exhibit B.

5.          Intrax represented to Plaintiffs that if they did not receive a certain number of hours, Intrax would assist them in obtaining new employment.

6.          Intrax maintained a 24-hour help line for individuals whom it placed.

Plaintiffs' reliance on these facts, however, is entirely misplaced because Intrax performed these functions exclusively in its role as a Sponsor as required by the Regulations promulgated under the U.S. Department of State's Exchange Visitor Program, and not because it was Plaintiffs' employer.[6]  Meyers Decl., ¶¶ 3-6.

## III.  ARGUMENT

### A.      Intrax Was Plaintiffs' "Sponsor" Through the U.S. Department of State's Exchange Visitor Program.

The U.S. Department of State ("State Department") is charged with overseeing the Mutual Educational and Cultural Exchange Act of 1966 (the "Act"), as amended, Public Law 87-256, 22 U.S.C. 2451, *et seq.*  The purpose of the Act is to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchanges.  22 C.F.R. § 62.1(a).  The purpose of the Exchange Visitor Program ("Program") "is to provide foreign nationals with opportunities to participate in educational and cultural programs in the United States and to return home to share their experiences, and to encourage Americans to participate in educational and cultural programs in other countries."  22 C.F.R. § 62.1(b).  To that end, the State Department promulgated rules and regulations of the Program, which include the following definitions:

● Exchange Visitor, such as each of the Plaintiffs means a foreign national who has been selected by a sponsor to participate in an exchange visitor program and who seeks to enter or has entered the United States temporarily on a J-1 visa.

● Employee means an individual who provides services or labor for an employer for

---

[6] A copy of the relevant portions of the Exchange Visitor Program's Regulations are attached hereto as Exhibit M.

wages or other remuneration but does not mean 'independent contractors, as defined in 8 C.F.R. 274a.1(j).

● Sponsor, such as Intrax, means a legal entity designated by the Secretary of State conduct an exchange visitor program.

● Third party, such as Sunset Pools, means an entity cooperating with or assisting the sponsor in the conduct of the sponsor's program. Sponsors are required to take all reasonable steps to ensure that third parties know and comply with all applicable provisions of these regulations.

22 C.F.R. § 62.2.

Sponsors are responsible for, among other things, offering an "orientation" to the exchange visitor. 22 C.F.R. § 62.10(c). The orientation shall include "information concerning (1) life and customs in the United States; (2) local community resources (e.g., public transportation, medical centers, schools, libraries, recreation centers, and banks) to the extent possible; (3) available health care, emergency assistance, and insurance coverage; (4) a description of the program in which the exchange visitor is participating; (5) rules that the exchange visitors are required to follow under the sponsor's program; (6) address of the sponsor and the name and telephone number of the responsible officer; and (7) address and telephone number of the Exchange Visitor Program Services of the Department of State and a copy of the Exchange Visitor Program brochure outlining the regulations relevant to the exchange visitors. Id.

Under the Program, exchange visitors are also required to keep the Sponsor apprised of his or her address and telephone number, and must maintain that information. 22 C.F.R. § 62.10(e)(3). In addition, a Sponsor must ensure that the activity in which the exchange visitor is engaged is consistent with the category and activity listed on the exchange visitor's Form DS-2019. 22 C.F.R. § 62.10(e)(2). Further, Sponsors are also required to ensure that exchange visitors have insurance which covers sickness or accident during the period of time that an

exchange visitor participates in the sponsor's exchange visitor program.  22 C.F.R. § 62.14(a).

As noted on the first page of the Premium Placement Confirmation Form, Intrax was Plaintiffs' "Sponsor," and Sunset Pools, Inc., was Plaintiffs' employer.  Exhibit F; see also Meyers Decl., ¶¶ 3-6 ("Intrax is an official Sponsor participating in the U.S. Department of State's Exhange Visitor Program (the "Program"), and was such a Sponsor in 2006.")  As shown, the undisputed facts that Plaintiffs claim are evidence that Intrax was their statutory employer is actually only evidence that Intrax was properly adhering to the Program's regulations for Sponsors.

Moreover, employers have "meetings" with their employees to discuss business practices and policies in detail.  Sponsors, such as Intrax, have "orientations" with their exchange visitors to discuss information related to everyday living in a new country not work specifically.   For example, the information disseminated to the exchange visitors may include information concerning local customs, local community resources, and local hospitals.  22 C.F.R. § 62.10(c).

On the other hand, it is not the function of an employer to: (1) keep track tabs of an employee once they leave their employ, (2) assist their own employees in working more hours at another employer; or (3) maintain a 24-hour help line for emergencies regarding insurance, accidents, etc. These tasks are purely Sponsor driven, as required by the Program's rules and regulations.  They support the cultural exchange mission, not a particular employer-employee relationship.

### B.    Plaintiffs Were Not Employed By Intrax.

Plaintiffs filed this action pursuant to the FLSA ostensibly under the theory that Sunset Pools and Intrax are both statutory employers of Plaintiffs.  The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  An entity "employs" an

individual under the FLSA if it "suffer[s] or permit[s] that individual to work."  29 U.S.C. § 203(g).  An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer.  See Zheng. v. Liberty Apparel Co., 355 F.3d 61 (2nd Cir. 2003) citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33, (1961) (explaining that "'economic reality' rather than 'technical concepts' is ... the test of employment" under the statute.); see also Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2nd Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question.")  Indisputably, Intrax did not control Plaintiffs' work at Sunset.

Under the FLSA, two entities  may be  "joint employers" for purposes of payment of wages if both entities control the work in question. Federal regulations provide examples demonstrating when a joint employment relationship will be considered to exist.

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

- 8 -

In the present case, it is undisputed that Plaintiffs did not work directly for Intrax, and their work only benefited Sunset. In fact, Plaintiffs paid Intrax for its recruitment services, not the other way around. Meyers Decl., ¶ 5. Therefore, example number (1) is inapplicable. Similarly, there is no allegation that Intrax was anything but independently owned or that Intrax and Sunset Pools were not completely disassociated from one another once the actual work began. In fact, the Agreement between Intrax and Sunset Pools, Plaintiffs' separate Employment Contract with Sunset Pools, Plaintiffs' pay stubs, and Intrax's Premium Placement Conformation Form all demonstrate that Intrax had no involvement whatsoever in the control of Plaintiffs' work. See Exhs. B, I, H, and F, respectively. As noted, Intrax's role was limited to recruiting Plaintiffs, and helping Plaintiffs obtain J-1 Visas. Hence, example number (3) is inapplicable, as well.

Presumably, Plaintiffs base their joint-employer theory on the second example in the regulations, i.e., that Intrax was acting directly or indirectly in the interest of Sunset in relation to Plaintiffs. There is no factual support for such contention. To the contrary, Sunset Pools and Intrax maintained separate interests with regard to their own business models and with regard to these Plaintiffs. Indeed, Intrax could be in conflict with Sunset, for example, if Plaintiffs wanted to work hours at another employer.

Analysis of whether one employer is acting directly or indirectly in the interest of the other employer should be based on the "circumstances of the whole activity." Zheng, 355 F.3d at 71-72. In Zheng, Plaintiffs were garment workers employed by subcontractors to stitch and finish clothing for garment manufacturers. Id. at 64-66. The plaintiffs claimed that the garment manufacturers were joint employers with the contractors under the FLSA and New York state wage and hour laws because the workers worked primarily on the manufacturer's garments. Id.

- 9 -

at 64-65.  To assist in addressing this issue, the Second Circuit in <u>Zheng</u> set forth six non-

exclusive factors to be considered in determining joint employment:

> (1) Whether [the putative joint employer(s)] premises and
> equipment were used for the plaintiffs' work; (2) whether the
> [employer] had a business that could or did shift as a unit from one
> putative joint employer to another; (3) the extent to which
> plaintiffs performed a discrete line-job that was integral to [the
> putative joint employer's] process of production; (4) whether
> responsibility under the contracts could pass from one
> subcontractor to another without material changes; (5) the degree
> to which [the putative joint employer or its agents] supervised
> plaintiffs' work; and (6) whether plaintiffs worked exclusively or
> predominantly for [the putative joint employer].

355 F.3d at 72 (citations omitted).    According to the court, satisfaction of these factors

demonstrates  "functional control over workers" in the absence of "formal control,"  <u>Id.</u> at 72,

while "ensur[ing] that the statute is not interpreted to subsume typical outsourcing relationships."

Id. at 76.  None of these factors are alleged to apply here or even close to applying as a factual

matter. In the circumstances of this case, Intrax cannot be a statutory employer for participants it

recruits for Sunset or any of its other clientele, such as Marriott Hotels and McDonald's

Restaurants.  Intrax has a limited role with participants once they have been placed and begin

working.  Otherwise, Intrax would be a joint employer with many major employers throughout

the U.S., an absurd result.

### C.    Plaintiffs' Case Law Is Not On Point.

Plaintiffs cite <u>Carter v. Dutchess Community College</u> which sets forth the following

"economic reality" factors:  "whether the alleged employer (1) had the power to hire and fire the

employees; (2) supervised and controlled employee work schedules or conditions of

employment; (3) determined the rate and method of payment; and (4) maintained employment

records." 735 F.2d 8, 12 (2nd Cir. 1984).  Relying on the <u>Carter</u> factors, Plaintiffs <u>mistakenly</u>

state that the Second Circuit held that the defendant in <u>Herman v. RSR Security Services Ltd.</u>, 172 F.3d 132, 140 (2nd Cir. 1999), discussed *infra*, "only satisfied the first criteria of the economic reality test," but nevertheless was held a statutory employer.  Plaintiffs' Motion at 4-5. Plaintiffs further <u>mistakenly</u> state that the court found that "[t]here was no indication that the defendant had exercised regular control or supervision over employees or their work schedules, nor did he determine their rate and method of payment, or maintain employment records." <u>Id</u>.

To the contrary, the Second Circuit found that the defendant in question <u>satisfied three out of the four factors</u>, not merely one.  <u>See</u> Herman, 172 F.3d at 140. ("Evidence in the records supports at least three of the four factors.")   Moreover, <u>Herman</u> is easily distinguishable on its facts.

There, the individual defendant was Chairman of the Board and exercised "broad authority over" the employer's operations.[7]  <u>Id</u>. at 136.  The Court first found that the individual defendant had the authority to hire employees "as evidenced by his hiring" of managerial staff over the employees at issue.  <u>Id</u>. at 140.  Here, the record evidence shows that Intrax recruited Plaintiffs, and that Sunset Pools interviewed and hired them.   Declaration of Babak Kiani, Regional Manager for Sunset Pools, herein "Kiani Decl.," as Exhibit J, ¶ 7.  In addition, there is no evidence that Intrax had the authority to terminate Plaintiffs beyond their role as Sponsors.[8]

Second, the <u>Herman</u> court found that the individual defendant occasionally "supervised and controlled [the] employee[s] work schedules and the conditions of employment." <u>Herman</u>, 172 F.3d at 140.  To satisfy this element, Plaintiffs argue,

---

[7] By contrast, Intrax and Sunset Pools are distinct and separate entities.
[8] While Plaintiffs' Motion states that Intrax had the ability to terminate Plaintiffs, Plaintiffs' Motion failed to cite to any record evidence to support this notion.  Plaintiffs' Motion at 5.  The authority Intrax had to request that Plaintiffs leave the county stemmed from its role as Sponsor, not as an employer, which had no such authority.

> [w]hile Sunset controls the day to day supervision of employees, Intrax requires employees like Plaintiffs to attend an orientation session, report changes to their home address in the United States, obtain authorization from Intrax before leaving their positions with Sunset and obtain pre-approval from Intrax if they obtain additional employment positions other than from Sunset.

Plaintiffs' Motion at 5.

Yet these are Sponsor functions as required by the Program's regulations. In contrast, employers generally do not (1) have orientations with their employees to discuss information related to everyday survival in a new country; (2) keep track of an employee once they leave their employ; and (3) assist their own employees in working more hours at another employer.

Third, the individual defendant in <u>Herman</u> participated in the method of payment of the employees by ordering "a stop to the illegal pay practice of including security guards on 1099 forms as independent contractors." <u>Herman</u>, 172 F.3d at 140. Moreover, the individual defendant actually signed the employees' checks "on at least three occasions," clearly showing he controlled the method of payment. <u>Id</u>. Here, Plaintiffs contend that Intrax shared responsibility with Sunset Pools regarding the pay rate and method of payment because Intrax represented to Plaintiff that if they did not receive a certain number of hours of work for a specified period of time, Intrax would assist them in obtaining a <u>new</u> position. Plaintiffs' Motion at 6. The undeniable fact is that employers do not find their own employees jobs with other employers when their employees' hours fall below a certain threshold. Therefore, there is no record evidence that Intrax "determined the rate and method of payment" of Plaintiffs. <u>Carter,</u> 735 F.2d at 8, 12.

The fourth <u>Carter</u> factor focuses on the maintenance of "employment records." <u>Carter,</u> 735 F.2d at 8, 12. Plaintiffs argue that the following facts are evidence that Intrax maintained Plaintiffs' "employment records," and thus becomes a statutory employer:

- 12 -

- arranged and maintained Plaintiffs' visas and other immigration forms;

- required Plaintiffs to report to it upon arrival into the United States;

- required Plaintiffs to report any changes in employment status;

- maintained ongoing support and a 24-hour help line for individuals it placed; and

- provided health insurance to individuals while in its job placement program.

Plaintiffs' Motion at 6.

As previously stated, these factors are only evidence that Intrax was properly adhering to the Program's regulations. Moreover, these "records" are not employment records at all. Indeed, the Program requires that sponsors maintain all of the above information. 22 C.F.R. § 62.10(c) & (e)(2)(3). Finally, Sponsors are also required to ensure that exchange visitors have health insurance during the period of time that an exchange visitor participates in the Sponsor's exchange visitor program. 22 C.F.R. § 62.14(a). In contrast, employers in the U.S. may or may not provide health insurance, as they see fit.

Moreover, it is undisputed that Sunset Pools was Plaintiffs' employer. See Defendant Sunset Pools' Answer, ¶¶ 6- 7. In addition, all of the Carter factors are satisfied as well as evidenced by Plaintiffs' pay stubs, employment agreements, and the rest of the record evidence in this case. See Exhibits A-J.

In sum, Intrax is not a statutory employer under either the Zheng or the Carter factors. Rather, Plaintiffs' unfounded theory is a threat to all cultural exchange programs at a time when they are needed more than ever.

## IV.    CONCLUSION

For the foregoing reasons, Intrax respectfully requests that the Court deny Plaintiffs' Motion for Summary Judgment, and grant Intrax's Motion for Summary Judgment on all Counts.

[Dkt. No. 29.]


Dated:   February 26, 2008

<div style="margin-left: 50%;">

/s/  Joseph P. Harkins
_____
Joseph P. Harkins (Fed. Bar. No. 14007)
jharkins@littler.com
Steven E. Kaplan (Fed. Bar No. 92408)
skaplan@littler.com
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, DC  20036
202.842.3400  Telephone
202.842.0011  Facsimile

Counsel for Intrax

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of February 2008, the foregoing Defendant International Training and Exchange, Inc.'s Opposition to Plaintiffs' Motion for Summary Judgment will be served through electronic mail, via ECF filing, upon the following:

> Mark Murphy, Esquire
> Mooney Green Baker & Saindon, P.C.
> 1920 L Street, N.W.
> Suite 400
> Washington, DC  20036
>
> Counsel for Plaintiffs
>
> John J. Rigby, Esquire
> McInroy & Rigby, L.L.P.
> 2200 Wilson Boulevard
> Suite 800
> Arlington, VA  22201
>
> George R.A. Doumar, Esquire
> George R.A. Doumar, PLLC
> 2000 N. 14th Street
> Suite 210
> Arlington, VA  22201
>
> Counsel for Defendants Sunset Pools
> Management, Inc. and Arash Naderi

> /s/ Joseph P. Harkins
> Joseph P. Harkins

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Miroslav Ivanov, et al.,

      Plaintiff,

      v.

Sunset Pools Management, Inc., et al.,

      Defendant.

Case No. 1:07-cv-410

## DEFENDANT INTERNATIONAL TRAINING AND EXCHANGE, INC'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule for the U.S. District Court for the District of Columbia 7(h), Defendant International Training and Exchange, Inc ("Intrax"), by and through undersigned counsel, hereby submits its Undisputed Statement of Facts in support of its Opposition to Plaintiffs' Motion for Summary Judgment.

## I.    UNDISPUTED STATEMENT OF FACTS

1.    Intrax recruits and facilitates the placement of international university students on summer breaks from foreign countries for temporary employment positions in the United States. See Declaration of Kimberley Meyers, Managing Director of Intrax, herein "Meyers Decl.," attached hereto as Exhibit A, ¶ 2.

2.    Intrax is an official Sponsor participating in the U.S. Department of State's Exchange Visitor Program (the "Program"), and was such a Sponsor in 2006. Meyers Decl., ¶ 3.

3.    Under the Rules and Regulations of the Program, Intrax is required to ensure that participants, such as Plaintiffs, attend an orientation meeting prior to their arrival in the United

States.  Meyers Decl., ¶ 4

4.      Under the Rules and Regulations of the Program, participants are also required to keep the Sponsor apprised of his or her address and telephone number.  Meyers Decl., ¶ 5.

5.      Under the Rules and Regulations of the Program, Sponsors must ensure that the activity in which the participants are engaged is consistent with the category and activity listed on Form DS-2019.  Meyers Decl., ¶ 6.

6.      Examples of Intrax's business clientele are: Marriott Hotels, McDonald's Restaurants, Dollar Rent A Car, Treasure Island Park, Princess Tours, Alaska Heritage Tours, Yosemite National Park, and Mt. Olympus Waterpark, to name a few.  Meyers Decl., ¶ 8.

7.      Sunset Pools Management, Inc., another client of Intrax, employs international university students for the summer months in the Washington, DC metropolitan area as lifeguards.

8.      Intrax's clients do not pay Intrax for this service.  The service is fully paid for by the international university students who wish to participate in Intrax's international placement program.  Meyers Decl., ¶ 9.

9.      Because Intrax is based in the United States, it contracts with organizations in various countries to assist with tasks related to the job placement process, including administering English proficiency examinations.  Meyers Decl., ¶ 10.

10.     In Buglaria, which is where the two Plaintiffs live, Intrax contracts with Zip Travel to perform tasks related to the job placement process.  Meyers Decl., ¶ 11.

11.     Intrax and Sunset Pools entered into the Premium Host Company Agreement (the "Agreement") on November 3, 2005.  Exhibit B.  The Agreement states that, among other things, Intrax agrees to recruit summer lifeguards for Sunset Pools in the Washington, D.C. metropolitan

area, and that Sunset Pools agrees to "provide employment consistent with the employment terms outlined in the job description Documents/Placement Confirmation Form" and "comply with all applicable local, state, and federal labor laws." Id.

12.     In December 2005, Plaintiffs came to the Zip Travel office in Sofia, Bulgaria, to apply to Intrax's international work-travel program. Declaration of Yana Simeonova, Placement Director, herein "Simeonova Decl.," attached hereto as Exhibit C, ¶ 4.

13.     During this process, Zip Travel spent some time interviewing the Plaintiffs to ascertain their English proficiency. Simeonova Decl., ¶¶ 5, 6.

14.     According to Plaintiffs, the English proficiency examination lasted merely three minutes. Declaration of Miroslav Ivanov, herein "M. Ivanov Decl.," attached hereto as Exhibit D, ¶¶ 5, 6; and Declaration of Veselin Ivanov, herein "V. Ivanov Decl.," attached hereto as Exhibit E, ¶ 5

15.     According to Plaintiffs, they spent another additional few minutes reviewing Intrax's Premium Placement Confirmation Form, which describes information concerning their job placement at Sunset Pools. M. Ivanov Decl., ¶ 7 and V. Ivanov Decl., ¶ 7; see also, Intrax's Premium Placement Conformation Form, attached hereto as Exhibit F (the "Form").

16.     Specifically, the Form, which Sunset Pools agreed to adhere to in the Agreement, provides the job description, level of English required, start and end date, estimated average hours per week, rates of pay, required skills, and expected schedule. Exhibit F.

17.     Plaintiffs executed Employment Agreements with Sunset Pools. Exhibit I.

18.     Plaintiffs were employed by Sunset Pools from approximately May 2006 through approximately October 2006. See Defendant Sunset Pools' Answer, ¶¶ 6- 7.

19.     Plaintiffs' pay stubs reflect that Sunset Pools paid them as their employer. Exhibit H.

20.     After Plaintiffs began employment at Sunset Pools, Intrax did not assign or direct their work, provide their schedule or pay or oversee their training or housing for the Sunset Pools jobs.

**Intrax also does not dispute the following statements set forth in Plaintiffs' Motion for Summary Judgment.[1]**

1.     Defendant Sunset Pools management Inc. ("Sunset") is in the business of, *inter-alia,* servicing and maintaining swimming pools for established institutions including prestigious hotels in the Metropolitan Washington, DC area.  See Complaint, at ¶¶ 1, 9.

2.     Defendant International Training and Exchange, Inc. ("INTRAX") recruited Plaintiffs for a job with Defendant Sunset in the Washington, D.C. metropolitan region.  See Complaint, at ¶ 8.

3.     In the course of recruiting Plaintiffs for employment in the United States, Defendant INTRAX provided Plaintiffs with a "Job Description Document" setting forth the terms and conditions of their prospective position.  See Complaint, at Exhibit 4.

---

[1] For the Court's convenience, Intrax incorporated Plaintiffs' Undisputed Facts into this section, so there is one depository of undisputed facts.  However, Intrax maintains that all documents speak for themselves, and that any characterization made by Plaintiffs below is subject to the Court's interpretation and determination.  For example, paragraph 4, *infra*, reads: "In its Job Description Document, Defendant *INTRAX specifically stated* that Plaintiffs would not be entitled to overtime pay," (emphasis added), and then cites to the Complaint as the authority.  Citing to the Complaint to establish an "undisputed fact" is questionable because a Complaint merely presents allegations, yet to be proven.  Second, the Job Description speaks for itself.  Intrax never "stated" any position concerning overtime.  Instead, Intrax incorporated and forwarded Sunset Pools' job description to Plaintiffs.

Paragraph 8, *infra*, is another example, which reads: "Defendant Sunset, *like Defendant INTRAX*, *represented* to Plaintiffs that they were not entitled to overtime pay.  See Complaint, at Exhibit 3, p.2 (Section IV, Wages)." (emphasis added).  Exhibit 3 to the Complaint speaks for itself.  As described more fully in the Opposition to Plaintiffs' Motion for Summary Judgment, Plaintiffs' characterizations are off base because Intrax performed a variety of tasks exclusively in its role as a Sponsor pursuant to the U.S. Department of State's Exchange Visitor Program, and not because it was Plaintiffs' employer.  Meyers Decl., ¶¶ 2-6.

4.      In its Job Description Document, Defendant INTRAX specifically stated that Plaintiffs would not be entitled to overtime pay. Id.

5.      In connection with its recruitment and placement services, Defendant INTRAX required Plaintiffs to abide by a number of requirements in order to maintain their employment status in the United States.  See Defendant's Motion to Dismiss and to Compel Arbitration, filed by INTRAX, at Exhibit 1, p. 6.  Among these conditions, Plaintiffs were required to attend an orientation meeting upon their arrival in the United States. Id. INTRAX also required Plaintiffs to advise the Company if they changed their living address while staying in the United States. Id. at 7.  Plaintiffs were also required to obtain prior written authorization from INTRAX before leaving their job positions with Defendant Sunset. Id. At 8.  Likewise, while in the United States, if Plaintiffs secured new employment, other than with Sunset, they were required to verify such new employment with Defendant INTRAX. Id. At 10.  If Plaintiffs failed to abide by any of the conditions set forth by INTRAX, they were advised that they would no longer have medical insurance and would be required to leave the country immediately. Id. At 8.   INTRAX represented to Plaintiffs that if they did not receive a certain number of hours of work for a specified period of time, then INTRAX would assist them in obtaining a new position. Id. At 9-10.  In addition, INTRAX maintained ongoing support and a 24-hour help line for individuals whom it placed.

6.      After their recruitment and placement by Defendant INTRAX, Plaintiffs began working as lifeguards for Defendant Sunset on May 24, 2006. See Complaint, at ¶¶ 6, 7. Plaintiffs worked as lifeguards until October 20, 2006. Id.   While working as lifeguards, Plaintiffs worked significant hours in excess of forty (40) hours per week. See Complaint, at ¶¶ 6, 7, 17.

7.    When Plaintiffs would work more than forty (40) hours in any one week, the additional hours would be shown on their payroll stubs as a "bonus" but would be paid at the regular rate of pay.  <u>See</u> Complaint, at ¶ 20, and Exhibit 5 attached to Plaintiffs' Complaint.

8.    Defendant Sunset, like Defendant INTRAX, represented to Plaintiffs that they were not entitled to overtime pay.  <u>See</u> Complaint, at Exhibit 3, p.2 (Section IV, Wages).

Dated:  February 26, 2008

/s/
Joseph P. Harkins (Fed. Bar. No. 14007).
Steven E. Kaplan (Fed. Bar No. 92408)
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, DC  20036
202.842.3400
Counsel for Intrax

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 26th day of February 2008, the foregoing Undisputed Statement of Facts in Support of its Opposition to Plaintiffs' Motion for Summary Judgment will be served through electronic mail, via ECF filing, upon the following:

Mark Murphy, Esq.
Mooney Green Baker & Saindon, P.C.
1920 L Street, NW
Suite 400
Washington, DC  20036

Counsel for Plaintiffs

John J. Rigby, Esq.
McInroy & Rigby, L.L.P.
2200 Wilson Blvd., Suite 800
Arlington, Virginia  22201

George R.A. Doumar, Esq.
George R.A. Doumar, PLLC
2000 N. 14th Street, Suite 210
Arlington, VA  22201

Counsel for Defendants Sunset Pools
Management, Inc. and Arash Naderi

                              /s/
_____
Joseph P. Harkins

# EXHIBIT
# A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MIROSLAV IVANOV

and

VESELIN IVANOV,

        Plaintiffs,

        v.

SUNSET POOLS MANAGEMENT, INC.
et al.,

        Defendants.

Case No. 07-CV-00410
Hon. Richard J. Leon

## DECLARATION OF KIMBERLEY MEYERS

1. My name is Kimberley Meyers, and I am over 18 years of age and competent to give testimony.

2. I am the Managing Director of Administration of International Training and Exchange, Inc., known as Intrax. Intrax recruits and facilitates the placement of individuals from foreign countries for temporary employment positions with employers in the United States.

3. Intrax is an official Sponsor participating in the U.S. Department of State's Exchange Visitor Program (the "Program"), and was such a Sponsor in 2006.

4. Under the Rules and Regulations of the Program, Intrax is required to ensure that participants, such as Plaintiffs, attend an orientation meeting prior to their arrival in the United States.

5. Under the Rules and Regulations of the Program, participants are also required to keep the Sponsor apprised of his or her address and telephone number.

6. Under the Rules and Regulations of the Program, Sponsors must ensure that the activity in which the participants are engaged is consistent with the category and activity listed on Form DS-2019.

7.  As part of Intrax's work travel program, Intrax assists the participants to obtain J-1 Visas.

8.  Intrax's clientele includes such employers as Marriott Hotels, McDonalds Restaurants, Dollar Rent A Car, Treasure Island, Princess Tours, Alaska Heritage Tours, Yosemite National Park, and Mt. Olympus Waterpark.

9.  All fees for service to Intrax are paid by the participants, and not by the employers who temporarily employ the employees from abroad.

10. Because Intrax is based in the United States, we contract with organizations in various countries to assist with tasks related to the job placement process, including their presenting applicants with Intrax's Premium Placement Participant Terms and Conditions Agreement, and conducting English proficiency examinations.

11. In Bulgaria, Intrax has a contract with Zip Travel to perform the above-referenced tasks.

12. Specifically, Intrax provides Zip Travel with the entire 12-page Terms & Conditions and instructs the contractor to present the entire agreement to all applicants for their review and signature.

13. Intrax expressly states in the Terms & Conditions that its program does not include housing and that Intrax is not responsible for providing housing to the participants. Moreover, the Terms & Conditions states that Intrax makes no representations or guarantees regarding the nature or quality of such housing, should housing become available through an employment opportunity.

14. Some time after Miroslav Ivanov's and Veselin Ivanov's (Plaintiffs) employment with Sunset Pools terminated, Plaintiffs revisited Zip Travel in Sofia, Bulgaria with interest in participating in Intrax's international placement program again.

15. I declare under penalty of perjury that the foregoing is true and correct.

_____
Kimberley Meyers

Firmwide:84102408.2 054310.1005

# EXHIBIT
# B

Nov 04 05 11:14a    Timo  Johnson              3527542  0              P.4



**WORK TRAVEL**

Summer 06.

## Premium Placement Host Company Agreement

This agreement is between Intrax Work/Travel ("IWT"), located at 600 California Street, San Francisco, California 94108, and Sunset Pools Management ("Host Company"), located at 3705 George Mason Drive, Falls Church, VA 22041, for the purpose of the recruitment and job placement of international students ("Participants"), participating in the Intrax Work/Travel J-1 Summer Work/Travel Program ("IWT Program").

A.  IWT agrees to make a good faith effort to recruit qualified applicants to fill the following positions on the following dates:

160

| Position | Number of Jobs | Arrival Date(s) | Departure Date(s) |
|---|---|---|---|
| Lifeguard | 130 / 20 | 5/5/06 - 3/10/06 | 9/5/06 |
| | 60 | 5/10/06 - 5/25/06 | 9/5/06 |
| | 50 | 5/28/06 - 6/5/06 | 9/5/06 |
| | | 6/5/06 | |

B.  IWT agrees that all participants recruited and placed in these positions will meet the basic qualifications identified in their Premium Placement Confirmation Forms, which contain a complete description of the Host Company, the position, terms of employment, transportation instructions, instructions on applying for a Social Security Card, a description of the surrounding area, and (where applicable) housing. However, IWT is not responsible for any misrepresentations regarding their qualifications for the Premium Placement made by the participants applying to the IWT Program.

C.  IWT agrees to make a good faith effort to ensure that all participants recruited and placed in these positions will complete any additional forms or procedures required by Host Company to facilitate their employment.

D.  Host Company agrees to provide employment consistent with the employment terms outlined in the Job Description Documents/Placement Confirmation Forms to all participants recruited and placed in these positions by IWT.

E.  Host Company reserves the right to terminate employment at will, but agrees to make a good faith effort to retain participants placed by IWT as long as the participants meet the basic qualifications identified in their Job Description Documents/Placement Confirmation Forms and perform their assigned tasks in a satisfactory manner.

F.  In the event of a labor force reduction as the result of unforeseen circumstances, Host Company agrees to make a good faith effort to retain participants recruited and placed by IWT for as long as possible and with as many scheduled hours as possible and, if any IWT participants cannot be retained, to make a good faith effort to assist IWT in finding them new placements.

G.  In the event that a participant wishes to terminate his or her employment with Host Company, IWT agrees to act as a mediator between the participant and Host Company, and make a good faith effort to ensure that the participant remains in his or her position unless there has been a failure to comply with the terms of employment described in the participant's Job Description Document/Placement Confirmation Form.

H.  Participants on the IWT Premium Placement Program who willfully leave their employment without prior IWT written consent are subject to dismissal by IWT.

I.  Host Company will comply with all applicable local, state, and federal labor laws including ensuring that the participants recruited and placed by IWT receive pay and benefits commensurate with those offered to their American counterparts.

J.  Host Company will not employ participants placed by IWT as domestic servants or require them to invest funds to acquire products for the purpose of door-to-door sales as prohibited in the J-1 summer work/travel regulations of the U. S. Department of State

'DD #s
5187 - 46-27-117
4628 - 117
4627 - 117

NO-05-30SEPT04-PHCA-4

05 11:15a     Timo   y Johnson              352754   0                    p.5

# Intrax
## WORK TRAVEL

K. Host Company understands and agrees to uphold the objectives of the IWT Program by promoting cultural understanding and positive experiences for the participants recruited and placed with Host Company by IWT.

L. Host Company understands and agrees that IWT cannot guarantee visa approvals, arrival dates, or job performance of participants placed with Host Company. However, IWT will make a good-faith effort to ensure that the participants will arrive on time to commence their employment with Host Company, abide by the terms of their employment and perform their assigned tasks in a satisfactory manner.

M. Host Company understands and agrees that IWT is not responsible for any civil or criminal liability incurred by the participants placed by IWT or for defending against such claims.

N. If Host Company provides housing for any participants placed by IWT, Host Company will provide housing that is safe, comfortable, and in compliance with local, state and federal housing codes and regulations.

O. IWT will hold Host Company harmless against any claims, liability, damages or costs incurred by reason of any act, error or omission of IWT or its agents.

P. Host Company will indemnify, defend and hold IWT harmless against any claims, liability, damages or costs incurred by reason of any act, error or omission of Host Company or its agents.

Q. IWT and Host Company agree that any dispute, controversy or claim in any way arising out of, related to or connected with this agreement or Host Company's employment of participants in the IWT Program shall be decided by neutral, exclusive and binding arbitration in San Francisco, California before an arbitrator agreed upon by Host Company and IWT or, if none, before an arbitrator selected by the American Arbitration Association. Either party may appear telephonically. Any arbitration award may be enforced in any court of competent jurisdiction of the federal or state courts of San Francisco County, California. The prevailing party shall be entitled to recover all reasonable costs and expenses incurred by such party, including attorney's fees. The non-prevailing party shall be solely responsible for all costs of arbitration. Any dispute as to the reasonableness of such costs and expenses shall be determined by the arbitrator.

R. This agreement shall be governed by and construed under the laws of the State of California, without regard to principles of conflict of laws.

Both parties acknowledge that this document contains the complete agreement between them, that neither party has relied on any representations not contained herein, and that any additions or deletions must be made in writing and signed by both parties.

Signed: **Tasha Johnson**                    Date: 11/03/2005

Placement Director
Intrax Work/Travel

Signed:                                       Date: 11/3/05

Bob Riani
Sunset Pool Management

Page 2 of 2

NO-05-30SEPT04-PHCA-4

# EXHIBIT
# C

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

MIROSLAV IVANOV

and

VESELIN IVANOV,

        Plaintiffs,

        v.

SUNSET POOLS MANAGEMENT, INC.
et al.,

        Defendants.

Case No. 07-CV-00410
Hon. Richard J. Leon

## DECLARATION OF YANA SIMEONOVA

1.     I, Yana Simeonova, am a resident of the State of Massachusetts, am over 18 years of age, and am competent to give testimony.

2.     I am currently employed by defendant International Training and Exchange, Inc. ("Intrax") as a Placement Director. I was previously employed by Zip Travel as the Program Manager and managed the Program Departments in Zip Travel's five Bulgaria offices, including the two offices in Sofia, Bulgaria. At the time, I resided in Blagoevgrad, Bulgaria. In my capacity as Program Manager, my duties included overseeing the four Program Coordinators that worked in the Sofia offices, who worked with Bulgarian students applying for and participating in the Intrax work-travel program in the United States. In this capacity, I was familiar with the practices and procedures of Zip Travel in accepting applications and preparing students for the work-travel program.

3.     Zip Travel had and has a contract with Intrax to assist with various tasks related to the placement of student applicants in temporary employment positions in the United States. In relevant part, Zip Travel interviews and conducts English proficiency examinations of all job applicants, and once students are accepted into the program, presents to the students, including Miroslav Ivanov and Veselin Ivanov, Intrax's Premium Placement Participant Terms and Conditions ("Terms & Conditions"). Only after the students are given an opportunity to read and review the Terms &

Conditions and to ask questions regarding the Terms & Conditions would we ask the students to sign and accept the Terms & Conditions.

4. In December 2005, Veselin Ivanov and Miroslav Ivanov came to the Zip Travel office to apply for the work-travel program, and to have their English language proficiency assessed.

5. One of my four Program Coordinators, Raya Gugutkova, met with both Veselin Ivanov and Miroslav Ivanov, and conducted an English proficiency assessment. True and correct copies of Veselin Ivanov and Miroslav Ivanov's applications and interview results, including the results of their English proficiency assessment, are attached hereto as Exhibits A and B. As the Exhibits reflect, Veselin Ivanov scored an 8 out of 10 on the examination, and Miroslav Ivanov scored a 7 out of 10 on the examination. These scores reflect an understanding, familiarity, and competency with the English language.

6. At the time she conducted the interviews of Veselin and Miroslav Ivanov, Ms. Gugutkova had worked for Zip Travel for approximately 2-3 years. Ms. Gugutkova, as well as my three other Program Coordinators, was well-versed in the policies and procedures of Zip Travel. I had complete faith and confidence in the abilities of all four Program Coordinators to conduct student interviews, assess student English proficiency, explain the Terms & Conditions to students, and otherwise fulfill their job duties.

7. After they were accepted to the travel program, Veselin Ivanov and Miroslav Ivanov, as all other students participating in the program, were sent the 12-pages Terms & Conditions via electronic mail and presented with the 12-page Terms & Conditions at the Zip Travel office, which included the arbitration provision. The Program Coordinator presenting said Terms & Conditions to the students would have provided the students with an opportunity to read and review every portion of the Terms & Conditions, in order to ensure that they clearly understood those terms, and would have answered any questions the students had regarding the Terms & Conditions. Insofar as students are often in a rush to simply be accepted to the program and travel to the United States, my Program Coordinators were instructed to, and in every instance I can recall did, explain any provision of the Terms & Conditions that the students had questions about slowly and thoroughly (in both English and Bulgarian), in order to ensure the students understood those terms, and their potential impact.

8. I cannot imagine any one of my Program Coordinators blatantly ignoring Zip Travel's policy of presenting the entire 12-page Terms & Conditions to the students and of answering any questions that students have regarding the Terms & Conditions. I cannot fathom any Program

Coordinator with whom I worked, and whose job abilities and dedication I know well, merely having a student sign such an important document without giving a copy of that agreement to the student. Indeed, I can't imagine any student applicant with whom I ever worked merely signing a signature page without asking to see the document that they were signing.

9.    I declare under the penalty of perjury that the foregoing is true and correct.

Yana S_____ova

Firmwide:82428654.1 054310.1005

# EXHIBIT
# D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Miroslav Ivanov and Veselin Ivanov | : |
| | : |
| | : |
| Plaintiffs, | :   **CIVIL ACTION No.** |
| | : |
| v. | : |
| | :   Declaration of Miroslav Ivanov |
| Sunset Pools Management, Inc. *et al.* | : |
| | : |
| Defendants. | : |
| | : |

## DECLARATION

MIROSLAV IVANOV declares as follows:

1.   My name is Miroslav Ivanov. I am over the age of 18 and a plaintiff in the above captioned lawsuit pending against INTRAX and other defendants in the United States District Court for the District of Columbia.

2.   I came to the United States in 2006 to work in the pool maintenance business.

3.   I am a citizen of Bulgaria and prior to coming to the United States in May, 2006 I had a rudimentary knowledge of English, limited to casual conversation. I had taken three semesters of English at my university, which included two one-hour sessions each week. My English conversation skills are far better than my written skills. Despite the fact that my skills improved somewhat during my stay in the United States, I still do not feel confident reading or writing in English. Even simple matters like e-mail or regular mail to friends present me with a problem and I resort to either using dictionary or depend on friend whose English is more advanced.

4.     Prerequisite for coming to the United States was dealing with a Bulgarian company called "Zip-Travel", serving as a representative for INTRAX in Bulgaria. When Zip-Travel informed me that my documents were ready for me to sign, I went to their office. There were a number of visitors in the office and more were coming in and out throughout the entire time.

5.     At the Zip-Travel office, I had two to three minutes conversation with the Zip-Travel representative in English. This was to establish my English proficiency. The person interviewed me was a Bulgarian who was not a native English-speaker.

6.     During this interview, I was asked "where I was from", "my age", and "why did I want to go to the United States?". This was the extent of my English proficiency test. I was not asked to take written test, or to even write a simple sentence in English. I was not asked about how many college credits I have based on taken English classes, nor have I studied English at university level and for how long.

7.     After the so-called "English proficiency test", I was handed the INTRAX "Premium Placement Confirmation Form". The Zip-Travel employee described the form and its signing as "necessary formality". I was asked to review the "FORM" and sign on the last page. The form contained four (4) pages plus the signature page. I asked if I should sign or initial each page. I was told only to sign the last page, because according to them (Zip-Travel) only the last page was to be sent to the United States to INTRAX. I signed the last page, and took copy of it, plus the 4 pages of the form I was given. I was never offered any explanation or translation of the form. I was not told that this is actually a contract. I was given 3 to 4 minutes at best to review and sign the form.

8.    I was never presented with any page that mentioned dispute resolution or
mandatory arbitration. I never agreed to resolve any dispute through arbitration. As a
citizen of Bulgaria, I do not know anything about arbitration. My English proficiency is
not at a level at which I would have understood the form completely and correctly even if
I have read it.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on ___%5 %4%___ , 2007.

_____

**Miroslav Ivanov**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Miroslav Ivanov and Veselin Ivanov | : | |
| | : | |
| | : | |
| Plaintiffs, | : | **CIVIL ACTION No.** |
| | : | |
| v. | : | |
| | : | Декларация на Мирослав Иванов |
| Sunset Pools Management, Inc. *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## ДЕКЛАРАЦИЯ

МИРОСЛАВ ИВАНОВ декларира следното:

1.      Името ми е Мирослав Иванов. Имам 18 години и съм ищец по обяснения по-горе, все още нерешен съдебен процес срещу INTRAX и другите защитници в щатския окръжен съд в окръг Колумбия.

2.      Пристигнах в САЩ през 2006 година, за да работя в бизнеса с поддръжка на басейни

3.      Аз съм гражданин на България и до преди да пристигна в САЩ през май, 2006,аз имах а основни познания по Английски език, ограничени до воденето на нормален разговор. Изучавал съм три семестъра Английски език в Университета, което включва занимания два пъти седмично по един час. Уменията ми за разговор на Английски език са далеч по добре от писмените ми умения. Въпреки факта,че уменията ми се подобриха по един или друг начин по време на престоя ми в САЩ, все още не се чувствам сигурен в писането и четенето на Английски език. Дори и

обикновени неща като e-mail или стандартна поща до приятели представляват

проблем и се налага да използвам речник или да се обърна към приятел чиито

Английски език е на по- добро ниво.

4.    Като условие за заминаването ми в САЩ беше да се свържа българска

компания наречена „Zip-Travel", която е представител на INTRAX в България.

Когато Zip-Travel ме информираха , че документите ми са готови за подпис, аз

отидох в техния офис. Имаше няколко души в офиса и други влизаха и излизаха

през цялото време.

5.    В офиса на Zip-Travel, имах 2-3 минути разговор с представител на Zip-

Travel на английски език. Това беше за да се определи нивото ми на английски

език. Човекът, който ме интервюира, беше българин на когото английския език не

беше майчин.

6.    По време на интервюто, бях попитан "от къде съм", "на каква възраст", и

"защо искам да отида в САЩ?". В това се състоя теста ми за ниво на английски

език. Не бях подложен на писмен тест, или дори да напиша просто изречение на

Английски език. Не ме попитаха колко кредита в колежа съм натрупал по време на

часове по Английски език, нито дали съм учил английски на университетско ниво и

колко дълго.

7.    След така наречения "Тест за ниво на Английски", ми подадоха INTRAX

"Premium Placement Confirmation Form". Служителя на Zip-Travel описа формата и

нейното подписване  като "необходима формалност".  Казха ми да разгледам

"формата" и да се подпиша на последната страница. Формата съдържаше четири

(4) страници плюс страница за подпис. Попитах дали трябва да се подписвам или да си слагам инициалите на всяка страница. Казаха ми че е нужно да се подпиша само на последната страница.понеже съгласно с тях (Zip-Travel) само последната страница ще бъде изпратена до INTRAX в САЩ. Подписах последната страница, и взех копие от нея, плюс първите 4 страници от формата, които ми дадоха. Не ми предложиха обяснение или превод на формата. Дадоха ми 3-4 минути, за да я разгледам и да я подпиша.

8.      Не ми е показвана страница опоменаваща решаване на спор или задължителен арбитражен съд. Не съм се съгласявал да разрешавам какъвто и да е спор чрез арбитражен съд. Като гражданин на България, не знам нищо относоно арбитражен съд. Познанията ми по английски език не са на достатъчно ниво, на което бих могъл да разбера формата напълно и правилно дори да я бях прочел.


Декларирам под заплаха в обвинение за лъжесвидетелство, че по-горното е вярно.
Оформено на  ⸻⸻  , 2007.


⸻⸻⸻⸻⸻⸻⸻⸻
Мирослав Иванов

# EXHIBIT
# E

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Miroslav Ivanov and Veselin Ivanov      :
     :
     :
            Plaintiffs,      :     **CIVIL ACTION No.**
     :
         v.      :
     :     Declaration of Veselin Ivanov
Sunset Pools Management, Inc. *et al.*      :
     :
            Defendants.      :
     :
     :

## DECLARATION

VESELIN IVANOV declares as follows:

1.     My name is Vaselin Ivanov. I am over the age of 18 and a plaintiff in the above captioned lawsuit pending against INTRAX and other defendants in the United States District Court for the District of Columbia.

2.     I came to the United States in 2006 to work in the pool maintenance business.

3.     I am a citizen of Bulgaria and prior to coming to the United States in May, 2006 I had a rudimentary knowledge of English, meaning that I could hold a casual conversation. I had taken two semesters of English at my university, which included two one-hour sessions each week. My English conversation skills are far better than my written skills, but naturally, those skills improved somewhat during my time in the United States.

4.      In order for me to come to the United States, I first dealt with an entity called "Zip-Travel," which is a Bulgarian based company, serving as a representative for INTRAX in Bulgaria. When Zip-Travel informed me that documents were prepared for me to sign, I went to their office which was very busy and had many people coming in and out.

5.      At the Zip-Travel office, I had a less than two minute conversation with the Zip-Travel representative in English. This was to establish my English proficiency. The person interviewing me was not a native English-speaker, and I was not able to evaluate her knowledge of the language.

6.      During this two minute interview, I was asked my name, my age, and where I lived. This was what I understood to be an English proficiency test.

7.      After the so-called "English proficiency test", I was handed the INTRAX "Premium Placement Confirmation Form" the signing of which was described to me as "necessary formality". I was asked to review the "FORM" and sign the last page. What I was handed was double copies of the first four pages. I was not asked to sign or initial each of the 4 pages individually but only to sign the last page. I signed the last page and was told that this is the only page that would be sent to INTRAX and I can keep the rest for my own record. At no point was I offered any explanation or translation of the form. At no point was I told that this is actually a contract. I was told to get on with signing it within 3 to 4 minutes at best. I signed the form and took the 8 (double copies of the first 4 pages) pages with me.

8.      I was never presented with any page that mentioned dispute resolution or

mandatory arbitration. I never agreed to resolve any dispute through arbitration. As a

citizen of Bulgaria, I do not know anything about arbitration.


I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _____ , 2007.

Vaselin Ivanov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Miroslav Ivanov and Veselin Ivanov | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION No. |
| | : | |
| v. | : | |
| | : | Декларация на Веселин Иванов |
| Sunset Pools Management, Inc. *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

ДЕКЛАРАЦИЯ

Веселин Иванов декалрира следното:

1.      Казвам се Веселин Иванов. Имам навършени 18 години и съм ищец по

обяснения по-горе, все още не решен съдебен процес срещу INTRAX и другите

защитници в щатския областен съд на окръг Колумбия.

2.      Пристигнах в САЩ през 2006 г.  , за да работя в бизнеса по поддръжка на

басейни.

3.      Аз съм гражданин на Република България  и до преди да дойда в САЩ през

месец май 2006 година, имах основни познания по английски език, т.е. можех да се

справя с воденето на обикновен разговор. Учил съм два семестъра английски език в

Университета, което включва два пъти по един час седмично. Говорните ми умения

по английски език са далеч по-добри от писмените ми умения, но естествено, тези

ми умения се подобриха по един или друг начин по време на престоя ми в САЩ.

4.      В процеса по идването ми в САЩ, първо се отнесох към обект наречен "Zip-Travel," който е българска компания, изпълняваща роля на представител на INTRAX в България. Когато Zip-Travel ме информираха, че документите ми са готови за подпис, аз отидох в техния офис който беше доста натоварен и имаше доста хора, които влизаха и излизаха от него.

5.      В офиса на Zip-Travel, имах по-малко от две минути разговор с представител на Zip-Travel на английски език. Това беше, за да се установи нивото ми на владеене на английски език. Лицето, което ме интервюира не беше човек на когото английския език е майчин, и не бях способен да оценя нейните познания по езика.

6.      По време на двуминутното интервю, ме попита как се казвам, на колко години съм, и къде живея. Това беше, както разбрах, теста ми за ниво на владеене на английски език.

7.      След така наречния "Тест за ниво на Английски език", Ми подадоха INTRAX "Premium Placement Confirmation Form" подписването на който ми беше описан като "необходима формалност". Казаха ми да прегледам "Формата" и да подпиша последната страница. Подадоха ми две копия от първите четири страници. Не ми казаха да се подпиша или да сложа инициалите си върху всяка една от четирите страници индивидуално, а само да подпиша последната страница. Подписах последната страница и ми казаха, че това е единствената страница,която ще бъде изпратена до INTRAX и мога да задържа останалите за собствения си архив. Не ми беше предложено някакво обяснение или превод на формата. Не ми беше казано,че това всъщност е договор. Казаха ми да го прегледам за 3-4 минути и

да го разпиша. Подписах формата и взех със себе си осемте (две копия на първите 4 страници) страници.

8.　　Не ми беше представена каквато и да е страница която споменава решаване на спор или задължителен арбитражен съд. Никога не съм се съгласявал да решавам някакъв спор чрез арбитражен съд. Като гражданин на Република България, не знам каквото и да е относоно арбитражен съд.

Декларирам под заплаха в обвинение за лъжесвидетелство ,че по-горното е вярно.

Оформено на _____, 2007.

Веселин Иванов

# EXHIBIT
# F

Page 1 of 12                                                    PCF 5187-3560-117-6

Student ID.................................    Student Name.................................

# Premium Placement Confirmation Form
## Toll Free Telephone Number : 1-888-224-0450

### SPONSOR INFORMATION

| Sponsor Name | Intrax Work Travel |
|---|---|
| Phone | +1 (888) 224-0450 |
| Fax | +1 (415) 434-5430 |
| Email Address | info@intraxinc.com |

### EMPLOYMENT OPPORTUNITY INFORMATION

| Company Name | Sunset Pools, Inc |
|---|---|
| Company Address | 3608 Forest Drive |
| | Suite 32 |
| City | Alexandria |
| State | VA |
| Zip | 22302 |
| Company Website | www.sunsetpoolsmgmt.com |
| Contact Person | Bob Kiani |
| Contact Title | Regional Manager |
| Email Address | bkiani@sunsetpoolsmgmt.com |
| Phone | 703-824-0997 |
| Fax | 703-824-0042 |

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-8440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Student ID.............................        Student Name.................................

## Job Description Document

## POSITION OPPORTUNITY INFORMATION

| Job Title | Lifeguard |
|---|---|
| Job Description | This position offers the opportunity to work for a pool management company that provides lifeguard services to fine hotels and condominium communities in the areas of Virginia, Maryland and Washington DC. The pools are located in both indoor and outdoor locations. The outdoor pools will close near Labor Day. When the outdoor pools close it is only possible that some employees will be able to change their working location to an indoor pool location. This is decided by management and based on the employee's performance and the availability at the time. If an employee is working at an outdoor pool they cannot demand to be changed to an indoor location. As a employee of this company your primary tasks will be to ensure the safety of the patrons and facility you work at, preventing and responding to emergencies, maintain a clean pool area, keep record of pool chemical readings, provide an enjoyable, safe atmosphere for the patrons of the pool. You will ensure pool rules are being followed. |
| Level of English Required | Advanced |
| Start Date | 5 May 06 - 10 May 06 |
| End Date | 5 Sep 06 - 10 Sep 06 |
| Gender Required | None |
| Day to report to Employer | Please report to the employer as directed in the travel information section of this document. |
| Expected days from arrival before starting work | You should begin working 5 days after you arrive. You will first take your Red Cross certification. |
| Estimated Average Hours over the course of the program | Average weekly hours range from 40 to 60 per week. |
| Pay Rate Estimate | $7.00 per hour. $7.25 per hour once you pass the pool operator class. |
| Estimated Tips | This is not a tipped position. |
| Estimated Overtime | You are able to work over 40 hours per week however this is a seasonal business and is not required by law to pay overtime wages. Hours you work over 40 will be the same rate as regular hours. |
| Required Skills | You must take the required Red Cross course and become certified. This course will cost $175.00 and is paid thru payroll deduction. You will also take a test on pool operations. The employer will assist you to train for this course. Once you have passed this course you are eligible to receive $7.25 per hour. In order to pass the Red Cross Certification you will need to be able to swim 500 yards, dive 7 to 10 feet into the water, retrieve a 10-pound object from the bottom of the pool. In order to qualify for this position you must be a very good swimmer and a very strong swimmer. |
| Expected Schedule | Pool hours can vary at different locations however hours can begin as early as 6AM and end at dusk or approximately as late as 9PM. You will work 6 days a week and have one free day. There are shifts that range from 5 to 8 hours as well as double shifts. |
| Drug Screening Policy | Drug testing may be required randomly. |
| Possible 2nd Job | Yes You are able to work a second job however it cannot be with a competitor or another lifeguard business. It is also requested you do not work any overnight shifts as a second job as this effects your ability to work as lifeguard during the day. The employer will assist you in securing a second job. A second job can in no way interfere with your performance or availability of the primary employer. It is the responsibility of you and the second employer to schedule hours around the primary employers scheduling needs. |
| Additional application | You will fill out new employment paper work as any new employee would. You will have housing terms provided upon your arrival. |
| Possibility for job change within company | No. |
| Meal discounts | Meal discounts are not provided. |
| Uniforms | Uniforms are required and will cost $65.00. The cost of uniform can be paid thru payroll deduction. |
| Dress code | You will receive full details on dress code during your orientation. You will need to arrive to work each shift dressed in the correct uniform. |
| Grooming code | You will be working directly with the public. You will need to arrive each shift neatly |
| Intrax Work Travel 600 California St., 10th Floor San Francisco CA 94108 Phone: (415) 434-8440 Fax: (415) 434-8430 | THIS DOCUMENT RELATES TO : JDD 5187-3560-117 |

Page 3 of 12                                      PCF 5187-3560-117-6

Student ID............................................    Student Name............................................

| | cleaned and groomed. Proper use of daily hygiene products and sunscreen. |
| --- | --- |
| | *Reminder: It can take between three and eight weeks from the date you start working to be paid. Please bring enough money to support yourself until you are paid. Check with employer to find out your first pay date.* |

## SUGGESTED TRAVEL INFORMATION

| | |
| --- | --- |
| **Nearest International Airport** | Dulles |
| **Nearest Airport** | Dulles |
| **Transportation from Airport to Employer and/or Housing** | The employer would prefer you to arrive at the Dulles airport. As long as you provide your confirmed travel arrangements in advance (Intrax requires travel details be submitted no later than two weeks prior to arrival) the employer will arrange for you to be met at the airport. Do not expect to be picked up at the airport if you have not provided your travel details. You can send your travel information to the following email address, DCH@intraxpoolmgmt.com |
| **Nearest Bus Station** | Arlington, VA or Washington DC. It is suggested you arrive at Dulles airport if you are able to. |
| **Bus Information** | http://www.greyhound.com |
| **Nearest Train Station** | Not suggested. |
| **Train Information** | http://www.amtrak.com |

## SOCIAL SECURITY INFORMATION

| | |
| --- | --- |
| **Nearest Social Security Office** | 6295 Edsall Road, Alexandria, VA 22312 |
| **How and When to Apply for the Social Security Card** | The employer assists to the social security office. When you apply for social security you should have your card sent in the care of the employer to the employers address. |
| **Social Security website** | http://www.ssa.gov |

## HOUSING

| | |
| --- | --- |
| **Housing Restrictions (yes/no)** | Yes |
| **Housing Restrictions** | If housing restrictions apply, participants must remain in this housing to be employed by the employer identified in this document. Participants must remain employed by the employer identified in this document and remain in the Intrax Work/Travel Program to live in this housing. No exceptions will be granted unless agreed in writing in advance by Intrax Work/Travel. |
| **Housing Information** | There are several housing locations. The location of your housing will be based on the location you will work at. Housing is located within bicycle distance to each work area. Once you have selected and been confirmed for this position it is required that you live in and remain in the employer provided housing the entire term of your agreed employment dates. The employer provides a very detailed housing lease that you will be required to review, understand and sign if in agreement of. Do not sign this form if you do not understand the terms you are signing in agreement to. This is a legal housing lease and should not be taken lightly. IF you do not understand any part of the housing terms you should ask the employer, Intrax or your local representative for assistance to understand. |
| **Address** | Housing addresses are assigned upon arrival. |
| **Estimated Cost** | Housing for NON-furnished accommodations is $300.00 per month per person. Housing for FURNISHED accommodations is $310.00 per person per month. Once you are confirmed for the position you will need to send message to the employer with the housing you select, furnished for non-furnished. |
| **Additional Costs (i.e. Bond)** | There is a deposit of $100.00 per person due upon arrival. Housing deposits are refundable as long as you stay the date you agreed to and there is no damage to property upon move out inspection. There are bicycles available for your use. There is a deposit of $50.00 to $75.00 depending on the bicycle you choose. The deposits for bicycles are refundable as long as it is returned in the condition when you got it. |
| **Features** | Housing is in shared dorm style housing. You can choose if you want furnished or non-furnished accommodations. The cost for each is listed under housing cost. There are bicycles available for your use during your stay. The deposit charged for bicycles is listed under additional costs. Stove refrigerator are included. |
| **Hostel Information** | http://www.hihvh.org or http://www.hostels.com |

## AREA INFORMATION

| | |
| --- | --- |
| **Average temperature** | The following average highs and lows are listed for each month of the year; January7C -4C, |

| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JOO 5187-3560-117 |
| --- | --- |

Student ID........................................    Student Name.....................................

| | |
|---|---|
| | February 9C 3C, March 14C 3C, April 21C 6C, May 26C 11C, June 29C 16C, July 32C 19C, August 31C 18C, September 27C 14C, October 21C 7C, November 15C 2C, December 9C -2C. |
| Altitude | N/A |
| Information websites | www.washington.org  www.virginia.org  www.mdisfun.org |
| Nearest city | All of the job locations are in Metro areas. |
| Things to do | There are a variety of museums that are free of charge, take a trip to see the White House, Capital, Washington Monument, Mount Vernon and much more! |
| What to wear | You should wear comfortable casual clothing that is appropriate for the temperatures during the months of your stay. Monthly temperatures are listed above in this document. |

## ADDITIONAL INFORMATION

| | |
|---|---|
| Additional Information | There are multiple locations for this position including the Virginia, Maryland and DC areas. The employer is unable to place you into a specific location until you have arrived. The area that you work in is based on business level demands and staffing demands during the time you arrive. If you have a specific request the employer will attempt to grant your request however it may not be possible. If for any reason you have a specific need to be in a desired location you will need to communicate this with the employer prior to your arrival. As the employer may not be able to grant such requests, you must understand and be able/ in agreement to work in any of the locations. You will receive Red Cross certification upon your arrival this will cost $175.00 paid thru payroll deduction. The time for this will be approximately two days. You will have one day orientation. There is an additional agreement the employer requires to be reviewed, signed if in agreement and returned to the employer in order to confirm your position. There is an end of season bonus for those who have been recommended from their supervisors in the amount of $350.00.THE POOL LOCATIONS ARE LOCATED AT BOTH INDOOR AND OUTDOOR FACILITIES. THE OUTDOOR POOLS CLOSE NEAR LABOR DAY. AFTER THE OUTDOOR POOLS CLOSE THERE IS NO LONGER A GAURANTEE OF EMPLOYMENT TO THOSE WORKING IN THE OUTDOOR LOCATIONS. IT IS POSSIBLE BASED ON THE EMPLOYERS DECISION AND THE PARTICIPANTS WORKING PERFORMANCE TO BE OFFERED A POSITION AT AN INDOOR FACILITY. YOU SHOULD UNDERSTAND CLEARLY THIS IS NOT GAURANTEED. |

*Based on the information available to Intrax Work/Travel, the contents of this Premium Placement Confirmation Form are true and accurate as of the date of its issuance to the Premium Placement Service participant. All information is subject to change depending on a variety of factors, including but not limited to weather, employment trends and staffing changes.*

| | |
|---|---|
| Intrax Work Travel 600 California St., 10th Floor San Francisco CA 94108 Phone: (415) 434-5440 Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO : JDD 5187-3560-117 |

Student ID............................     Student Name...............................

## Premium Placement Participant Terms & Conditions
### (revised on 36AUG04)

*Please read this document carefully, and make sure that you understand it before you sign it.*

**By signing this document, you are agreeing to the following terms and conditions ("Terms & Conditions"):**

**You certify that:**

1. The information provided on your application is complete and accurate.
2. You are between the ages of 18 and 28 years old at the time of application.
3. You are enrolled in a college or university outside of the United States at the time of application.
4. You are registered for a full-time course load for the semester following your participation in the Intrax Work/Travel Program.
5. You speak, read, and understand English at the level indicated on your application.
6. You are physically capable of performing the tasks required as outlined in your job description.
7. You are able to participate in the Intrax Work/Travel Program for the period indicated in the Placement portion of this Premium Placement Confirmation Form ("PCF").

**You agree that:**

1. Within three (3) days of arriving in the United States you will confirm your arrival with Intrax Work/Travel by doing only one of the following (1) mailing your self-addressed, postage paid Check In Form to Intrax Work/Travel headquarters at 2226 Bush Street, San Francisco, CA 94115, (2) completing the on-line Check In Form at www.intraxworktravel.com or (3) faxing the Check In Form to 415-674-5251. Failure to do one of the above will result in your immediate dismissal from the Intrax Work/Travel Program.
2. You will participate in an orientation provided by Intrax Work/Travel or an Intrax Work/Travel agent representative. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.
3. You will report to the employer listed in section #1 of your DS-2019 form on the date indicated in section #3 of the same form. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.
4. If any change occurs in your employment as indicated on your DS-2019 form pursuant to these Terms & Conditions, you will pay the administrative fee as well as verify such change by following the procedures and completing the

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
|---|---|
| 600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | JDO 5187-3S60-117 |

Page 6 of 12                                      PCF 5187-3560-117-6

Student ID............................    Student Name............................

documentation required by Intrax Work/Travel. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

5.  You will not work beyond the program end date listed in section #3 of your DS-2019 form.

6.  You will leave the United States within thirty (30) days of the program end date listed in section #3 of your DS-2019 form.

7.  If you change your address while in the United States, you will notify Intrax Work/Travel by telephone or email and the Department of Justice by using form AR-11 within three (3) business days. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

8.  While in the United States, you will obey all federal, state, and local laws and the rules of the Intrax Work/Travel Program. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

9.  Upon receipt of the Intrax Work/Travel Participant Handbook you will read the entire handbook and ask Intrax Work/Travel or the Intrax Work/Travel agent representative for clarification on any point(s) that are not explicitly understood.

**You understand that:**

1.  A DS-2019 form enables you to apply for a J-1 Work/Travel visa. The United States Embassy or Consulate may grant or deny your application for a visa. Intrax Work/Travel is not responsible for and cannot control or change their decision.

2.  Even if you receive a J-1 Work/Travel visa, you may be denied entrance into the United States by a Bureau of Citizenship and Immigration Service Officer. Intrax Work/Travel is not responsible for and cannot control or change any denial of entrance into the United States.

3.  You are responsible for bringing enough money to the United States to cover the cost of your food, housing and other personal expenses for at least one month. We suggest a minimum of $1,000.00 due to possible delays with Social Security and distance of travel from airport to employer, advance payment for accommodation needed upon arrival and other initial investments needed. Intrax Work/Travel is not responsible for such expenses, or for any period of time during which you are not being paid by an employer. Intrax Work/Travel cannot loan money to you.

4.  You are responsible for making your own travel and housing arrangements, and must provide your travel and housing plans at least two (2) weeks prior to arrival in the United States by ensuring that your plans are submitted to the Intrax Work/Travel website by the Intrax Work/Travel agent representative in your home country. Intrax Work/Travel is not responsible for making or assisting you in making your individual travel or housing arrangements.

5.  A J-1 Work/Travel visa cannot be extended. You must return home at the end of your program, or face federal fines and disbarment from re-entering the United States.

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Page 7 of 12                 PCF 5187-3560-117-6

Student ID............................      Student Name............................

6. As an Intrax Work/Travel participant, you are subject to the United States civil and criminal justice system. Failure to obey federal, state or local laws may result in civil liability, criminal prosecution, fines, jail sentences, or other penalties. Intrax Work/Travel is not responsible for any civil or criminal liability you may incur or for assisting or defending you in any way in connection with any legal claims made against you.

7. Intrax Work/Travel is your official program sponsor while you are in the United States. The Intrax Work/Travel staff is available to assist you with any questions or to advise you regarding any challenges you may experience while you are participating in the Intrax Work/Travel Program. In the United States, you may call Intrax Work/Travel (toll free) at 1-888-224-0450 weekdays from 9 a.m. to 5 p.m., Pacific Standard Time. You may call the same toll free line at any time, 24 hours a day, 7 days a week, in case of an emergency. You may also call 1-415-674-5252 at your own expense from anywhere in the world, weekdays from 9 a.m. to 5 p.m., Pacific Standard Time.

8. If you would like to lodge a formal grievance about the Intrax Work/Travel Program, you will follow the Intrax Work/Travel Grievance Procedures.

9. If you are dismissed from the Intrax Work/Travel Program for any reason, you will be out of status on your J-1 visa, you will no longer have medical insurance and you are required to leave the country immediately or face possible further penalties.

**As a Premium Placement Service participant, you understand and agree that:**

1. You will remain at your employment with the employer listed in Section #1 of your DS-2019 form for the duration you originally indicated on your enrollment application unless you are terminated by the employer or you obtain prior written authorization from Intrax Work/Travel to leave your employment. If you leave your employment without having been terminated by the employer or obtaining prior written authorization from Intrax Work/Travel, you will be dismissed from the Intrax Work/Travel Program immediately. You agree to contact Intrax Work/Travel if any job-related difficulties or disputes arise that may affect your continued employment.

2. Your employer may terminate your employment at any time, without prior notification, with or without cause. Intrax Work/Travel is not responsible for and cannot control employment decisions made by your employer.

   (a) If your employment is terminated for cause, including but not limited to poor job performance, misconduct, or misrepresentation of your qualifications on your application, you will be dismissed from the Intrax Work/Travel Program immediately and you will forfeit the entire program fee.

   (b) If your employment is terminated without cause, through no fault of your own, during the first eight (8) weeks of your participation in the program, Intrax Work/Travel will attempt to provide you with a new employment opportunity suitable to your skills, experience and qualifications. If you

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
|---|---|
| 600 California St., 10th Floor | JDO 5187-3560-117 |
| San Francisco CA 94108 | |
| Phone: (415) 434-5440 | |
| Fax: (415) 434-5430 | |

Student ID.............................................    Student Name.............................................

accept a new employment opportunity, you will be responsible for the cost of transportation to the new employer's location.

(c) Under subsection (b), if for any reason you do not accept a new employment opportunity, or if Intrax Work/Travel cannot provide you with a new employment opportunity suitable to your skills, experience and qualifications, you may remain in the Intrax Work/Travel Program as an Independent Placement Service participant, and Intrax Work/Travel will refund your representative agency the difference between the Premium Placement Service program fee and the Independent Placement Service program fee.

(d) If your employment is terminated without cause, through no fault of your own, at any time after the first eight (8) weeks of your participation in the program, Intrax Work/Travel will assist you by providing information about possible new employment opportunities suitable to your skills, experience and qualifications. However, Intrax Work/Travel is not responsible under any circumstance for providing you with a new employment opportunity upon such termination. If you find and accept new employment, you will be responsible for the cost of transportation to the new employer's location.

(e) Under subsection (d), if your employment is terminated without cause at any time after the first eight (8) weeks of your participation in the Intrax Work/Travel Program, you may remain in the program as an Independent Placement Service participant, but you will not be entitled to a refund of any part of the Premium Placement Service program fee.

(f) NOTE – Ski Resort Exception: The availability of employment at a ski resort is inherently seasonal and dependent on snow fall and other factors beyond the employer's or Intrax Work/Travel's control. If you accept an employment opportunity at a ski resort, you agree to assume the risk that your employment may be terminated or your work schedule and hours may be limited. Accordingly, if you are employed at a ski resort and, through no fault of your own, you are terminated or subject to reduced hours at any time, regardless of the length of your actual participation in the Intrax Work/Travel Program or the date of such termination or reduction, Intrax Work/Travel will not provide you with a new employment opportunity or a refund of any part of the Premium Placement Service program fee. Intrax Work/Travel may, in its discretion, assist you with seeking a new employment opportunity. If you find or accept new employment, you will be responsible for the cost of transportation to the new employer's location.

3. Your employer may have to limit the number of hours you work per week for a variety of reasons, including but not limited to poor job performance, misconduct, or circumstances beyond the employer's control. Intrax Work/Travel is not responsible for and cannot guarantee your schedule or that you will be able to work a minimum number of hours per week. However, if, through no fault of your

| Intrax Work Travel 600 California St., 10th Floor San Francisco CA 94108 Phone: (415) 434-5440 Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO : JDD 5187-3560-117 |
|---|---|

Student ID............................    Student Name.............................

own, you have worked less than thirty (30) hours per week for at least three (3) consecutive weeks, Intrax Work/Travel may, in its discretion, assist you with seeking a new employment opportunity. If you find or accept new employment, you will be responsible for the cost of transportation to the new employer's location.

4. If you secure new employment pursuant to any of the provisions in this section, you must verify such new employment in writing following Intrax Work/Travel's required procedures and documentation. Failure to comply will result in your immediate dismissal from the Intrax Work/Travel Program.

5. The Intrax Work/Travel Program does not include housing and Intrax Work/Travel is not responsible for providing housing to you. However, housing may sometimes be available in connection with certain employment opportunities. If housing is available with your employment opportunity, the information and restrictions on such housing are identified in the housing section of the Placement portion of this Premium Placement Confirmation Form ("PCF"). You must comply with any and all requirements indicated in the housing section of your PCF. Failure to comply with these requirements will result in your immediate dismissal from the Intrax Work/Travel Program. If housing is available with your employment opportunity, Intrax Work/Travel makes no representations or guarantees regarding the nature or quality of such housing. If your employment opportunity includes housing, you agree to contact Intrax Work/Travel if any housing-related difficulties or disputes arise.

**You understand and agree to the following Premium Placement Service Refund Policies\*:**

1. SEVIS fee: Once a DS form has been issued to you, the SEVIS fee is non-refundable even if your visa is denied or your application is cancelled.

2. Visa Denials: If your visa application is denied, Intrax Work/Travel will refund the placement fee portion of your program fee provided the required procedures are followed. Refund of the placement fee is contingent upon (1) Intrax Work/Travel being informed by the representative agency within 3 days of the visa denial; (2) Intrax Work/Travel receiving the DS-2019, a copy of the passport biographical pages as well as the page showing the denial; (3) Intrax Work/Travel receiving the Visa Denial Form from the representative agency providing an explanation for the denial. The documentation must be received within 14 days of the denial. The application fee portion of the program fee is non-refundable.

3. Denial of Entry: If you are denied entry to the United States by a Bureau of Citizenship and Immigration Service Officer, Intrax Work/Travel will refund the placement fee portion of your program fee. Refund of the placement fee is contingent upon Intrax Work/Travel's receipt of official proof of such denial of entry, including a statement of the reason for the denial, a copy of your passport and a letter from the Intrax Work/Travel agent representative in your home country explaining the reason for the

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
|---|---|

Student ID............................    Student Name.............................

denial. The documentation must be received within 14 days of the denial of
Entry. The application fee portion of the program fee is non-refundable.

4. Cancellations Prior to Placement Confirmation: If for any reason you cancel
   your Premium Placement Service application before your placement has
   been confirmed, Intrax Work/Travel will refund only the placement fee
   portion of your program fee. The application fee portion of the program is
   non-refundable.

5. Cancellations/Withdrawals After Placement Confirmation: If for any reason
   you cancel or withdraw from the Intrax Work/Travel Program at any time
   after your placement has been confirmed, whether before or after your
   arrival in the United States, Intrax Work/Travel will not refund any portion
   of the program fee.

6. Termination from Employment Without Cause: If you are terminated from
   your employment without cause during the first eight (8) weeks of your
   participation in the Intrax Work/Travel Program, Intrax Work/Travel will
   refund only the difference between the Premium Placement Service program
   fee and the Independent Placement Service program fee and will do so only
   if: (a) you are not employed by a ski resort and (b) Intrax Work/Travel
   cannot provide or you do not accept its offer of a new employment
   opportunity. Under all other circumstances, if you are terminated from
   employment without cause, Intrax Work/Travel will not refund any portion
   of the program fee.

7. Changes in the Premium Placement Confirmation Form: If upon arrival
   actual circumstances vary from that which is stated on the Placement portion
   of this Premium Placement Confirmation Form you will not be entitled to a
   refund.

8. Reduced or Limited Work Schedule: If your work schedule or hours of
   work per week are reduced or limited for any reason, Intrax Work/Travel
   will not refund any portion of the program fee.

9. Termination from Employment for Cause or Dismissal from Program: If
   you are terminated by your employer for cause, including but not limited to
   termination due to poor performance, misconduct or misrepresentation of
   your qualifications on your application, or if you are dismissed from the
   Intrax Work/Travel Program for any reason, including but not limited to the
   grounds for dismissal identified in these Terms & Conditions, Intrax
   Work/Travel will not refund any portion of the program fee.

10. Refunds Payable to Local Representative agency: Intrax Work/Travel will
    pay any refund that is due pursuant to the above provisions by the end of the
    program season for which you applied. Intrax Work/Travel will make such
    payment only to the local Intrax Work/Travel representative agency in your
    home country. Intrax Work/Travel will not pay any refund directly to you.
    Intrax Work/Travel is not responsible for ensuring that any refund it pays to
    the local Intrax Work/Travel representative agency in your home country is

| Intrax Work Travel 600 California St., 10th Floor San Francisco CA 94108 Phone: (415) 434-5440 Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO : JDD 5187-3560-117 |
|---|---|

Page 11 of 12          PCF 5187-3560-117-6

Student ID............................................    Student Name................................................

paid to you. You and the local representative agency must arrange for any refund to be paid to you.

\* All refund amounts are based on the original pricing charged to your representative agency by Intrax Work/Travel as per their Partnership Agreement. For specific refund amounts please ask your representative agency.

**You understand and agree to the following Dispute Resolution and Construal Provisions:**

1. Arbitration: You understand and agree that any dispute, controversy or claim in any way arising out of, related to, or connected with your participation in the Intrax Work/Travel Program, the Intrax Work/Travel Premium Placement Service, or these Terms & Conditions shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, USA. The arbitration shall be conducted before an agency or arbitrator agreed upon by you and Intrax Work/Travel or, if none, before an arbitrator selected by the American Arbitration Association. Either you or Intrax Work/Travel may appear telephonically at the arbitration hearing. Any award of the arbitrator may be enforced in any court of competent jurisdiction of the federal or state courts of San Francisco County, California, USA. In any action, including arbitration, brought in connection with your participation in the Intrax Work/Travel Program or the Intrax Work/Travel Premium Placement Service, the prevailing party shall be entitled to recover all reasonable costs and expenses incurred by such party, including attorney's fees. The non-prevailing party shall also be solely responsible for all costs of arbitration. Any dispute as to the reasonableness of such costs and expenses shall be determined by the arbitrator.

2. Severability: If any provision of these Terms & Conditions or their application is held to be invalid, illegal or unenforceable for any reason, the invalid, illegal or unenforceable provision or application shall not affect or impair the other provisions or applications of the Terms & Conditions which can be given effect without the invalid, illegal or unenforceable provision or application. To this end the provisions of this Agreement are declared to be severable and shall be construed and enforced accordingly.

3. Waiver: No waiver by Intrax Work/Travel of your failure to comply with any of these Terms & Conditions shall be construed to be, or shall be, a waiver of any other failure to comply with such Terms & Conditions. No waiver shall be binding unless in writing and signed by Intrax Work/Travel.

4. Headings Not Controlling: The headings used in the document setting forth these Terms & Conditions are used only for ease of reference and are not controlling.

5. Governing Law: These Terms & Conditions shall be governed by and construed under the laws of the State of California, USA, without regard to principles of conflict of laws.

| | |
|---|---|
| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDO 5187-3560-117 |

Page 13 of 12        PCF 5187-3560-117-6

Student ID: 44224        Student Name: _Hristou Ivanov_

Please note that based on the information available to Intrax Work/Travel, the contents of the Premium Placement Confirmation Form are true and accurate as of the date of its issuance to the Premium Placement Service participant. All information is subject to change.

- I am capable of reading and understanding these Terms & Conditions in English.
- I have read these Terms & Conditions carefully, have had the opportunity to ask questions and obtain advice as to their meaning, and understand them fully.
- I am not rely on any statements or representations that are not expressly stated in these Terms & Conditions.
- I agree to abide by these Terms & Conditions.

Signed: _____    Date: 6.12.2005

Print Name: _Hristov Ivanov_    Intrax Student ID#: 44224

Intrax Work Travel
600 California St., 10th Floor
San Francisco CA 94108
Phone: (415) 434-5440
Fax: (415) 434-5430

THIS DOCUMENT RELATES TO :
XXD 5187-3560-117

Page 1 of 12                                                    PCF 5187-3560-117-9

Student ID.............................    Student Name..............................

# Premium Placement Confirmation Form
## Toll Free Telephone Number : 1-888-224-0450

## SPONSOR INFORMATION

| Sponsor Name | Intrax Work Travel |
|---|---|
| Phone | +1 (888) 224-0450 |
| Fax | +1 (415) 434-5430 |
| Email Address | info@intraxinc.com |

## EMPLOYMENT OPPORTUNITY INFORMATION

| Company Name | Sunset Pools, Inc |
|---|---|
| Company Address | 3608 Forest Drive |
| | Suite 32 |
| City | Alexandria |
| State | VA |
| Zip | 22302 |
| Company Website | www.sunsetpoolsmgmt.com |
| Contact Person | Bob Kiani |
| Contact Title | Regional Manager |
| Email Address | bkiani@sunsetpoolsmgmt.com |
| Phone | 703-824-0997 |
| Fax | 703-824-0042 |
| | |

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JOD 5187-3560-117 |
|---|---|

Student ID.................................... Student Name....................................

**Job Description Document**

## POSITION OPPORTUNITY INFORMATION

| | |
|---|---|
| **Job Title** | Lifeguard |
| **Job Description** | This position offers the opportunity to work for a pool management company that provides lifeguard services to fine hotels and condominium communities in the areas of Virginia, Maryland and Washington DC. The pools are located in both indoor and outdoor locations. The outdoor pools will close near Labor Day. When the outdoor pools close it is only possible that some employees will be able to change their working location to an indoor pool location. This is decided by management and based on the employee's performance and the availability at the time. If an employee is working at an outdoor pool they cannot demand to be changed to an indoor location. As a employee of this company your primary tasks will be to ensure the safety of the patrons and facility you work at, preventing and responding to emergencies, maintain a clean pool area, keep record of pool chemical readings, provide an enjoyable, safe atmosphere for the patrons of the pool. You will ensure pool rules are being followed. |
| **Level of English Required** | Advanced |
| **Start Date** | 5 May 06 - 10 May 06 |
| **End Date** | 5 Sep 06 - 10 Sep 06 |
| **Gender Required** | None |
| **Day to report to Employer** | Please report to the employer as directed in the travel information section of this document. |
| **Expected days from arrival before starting work** | You should begin working 5 days after you arrive. You will first take your Red Cross certification. |
| **Estimated Average Hours over the course of the program** | Average weekly hours range from 40 to 60 per week. |
| **Pay Rate Estimate** | $7.00 per hour. $7.25 per hour once you pass the pool operator class. |
| **Estimated Tips** | This is not a tipped position. |
| **Estimated Overtime** | You are able to work over 40 hours per week however this is a seasonal business and is not required by law to pay overtime wages. Hours you work over 40 will be the same rate as regular hours. |
| **Required Skills** | You must take the required Red Cross course and become certified. This course will cost $175.00 and is paid thru payroll deduction. You will also take a test on pool operations. The employer will assist you to train for this course. Once you have passed this course you are eligible to receive $7.25 per hour. In order to pass the Red Cross Certification you will need to be able to swim 500 yards, dive 7 to 10 feet into the water, retrieve a 10-pound object from the bottom of the pool. In order to qualify for this position you must be a very good swimmer and a very strong swimmer. |
| **Expected Schedule** | Pool hours can vary at different locations however hours can begin as early as 6AM and end at dusk or approximately as late as 9PM. You will work 6 days a week and have one free day. There are shifts that range from 5 to 8 hours as well as double shifts. |
| **Drug Screening Policy** | Drug testing may be required randomly. |
| **Possible 2nd Job** | Yes You are able to work a second job however it cannot be with a competitor or another lifeguard business. It is also requested you do not work any overnight shifts as a second job as this effects your ability to work as lifeguard during the day. The employer will assist you in securing a second job. A second job can in no way interfere with your performance or availability of the primary employer. It is the responsibility of you and the second employer to schedule hours around the primary employers scheduling needs. |
| **Additional application** | You will fill out new employment paper work as any new employee would. You will have housing terms provided upon your arrival. |
| **Possibility for job change within company** | No. |
| **Meal discounts** | Meal discounts are not provided. |
| **Uniforms** | Uniforms are required and will cost $65.00. The cost of uniform can be paid thru payroll deduction. |
| **Dress code** | You will receive full details on dress code during your orientation. You will need to arrive to work each shift dressed in the correct uniform. |
| **Grooming code** | You will be working directly with the public. You will need to arrive each shift neatly |

| | |
|---|---|
| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

Page 3 of 12                                                    PCF 5187-3560-117-9

Student ID...................................    Student Name...................................

| cleaned and groomed. Proper use of daily hygiene products and sunscreen. |
| --- |
| *Reminder: It can take between three and eight weeks from the date you start working to be paid. Please bring enough money to support yourself until you are paid. Check with employer to find out your first pay date.* |

## SUGGESTED TRAVEL INFORMATION

| | |
| --- | --- |
| **Nearest International Airport** | Dulles |
| **Nearest Airport** | Dulles |
| **Transportation from Airport to Employer and/or Housing** | The employer would prefer you to arrive at the Dulles airport. As long as you provide your confirmed travel arrangements in advance (Intrax requires travel details be submitted no later than two weeks prior to arrival) the employer will arrange for you to be met at the airport. Do not expect to be picked up at the airport if you have not provided your travel details. You can send your travel information to the following email address, DCH@sunsetpoolsmgmt.com |
| **Nearest Bus Station** | Arlington, VA or Washington DC. It is suggested you arrive at Dulles airport if you are able to. |
| **Bus Information** | http://www.greyhound.com |
| **Nearest Train Station** | Not suggested. |
| **Train Information** | http://www.amtrak.com |

## SOCIAL SECURITY INFORMATION

| | |
| --- | --- |
| **Nearest Social Security Office** | 6295 Edsall Road, Alexandria, VA 22312 |
| **How and When to Apply for the Social Security Card** | The employer assists to the social security office. When you apply for social security you should have your card sent in the care of the employer to the employers address. |
| **Social Security website** | http://www.ssa.gov |

## HOUSING

| | |
| --- | --- |
| **Housing Restrictions (yes/no)** | Yes |
| **Housing Restrictions** | If housing restrictions apply, participants must remain in this housing to be employed by the employer identified in this document. Participants must remain employed by the employer identified in this document and remain in the Intrax Work/Travel Program to live in this housing. No exceptions will be granted unless agreed in writing in advance by Intrax Work/Travel. |
| **Housing Information** | There are several housing locations. The location of your housing will be based on the location you will work at. Housing is located within bicycle distance to each work area. Once you have selected and been confirmed for this position it is required that you live in and remain in the employer provided housing the entire term of your agreed employment dates. The employer provides a very detailed housing lease that you will be required to review, understand and sign if in agreement of. Do not sign this form if you do not understand the terms you are signing in agreement to. This is a legal housing lease and should not be taken lightly. IF you do not understand any part of the housing terms you should ask the employer, Intrax or your local representative for assistance to understand. |
| **Address** | Housing addresses are assigned upon arrival. |
| **Estimated Cost** | Housing for NON-furnished accommodations is $300.00 per month per person. Housing for FURNISHED accommodations is $310.00 per person per month. Once you are confirmed for the position you will need to send message to the employer with the housing you select, furnished for non-furnished. |
| **Additional Costs (i.e. Bond)** | There is a deposit of $100.00 per person due upon arrival. Housing deposits are refundable as long as you stay the date you agreed to and there is no damage to property upon move out inspection. There are bicycles available for your use. There is a deposit of $50.00 to $75.00 depending on the bicycle you choose. The deposits for bicycles are refundable as long as it is returned in the condition when you got it. |
| **Features** | Housing is in shared dorm style housing. You can choose if you want furnished or non-furnished accommodations. The cost for each is listed under housing cost. There are bicycles available for your use during your stay. The deposit charged for bicycles is listed under additional costs. Stove refrigerator are included. |
| **Hostel Information** | http://www.hiayh.org or http://www.hostels.com |

## AREA INFORMATION

| | |
| --- | --- |
| **Average temperature** | The following average highs and lows are listed for each month of the year; January7C -4C; |

| | |
| --- | --- |
| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

PCF 5187-3560-117-9

Student ID.......................................        Student Name.......................................

| | |
|---|---|
| | February 9C 3C, March 14C 3C, April 21C 6C, May 26C 11C, June 29C 16C, July 22C 19C, August 31C 18C, September 27C 14C, October 21C 7C, November 15C 2C, December 9C -2C. |
| **Altitude** | N/A |
| **Information websites** | www.washington.org  www.virginia.org  www.mdisfun.org |
| **Nearest city** | All of the job locations are in Metro areas. |
| **Things to do** | There are a variety of museums that are free of charge, take a trip to see the White House, Capital, Washington Monument, Mount Vernon and much more! |
| **What to wear** | You should wear comfortable casual clothing that is appropriate for the temperatures during the months of your stay. Monthly temperatures are listed above in this document. |

## ADDITIONAL INFORMATION

| | |
|---|---|
| **Additional Information** | There are multiple locations for this position including the Virginia, Maryland and DC areas. The employer is unable to place you into a specific location until you have arrived. The area that you work in is based on business level demands and staffing demands during the time you arrive. If you have a specific request the employer will attempt to grant your request however it may not be possible. If for any reason you have a specific need to be in a desired location you will need to communicate this with the employer prior to your arrival. As the employer may not be able to grant such requests, you must understand and be able/ in agreement to work in any of the locations. You will receive Red Cross certification upon your arrival this will cost $175.00 paid thru payroll deduction. The time for this will be approximately two days. You will have one day orientation. There is an additional agreement the employer requires to be reviewed, signed if in agreement and returned to the employer in order to confirm your position. There is an end of season bonus for those who have been recommended from their supervisors in the amount of $50.00. THE POOL LOCATIONS ARE LOCATED AT BOTH INDOOR AND OUTDOOR FACILITIES. THE OUTDOOR POOLS CLOSE NEAR LABOR DAY. AFTER THE OUTDOOR POOLS CLOSE THERE IS NO LONGER A GAURANTEE OF EMPLOYMENT TO THOSE WORKING IN THE OUTDOOR LOCATIONS. IT IS POSSIBLE BASED ON THE EMPLOYERS DECISION AND THE PARTICIPANTS WORKING PERFORMANCE TO BE OFFERED A POSITION AT AN INDOOR FACILITY. YOU SHOULD UNDERSTAND CLEARLY THIS IS NOT GAURANTEED. |

*Based on the information available to Intrax Work/Travel, the contents of this Premium Placement Confirmation Form are true and accurate as of the date of its issuance to the Premium Placement Service participant. All information is subject to change depending on a variety of factors, including but not limited to weather, employment trends and staffing changes.*

| | |
|---|---|
| **Intrax Work Travel**<br>**600 California St., 10th Floor**<br>**San Francisco CA 94108**<br>**Phone: (415) 434-5440**<br>**Fax: (415) 434-5430** | **THIS DOCUMENT RELATES TO :**<br>JDO 5187-3560-117 |

Page 5 of 12                                          PCF 5187-3560-117-9

Student ID...............................        Student Name...............................

## Premium Placement Participant Terms & Conditions
### (revised on 30AUG04)

*Please read this document carefully, and make sure that you understand it before you sign it.*

By signing this document, you are agreeing to the following terms and conditions ("Terms & Conditions"):

You certify that:

1. The information provided on your application is complete and accurate.
2. You are between the ages of 18 and 28 years old at the time of application.
3. You are enrolled in a college or university outside of the United States at the time of application.
4. You are registered for a full-time course load for the semester following your participation in the Intrax Work/Travel Program.
5. You speak, read, and understand English at the level indicated on your application.
6. You are physically capable of performing the tasks required as outlined in your job description.
7. You are able to participate in the Intrax Work/Travel Program for the period indicated in the Placement portion of this Premium Placement Confirmation Form ("PCF").

You agree that:

1. Within three (3) days of arriving in the United States you will confirm your arrival with Intrax Work/Travel by doing only one of the following (1) mailing your self-addressed, postage paid Check In Form to Intrax Work/Travel headquarters at 2226 Bush Street, San Francisco, CA 94115, (2) completing the on-line Check In Form at www.intraxworktravel.com or (3) faxing the Check In Form to 415-674-5251. Failure to do one of the above will result in your immediate dismissal from the Intrax Work/Travel Program.
2. You will participate in an orientation provided by Intrax Work/Travel or an Intrax Work/Travel agent representative. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.
3. You will report to the employer listed in section #1 of your DS-2019 form on the date indicated in section #3 of the same form. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.
4. If any change occurs in your employment as indicated on your DS-2019 form pursuant to these Terms & Conditions, you will pay the administrative fee as well as verify such change by following the procedures and completing the

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
|---|---|
| 600 California St., 10th Floor | JDD 5187-3560-117 |
| San Francisco CA 94108 | |
| Phone: (415) 434-5440 | |
| Fax: (415) 434-5430 | |

Student ID.................................         Student Name...............................

documentation required by Intrax Work/Travel. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

5. You will not work beyond the program end date listed in section #3 of your DS-2019 form.

6. You will leave the United States within thirty (30) days of the program end date listed in section #3 of your DS-2019 form.

7. If you change your address while in the United States, you will notify Intrax Work/Travel by telephone or email and the Department of Justice by using form AR-11 within three (3) business days. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

8. While in the United States, you will obey all federal, state, and local laws and the rules of the Intrax Work/Travel Program. Failure to do so will result in your immediate dismissal from the Intrax Work/Travel Program.

9. Upon receipt of the Intrax Work/Travel Participant Handbook you will read the entire handbook and ask Intrax Work/Travel or the Intrax Work/Travel agent representative for clarification on any point(s) that are not explicitly understood.

**You understand that:**

1. A DS-2019 form enables you to apply for a J-1 Work/Travel visa. The United States Embassy or Consulate may grant or deny your application for a visa. Intrax Work/Travel is not responsible for and cannot control or change their decision.

2. Even if you receive a J-1 Work/Travel visa, you may be denied entrance into the United States by a Bureau of Citizenship and Immigration Service Officer. Intrax Work/Travel is not responsible for and cannot control or change any denial of entrance into the United States.

3. You are responsible for bringing enough money to the United States to cover the cost of your food, housing and other personal expenses for at least one month. We suggest a minimum of $1,000.00 due to possible delays with Social Security and distance of travel from airport to employer, advance payment for accommodation needed upon arrival and other initial investments needed. Intrax Work/Travel is not responsible for such expenses, or for any period of time during which you are not being paid by an employer. Intrax Work/Travel cannot loan money to you.

4. You are responsible for making your own travel and housing arrangements, and must provide your travel and housing plans at least two (2) weeks prior to arrival in the United States by ensuring that your plans are submitted to the Intrax Work/Travel website by the Intrax Work/Travel agent representative in your home country. Intrax Work/Travel is not responsible for making or assisting you in making your individual travel or housing arrangements.

5. A J-1 Work/Travel visa cannot be extended. You must return home at the end of your program, or face federal fines and disbarment from re-entering the United States.

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
| 600 California St., 10th Floor | JDD 5187-3560-117 |
| San Francisco CA 94108 | |
| Phone: (415) 434-5440 | |
| Fax: (415) 434-5430 | |

Page 7 of 12                                             PCF 5187-3560-117-9

Student ID.............................    Student Name.............................

6. As an Intrax Work/Travel participant, you are subject to the United States civil and criminal justice system. Failure to obey federal, state or local laws may result in civil liability, criminal prosecution, fines, jail sentences, or other penalties. Intrax Work/Travel is not responsible for any civil or criminal liability you may incur or for assisting or defending you in any way in connection with any legal claims made against you.

7. Intrax Work/Travel is your official program sponsor while you are in the United States. The Intrax Work/Travel staff is available to assist you with any questions or to advise you regarding any challenges you may experience while you are participating in the Intrax Work/Travel Program. In the United States, you may call Intrax Work/Travel (toll free) at 1-888-224-0450 weekdays from 9 a.m. to 5 p.m., Pacific Standard Time. You may call the same toll free line at any time, 24 hours a day, 7 days a week, in case of an emergency. You may also call 1-415-674-5252 at your own expense from anywhere in the world, weekdays from 9 a.m. to 5 p.m., Pacific Standard Time.

8. If you would like to lodge a formal grievance about the Intrax Work/Travel Program, you will follow the Intrax Work/Travel Grievance Procedures.

9. If you are dismissed from the Intrax Work/Travel Program for any reason, you will be out of status on your J-1 visa, you will no longer have medical insurance and you are required to leave the country immediately or face possible further penalties.

**As a Premium Placement Service participant, you understand and agree that:**

1. You will remain at your employment with the employer listed in Section #1 of your DS-2019 form for the duration you originally indicated on your enrollment application unless you are terminated by the employer or you obtain prior written authorization from Intrax Work/Travel to leave your employment. If you leave your employment without having been terminated by the employer or obtaining prior written authorization from Intrax Work/Travel, you will be dismissed from the Intrax Work/Travel Program immediately. You agree to contact Intrax Work/Travel if any job-related difficulties or disputes arise that may affect your continued employment.

2. Your employer may terminate your employment at any time, without prior notification, with or without cause. Intrax Work/Travel is not responsible for and cannot control employment decisions made by your employer.

   (a) If your employment is terminated for cause, including but not limited to poor job performance, misconduct, or misrepresentation of your qualifications on your application, you will be dismissed from the Intrax Work/Travel Program immediately and you will forfeit the entire program fee.

   (b) If your employment is terminated without cause, through no fault of your own, during the first eight (8) weeks of your participation in the program, Intrax Work/Travel will attempt to provide you with a new employment opportunity suitable to your skills, experience and qualifications. If you

| | |
|---|---|
| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | **THIS DOCUMENT RELATES TO :**<br>JDD 5187-3560-117 |

Student ID.....................................        Student Name.................................

accept a new employment opportunity, you will be responsible for the cost
of transportation to the new employer's location.

(c) Under subsection (b), if for any reason you do not accept a new
employment opportunity, or if Intrax Work/Travel cannot provide you
with a new employment opportunity suitable to your skills, experience and
qualifications, you may remain in the Intrax Work/Travel Program as an
Independent Placement Service participant, and Intrax Work/Travel will
refund your representative agency the difference between the Premium
Placement Service program fee and the Independent Placement Service
program fee.

(d) If your employment is terminated without cause, through no fault of your
own, at any time after the first eight (8) weeks of your participation in the
program, Intrax Work/Travel will assist you by providing information
about possible new employment opportunities suitable to your skills,
experience and qualifications. However, Intrax Work/Travel is not
responsible under any circumstance for providing you with a new
employment opportunity upon such termination. If you find and accept
new employment, you will be responsible for the cost of transportation to
the new employer's location.

(e) Under subsection (d), if your employment is terminated without cause at
any time after the first eight (8) weeks of your participation in the Intrax
Work/Travel Program, you may remain in the program as an Independent
Placement Service participant, but you will not be entitled to a refund of
any part of the Premium Placement Service program fee.

(f) NOTE – Ski Resort Exception: The availability of employment at a ski
resort is inherently seasonal and dependent on snow fall and other factors
beyond the employer's or Intrax Work/Travel's control. If you accept an
employment opportunity at a ski resort, you agree to assume the risk that
your employment may be terminated or your work schedule or hours
may be limited. Accordingly, if you are employed at a ski resort and,
through no fault of your own, you are terminated or subject to reduced
hours at any time, regardless of the length of your actual participation in
the Intrax Work/Travel Program or the date of such termination or
reduction, Intrax Work/Travel will not provide you with a new
employment opportunity or a refund of any part of the Premium Placement
Service program fee. Intrax Work/Travel may, in its discretion, assist you
with seeking a new employment opportunity. If you find or accept new
employment, you will be responsible for the cost of transportation to the
new employer's location.

3.  Your employer may have to limit the number of hours you work per week for a
variety of reasons, including but not limited to poor job performance, misconduct,
or circumstances beyond the employer's control. Intrax Work/Travel is not
responsible for and cannot guarantee your schedule or that you will be able to
work a minimum number of hours per week. However, if, through no fault of your

| Intrax Work Travel<br>600 California St., 10ᵗʰ Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDO 5187-3560-117 |
|---|---|

Student ID.................................        Student Name.................................

own, you have worked less than thirty (30) hours per week for at least three (3) consecutive weeks, Intrax Work/Travel may, in its discretion, assist you with seeking a new employment opportunity. If you find or accept new employment, you will be responsible for the cost of transportation to the new employer's location.

4. If you secure new employment pursuant to any of the provisions in this section, you must verify such new employment in writing following Intrax Work/Travel's required procedures and documentation. Failure to comply will result in your immediate dismissal from the Intrax Work/Travel Program.

5. The Intrax Work/Travel Program does not include housing and Intrax Work/Travel is not responsible for providing housing to you. However, housing may sometimes be available in connection with certain employment opportunities If housing is available with your employment opportunity, the information and restrictions on such housing are identified in the housing section of the Placement portion of this Premium Placement Confirmation Form ("PCF"). You must comply with any and all requirements indicated in the housing section of your PCF. Failure to comply with these requirements will result in your immediate dismissal from the Intrax Work/Travel Program. If housing is available with your employment opportunity, Intrax Work/Travel makes no representations or guarantees regarding the nature or quality of such housing. If your employment opportunity includes housing, you agree to contact Intrax Work/Travel if any housing-related difficulties or disputes arise.

**You understand and agree to the following Premium Placement Service Refund Policies\*:**

1. SEVIS fee: Once a DS form has been issued to you, the SEVIS fee is non-refundable even if your visa is denied or your application is cancelled.

2. Visa Denials: If your visa application is denied, Intrax Work/Travel will refund the placement fee portion of your program fee provided the required procedures are followed. Refund of the placement fee is contingent upon (1) Intrax Work/Travel being informed by the representative agency within 3 days of the visa denial; (2) Intrax Work/Travel receiving the DS-2019, a copy of the passport biographical pages as well as the page showing the denial; (3) Intrax Work/Travel receiving the Visa Denial Form from the representative agency providing an explanation for the denial. The documentation must be received within 14 days of the denial. The application fee portion of the program fee is non-refundable.

3. Denial of Entry: If you are denied entry to the United States by a Bureau of Citizenship and Immigration Service Officer, Intrax Work/Travel will refund the placement fee portion of your program fee. Refund of the placement fee is contingent upon Intrax Work/Travel's receipt of official proof of such denial of entry, including a statement of the reason for the denial, a copy of your passport and a letter from the Intrax Work/Travel agent representative in your home country explaining the reason for the

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDO 5187-3560-117 |
|---|---|

Student ID........................................        Student Name........................................

denial.  The documentation must be received within 14 days of the denial of Entry.  The application fee portion of the program fee is non-refundable.

4. Cancellations Prior to Placement Confirmation: If for any reason you cancel your Premium Placement Service application before your placement has been confirmed, Intrax Work/Travel will refund only the placement fee portion of your program fee. The application fee portion of the program is non-refundable.

5. Cancellations/Withdrawals After Placement Confirmation: If for any reason you cancel or withdraw from the Intrax Work/Travel Program at any time after your placement has been confirmed, whether before or after your arrival in the United States, Intrax Work/Travel will not refund any portion of the program fee.

6. Termination from Employment Without Cause: If you are terminated from your employment without cause during the first eight (8) weeks of your participation in the Intrax Work/Travel Program, Intrax Work/Travel will refund only the difference between the Premium Placement Service program fee and the Independent Placement Service program fee and will do so only if: (a) you are not employed by a ski resort and (b) Intrax Work/Travel cannot provide or you do not accept its offer of a new employment opportunity. Under all other circumstances, if you are terminated from employment without cause, Intrax Work/Travel will not refund any portion of the program fee.

7. Changes in the Premium Placement Confirmation Form: If upon arrival actual circumstances vary from that which is stated on the Placement portion of this Premium Placement Confirmation Form you will not be entitled to a refund.

8. Reduced or Limited Work Schedule:  If your work schedule or hours of work per week are reduced or limited for any reason, Intrax Work/Travel will not refund any portion of the program fee.

9. Termination from Employment for Cause or Dismissal from Program:  If you are terminated by your employer for cause, including but not limited to termination due to poor performance, misconduct or misrepresentation of your qualifications on your application, or if you are dismissed from the Intrax Work/Travel Program for any reason, including but not limited to the grounds for dismissal identified in these Terms & Conditions, Intrax Work/Travel will not refund any portion of the program fee.

10. Refunds Payable to Local Representative agency:  Intrax Work/Travel will pay any refund that is due pursuant to the above provisions by the end of the program season for which you applied.   Intrax Work/Travel will make such payment only to the local Intrax Work/Travel representative agency in your home country.  Intrax Work/Travel will not pay any refund directly to you. Intrax Work/Travel is not responsible for ensuring that any refund it pays to the local Intrax Work/Travel representative agency in your home country is

| Intrax Work Travel | THIS DOCUMENT RELATES TO : |
| 600 California St., 10th Floor | JDD 5187-3560-117 |
| San Francisco CA 94108 | |
| Phone: (415) 434-5440 | |
| Fax: (415) 434-5430 | |

Page 11 of 12                                                                PCF 5187-3560-117-9

Student ID...................................    Student Name...............................

paid to you. You and the local representative agency must arrange for any refund to be paid to you.

\* All refund amounts are based on the original pricing charged to your representative agency by Intrax Work/Travel as per their Partnership Agreement. For specific refund amounts please ask your representative agency.

**You understand and agree to the following Dispute Resolution and Construal Provisions:**

1. Arbitration: You understand and agree that any dispute, controversy or claim in any way arising out of, related to, or connected with your participation in the Intrax Work/Travel Program, the Intrax Work/Travel Premium Placement Service, or these Terms & Conditions shall be decided by neutral, exclusive and binding arbitration in San Francisco, California, USA. The arbitration shall be conducted before an agency or arbitrator agreed upon by you and Intrax Work/Travel or, if none, before an arbitrator selected by the American Arbitration Association. Either you or Intrax Work/Travel may appear telephonically at the arbitration hearing. Any award of the arbitrator may be enforced in any court of competent jurisdiction of the federal or state courts of San Francisco County, California, USA. In any action, including arbitration, brought in connection with your participation in the Intrax Work/Travel Program or the Intrax Work/Travel Premium Placement Service, the prevailing party shall be entitled to recover all reasonable costs and expenses incurred by such party, including attorney's fees. The non-prevailing party shall also be solely responsible for all costs of arbitration. Any dispute as to the reasonableness of such costs and expenses shall be determined by the arbitrator.

2. Severability: If any provision of these Terms & Conditions or their application is held to be invalid, illegal or unenforceable for any reason, the invalid, illegal or unenforceable provision or application shall not affect or impair the other provisions or applications of the Terms & Conditions which can be given effect without the invalid, illegal or unenforceable provision or application. To this end the provisions of this Agreement are declared to be severable and shall be construed and enforced accordingly.

3. Waiver: No waiver by Intrax Work/Travel of your failure to comply with any of these Terms & Conditions shall be construed to be, or shall be, a waiver of any other failure to comply with such Terms & Conditions. No waiver shall be binding unless in writing and signed by Intrax Work/Travel.

4. Headings Not Controlling: The headings used in the document setting forth these Terms & Conditions are used only for ease of reference and are not controlling.

5. Governing Law: These Terms & Conditions shall be governed by and construed under the laws of the State of California, USA, without regard to principles of conflict of laws.

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JDD 5187-3560-117 |
| --- | --- |

Page 12 of 12                                                    PCF 5187-3560-127-9

Student ID _44297_          Student Name _Veselin Ivanov_

Please note that based on the information available to Intrax Work/Travel, the contents of
the Premium Placement Confirmation Form are true and accurate as of the date of its
issuance to the Premium Placement Service participant. All information is subject to
change.

- I am capable of reading and understanding these Terms & Conditions in
  English.

- I have read these Terms & Conditions carefully, have had the opportunity to
  ask questions and get the advice as to their meaning, and understand them
  fully.

- I do not rely on any statements or representations that are not expressly stated
  in these Terms & Conditions.

- I agree to abide by these Terms & Conditions.

Signed: _____          Date: _07. 12. 2006_

Print Name: _Veselin Ivanov_          Intrax Student ID#: _44297_

| Intrax Work Travel<br>600 California St., 10th Floor<br>San Francisco CA 94108<br>Phone: (415) 434-5440<br>Fax: (415) 434-5430 | THIS DOCUMENT RELATES TO :<br>JOO 5187-3560-117 |
|---|---|

# EXHIBIT
# G

some...  Sunset Pool, Inc. - visit www.sunsetpool.net or e-mail us at info@sunsetpool.ne

Case 1:07-cv-00413-RBW    Document 34-2    Filed 05/28/2008    Page

**jective**

...ne objective of Sunset Pool, Inc. is to manage
...ng pools in a safe and efficient manner
... relieving the Property Managers and Owners
...ne, worry and responsibility involved in
...ng their facility. As an employee of Sunset
...nc., it is your job to help us provide the best
... service to our customers.

## JOB DESCRIPTION

- We manage over 100 pools in the Virginia, Washington, DC and Maryland area

- Starting wage per hour: $7.00

- Pool operator rate: $7.25

- Lifeguard training course: $175

- Cost of housing per month: $300

- Cost of furniture per month: $10

- Uniform cost: $65

- Refundable housing deposit: $100

- Refundable bicycle deposit: $50-$100

- Ending bonus for overall performance: $50

**Training**
Students must meet the requirement for Lifeguard Training and Pool Operators. Prior to the start of the training participants are required to pass a swimming skills test. The test includes but is not limited to:
- swimming 500 yards (approximately 460 meters)
- surface diving to a depth of 7-10 feet (approximately 2.1-3 meters)
- retrieving a 10 pound (approximately 4.5 kg) object and return to the surface.

Upon successful completion of the American Red Cross Lifeguard Training course, student will receive an Cardio Pulmonary Resuscitation (CPR) for the Professional Rescuer certificate, which is valid for 1 year. Student will also receive an American Red Cross Lifeguard Training certificate and First Aid, which are valid for 3 years.



**Accommodation**
Sunset Pools Management provides partially equipped apartments. The equipment consists of: refrigerator, stove, dishwasher, A/C heating system, chairs and table, airbeds or mattresses, pots, dishes and silverware.







national landmarks, free museums and a
...shing dining and culture scene, Washington
appealing destination.

...marks include:
...to) Building – where Congress meets and
...ucts business. It is located on the east end
...e Mall
...e House – the official residence of the US
...ident. It is located at 1600 Pennsylvania
...ue
...hington Monument - it stands just over 555
...Memorial stones from the 50 States, foreign
...tries and organizations line the inside walls.
...top of the monument, which you can get to
...by elevator, provides a panoramic view of the

...thsonian Institution – it is a network of museums
...art galleries, research projects and special
...sciences. It includes 14 museums. Some of
...e the National Air and Space Museum,
...eum of Natural History, and the National
...allery.
...Mall – it is a 146-acre stretch of lawn that
...from the Potomac River to the Capitol
...the area hosts political rallies, festivals
...



Sunset Pools
management, inc.
1745 Pennsylvania Ave NW Suite 201
Washington, DC 20006

**sunsetpool.net**



# EXHIBIT
# H

## SUNSET POOL, INC.

| Employee | | | | | SSN | Status (Fed/State) | | Allowances/Extra |
|---|---|---|---|---|---|---|---|---|
| MIROSLAV N. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | | | Single/Single | | Fed-1/15/DC-1/0 |
| | | | | | Pay Period: 09/09/2006 - 09/22/2006 | | | Pay Date: 09/29/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 5,130.00 |
| BONUS | | | 978.00 | 3,189.00 |
| | | | 1,618.00 | 8,319.00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -234.30 | -976.70 |
| DC - Withholding | -95.00 | -421.00 |
| | -329.30 | -1,397.70 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -1,395.00 |
| UNIFORM & CLASS | | -240.00 |
| HOME PHONE | | -15.00 |
| SECURITY DEPOSIT | | -100.00 |
| | -155.00 | -1,750.00 |

| Net Pay | 1,131.70 | 5,171.30 |
|---|---|---|

SUNSET POOL INC, 3608 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

## SUNSET POOL, INC.

**21653**

| Employee | | | | | SSN | Status (Fed/State) | | Allowances/Extra |
|---|---|---|---|---|---|---|---|---|
| MIROSLAV N. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | | | Single/Single | | Fed-1/15/DC-1/0 |
| | | | | | Pay Period: 08/26/2006 - 09/08/2006 | | | Pay Date: 09/15/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 4,490.00 |
| BONUS | | | 458.00 | 2,213.00 |
| | | | 1,098.00 | 6,703.00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -131.30 | -742.40 |
| DC - Withholding | -59.00 | -326.00 |
| | -190.30 | -1,068.40 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -1,240.00 |
| HOME PHONE | -5.00 | -15.00 |
| UNIFORM & CLASS | | -240.00 |
| SECURITY DEPOSIT | | -100.00 |
| | -160.00 | -1,595.00 |

| Net Pay | 745.70 | 4,039.60 |
|---|---|---|

SUNSET POOL INC, 3608 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

## SUNSET POOL, INC.

**21054**

| Employee | | | | | SSN | Status (Fed/State) | | Allowances/Extra |
|---|---|---|---|---|---|---|---|---|
| MIROSLAV N. IVANOV, 249 8TH STREET N.E., WASHINGTON, DC 20006 | | | | | | Single/Single | | Fed-1/15/DC-1/0 |
| | | | | | Pay Period: 07/01/2006 - 07/14/2006 | | | Pay Date: 07/21/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 7.00 | 560.00 | 2,170.00 |
| BONUS | | | 210.00 | 910.00 |
| | | | 770.00 | 3,080.00 |

| Taxes | Current | YTD Amount |
|---|---|---|
| Federal Withholding | -82.30 | -330.20 |
| DC - Withholding | -36.00 | -144.00 |
| | -118.30 | -474.20 |

| Adjustments to Net Pay | Current | YTD Amount |
|---|---|---|
| RENT | -155.00 | -620.00 |
| UNIFORM & CLASS | -40.00 | -160.00 |
| HOME PHONE | -5.00 | -5.00 |
| | -200.00 | -785.00 |

| Net Pay | 451.70 | 1,820.80 |
|---|---|---|

SUNSET POOL INC, 3608 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

Employee
VESELIN V. IVANOV, 249 6TH STREET, N.E., WASHINGTON, DC 20006

| | | | SSN | Status (Fed/State) | | Allowances/Extra |
|---|---|---|---|---|---|---|
| | | | ***-**-0101 | Single/Single | | Fed-1/15/DC-1/0 |
| | | | Pay Period: 09/09/2006 - 09/22/2006 | | | Pay Date: 09/29/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 6,138.50 |
| BONUS | | | 1,264.00 | 2,898.00 |
| | | | 1,904.00 | 9,031.50 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Federal Withholding | | | -306.30 | -959.70 |
| DC - Withholding | | | -121.00 | -407.00 |
| | | | -427.30 | -1,366.70 |

| Adjustments to Net Pay | | | Current | YTD Amount |
|---|---|---|---|---|
| RENT | | | -155.00 | -1,395.00 |
| UNIFORM & CLASS | | | | -240.00 |
| HOME PHONE | | | | -15.00 |
| SECURITY DEPOSIT | | | | -100.00 |
| | | | -155.00 | -1,750.00 |

| Net Pay | | | 1,321.70 | 4,914.80 |
|---|---|---|---|---|

SUNSET POOL INC, 3606 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

# SUNSET POOL, INC.                                                    21693

Employee
VESELIN V. IVANOV, 249 6TH STREET N.E., WASHINGTON, DC 20006

| | | | SSN | Status (Fed/State) | | Allowances/Extra |
|---|---|---|---|---|---|---|
| | | | ***-**-0101 | Single/Single | | Fed-1/15/DC-1/0 |
| | | | Pay Period: 08/26/2006 - 09/08/2006 | | | Pay Date: 09/15/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 8.00 | 640.00 | 4,498.50 |
| BONUS | | | 332.00 | 1,634.00 |
| | | | 972.00 | 6,127.50 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Federal Withholding | | | -112.30 | -653.40 |
| DC - Withholding | | | -50.00 | -286.00 |
| | | | -162.30 | -939.40 |

| Adjustments to Net Pay | | | Current | YTD Amount |
|---|---|---|---|---|
| RENT | | | -155.00 | -1,240.00 |
| HOME PHONE | | | -5.00 | -15.00 |
| UNIFORM & CLASS | | | | -240.00 |
| SECURITY DEPOSIT | | | | -100.00 |
| | | | -160.00 | -1,595.00 |

| Net Pay | | | 649.70 | 3,593.10 |
|---|---|---|---|---|

SUNSET POOL INC, 3606 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

# SUNSET POOL, INC.                                                    21404

Employee
VESELIN V. IVANOV, 249 6TH STREET N.E., WASHINGTON, DC 20006

| | | | SSN | Status (Fed/State) | | Allowances/Extra |
|---|---|---|---|---|---|---|
| | | | ***-**-0101 | Single/Single | | Fed-1/15/DC-1/0 |
| | | | Pay Period: 07/29/2006 - 08/11/2006 | | | Pay Date: 08/18/2006 |

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly Rate | 80:00 | 7.00 | 560.00 | 3,293.50 |
| BONUS | | | 196.00 | 1,108.00 |
| | | | 756.00 | 4,399.50 |

| Taxes | | | Current | YTD Amount |
|---|---|---|---|---|
| Federal Withholding | | | -80.30 | -450.80 |
| DC - Withholding | | | -35.00 | -201.00 |
| | | | -115.30 | -651.80 |

| Adjustments to Net Pay | | | Current | YTD Amount |
|---|---|---|---|---|
| RENT | | | -155.00 | -930.00 |
| UNIFORM & CLASS | | | -40.00 | -240.00 |
| HOME PHONE | | | -5.00 | -10.00 |
| SECURITY DEPOSIT | | | -100.00 | -100.00 |
| | | | -300.00 | -1,280.00 |

| Net Pay | | | 340.70 | 2,457.70 |
|---|---|---|---|---|

SUNSET POOL INC, 3606 FOREST DRIVE, SUITE 2, ALEXANDRIA VA 22302 703-824-0997

# EXHIBIT
# I



**Sunset Pool**
management. inc.

1745 Pennsylvania Ave NW Suite 201, Washington DC 20006
Phone: 703 824 0997 Fax: 703 824 0042

## EMPLOYMENT AGREEMENT

### SUMMER 2006

### LIFEGUARD

**Our Mission Statement:**

Ensuring the safety of the facility and patrons by preventing and responding to emergencies, keeping the pool area clean, recording chemical readings and providing an enjoyable, safe and fun atmosphere.

**Section I:**

**Exchange Visitor (Please Print)**

Date: 24. 05. 2006

First Name: Miroslav

Last Name: Ivanov

Passport Number: 325305139

Date of Birth: 24. 05. 1985

Country of Citizenship: Bulgaria

Address in Country of Citizenship: Sofia, "Sv. Troica", bl. 132, ent. V, app. 52

Mother's Maiden Name (First and Last Name): Svetlana Atanasova

Father's Name: Petyo Atanasov

Email Address: mr.mpivanov@yahoo.com

Address in the United States: 249 8th Street N.E. Washington, DC Zip: 20006

Telephone Number:

Emergency Contact (Name, Phone Number and Relationship):

School Attended:

Gender:        ☒ Male        _____ Female

Swimming Ability:      _____ Poor      _____ Good      _____ Very Good      ☒ Excellent

English Language:      _____ Poor      _____ Good      ☒ Very Good      _____ Excellent

## Section II:

### Training

Students must meet the requirement for Lifeguard Training and Pool Operators.  Prior to the start of the training, participants are required to pass a swimming skills test.  The test includes but is not limited to:

- Swimming 500 yards,
- Surface diving to a depth of 7-10 feet,
- Retrieving a ten pound object and returning it to the surface.

Failure to pass the lifeguard training will automatically result in termination of employment.  Upon successful completion of the American Red Cross training course, applicant will receive a Cardio Pulmonary Resuscitation (CPR) for the Professional Rescuer certificate, which is valid for one year.  Applicant will also receive an American Red Cross Lifeguard Training and First Aid certificate, which is valid for three years.

M.I. Initials

## Section III:

### Arrival/Departure

Students must arrive in Washington, D.C. no later than two days before their date of employment begins and must stay until the end of the agreed employment period.  Early termination by the student will result in a $200 cancellation penalty.  Students must contact the Sunset Pools Management office at least two weeks prior to their arrival in the United States and must provide Sunset Pools Management with their exact arrival and departure dates.  A pick up will be arranged only from the following area airports: Dulles (IAD) and Reagan National (DCA) as well as bus terminals in Washington, D.C. and the Arlington/Alexandria area.   Pick up hours are Monday–Saturday 8am-9pm.

M.I. Initials

## Section IV:

### Wages

Lifeguards are paid $7.00 per hour.

Lifeguards with a Pool Operator's License are paid $7.25.

There is no overtime pay.

Based on the recommendation of their supervisors and ho el/property managers, the lifeguards will receive a $50.00 bonus at the end of their summer work program.

*M.I.* Initials

## Section V:

### Second Jobs

Student may find second jobs at restaurants, or other companies unless it interferes with Sunset Pools Management's schedules. Sunset Pools Management must approve the second employer. Students may not apply for or accept a second job at another swimming pool company. Night shifts are not allowed.

*M.I.* Initials

## Section VI:

### Apartments

1.      Sunset Pools Management may deduct money from an employee's pay to pay the rent and fees associated with an apartment provided by Sunset Pools Management.

2.      Sunset Pools Management provides partially equipped apartments for an additional $10.00 per month. The equipment consists of: a refrigerator, stove, dishwasher, A/C heating system, chairs and table, airbeds or mattresses, pots, dishes and silverware. There will be no pillow cases, sheets or blankets provided.

3.      Apartments are available May 15, 2006. Students must leave their apartments by September 30, 2006. Any student wishing to stay in Sunset Pools Management's apartments after September 30 must complete and deliver and Apartment Application Form to Sunset Pools Management's office by July 1, 2006.

4.      Apartments leased by Sunset Pools Management are subject to inspections by personnel in charge of Sunset Pools Management's housing policy.

5.      Sunset Pools Management's personnel inspect the overall condition of the apartments, damages to the equipment and living conditions.

6.      Remedies of any negative finding must be done within the appropriate period and the apartment will be re-inspected at the stated date.

7.      If a Sunset Pools Management personnel does not find the apartment in adequate condition the employee may lose his or her housing deposit. Repetitive failure to meet housing standards in inspections shall lead to termination of the employment agreement.

8.      Friends may not stay in the apartment unless approval is received from Sunset Pools Management before the friend arrives. There is a daily charge for any approved friends' overnight stay.

9.      Sunset Pools Management requires an apartment deposit of $100.00. The deposit will be returned if the apartment is returned in the same condition it was in or move in day and if there are no housing violations. Violations include but are not limited to: damage to any walls, windows, doors or equipment; allowing friends to stay in the apartment without approval, and complaints from the property management.

**Section X:**

**General Provisions**

| | |
|---|---|
| Date of employment: | 24 / 05/ 2006 to 25 / 09 /2006 |
| Starting wage per hour: | $7.00 |
| Average number of hours: | 40-60 hours per week |
| Lifeguard training course: | $175 |
| Pool operator rate: | $7.25 |
| Ending bonus for overall performance: | $50 |
| Cost of housing per month: | $300 |
| Cost of furniture per month: | $10 |
| Refundable housing deposit: | $100 |
| Refundable bicycle deposit: | $50-$100 |
| Uniform cost: | $65 (Preferred size _M_ ) |

M.I Initials

In accepting the position offered, I agree not to work past the last day of work stated on my visa. I will leave the United States by this date.

I understand that upon my termination from Sunset Pools Management, I have 24 hours to vacate the apartment Sunset Pools Management has provided for me.

I understand that Sunset Pools Management has the right to terminate my housing contract or terminate my employment at any time for any reason.

Employees who are terminated will be reported to the U.S Citizenship and Immigration Services (USCIS) to have their visas revoked.

Sunset Pools Management, Inc.

By: _Desi Chauzhewa_

Title: _Office Manager_

Date: _05 /24 / 06_

Applican

_Mike Soul Ivanov_

Signature _____

Date: _27 05 2006_

# EXHIBIT
# J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MIROSLAV IVANOV, et al**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SUNSET POOLS MANAGEMENT, INC. ET AL,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)    **Civil No.: 7-CV-00410**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF BABAK KIANI

I, Babak Kiani, declare as follows, pursuant to 28 U.S.C. §1746:

1.      I am Babak Kiani, a regional manager for Sunset Pools Management, Inc.

2.      I remember the plaintiffs, Miroslav and Veselin Ivanov, in this matter. I remember in particular they sent pictures of parties they had at their apartment, including alcohol and lots of other people, including people staying over, and some pictures of them not wearing much clothes.

3.      I interviewed them in Bulgaria, in English. They spoke good English. They took the regular CPR/lifeguard class in Arlington, in English, and had regular lifeguard duties. <u>See</u> CPR certifications and pool operators' license attached. All our lifeguards have to be proficient in English, and plaintiffs spoke English well. They passed written lifeguard exams in English, worked in English, and took lifeguard classes in English. Like me, they spoke English with an accent, but they spoke fluently.

BK

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE

AND CORRECT.

     EXECUTED ON MAY 11, 2007 IN ARLINGTON, VA.

BABAK KIANI

# EXHIBIT
# K

# Application Form 2005/2006          ZIP Youth & Student Travel

**Please complete the application form and return it at least on the interview date. Please be precise, because all this information will be used by ZIP Tavel in the future.**

**Personal Information**

First name _Miroslav Petrov Ivanov_

Family name _Ivanov_

Date of birth _24.05.1985_   Passport number _____

Family Status _single_                Children _—_

Postal address _Sveta Troica" H. 132 ed.V, ap. 52_   City _Sofia_

Contact telephone No (include area code) _02/920 42 66_   Mobile _0896 578297_

E-mail(s) winter email _urlestat@abv.6_ summer email

Parents address _Sveta Troica" H.132, ap.V, ap.52_   City _Sofia_

Parents telephone No _02/920 42 66_   _0888 336 183_

Emergency contact _Miroslav Ivanov   0896 578297_
_____(Name; Telephone No)

University/Employer _University of Library Sieuce_ Faculty _____

Year of study/work _first y_

Have you ever been on another exchange program   Yes (No)   When? _____

Which was your sponsoring organization and agency in Bulgaria? _____

Have you ever applied for US/UK visa? /circle one or both, if applicable/   Yes   (No)

When? _____

Was visa issued?   Yes   (No)

If yes, what was the purpose of your visit? _____

Have your parents been in US/UK?   Yes (No)   If yes, how long have they been there? _____
                    /circle one or both, if applicable/

---

**Please evaluate your knowledge of English:**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | (8) | 9 | 10 |
|---|---|---|---|---|---|---|-----|---|----|
| poor | | | | | | | | | excellent |

---

**Your personality**

◊ Why do you want to participate in this program? _Because I love to travel around the world, and this is good opportunity to visit USA_

◊ How do you feel about working in a group? _I feel perfect, I don't have a problems to work with other people_

◊ Why do you think, you are right candidate for exchange program? What are your strongest traits? _Because I'm a student, I'm not lazy, and it will be a pleasure for me to work in other country with other people_

**Research questions**
- How did you hear about ZIP Travel?

From my friend Kalitsa

- How did you hear about
ZIP Travel programs?

From my friend Kalitsa she was in USA with ZIP Travel last year

**Office use only**
1.
2.
3.

◇Why did you choose ZIP Travel?
a. Good price
(b.) Because ZIP assists in finding a job
c. I chose ZIP by chance
(d.) Because I like the service
Other/please, specify/

◇Have you tried to apply/ applied in other agencies?
a. If Yes, which?
(b.) No
◇What did you like/ didn't like in other agencies?

**Medical history**

Are you good in health?    (Yes)    No
Any physical limitation    Yes    (No) (if yes please specify) :
Do you have any allergies? Yes    (No) (if yes please specify)
Do you consume alcoholic beverages?    Daily    Weekly    (Seldom)    Never
Do you smoke?    Yes    (No)    Occasionally
Have you ever been arrested? Yes    (No)    (if yes a detail explanation must be enclosed)

I, hereby, agree that the information given above is accurate and correct. I agree, that ZIP Travel will use this information for future program purposes.

I am aware that fraudulent or incorrect presentation of information may lead to my dismissal from the any of ZIP Travel programs, which mean the cancellation of the contract and the loss of advanced payment for the program.

Name Miroslav Ivanov
Signature
Date 7.12.2005

## Intrax Work/Travel Program

*Please complete the following application for the Independent or Premium Placement Service. Please remember that participants must be 18 - 28 years old, currently enrolled in a university outside the United States and able to speak, read and understand English. Participants may only apply to visit the United States during their summer break from school.*

### Personal Information

Family Name: _Ivanov_

First Name: _Miroslav_

Middle Name: _____

Gender: ☒ Male   ☐ Female

Birth Date: (month/day/year): _05 / 24 / 1985_

Address Line #1: _"Sveta Troica", bl. 132, ent. V, apt. 52_

Address Line #2: _____

City: _Sofia_                     State or Province: _____

Postal Code: _____   Country: _Bulgaria_

City of Birth: _Sofia_

Country of Birth: _Bulgaria_

Nationality: _Bulgarian_

Citizenship: _Bulgarian_

Phone: country code _359_ city code _2_ number _920 42 66_

E-mail: _urvestat@hotmail.com_

Emergency Contact: _Petyo Ivanov_

Emergency Phone: country code _359_ city code _2_ number _920 42 66_

Have you participated in the J-1 Work/Travel Program before?   ☐ Yes   ☒ No

Earliest Date You Can Start Working (month/day/year): _05 / 25 / 2006_

Latest Date You Can Work (month/day/year): _09 / 25 / 2006_

*Please note that actual Job Start and Job End dates will be determined by the employer, but the Program End Date on the DS-2019 will be 4 months from the Job Start Date or the end of the season, whichever is shorter.*

University Name: _University for Library science and Information technologies_

Field of Study: _Information technologies_

English Level: (Basic/Conversational/Fluent) _Conversational_

Please tell us why you want to participate in the Intrax Work/Travel Program: _Because I love to trave around the world and the program is good opportunity for me to visit USA. I want to improve my language skills, too._

Comments or Requests (work interest, location interest, interest in participating with a friend, etc.):

_____

_____

_____

*Although we do our best to grant your requests, we cannot guarantee that we will be able to do so.*

How did you hear about Intrax Work/Travel? _From my friend Radtsa Kostova_

*Please make sure the information on this form is correct. If you submit incorrect information, and it invalidates the DS-2019 form, you may have to pay an additional $150 for a replacement DS-2019 form.*

Date: _6.12.2005_                     Signature: _____

**Intrax Work/Travel**
2226 Bush Street, San Francisco, CA 94115 USA

# EXHIBIT
# L

# Application Form 2005/2006         ZIP Youth & Student Travel

**Please complete the application form and return it at least on the interview date. Please be precise, because all this information will be used by ZIP Tavel in the future.**

**Personal information**

First name _Vesela Veselinov_

Family name _Ivanov_

Date of birth _28.04.1983_   Passport number _____

Family Status _Single_                     Children _____

Postal address _Druzba-2" bl.214 ent.B ap.29_   City _Sofia_

Contact telephone No (include area code) _02/ 794523_   Mobile _0888 087337_

E-mail(s) winter email _V.veselinov@btv.net_   summer email _____

Parents address _Druzba-2" bl.214 ent.B ap.29_ City _Sofia_

Parents telephone No _0235 730 488_

Emergency contact _0888 08 73 37_
                  (Name; Telephone No)

University/Employer _University of Library Science_ Faculty _____

Year of study/work _first_

Have you ever been on another exchange program  Yes (No)    When?_____

Which was your sponsoring organization and agency in  Bulgaria? _____

Have you ever applied for US/UK visa? /circle one or both, if applicable/  Yes  (No)

When?_____

Was visa issued?  Yes  (No)

If yes, what was the purpose of your visit?_____

Have your parents been in US/UK?  Yes  No    If yes, how long have they been there? _____

/circle one or both, if applicable/

**Please evaluate your knowledge of English:**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | (8) | 9 | 10 |
|---|---|---|---|---|---|---|-----|---|----|
| poor | | | | | | | | | excellent |

**Your personality**

◊ Why do you want to participate in this program? _Because I like to visit new places and meet new people_

◊ How do you feel about working in a group? _I feel perfect and enjoy to work in team_

◊ Why do you think, you are right candidate for exchange program? What are your strongest traits?

_Because I'm young smart and I love challenges_

## Research questions
- How did you hear about ZIP Travel?

_From my friend Miroslav_

Office use only
1.
2.
3.

- How did you hear about
ZIP Travel programs?

_From my friend Miroslav, he told me about you_

Office use only
1.
2.
3.

◇ Why did you choose ZIP Travel?
a.  Good price
b.  Because ZIP assists in finding a job
c.  I chose ZIP by chance
d.  Because I like the service
Other/please, specify/_____

◇ Have you tried to apply/ applied in other agencies?
a.  If Yes, which? _____
b.  No
◇ What did you like/ didn't like in other agencies? _____

## Medical history

Are you good in health?   Yes   No _____
Any physical limitation   Yes   No (if yes please specify) _____
Do you have any allergies? Yes   No (if yes please specify) _____
Do you consume alcoholic beverages?   Daily   Weekly   Seldom   Never
Do you smoke?   Yes   No   Occasionally
Have you ever been arrested? Yes   No   (if yes a detail explanation must be enclosed)

I, hereby, agree that the information given above is accurate and correct. I agree, that ZIP Travel will use this information for future program purposes.

I am aware that fraudulent or incorrect presentation of information may lead to my dismissal from the any of ZIP Travel programs, which mean the cancellation of the contract and the loss of advanced payment for the program.

Name _Vesselin Ivanov_
Signature _____
Date _____

**Intrax Work/Travel Program**

*Please complete the following application for the Independent or Premium Placement Service. Please remember that participants must be 18 - 28 years old, currently enrolled in a university outside the United States and able to speak, read and understand English. Participants may only apply to visit the United States during their summer break from school.*

**Personal Information**

Family Name: _VANOV_

First Name: _Veselin_

Middle Name: _Veselinov_

Gender:   ☒ Male      ☐ Female

Birth Date (month/day/year): _04/29/1985_

Address Line #1: _Drujba-2 bl. 214 ent. 6 app. 29_

Address Line #2: _____

City: _Sofia_      State or Province: _____

Postal Code _____ Country: _Bulgaria_

City of Birth: _Sofia_

Country of Birth: _Bulgaria_

Nationality: _Bulgarian_

Citizenship: _Bulgarian_

Phone: country code _+359_ city code _02_ number _888087937_

E-mail: _veselin_vianov@abv.bg_

Emergency Contact: _____

Emergency Phone: country code _+359_ city code _02_ number _794623_

Have you participated in the J-1 Work/Travel Program before?   ☐ Yes      ☒ No

Earliest Date You Can Start Working (month/day/year): _05/25/2006_

Latest Date You Can Work (month/day/year): _09/25/2006_

*Please note that actual Job Start and Job End dates will be determined by the employer, but the Program End Date on the DS-2019 will be 4 months from the Job Start Date or the end of the season, whichever is shorter.*

University Name: _University Science of Library and information technologies_

Field of Study: _Information technologies_

English Level: (Basic/Conversational/Fluent) _Conversational_

Please tell us why you want to participate in the Intrax Work/Travel Program: _I want to travel and see new people_

**Comments or Requests** *(work interest, location interest, interest in participating with a friend, etc.):*

_____

_____

_____

*Although we do our best to grant your requests, we cannot guarantee that we will be able to do so.*

How did you hear about Intrax Work/Travel? _by friend_

*Please make sure the information on this form is correct. If you submit incorrect information, and it invalidates the DS-2019 form, you may have to pay an additional $150 for a replacement DS-2019 form.*

Date: _06.12.2005_          Signature: _[signature]_

**Intrax Work/Travel**
2226 Bush Street, San Francisco, CA 94115 USA

# EXHIBIT
# M

**Department of State**                                                                 **Pt. 62**

## PART 62—EXCHANGE VISITOR PROGRAM

### Subpart A—General Provisions

Sec.
62.1    Purpose.
62.2    Definitions.
62.3    Sponsor eligibility.
62.4    Categories of participant eligibility.
62.5    Application procedure.
62.6    Designation.
62.7    Redesignation.
62.8    General program requirements.
62.9    General obligations of sponsors.
62.10   Program administration.
62.11   Duties of responsible officers.
62.12   Control of Forms DS–2019.
62.13   Notification requirements.
62.14   Insurance.
62.15   Annual reports.
62.16   Employment.
62.17   Fees and charges. [Reserved]

### Subpart B—Specific Program Provisions

62.20   Professors and research scholars.
62.21   Short-term scholars.
62.22   Trainees.
62.23   College and university students.
62.24   Teachers.
62.25   Secondary school students.
62.26   Specialists.
62.27   Alien physicians.
62.28   International visitors.
62.29   Government visitors.

§ 62.1

62.30  Camp counselors.
62.31  Au pairs.
62.32  Summer work travel.

### Subpart C—Status of Exchange Visitors

62.40  Termination of program participation.
62.41  Change of category.
62.42  Transfer of program.
62.43  Extension of program.
62.45  Reinstatement to valid program status.

### Subpart D—Sanctions

62.50  Sanctions.

### Subpart E—Termination and Revocation of Programs

62.60  Termination of designation.
62.61  Revocation.
62.62  Responsibilities of the sponsor upon termination or revocation.

### Subpart F—Student and Exchange Visitor Information System (SEVIS)

62.70  SEVIS reporting requirements.
62.71  Control and production of the electronic form DS–2019.
62.72  Staffing and support services.
62.73  Academic training.
62.74  Student employment.
62.75  Extension of program participation.
62.76  Transfer procedures.
62.77  Reinstatement.
62.78  Termination.
62.79  Sanctions.

### Subpart G [Reserved]

### Subpart H—Fees

62.90  Fees.
APPENDIX A TO PART 62—CERTIFICATION OF RESPONSIBLE OFFICERS AND SPONSORS
APPENDIX B TO PART 62—EXCHANGE VISITOR PROGRAM SERVICES, EXCHANGE VISITOR PROGRAM APPLICATION
APPENDIX C TO PART 62—UPDATE OF INFORMATION ON EXCHANGE VISITOR PROGRAM SPONSOR
APPENDIX D TO PART 62—ANNUAL REPORT— EXCHANGE VISITOR PROGRAM SERVICES (GC/V), DEPARTMENT OF STATE, WASHINGTON, DC 20547 (202–401–7964)
APPENDIX E TO PART 62—UNSKILLED OCCUPATIONS

AUTHORITY: 8 U.S.C. 1101(a)(15)(J), 1182, 1184, 1258; 22 U.S.C. 1431–1442, 2451–2460; Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. 105–277, 112 Stat. 2681 et seq.; Reorganization Plan No. 2 of 1977, 3 CFR, 1977 Comp. p. 200; E.O. 12048 of March 27, 1978; 3 CFR, 1978 Comp. p. 168.

SOURCE: 58 FR 15196, Mar. 19, 1993, unless otherwise noted. Redesignated at 64 FR 54539, Oct. 7, 1999.

EDITORIAL NOTE: Nomenclature changes to part 62 appear at 64 FR 54539, Oct. 7, 1999; 67 FR 17612, 17613, Apr. 11, 2002.

### Subpart A—General Provisions

§ 62.1  Purpose.

(a) The regulations set forth in this part implement the Mutual Educational and Cultural Exchange Act of 1961 (the "Act"), as amended, Public Law 87–256, 22 U.S.C. 2451, et seq. (1988). The purpose of the Act is to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchanges. Educational and cultural exchanges assist the Department of State in furthering the foreign policy objectives of the United States. These exchanges are defined by section 102 of the Act, 22 U.S.C. 2452, and section 101(a)(15)(J) of the Immigration and Nationality Act, as amended, 8 U.S.C. 1101(a)(15)(J).

(b) The Secretary of State of the Department of State facilitates activities specified in the Act, in part, by designating public and private entities to act as sponsors of the Exchange Visitor Program. Sponsors may act independently or with the assistance of third parties. The purpose of the Program is to provide foreign nationals with opportunities to participate in educational and cultural programs in the United States and return home to share their experiences, and to encourage Americans to participate in educational and cultural programs in other countries. Exchange visitors enter the United States on a J visa. The regulations set forth in this subpart are applicable to all sponsors.

§ 62.2  Definitions.

*Accompanying spouse and dependents* means the alien spouse and minor unmarried children of an exchange visitor who are accompanying or following to join the exchange visitor and who are seeking to enter or have entered the United States temporarily on a J–2 visa or are seeking to acquire or have acquired such status after admission. For the purpose of these regulations, a

**Department of State**                                                    **§ 62.2**

minor is a person under the age of 21 years old.

*Accredited educational institution* means any publicly or privately operated primary, secondary, or post-secondary institution of learning duly recognized and declared as such by the appropriate authority of the state in which such institution is located; provided, however, that in addition to any state recognition, all post-secondary institutions shall also be accredited by a nationally recognized accrediting agency or association as recognized by the United States Secretary of Education but shall not include any institution whose offered programs are primarily vocational in nature.

*Act* means the Mutual Educational and Cultural Exchange Act of 1961, as amended.

*Citizen of the United States* means:

(1) An individual who is a citizen of the United States or one of its territories or possessions, or who has been lawfully admitted for permanent residence, within the meaning of section 101(a)(20) of the Immigration and Nationality Act; or

(2) A general or limited partnership created or organized under the laws of the United States, or of any state, the District of Columbia, or a territory or possession of the United States, of which a majority of the partners are citizens of the United States; or

(3) A for-profit corporation, association, or other legal entity created or organized under the laws of the United States, or of any state, the District of Columbia, or a territory or possession of the United States, which:

(i) Has its principal place of business in the United States, and

(ii) Has its shares or voting interests publicly traded on a U.S. stock exchange; or, if its shares or voting interests are not publicly traded on a U.S. stock exchange, it shall nevertheless be deemed to be a citizen of the United States if a majority of its officers, Board of Directors, and its shareholders or holders of voting interests are citizens of the United States; or

(4) A non-profit corporation, association, or other legal entity created or organized under the laws of the United States, or any state, the District of Columbia, or territory or possession of the United States; and

(i) Which is qualified with the Internal Revenue Service as a tax-exempt organization pursuant to § 501(c) of the Internal Revenue Code; and

(ii) Which has its principal place of business in the United States; and

(iii) In which a majority of its officers and a majority of its Board of Directors or other like body vested with its management are citizens of the United States; or

(5) An accredited college, university, or other post-secondary educational institution created or organized under the laws of the United States, or of any state, including a county, municipality, or other political subdivision thereof, the District of Columbia, or a territory or possession of the United States; or

(6) An agency of the United States, or of any state or local government, the District of Columbia, or a territory or possession of the United States.

*Consortium* means a not-for-profit corporation or association formed by two or more accredited educational institutions for the purpose of sharing educational resources, conducting research, and/or developing new programs to enrich or expand the opportunities offered by its members. Entities that participate in a consortium are not barred from having a separate exchange visitor program designation of their own.

*Country of nationality or last legal residence* means either the country of which the exchange visitor was a national at the time status as an exchange visitor was acquired or the last foreign country in which the visitor had a legal permanent residence before acquiring status as an exchange visitor.

*Cross-cultural activity* is an activity designed to promote exposure and interchange between exchange visitors and Americans so as to increase their understanding of each other's society, culture, and institutions.

*Department* means the Department of State.

*Designation* means the written authorization given by the Department of State to an exchange visitor program

275

applicant to conduct an exchange visitor program as a sponsor.

*Employee* means an individual who provides services or labor for an employer for wages or other remuneration but does not mean independent contractors, as defined in 8 CFR 274a.1(j).

*Exchange visitor* means a foreign national who has been selected by a sponsor to participate in an exchange visitor program and who is seeking to enter or has entered the United States temporarily on a J-1 visa. The term does not include the visitor's immediate family.

*Exchange Visitor Program* means the international exchange program administered by the Department of State to implement the Act by means of educational and cultural programs. When "exchange visitor program" is set forth in lower case, it refers to the individual program of a sponsor which has been designated by the Department of State.

*Exchange Visitor Program Services* means the Department of State staff delegated authority by the Secretary of State to administer the Exchange Visitor Program in compliance with the regulations set forth in this part.

*Exchange visitor's government* means the government of the country of the exchange visitor's nationality or the country where the exchange visitor has a legal permanent residence.

*Financed directly* means financed in whole or in part by the United States Government or the exchange visitor's government with funds contributed directly to the exchange visitor in connection with his or her participation in an exchange visitor program.

*Financed indirectly* means:

(1) Financed by an international organization with funds contributed by either the United States or the exchange visitor's government for use in financing international educational and cultural exchanges, or

(2) Financed by an organization or institution with funds made available by either the United States or the exchange visitor's government for the purpose of furthering international educational and cultural exchange.

*Form DS-2019* means a Certificate of Eligibility, a controlled document of the Department of State.

*Full course of study* means enrollment in an academic program of classroom participation and study, and/or doctoral thesis research at an accredited educational institution as follows:

(1) Secondary school students shall satisfy the attendance and course requirements of the state in which the school is located;

(2) College and university students shall register for and complete a full course of study, as defined by the accredited educational institution in which the student is registered, unless exempted in accordance with § 62.23(e).

*Graduate medical education or training* means participation in a program in which the alien physician will receive graduate medical education or training, which generally consists of a residency or fellowship program involving health care services to patients, but does not include programs involving observation, consultation, teaching or research in which there is no or only incidental patient care. This program may consist of a medical specialty, a directly related medical subspecialty, or both.

*Home-country physical presence requirement* means the requirement that an exchange visitor who is within the purview of section 212(e) of the Immigration and Nationality Act (substantially quoted in § 62.44) must reside and be physically present in the country of nationality or last legal permanent residence for an aggregate of at least two years following departure from the United States before the exchange visitor is eligible to apply for an immigrant visa or permanent residence, a nonimmigrant H visa as a temporary worker or trainee, or a nonimmigrant L visa as an intracompany transferee, or a nonimmigrant H or L visa as the spouse or minor child of a person who is a temporary worker or trainee or an intracompany transferee.

*J visa* means a non-immigrant visa issued pursuant to 8 U.S.C. 1101(a)(15)(J). A J-1 visa is issued to the exchange visitor. J-2 visas are issued to the exchange visitor's immediate family.

*Non-specialty occupation* means any occupation that is not a specialty occupation (q.v.). Non-specialty occupations range from unskilled occupations

**Department of State**                                                           **§ 62.4**

up to and including skilled occupations requiring at least two years training or experience.

*On-the-job training* means an individual's observation of and participation in given tasks demonstrated by experienced workers for the purpose of acquiring competency in such tasks.

*Prescribed course of study* means a non-degree academic program with a specific educational objective. Such course of study may include intensive English language training, classroom instruction, research projects, and/or academic training to the extent permitted in § 62.23.

*Reciprocity* means the participation of a United States citizen in an educational and cultural program in a foreign country in exchange for the participation of a foreign national in the Exchange Visitor Program. Where used herein, "reciprocity" shall be interpreted broadly; unless otherwise specified, reciprocity does not require a one-for-one exchange or that exchange visitors be engaged in the same activity. For example, exchange visitors coming to the United States for training in American banking practices and Americans going abroad to teach foreign nationals public administration would be considered a reciprocal exchange, when arranged or facilitated by the same sponsor.

*Responsible officer* means the employee or officer of a designated sponsor who has been listed with the Department of State as assuming the responsibilities outlined in § 62.11. The designation of alternate responsible officers is permitted and encouraged. The responsible officer and alternate responsible officers must be citizens of the United States or persons who have been lawfully admitted for permanent residence.

*Secretary of State* means the Secretary of State of the Department of State or an employee of the Department of State acting under a delegation of authority from the Secretary of State.

*Specialty occupation* means an occupation that requires theoretical and practical application of a body of highly specialized knowledge to perform fully in the stated field of endeavor. It requires completion of a specified course of education, where attainment of such knowledge or its equivalent is the minimum competency requirement recognized in the particular field of endeavor in the United States. Some examples of specialized fields of knowledge are public and business administration, agricultural research, architecture, engineering, computer and physical sciences, accounting, and print and broadcast journalism.

*Sponsor* means a legal entity designated by the Secretary of State of the State Department to conduct an exchange visitor program.

*Third party* means an entity cooperating with or assisting the sponsor in the conduct of the sponsor's program. Sponsors are required to take all reasonable steps to ensure that third parties know and comply with all applicable provisions of these regulations. Third party actions in the course of providing such assistance or cooperation shall be imputed to the sponsor in evaluating the sponsor's compliance with these regulations.

### § 62.3  Sponsor eligibility.

(a) Entities eligible to apply for designation as a sponsor of an exchange visitor program are:

(1) United States local, state and federal government agencies;

(2) International agencies or organizations of which the United States is a member and which have an office in the United States; or

(3) Reputable organizations which are "citizens of the United States," as that term is defined in § 62.2.

(b) To be eligible for designation as a sponsor, an entity is required to:

(1) Demonstrate, to the Department of State's satisfaction, its ability to comply and remain in continual compliance with all provisions of part 62; and

(2) Meet at all times its financial obligations and responsibilities attendant to successful sponsorship of its exchange program.

### § 62.4  Categories of participant eligibility.

Sponsors may select foreign nationals to participate in their exchange visitor programs. Participation by foreign

§ 62.5                                          22 CFR Ch. I (4–1–04 Edition)

nationals in an exchange visitor program is limited to individuals who shall be engaged in the following activities in the United States:

(a) *Student.* An individual who is:

(1) Studying in the United States:

(i) Pursuing a full course of study at a secondary accredited educational institution;

(ii) Pursuing a full course of study leading to or culminating in the award of a U.S. degree from a post-secondary accredited educational institution; or

(iii) Engaged full-time in a prescribed course of study of up to 24 months duration conducted by:

(A) A post-secondary accredited educational institution; or

(B) An institute approved by or acceptable to the post-secondary accredited educational institution where the student is to be enrolled upon completion of the non-degree program;

(2) Engaged in academic training as permitted in § 62.23(f); or

(3) Engaged in English language training at:

(i) A post-secondary accredited educational institution, or

(ii) An institute approved by or acceptable to the post-secondary accredited educational institution where the college or university student is to be enrolled upon completion of the language training.

(b) *Short-term scholar.* A professor, research scholar, or person with similar education or accomplishments coming to the United States on a short-term visit for the purpose of lecturing, observing, consulting, training, or demonstrating special skills at research institutions, museums, libraries, post-secondary accredited educational institutions, or similar type of institutions.

(c) *Trainee.* An individual participating in a structured training program conducted by the selecting sponsor.

(d) *Teacher.* An individual teaching full-time in a primary or secondary accredited educational institution.

(e) *Professor.* An individual primarily teaching, lecturing, observing, or consulting a post-secondary accredited educational institutions, museums, libraries, or similar types of institutions. A professor may also conduct re-

search, unless disallowed by the sponsor.

(f) *Research scholar.* An individual primarily conducting research, observing, or consulting in connection with a research project at research institutions, corporate research facilities, museums, libraries, post-secondary accredited educational institutions, or similar types of institutions. The research scholar may also teach or lecture, unless disallowed by the sponsor.

(g) *Specialist.* An individual who is an expert in a field of specialized knowledge or skill coming to the United States for obeserving, consulting, or demonstrating special skills.

(h) *Other person of similar description.* An individual of description similar to those set forth in paragraphs (a) through (g) coming to the United States, in a program designated by the Department of State under this category, for the purpose of teaching, instructing or lecturing, study, observing, conducting research, consulting, demonstrating special skills, or receiving training. The programs designated by the Department of State in this category consist of:

(1) *International visitor.* An individual who is a recognized or potential leader, selected by the Department of State for consultation, observation, research, training, or demonstration of special skills in the United States.

(2) *Government visitor.* An individual who is an influential or distinguished person, selected by a U.S. federal, state, or local government agency for consultation, observation, training, or demonstration of special skills in the United States.

(3) *Camp counselor.* An individual selected to be a counselor in a summer camp in the United States who imparts skills to American campers and information about his or her country or culture.

§ 62.5  **Application procedure.**

(a) Any entity meeting the eligibility requirements set forth in § 62.3 may apply to the Department of State for designation as a sponsor. Such application shall be made on Form DS-3036 ("Exchange Visitor Program Application") and filed with the Department of

278

State's Exchange Visitor Program Services.

(b) The application shall set forth, in detail, the applicant's proposed exchange program activity and shall demonstrate its prospective ability to comply with Exchange Visitor Program regulations.

(c) The application shall be signed by the chief executive officer of the applicant and must also provide:

(1) Evidence of legal status as a corporation, partnership, or other legal entity (e.g., charter, proof of incorporation, partnership agreement, as applicable) and current certificate of good standing;

(2) Evidence of financial responsibility as set forth at § 62.9(e);

(3) Evidence of accreditation if the applicant is a post-secondary educational institution;

(4) Evidence of licensure, if required by local, state, or federal law, to carry out the activity for which it is be designated;

(5) Certification by the applicant (using the language set forth in appendix A) that it and its responsible officer and alternate responsible officers are citizens of the United States as defined at § 62.2; and

(6) Certification signed by the chief executive officer of the applicant that the responsible officer will be provided sufficient staff and resources to fulfill his/her duties and obligations on behalf of the sponsor.

(d) The Department of State may request any additional information and documentation which it deems necessary to evaluate the application.

### § 62.6 Designation.

(a) Upon a favorable determination that the proposed exchange program meets all statutory and regulatory requirements, the Department of State may, in its sole discretion, designate an entity meeting the eligibility requirements set forth in § 62.3 as an exchange visitor program sponsor.

(b) Designation shall confer upon the sponsor authority to engage in one or more activities specified in § 62.4. A sponsor shall not engage in activities not specifically authorized in its written designation.

(c) Designations are effective for a period of five years. In its discretion, the Department of State may designate programs, including experimental programs, for less than five years.

(d) Designations are not transferable or assignable.

### § 62.7 Redesignation.

(a) Upon expiration of a given designation term, a sponsor may seek redesignation for another five-year term.

(b) To apply for redesignation, a sponsor shall advise the Exchange Visitor Program Services by letter or by so indicating on the annual report.

(c) Request for redesignation shall be evaluated according to the criteria set forth at § 62.6(a) taking into account the sponsor's annual reports and other documents reflecting its record as an exchange visitor program sponsor.

(d) A sponsor seeking redesignation should notify the Department of State, as set forth in (b) of this section, no less than four months prior to the expiration date of its designation. A sponsor seeking redesignation may continue to operate its program(s) until such time as the Department of State notifies it of a decision to amend or terminate its designation.

### § 62.8 General program requirements.

(a) *Size of program.* Sponsors, other than Federal government agencies, shall have no less than five exchange visitors per calendar year. The Department of State may in its discretion and for good cause shown reduce this requirement.

(b) *Minimum duration of program.* Sponsors, other than federal government agencies, shall provide each exchange visitor, except short-term scholars, with a minimum period of participation in the United States of three weeks.

(c) *Reciprocity.* In the conduct of their exchange programs, sponsors shall make a good faith effort to achieve the fullest possible reciprocity in the exchange of persons.

(d) *Cross-cultural activities.* Sponsors shall:

(1) Offer or make available to exchange visitors a variety or appropriate cross-cultural activities. The extent and types of the cross-cultural activities shall be determined by the needs and interests of the particular category of exchange visitor. Sponsors will be responsible to determine the appropriate type and number of cross-cultural programs for their exchange visitors. The Department of State encourages sponsors to give their exchange visitors the broadest exposure to American society, culture and institutions; and

(2) Encourage exchange visitors to voluntarily participate in activities which are for the purpose of sharing the language, culture, or history of their home country with Americans, provided such activities do not delay the completion of the exchange visitors' programs.

## § 62.9 General obligations of sponsors.

(a) *Adherence to Department of State regulations.* Sponsors are required to adhere to all regulations set forth in this part.

(b) *Legal status.* Sponsors shall maintain legal status. A change in a sponsor's legal status (e.g. partnership to corporation) shall require application for designation of the new legal entity.

(c) *Accreditation and licensure.* Sponsors shall remain in compliance with all local, state, federal, and professional requirements necessary to carry out the activity for which they are designated, including accreditation and licensure, if applicable.

(d) *Representations and disclosures.* Sponsors shall:

(1) Provide accurate and complete information, to the extent lawfully permitted, to the Department of State regarding their exchange visitor programs and exchange visitors;

(2) Provide only accurate information to the public when advertising their exchange visitor programs or responding to public inquiries;

(3) Provide informational materials to prospective exchange visitors which clearly explain the activities, costs, conditions, and restrictions of the program;

(4) Not use program numbers on any advertising materials or publications intended for general circulation; and

(5) Not represent that any program is endorsed, sponsored, or supported by the Department of State or the United States Government, except for United States Government sponsors or exchange visitor programs financed directly by the United States Government to promote international educational exchanges. However, sponsors may represent that they are designated by the Department of State as a sponsor of an exchange visitor program.

(e) *Financial responsibility.* (1) Sponsors shall maintain the financial capability to meet at all times their financial obligations and responsibilities attendant to successful sponsorship of their exchange visitor programs.

(2) The Department of State may require non-government sponsors to provide evidence satisfactory to the Department of State that funds necessary to fulfill all obligations and responsibilities attendant to sponsorship of exchange visitors are readily available and in the sponsor's control, including such supplementary or explanatory financial information as the Department of State may deem appropriate such as, for example, audited financial statements.

(3) The Department of State may require any non-government sponsor to secure a payment bond in favor of the Department of State guaranteeing all financial obligations arising from the sponsorship of exchange visitors.

(f) *Staffing and support services.* Sponsors shall ensure:

(1) Adequate staffing and sufficient support services to administer their exchange visitor programs; and

(2) That their employees, officers, agents, and third parties involved in the administration of their exchange visitor programs are adequately qualified, appropriately trained, and comply with the Exchange Visitor Program regulations.

(g) *Appointment of responsible officer.* (1) The sponsor shall appoint a responsible officer and such alternate responsible officers as may be necessary to perform the duties set forth at § 62.11.

(2) The responsible officer and alternate responsible officers shall be employees or officers of the sponsor. The Department of State may, however, in its discretion, authorize the appointment of an individual who is not an employee or officer to serve as an alternate responsible officer, when approved by the sponsor.

(3) The Department of State may limit the number of alternate responsible officers appointed by the sponsor.

## § 62.10  Program administration.

Sponsors are responsible for the effective administration of their exchange visitor programs. These responsibilities include:

(a) *Selection of exchange visitors.* Sponsors shall provide a system to screen and select prospective exchange visitors to ensure that they are eligible for program participation, and that:

(1) The program is suitable to the exchange visitor's background, needs, and experience; and

(2) The exchange visitor possesses sufficient proficiency in the English language to participate in his or her program.

(b) *Pre-arrival information.* Sponsors shall provide exchange visitors with pre-arrival materials including, but not limited to, information on:

(1) The purpose of the Exchange Visitor Program;

(2) Home-country physical presence requirement;

(3) Travel and entry into the United States;

(4) Housing;

(5) Fees payable to the sponsor;

(6) Other costs that the exchange visitor will likely incur (e.g., living expenses) while in the United States;

(7) Health care and insurance; and

(8) Other information which will assist exchange visitors to prepare for their stay in the United States.

(c) *Orientation.* Sponsors shall offer appropriate orientation for all exchange visitors. Sponsors are encouraged to provide orientation for the exchange visitor's immediate family, especially those who are expected to be in the United States for more than one year. Orientation shall include, but not be limited to, information concerning:

(1) Life and customs in the United States;

(2) Local community resources (e.g., public transportation, medical centers, schools, libraries, recreation centers, and banks), to the extent possible;

(3) Available health care, emergency assistance, and insurance coverage;

(4) A description of the program in which the exchange visitor is participating;

(5) Rules that the exchange visitors are required to follow under the sponsor's program;

(6) Address of the sponsor and the name and telephone number of the responsible officer; and

(7) Address and telephone number of the Exchange Visitor Program Services of the Department of State and a copy of the Exchange Visitor Program brochure outlining the regulations relevant to the exchange visitors.

(d) *Form DS–2019.* Sponsors shall ensure that only the responsible officer or alternate responsible officers issue Forms DS–2019;

(e) *Monitoring of exchange visitors.* Sponsors shall monitor, through employees, officers, agents, or third parties, the exchange visitors participating in their programs. Sponsors shall:

(1) Ensure that the activity in which the exchange visitor is engaged is consistent with the category and activity listed on the exchange visitor's Form DS–2019;

(2) Monitor the progress and welfare of the exchange visitor to the extent appropriate for the category; and

(3) Require the exchange visitor to keep the sponsor apprised of his or her address and telephone number, and maintain such information.

(f) *Requests by the Department of State.* Sponsors shall, to the extent lawfully permitted, furnish to the Department of State within a reasonable time all information, reports, documents, books, files, and other records requested by the Department of State on all matters related to their exchange visitor programs.

(g) *Inquiries and investigations.* Sponsors shall cooperate with any inquiry or investigation that may be undertaken by the Department of State.

(h) *Retention of records.* Sponsors shall retain all records related to their exchange visitor program and exchange visitors for a minimum of three years.

## § 62.11  Duties of responsible officers.

Responsible officers shall train and supervise alternate responsible officers. Responsible officers and alternate responsible officers shall:

(a) *Knowledge of regulations and codebook.* Be thoroughly familiar with the Exchange Visitor Program regulations and the Department of State's current Codebook and Instructions for Responsible Officers.

(b) *Advisement and assistance.* Ensure that the exchange visitor obtains sufficient advice and assistance to facilitate the successful completion of the exchange visitor's program.

(c) *Communications.* Conduct the official communications relating to the exchange visitor program with the Department of State, the United States Immigration and Naturalization Service, or the United States Department of State. Reference to the sponsor's program number shall be made on any correspondence with the Department of State.

(d) *Custody of the Form DS-2019.* Act as custodian for the control, issuance, and distribution of Forms DS-2019 as set forth in § 62.12.

## § 62.12  Control of Forms DS-2019.

Forms DS-2019 shall be used only for authorized purposes. To maintain adequate control of Forms DS-2019, responsible officers or alternate responsible officers shall:

(a) *Requests.* Submit written requests to the Department of State for a one-year supply of Forms DS-2019, and allow four to six weeks for the distribution of these forms. The Department of State has the discretion to determine the number of Forms DS-2019 to be sent to a sponsor. The Department of State will take into consideration the current size of the program and the projected expansion of the program in the coming 12 months. If requested, the Department of State will consult with the responsible officer prior to determining the number of Forms DS-2019 to be sent to the sponsor. Additional

forms may be requested later in the year if needed by the sponsor.

(b) *Verification.* Prior to issuing Form DS-2019, verify that the exchange visitor:

(1) Is eligible, qualified, and accepted for the program in which he or she will be participating;

(2) Possesses adequate financial resources to complete his or her program; and

(3) Possesses adequate financial resources to support any accompanying dependents.

(c) *Issuance of Form DS-2019.* Issue the Form DS-2019 only so as to:

(1) Facilitate the entry of a new participant of the exchange visitor program;

(2) Extend the stay of an exchange visitor;

(3) Facilitate program transfer;

(4) Replace a lost or stolen Form DS-2019;

(5) Facilitate entry of an exchange visitor's alien spouse or minor unmarried children into the United States separately;

(6) Facilitate re-entry of an exchange visitor who is traveling outside the United States during the program;

(7) Facilitate a change of category when permitted by the Department of State; and

(8) Update information when significant changes take place in regard to the exchange visitor's program, such as a substantial change in funding or in the location where the program will take place.

(d) *Safeguards.* (1) Store Forms DS-2019 securely to prevent unauthorized use;

(2) Prohibit transfer of any blank Form DS-2019 to another sponsor or other person unless authorized in writing (by letter or facsimile) by the Department of State to do so;

(3) Notify the Department of State promptly by telephone (confirmed promptly in writing) or facsimile of the document number of any completed Form DS-2019 that is presumed lost or stolen or any blank Form DS-2019 lost or stolen; and

(4) Forward the completed Form DS-2019 only to an exchange visitor, either directly or via an employee, officer, or

**Department of State**  §62.14

agent of the sponsor, or to an individual designated by the exchange visitor.

(e) *Accounting.* (1) Maintain a record of all Forms DS–2019 received and/or issued by the sponsor;

(2) Destroy damaged and unusable Form DS–2019 on the sponsor's premises after making a record of such forms (e.g. forms with errors or forms damaged by a printer); and

(3) Request exchange visitors and prospective exchange visitors to return any unused Form DS–2019 sent to them and make a record of Forms DS–2019 which are returned to the sponsor and destroy them on the sponsor's premises.

**§62.13  Notification requirements.**

(a) *Change of circumstances.* Sponsors shall notify the Department of State promptly in writing of any of the following circumstances:

(1) Change of its address, telephone, or facsimile number;

(2) Change in the composition of the sponsoring organization which affects its citizenship as defined by §62.2;

(3) Change of the responsible officer or alternate responsible officers;

(4) A major change of ownership or control of the sponsor's organization;

(5) Change in financial circumstances which may render the sponsor unable to comply with its obligations as set forth in §512.9(e);

(6) Loss of licensure or accreditation;

(7) Loss or theft of Forms DS–2019 as specified at §62.12(d)(3);

(8) Litigation related to the sponsor's exchange visitor program, when the sponsor is a party; and

(9) Termination of its exchange visitor program.

(b) *Serious problem or controversy.* Sponsors shall inform the Department of State promptly by telephone (confirmed promptly in writing) or facsimile of any serious problem or controversy which could be expected to bring the Department of State or the sponsor's exchange visitor program into notoriety or disrepute.

(c) *Program status of exchange visitor.* Sponsors shall notify the Department of State in writing when:

(1) The exchange visitor has withdrawn from or completed a program

thirty (30) or more days prior to the ending date on his or her Form DS–2019; or

(2) The exchange visitor has been terminated from his or her program.

**§62.14  Insurance.**

(a) Sponsors shall require each exchange visitor to have insurance in effect which covers the exchange visitor for sickness or accident during the period of time that an exchange visitor participates in the sponsor's exchange visitor program. Minimum coverage shall provide:

(1) Medical benefits of at least $50,000 per accident or illness;

(2) Repatriation of remains in the amount of $7,500;

(3) Expenses associated with the medical evacuation of the exchange visitor to his or her home country in the amount of $10,000; and

(4) A deductible not to exceed $500 per accident or illness.

(b) An insurance policy secured to fulfill the requirements of this section:

(1) May require a waiting period for pre-existing conditions which is reasonable as determined by current industry standards;

(2) May include provision for co-insurance under the terms of which the exchange visitor may be required to pay up to 25% of the covered benefits per accident or illness; and

(3) Shall not unreasonably exclude coverage for perils inherent to the activities of the exchange program in which the exchange visitor participates.

(c) Any policy, plan, or contract secured to fill the above requirements must, at a minimum, be:

(1) Underwritten by an insurance corporation having an A.M. Best rating of "A–" or above, an Insurance Solvency International, Ltd. (ISI) rating of "A–i" or above, a Standard & Poor's Claims-paying Ability rating of "A–" or above, a Weiss Research, Inc. rating of B+ or above, or such other rating as the Department of State may from time to time specify; or

(2) Backed by the full faith and credit of the government of the exchange visitor's home country; or

(3) Part of a health benefits program offered on a group basis to employees

283

§ 62.15                                22 CFR Ch. I (4–1–04 Edition)

or enrolled students by a designated sponsor; or

(4) Offered through or underwritten by a federally qualified Health Maintenance Organization (HMO) or eligible Competitive Medical Plan (CMP) as determined by the Health Care Financing Administration of the U.S. Department of Health and Human Services.

(d) Federal, state or local government agencies, state colleges and universities, and public community colleges may, if permitted by law, self-insure any or all of the above-required insurance coverage.

(e) At the request of a non-governmental sponsor of an exchange visitor program, and upon a showing that such sponsor has funds readily available and under its control sufficient to meet the requirements of this section, the Department of State may permit the sponsor to self-insure or to accept full financial responsibility for such requirements.

(f) The Department of State, in its sole discretion, may condition its approval of self-insurance or the acceptance of full financial responsibility by the non-governmental sponsor by requiring such sponsor to secure a payment bond in favor of the Department of State guaranteeing the sponsor's obligations hereunder.

(g) An accompanying spouse or dependent of an exchange visitor is required to be covered by insurance in the amounts set forth in paragraph (a) of this section. Sponsors shall inform exchange visitors of this requirement, in writing, in advance of the exchange visitor's arrival in the United States.

(h) An exchange visitor who willfully fails to maintain the insurance coverage set forth above while a participant in an exchange visitor program or who makes a material misrepresentation to the sponsor concerning such coverage shall be deemed to be in violation of these regulations and shall be subject to termination as a participant.

(i) A sponsor shall terminate an exchange visitor's participation in its program if the sponsor determines that the exchange visitor or any accompanying spouse or dependent willfully

fails to remain in compliance with this section.

[58 FR 15196, Mar. 19, 1993, as amended at 59 FR 34761, July 7, 1994. Redesignated at 64 FR 54539, Oct. 7, 1999]

§ 62.15  Annual reports.

Sponsors shall submit an annual report to the Department of State. An illustrative form of such report may be found at Appendix D to this part. Such report shall be filed on an academic or calendar year basis, as directed by the Department of State, and shall contain the following:

(a) *Program report and evaluation.* A brief summary of the activities in which exchange visitors were engaged, including an evaluation of program effectiveness;

(b) *Reciprocity.* A description of the nature and extent of reciprocity occurring in the sponsor's exchange visitor program during the reporting year;

(c) *Cross-cultural activities.* A summary of the cross-cultural activities provided for its exchange visitors during the reporting year;

(d) *Proof of insurance.* Certification of compliance with insurance coverage requirements set forth in § 62.14.

(e) *Form DS–2019 usage.* A report of Form DS–2019 usage during the reporting year setting forth the following information:

(1) The total number of blank Forms DS–2019 received from the Department of State during the reporting year;

(2) The total number of Forms DS–2019 voided or destroyed by the sponsor during the reporting year and the document numbers of such forms;

(3) The total number of Forms DS–2019 issued to potential exchange visitors that were returned to the sponsor or not used for entry into the United States; and

(4) The total number and document identification number sequence of all blank Forms DS–2019 in the possession of the sponsor on the date of the report.

(f) *Program participation.* A numerical count, by category, of all exchange visitors participating in the sponsor's program for the reporting year.

**Department of State**

**§ 62.20**

(g) *Redesignation*. Sponsors may indicate their desire for redesignation, pursuant to § 62.7, by marking the appropriate box on their annual report.

**§ 62.16  Employment.**

(a) An exchange visitor may receive compensation from the sponsor or the sponsor's appropriate designee for employment when such activities are part of the exchange visitor's program.

(b) An exchange visitor who engages in unauthorized employment shall be deemed to be in violation of his or her program status and is subject to termination as a participant in an exchange visitor program.

(c) The acceptance of employment by an accompanying spouse or minor child of an exchange visitor is governed by Immigration and Naturalization Service regulations.

**§ 62.17  Fees and charges. [Reserved]**

## Subpart B—Specific Program Provisions

**§ 62.20  Professors and research scholars.**

(a) *Introduction*. These regulations govern professors and research scholars, except:

(i) Alien physicians in graduate medical education or training, who are governed by regulations set forth at § 62.27; and

(2) Short-term scholars, who are governed by regulations set forth at § 62.21.

(b) *Purpose*. A primary purpose of the Exchange Visitor Program is to foster the exchange of ideas between Americans and foreign nationals and to stimulate international collaborative teaching and research efforts. The exchange of professors and research scholars promotes interchange, mutual enrichment, and linkages between research and educational institutions in the United States and foreign countries. It does so by providing foreign professors and research scholars the opportunity to engage in research, teaching, and lecturing with their American colleagues, to participate actively in cross-cultural activities with Americans, and ultimately to share with their fellow citizens their experiences and increased knowledge about

the United States and their substantive fields.

(c) *Designation*. The Department of State may, in its sole discretion, designate *bona fide* programs which offer foreign nationals the opportunity to engage in research, teaching, lecturing, observing, or consulting at research institutions, corporate research facilities, museums, libraries, post-secondary accredited educational institutions, or similar types of institutions in the United States.

(d) *Visitor eligibility*. An individual may be selected for participation in the Exchange Visitor Program as a professor or research scholar subject to the following conditions:

(i) The participant shall not be a candidate for tenure track position; and

(ii) The participant has not been physically present in the United States as a nonimmigrant pursuant to the provisions of 8 U.S.C. 1101(a)(15)(J) for all or part of the twelve month period immediately preceding the date of program commencement set forth on his or her Form DS–2019, unless:

(A) The participant is transferring to the sponsor's program as provided in § 62.42; or

(B) The participant's presence in the United States was of less than six months duration; or

(C) The participant's presence in the United States was pursuant to a Short-term scholar exchange activity as authorized by § 62.21.

(e) *Insurance of Form DS–2019*. The Form DS–2019 shall be issued only after the professor or research scholar has been accepted by the institution(s) where he or she will participate in an exchange visitor program.

(f) *Location of the exchange*. Professors or research scholars shall conduct their exchange activity at the location(s) listed on the Form DS–2019, which could be either at the location of the exchange visitor sponsor or the site of a third party facilitating the exchange. An exchange visitor may also engage in activities at locations not listed on the Form DS–2019 if such activities constitute occasional lectures or consultations as permitted by paragraph (g) of this section.

(g) *Occasional lectures or consultations*. Professors and research scholars may