IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIROSLAV IVANOV, et al.<br><br>               **Plaintiffs**<br>    v.<br><br>SUNSET POOLS MANAGEMENT INC., et al.<br><br>              **Defendants** | No. 07-CV-00410 (RJL) |

**PLAINTIFFS' RESPONSE MEMORANDUM
IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Civil Rule 7, Plaintiffs, by their undersigned counsel, hereby submit their brief in response to the motions for summary judgement filed by Defendant Sunset Pools Management, Inc. ("Sunset") and Defendant International Travel and Exchange, Inc. ("INTRAX"). For the reasons set forth below, as well as those discussed in Plaintiffs' previously filed brief, Defendants' motions for summary judgment should be denied. Moreover, Plaintiffs submit that because Sunset and INTRAX are both employers as that term is defined under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 (d), Plaintiffs are entitled to a grant of summary judgment in their favor. Therefore, this Court should issue an order granting the relief requested by Plaintiffs and hold Defendants jointly and severally liable for their failure to pay Plaintiffs and other similarly situated individuals appropriate overtime pay as required by the FLSA.[1]

---

[1] Consistent with their opening brief, Plaintiffs focus this submission solely on the relief to which they are entitled under the FLSA.

In their summary judgment submissions, both Defendants attempt to avoid liability under the FLSA by invoking one of the statutory exemptions to liability (in the case of Sunset) or by seeking to distance themselves from the employment relationship (in the case of INTRAX). Both of these efforts fail.

In its memorandum in support of summary judgment, Sunset claims that it should not be liable under the FLSA because it satisfies the statute's "recreation/amusement" exemption based upon its annual revenues and when those annual revenues are earned. See Sunset's Memorandum in Support of Motion for Summary Judgment, at 5-10. This position, however, is based upon a fundamental and fatal flaw.

In order to qualify for either prong of the FLSA's "recreation/amusement" exemption set forth in Section 213 of the statute, 29 U.S.C. § 213 (a)(3), a business must first establish that it is, in fact, an amusement or recreational establishment. Sunset Pools' argument is based upon an assumption that its business of operating pools for various hotel clients transforms it into an amusement or recreational establishment. Sunset is wrong. Indeed, this precise issue was conclusively resolved long ago by the Department of Labor on nearly the exact facts as presented in this case. See June 8, 1972 DOL Opinion Letter, WH-166, 1972 WL 34909.

The June 8, 1972 Opinion Letter involved companies which were "engaged in the business of operating swimming facilities . . . under contract with owners or managers of apartment buildings and motels." These pool companies "agree[d] to provide all the services necessary to operate the pool and [undertook] the operation on a fixed fee basis."

These pool companies asked the Department of Labor, Wage and Hour Division, whether the recreation/amusement exemption set forth in Section 13 of the FLSA could be applied to

their employees. The agency determined that the exemption was not applicable. Specifically, the opinion letter stated that "[i]n order for the exemption to be applicable the employees **must be employed by an establishment which is an amusement or recreational establishment.**" (emphasis supplied). The opinion letter then proceeded by stating that "[i]t is reasonably clear that the primary function of pools at apartment buildings and motels is to act as attractions to obtain tenants and guests for the two operations. Thus, they are an integral part of the apartment building and motel and **not separate amusement or recreation establishments**." (emphasis supplied).

      Furthermore, the opinion letter also noted that

> the use of such pools is limited to the tenants of the apartment buildings and their guests and guests of the motel. This further emphasizes that the pools are an integral part of the apartment building establishment or the motel establishment since their operation is so closely related to the operation of the entire complex at which the pool is located.

The opinion letter concluded by explaining that the pool servicing companies are not entitled to the recreation/amusement exemption because

> A recreation or amusement establishment is identifiable as a separate physical place of business. The employees of the [pool management] companies . . . are employed by an independent contractor providing a service to the particular apartment building or motel rather than by an amusement or recreational establishment as contemplated by Section 13 (a)(3) of the Act.

      Plaintiffs submit that there is absolutely no factual difference between the present case and the case considered by the DOL in its June 8, 1972 Opinion Letter. Indeed, there is no dispute that Defendant Sunset operates a business that services and maintains swimming pools for hotels and other institutions throughout the metropolitan Washington, D.C. area. See

Complaint, at ¶ 1, Sunset Answer, at ¶ 1.  See also Affidavits of Veselin Ivanov and Miroslav Ivanov, attached hereto as Exhibit 1 (establishing that both Plaintiffs worked at indoor hotel swimming pools in and around the Washington, D.C. area).  Accordingly, Sunset's effort to invoke the "recreation/amusement" exemption under the FLSA must fail.  Because the business operated by Sunset is not viewed as a legitimate recreation or amusement establishment under the FLSA, it is not relevant whether Sunset can pass the revenue test set forth as a subpart of the "recreation/amusement" exemption.  Accordingly, Sunset should be found liable under the FLSA for its failure to properly compensate Plaintiffs, and all similarly situated individuals.  Finally, because of Sunset's blatant disregard for the controlling authority under the FLSA, this Court should also determine that Sunset's refusal to provide overtime was not grounded in good faith and that Sunset had no objectively "reasonable grounds" for believing that its refusal to pay overtime did not violate the FLSA.

     The efforts by Defendant INTRAX to absolve itself of FLSA liability also must fail.  INTRAX argues that it does not meet the statutory definition of "employer" under the FLSA and thus, should not be held responsible for overtime compensation owed to Plaintiffs.  See Defendant International Training and Exchange, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment ("INTRAX Memorandum"), at 5-8.  Based upon the documents INTRAX attaches to its summary judgment submission, however, it is clear that, not only did this corporation play an integral role in recruiting, interviewing, hiring and placing Plaintiffs in their positions as hotel lifeguards, but it also established the terms and conditions of Plaintiffs' employment, including the wages that Plaintiffs were to be paid.  In addition, INTRAX specifically reserved its right to participate in the ongoing employment relationship (including

undertaking certain duties that traditionally fall within the realm of an employer). Consequently, when all these factors are considered, the totality of circumstances strongly supports a finding that INTRAX satisfies the statutory definition of "employer" under the FLSA.

Before addressing the particular roles played by INTRAX in Plaintiffs' employment, it is necessary to briefly examine the statutory definition of "employer" under the FLSA. As explained in Plaintiffs' opening brief, the FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." See 29 U.S.C. § 203(d).

Courts have consistently recognized the expansive nature of this statutory definition, and have cautioned against a narrow interpretation of this term that would be inconsistent with the broad remedial purpose of the FLSA. In Falk v Brennan, 414 U.S. 190, 195 (1973), the Supreme Court recognized the "expansiveness" of the FLSA's definition of "employer." More recently the Court reiterated its direction that the statutory terms of the FLSA are to be expansively defined with "striking breath." See Nationwide Mutual Ins. Co. V. Darden, 503 U.S. 318, 326 (1992). Appellate courts have embraced the expansive interpretation of the FLSA endorsed by the Supreme Court. For example, in Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984), the court stated that the FLSA, in accordance with its remedial purpose, has been written in the "broadest possible terms."

Indeed, in Zheng v. Liberty Apparel Co., 355 F.3d 2003 (2d Cir. 2003) - the case primarily relied upon by Defendant INTRAX - the appellate court was quick to point out that the

enumerated factors previously relied on by that court and other courts of appeal when exploring the employment relationship under the FLSA should not be viewed as the "exclusive touchstone of the joint employment inquiry under the FLSA." Zheng, 355 F.3d at 71. Rather these factors may assist a court in determining whether the "totality of circumstances" of a particular case support a finding that an entity is an "employer" under the FLSA. Id. at 76.

Here, the "totality of circumstances" concerning the extent of INTRAX's involvement in nearly every aspect of Plaintiffs' employment relationship leads to a conclusion that INTRAX was an "employer" of Plaintiffs under the FLSA. First, there is no dispute that INTRAX recruited, interviewed and placed Plaintiffs in their positions with Sunset Pools. See Defendant International Training and Exchange, Inc.'s Undisputed Statement of Facts in Support of its Motion for Summary Judgment ("INTRAX SOF"), at ¶ 1, INTRAX Answer at ¶¶ 6-8, 12. Indeed, there is no evidence in the record that Defendant Sunset played any role in the hiring of Plaintiffs.

In addition to the recruitment, hiring and placement of Plaintiffs - all of which are traditional functions of an employer - INTRAX also set the wage rate to be paid by Plaintiffs and established the terms and conditions of employment under which Plaintiffs would be required to work. As explained by INTRAX in its summary judgment papers, Sunset and INTRAX entered into a contract characterized as the "Premium Host Company Agreement." See INTRAX SOF, at ¶ 7, and Exhibit B attached to INTRAX Memorandum. In this contract, each party agreed to undertaken certain obligations. Thus, INTRAX agreed to recruit employees for Sunset and, in turn, Sunset agreed to "provide employment consistent with the employment terms outlined in the job description Documents/Placement Confirmation Form." See INTRAX SOF, at ¶¶ 7 and

Exhibit F attached to INTRAX Memorandum.

INTRAX explains that the Document/Placement Confirmation Form "which Sunset Pools agreed to adhere to in the [Premium Host Company] Agreement provides the job description, level of English required, start and end date, estimated average hour per week, rates of pay, required skills and expected schedule." See INTRAX SOF, at ¶ 12. There is no dispute that the Placement Confirmation Form referenced in the Agreement between Sunset and INTRAX and attached by INTRAX as Exhibit F of its summary judgment submission is an INTRAX-created document. See INTRAX SOF, at ¶ 11 and INTRAX Memorandum, at 3-4. Indeed, at the bottom of each page of this document appears INTRAX's name and contact information. Accordingly, through its Placement Confirmation Form, INTRAX set the terms and conditions of employment to which Plaintiffs would be subject and Sunset agreed to abide by these terms and conditions. Plaintiffs submit that there is arguably no stronger indicia of "employer" status than the setting of the terms and conditions of an individual's employment.

But there is more. The documents submitted by INTRAX conclusively establish that the parties envisioned INTRAX remaining actively involved in Plaintiffs' employment relationship and, in fact, playing a role traditionally reserved for an "employer." For example, the Agreement between Sunset and INTRAX provides that INTRAX would be responsible for handling paperwork that employees were required to complete. See Exhibit B attached to INTRAX Memorandum, at ¶ C. In addition, the parties also contemplated INTRAX being involved in internal employment disputes. Id. at ¶¶ F, G. INTRAX also agreed to "make a good faith effort to ensure that the participants will arrive on time to commence their employment, abide by the terms their employment and perform their assigned tasks in a satisfactory manner." See Exhibit

7

B attached to INTRAX Memorandum, at ¶ I. All of above duties and responsibilities of INTRAX are traditionally and uniformly performed by an employer. In particular, the fact that INTRAX was responsible for ensuring that the Plaintiffs performed their jobs and did so in a satisfactory manner is an overwhelming indication of "employer" status.

When the above facts are considered in the context of the expansive definition of "employer" under the FLSA, there is no doubt that the extensive and ongoing involvement by INTRAX in Plaintiffs' employment renders Defendant an "employer" under the statute. As such, INTRAX, like Sunset, should be held jointly and severally liable for payments owed to Plaintiffs, and similarly situated individuals, under the FLSA. Moreover, because of the extensive and ongoing involvement of INTRAX with Plaintiffs employment, this Court should also determine that INTRAX's failure to abide by the provisions of the FLSA was not grounded in good faith and that INTRAX had no objectively "reasonable grounds" for believing that it was not covered by the statutory provisions of the FLSA.

## CONCLUSION

For the reasons discussed above, as well as those set forth in their initial brief, Plaintiffs respectfully request that this Court deny the motions for summary judgment filed by Defendants and grant the motion for summary judgment filed by Plaintiffs.

Respectfully submitted,

_____/s/_____
Mark J. Murphy, Bar No. 453060
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, DC 20036
(202) 783-0010
(202) 783-6088 - fax

Counsel for Plaintiffs

Date: February 26, 2008

# EXHIBIT 1

Affidavit

I, the undersigned Miroslav Ivanov, state that during my tenure as a lifeguard originally retained to work in the United States by Intrax and later on subcontracted to Sunset Pools, I have worked at number of swimming facilities. Part of the time I was asigned to indoor swiming pool which was part of Embassy Suites/BWI hotel. To the best of my knowledge the above indoor swimming pool is operated year around by its respective owners. The pool was part of the hotel, and it was open year round. The pool was staffed regularly by foreign students. I as well as those students I replaced, to the best of my knowledge were not simply summer help but merely replacements for a previous rotation of students, and when I left, I was also then replaced by other students.
I atest that the above is the truth and nothing but the truth.

Respectfully: Miroslav Ivanov                                    Date: 02/24/2008

## Affidavit

I, the undersigned Veselin Ivanov, state that during my tenure as a lifeguard originally retained to work in the United States by Intrax and later on subcontracted to Sunset Pools, I have worked at number of swimming facilities. Part of the time I was assigned to indoor swimming pools which was part of Baltimore Marriott Waterfront Hotel- 700 Aliceanna Street, Baltimore, Maryland 21202 USA. On other occasions I have worked at The Marriott Greenbelt Hotel-6400 Ivy Lane Greenbelt, Maryland 20770 USA and Baltimore Marriott Inner Harbor Hotel - 110 South Eutaw Street, Baltimore, Maryland 21201 USA which are indoor swimming pools as well. To the best of my knowledge the above indoor swimming pools are operated year around by its respective owners. The pools are part of the hotels, and they are open year round. The pools are staffed regularly by foreign students. I as well as those students I replaced, to the best of my knowledge were not simply summer help but merely replacements for a previous rotation of students, and when I left, I was also then replaced by other students.

I atest that the above is the truth and nothing but the truth.

Respectfully: Veselin Ivanov                                  Date: 02/24/2008