UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIROSLAV IVANOV, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civ. Action No. 07cv410 (RJL) |
| SUNSET POOLS MANAGEMENT ) | |
| INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

<u>MEMORANDUM OPINION</u>
(July 28, 2008)[#29, #30, #31]

Miroslav and Veselin Ivanov ("plaintiffs" or "Ivanovs") have sued Sunset Pools Management, Inc. ("Sunset") and International Training and Exchange, Incorporated ("Intrax") ("defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(2)(C), and common law claims of fraud and civil conspiracy.[1] Before the Court are the parties' motions for summary judgment. After consideration of the motions, the relevant law, and the entire record herein, the Court GRANTS defendants' motions for summary judgment and DENIES plaintiffs' motion for summary judgment.

I. BACKGROUND

In 2006, plaintiffs, both Bulgarian citizens, traveled to the United States to work as lifeguards for Sunset. They were recruited by Intrax, an international staffing firm that

---

[1] The Court previously dismissed plaintiffs' claims against Bita and Arash Naderi (the owners of Sunset). *See Ivanov v. Sunset Pools Mgmt., Inc.*, 524 F. Supp. 2d 13 (D.D.C. 2007).

1

recruits foreign citizens for "work-travel" opportunities in the United States. Meyers Decl. ¶ 2[2]; Pls. Stmt. of Material Facts ("Pls. Stmt.") ¶ 2. Among Intrax's clients is Sunset, a pool management company that operates and maintains swimming pools at hotels and condominiums in the Washington, D.C. area. Kiani Decl. ¶ 2; Pls. Stmt. ¶ 1.

In its capacity as a Sponsor for the U.S. Department of State's Exchange Visitor Program ("Program"), Intrax recruited plaintiffs and helped them obtain J-1 Visas. Meyers Decl. ¶¶ 3, 7. Pursuant to the Mutual Educational and Cultural Exchange Act of 1961, 22 U.S.C. § 2451, *et seq.*, the State Department oversees the Program. To facilitate its oversight authority, the State Department promulgated rules and regulations governing the Program. *See generally* 22 C.F.R. Pt. 62. As a Sponsor, Intrax has certain obligations, including keeping apprised of its participants' addresses in the United States, ensuring their activities are consistent with the description on their Form DS-2019, and conducting an orientation for its participants. Meyers Decl. ¶¶ 4-6; *see* Pls. Stmt. ¶ 5.

Intrax works with host companies, like Sunset, to match participants with appropriate employment. Meyers Decl. ¶ 12. As part of its process, Intrax obtains information from host companies, which it then provides to its participants via a Premium Placement Confirmation Form. *Id.* ¶¶ 10-11. Intrax also enters into a Conditions Agreement with its participants. *Id.* ¶¶ 16-19. The participants, such as plaintiffs, pay Intrax for these services. *Id.* ¶ 15. Since Intrax is based in the United States, it contracts

---

[2]Intrax submitted two declarations by Kimberley Meyers. Citations to "Meyers Decl." refer to the declaration attached to Intrax's reply memorandum.

2

with organizations in other countries to assist with the administration of its services. *Id.* ¶ 6.

Here, plaintiffs went to Zip Travel in Bulgaria to begin Intrax's recruitment process. *Id.* ¶ 17. There, a Sunset representative interviewed them for the lifeguard positions. Kiani Decl. ¶ 7. Ultimately, they worked as lifeguards for Sunset from May to October 2006. Pls. Stmt. ¶ 6. During this time period, they worked in excess of forty hours a week but did not receive overtime compensation. *Id.* ¶¶ 6-7. Disappointed with their experience, plaintiffs have sued Intrax and Sunset, alleging violations of the Fair Labor Standards Act (Count I), fraud (Count II) and civil conspiracy (Count III). They now move for summary judgment on their FLSA claim. Defendants, in turn, seek summary judgment on all claims.[3] For the following reasons, summary judgement will be GRANTED as to defendants and DENIED as to plaintiffs.

## II. ANALYSIS

**A.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue

---

[3]Plaintiffs made no attempt to address defendants' arguments for summary judgment on the claims for common law fraud and civil conspiracy. *See, e.g.*, Pls. Response Mem. in Supp. of Their Mot. for Summ. J. 1, n.1. Accordingly, the Court will treat defendants' motions for summary judgment on the common law claims as conceded and grant summary judgment in favor of defendants on those claims. *See* LcvR 7(b).

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). When deciding whether there are disputes of material facts, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The parties agree that the material facts are undisputed. Each party maintains that it is entitled to judgment as a matter of law on the FLSA claims for overtime wages. For the following reasons, the Court finds that defendants are entitled to summary judgment.

**B.    Fair Labor Standards Act**

Pursuant to the FLSA, if an employee works more than forty hours per week, his employer must pay him for the additional hours at a rate of at least one and a half times the regularly hourly rate. *See* 29 U.S.C. § 207(a)(1). Plaintiffs contend that because they worked in excess of forty hours per week, Sunset and Intrax are jointly and severally liable for their unpaid wages. Defendants, on the other hand, contend that they are exempt from the FLSA's overtime requirements.

*1.    Sunset*

Sunset contends it is exempt from the FLSA's overtime requirements because it falls within the amusement and recretaional exemption. The amusement and recreational exemption of the FLSA provides, in pertinent part, that

> any employee employed by an establishment which is an amusement or recreational establishment [is not entitled to overtime wages] . . . if (A) it does not

> operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year . . . .

29 U.S.C. § 213(a)(3). Thus, there are two elements to the amusement and recreational exemption: (1) the employer must demonstrate that it qualifies as an "amusement or recreational establishment"; and (2) the employer must show either that it does not operate for more than seven months a year or that its average receipts for six months of the prior year were not more than a third of its average receipts for the other six months.[4] The employer bears the burden of proving that it qualifies for an exemption under the FLSA. *See Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 396 (11th Cir. 2004). Moreover, "[e]xemptions under the FLSA are to be construed narrowly against the employer who asserts them." *Jeffrey v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995) (citing *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255 (6th Cir. 1987)).

To determine whether Sunset falls within the amusement and recreational exemption, the Court must look at the plain language of the statute, and if that is unclear, the legislative history and agency opinion letters construing the statutory language. *See Double JJ*, 375 F.3d at 396-97 (finding the plain language of the statute regarding the amusement and recreational exemption ambiguous, and therefore looking at the

---

[4] Sunset submitted a declaration to demonstrate that its average receipts for a six-month period were less than a third of its average receipts for the remaining six months. Kiani Decl. ¶ 5. Plaintiffs make no challenge to Sunset's calculations. Accordingly, the Court finds that Sunset meets this second element of the amusement or recreational exemption.

legislative history and opinion letters). The FLSA does not define what constitutes an "amusement or recreational establishment." Adding little clarity, the Department of Labor regulations define "amusement or recreational establishments" as "establishments frequented by the public for its amusement or recreation . . . . Typical examples of such are the concessionaires at amusement parks and beaches." 29 C.F.R. § 779.385. Courts previously called on to construe this term have recognized the lack of legislative history, but have also consistently noted that the exemption's purpose is to cover "'such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sports events, parimutel racing, sport boating or fishing or other similar or related activities.'" *Louvers*, 817 F.2d at 1258 (quoting H.R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965)). This exemption is needed because the type of employment covered "may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards." *Id.* at 1259.

The Wage and Labor Administrator has not conclusively decided whether pool facilities at a hotel or residential building qualify for the exemption. It addressed a similar issue in a 1972 opinion letter, finding that companies "engaged in the business of operating swimming pool facilities . . . under contracts with owners or managers of apartment buildings and motels" do not qualify for the exemption on the grounds that "the primary function of pools at apartment buildings and motels is to act as attractions to obtain tenants and guests . . . . Thus, they are an integral part of the apartment building

and motel and not separate amusement or recreation establishments." Opinion Letter, U.S. Dep't of Labor, Wage & Hour Div., WH-166 (June 8, 1972), *available at* 1972 WL 34909. Subsequently, the Wage and Hour Administrator has suggested that operators of swimming pools may qualify for the exemption. For example, the Field Operations Handbook provides that although resort hotels are generally not amusement or recreational establishments, "if a resort hotel operates a particular facility (such as a golf course or swimming pool) as a separate establishment, employees of such an establishment might qualify for exemption." Field Operations Handbook, U.S. Dep't of Labor (Apr. 15, 1994), *available at* http://www.dol.gov/esa/whd/FOH/FOH_Ch25.pdf; *cf.* Opinion Letter, U.S. Dep't of Labor, Wage & Hour Div. (May 6, 1994), *available at* 1994 WL 1004822.

The Court does not find the 1972 opinion letter controlling. The opinion letter's rationale for concluding that an independently operated and maintained pool is an integral part of the hotel or residential building and not its own amusement or recreational establishment is lacking. Furthermore, subsequent opinion letters, the Field Operations Handbook and case law have called into question the 1972 opinion letter's reasoning and conclusion. Specifically, courts have applied the exemption to baseball teams that independently operate and maintain fields owned by the city and to swimming facilities at resort hotels. *See* Opinion Letter, U.S. Dep't of Labor, Wage & Hour Div. (Sept. 22, 1999), *available at* 1999 WL 1788159 (determining that beach and water park at resort

hotel was an amusement and recreational establishment); *Louvers*, 817 F.2d at 1258 (noting that opinion letter's reliance on lack of general public access to facilities in questions was misplaced); *Jeffrey*, 64 F.3d at 595 (finding amusement and recreational exemption applied to baseball team that maintained and operated stadium facilities). Accordingly, the Court finds that the 1972 opinion letter is due little respect. *See Christensen v. Harris County*, 529 U.S. 576, 586-87 (2000) (noting that opinion letters are "entitled to respect" proportionate to their "power to persuade"); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("The weight [of an Administrator's opinion] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

The undisputed evidence in this case demonstrates that Sunset is an amusement and recreational establishment. Sunset's primary purpose is to operate and maintain swimming pools for various hotels and residential buildings in the Washington, DC metropolitan area. Pls. Stmt. ¶ 1; Kiani Decl. ¶ 2. It has complete responsibility for the pools, providing "all the resources necessary for the operation of the recreational pools, including lifeguards, pool chemicals and maintenance and cleaning services." Kiani Decl. ¶ 3. The lifeguards who operate the pool are overseen and paid by Sunset, not the building owner. *See, e.g.*, Compl. Ex. 5. Furthermore, there is no indication that Sunset's lifeguards performed any additional work for the buildings; their only duties were to

maintain the recreational pool space. *See* Compl. Ex. 3. Therefore, Sunset operates as its own amusement or recreational establishment, and is exempt from the FLSA's overtime requirements. *See* Opinion Letter, Dep't of Labor, Wage & Hour Div. (Sept. 22, 1999), *available at* 1999 WL 178859; *see also* 29 C.F.R. § 779.305. Accordingly, Sunset does not owe plaintiffs any overtime wages.

    2.    *Intrax*

Plaintiffs seek to hold Intrax liable for failure to pay overtime pursuant to the FLSA on the basis that Intrax and Sunset had a joint employment relationship. Intrax contends that it is not plaintiffs' employer under the FLSA and therefore cannot be liable under the statute. The FLSA defines "employer" to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "[A]n entity employs an individual if it 'suffer[s] or permit[s]' that individual to work." *Barfield v. New York City Health & Hospitals Corp.*, 432 F. Supp. 2d 390 (S.D.N.Y. 2006) (citing 29 U.S.C. § 203(g)) (alterations in original). The FLSA contemplates the existence of joint employer relationships. For example, "[w]here the employee performs work which simultaneously benefits two or more employers[] . . . a joint relationship generally will be considered to exist in situations such as[] . . . [w]here one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee." 29 C.F.R. § 791.2(b)(2) (footnotes omitted).

Courts determine whether a joint employer relationship exists "based on the 'circumstances of the whole activity' viewed in light of 'economic reality.'" *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003) (internal citations omitted); *see also Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 (1961) (holding that the "economic reality" should be used to determine the employment relationship). In assessing the totality of the circumstances, courts have traditionally considered four factors, *i.e.*, "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)); *see also Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001). Depending on the circumstances, the inquiry should not be limited to these factors.[5]  In order to determine an entity's "functional control" over the employee, the Second Circuit has looked at the following factors: "(1) whether [the entity's] premises and equipment were used for the plaintiffs' work; (2) whether the [entity] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the entity's] process of

---

[5] In their moving brief, plaintiffs assert that at least one court had found a joint employer relationship based on a single factor. Pls. Mem. 4. This, however, is an erroneous reading of the case, and the law. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999) ("Evidence in the record supports at least *three* of the four factors." (emphasis added)).

production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [entity] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominately for the [entity]." *Zheng*, 355 F.3d at 72.

The undisputed facts demonstrate that Intrax was not plaintiffs' employer. During plaintiffs' tenure as lifeguards, Intrax did not exercise control or supervision over them. As evidence that Intrax exercised control, plaintiffs point to Intrax's requirements that they attend an orientation session upon their arrival in the United States, report any address changes to Intrax, notify Intrax of any new employment and obtain authorization to leave their positions. Pls. Mem. 5. Not only were these requirements unrelated to their jobs as lifeguards, but they are obligations imposed on Intrax as a Sponsor. *See* Meyers Decl. ¶¶ 3-6; Ex. M at 10, attached to Intrax Opp'n; *see also* 22 C.F.R. § 62.10(c) (orientation); 22 C.F.R. § 62.10(e)(3) (maintain current address); 22 C.F.R. § 62.14(a) (provide health insurance). This evidence merely demonstrates that Intrax complied with State Department regulations; they point to no evidence that these activities were "much more than simply 'sponsor[ing]' foreign exchange students." Pls. Rep. 3. Thus, even though Intrax kept tabs on plaintiffs while they remained in the United States, that control was unrelated to their lifeguard positions and thus not indicative of a joint employment relationship.[6] *See Zheng*, 355 F.3d at 75 (noting that some degree of supervision might be

---

[6]Intrax's agreement with Sunset to "make a good-faith effort to ensure that the participants will arrive on time to commence their employment with host company, abide by the

consistent with the type of subcontracting arrangement at issue and not indicative of a joint employment relationship).

Plaintiffs additionally attempt to establish a joint employer relationship based on Intrax's maintenance of certain employment records suffers from the same flaw. While there is no dispute that Intrax helped plaintiffs obtain health insurance, secure and maintain their visas and other immigration forms and requested updates on their employment status, these actions were all part of Intrax's obligations as a Sponsor, and were completely distinct from their employment records vis-a-vis their lifeguard positions. *See* Meyers Decl. ¶¶ 7, 14; *see also* 22 C.F.R. § 62.14(a) (provide health insurance); 22 C.F.R. § 62.10(c) & (e)(2)(3) (maintenance of visa and immigration records). Moreover, the undisputed evidence shows that Intrax "did not assign or direct" plaintiffs' "schedule or pay." Intrax Stmt. of Material Facts ("Intrax Stmt.") ¶ 16. In fact, the wages of its participants are set by the host company, such as Sunset; leaving Intrax's role to communicating information received from Sunset to plaintiffs via the Premium Placement Confirmation Form. Meyers Decl. ¶¶ 9-10; Intrax Stmt. ¶ 12. Indeed, nothing in the Premium Placement Confirmation Form indicates that Intrax directed Sunset what

---

terms of their employment and perform their assigned tasks in a satisfactory manner" does not demonstrate that Intrax *actually* exercised any control over plaintiffs. Ex. B, attached to Intrax Mem. This agreement stands in stark contrast to the amount of supervision found to constitute control by an alleged employer. *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727, 730 (1947) (finding totality of circumstances evidenced employer-employee relationship where, *inter alia*, managing official of the slaughterhouse "kept close touch on the operation," and walked through their area commenting on their work); *Herman v. RSR Sec'y Servs. Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999) (alleged employer assigned work locations).

to pay plaintiffs. To the contrary, the document merely indicates that Sunset will abide by the wages it provided to Intrax for inclusion in the form.[7]

Intrax's involvement in plaintiffs' hiring process is similarly insufficient to make it an employer under the FLSA. There is no dispute that Intrax recruited plaintiffs and assisted in placing them with an employer in the United States. Meyers Decl. ¶¶ 2, 12; Pls. Stmt. ¶ 2. As part of its services, Intrax "assists the participants [in obtaining] J-1 Visas," which they must possess to legally work in the United States. *See* Meyers Decl. ¶ 7. But that is where Intrax's involvement in plaintiffs' employment ends. It was Sunset, not Intrax, that interviewed and hired them as lifeguards. Kiani Decl. ¶ 3; *cf. Herman*, 172 F.3d at 140 (alleged employer hired employees). The record is devoid of evidence that Intrax participated in the decision to hire plaintiffs. Facilitating the completion of paperwork, mediating disputes and working to ensure the arrival of the workers does not render Intrax somehow responsible for hiring plaintiffs. To the contrary, it is consistent with Intrax's role as a recruiter and Sponsor.

Finally, other considerations also support finding that Intrax did not employ plaintiffs. Particularly, plaintiffs actually paid Intrax to participate in the Program, as

---

[7]Plaintiffs also attempt to turn Intrax's assistance in obtaining a second job in the event that minimum hours are not met into evidence that Intrax had control over plaintiffs' hours and schedules. Although Intrax volunteers assistance in obtaining additional employment, it specifically disclaimed any guarantee that plaintiffs would work a certain number of hours. Ex. F at 7-8, attached to Intrax Opp'n. Plaintiffs point to no case, however, in which courts have found that an alleged employer participated in determining hours and wages without actually suggesting or setting the hours or wages. *Cf. Herman*, 172 F.3d at 140 (alleged employer signed paychecks at least three times).

opposed to getting paid for services rendered to Intrax. Meyers Decl. ¶ 15. Additionally, there is no evidence that plaintiffs used any equipment or facilities that belong to Intrax. *Cf.* Intrax Stmt. ¶ 16 (Intrax had no involvement with housing); Ex. G, attached to Intrax Mem. (Sunset provides required training, uniforms and lodging). Thus, based on the foregoing, all the relevant factors support the conclusion that Intrax did not employ plaintiffs. Accordingly, Intrax cannot be liable under the FLSA.

### III. CONCLUSION

For the reasons stated above, defendants' motions for summary judgment on all claims will be GRANTED. Plaintiffs' motion for summary judgment on their FLSA claim will be DENIED.

_____
RICHARD J. LEON
United States District Judge